**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a<br>PLAY-MOR COIN-OP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  4:23-cv-330 |
| | ) | |
| TORCH ELECTRONICS, LLC, | ) | **JURY TRIAL DEMANDED** |
| STEVEN MILTENBERGER, and | ) | |
| SONDRA MILTENBERGER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff TNT Amusements, Inc. ("Plaintiff" or "TNT"), and for its Complaint against Defendants Torch Electronics, LLC ("Torch"), Steven Miltenberger, and Sondra Miltenberger (each a "Defendant," and collectively, the "Defendants"), states as follows:

### INTRODUCTION

1.      Defendants own, market, and distribute electronic slot machine games, which they contract to place in various retail locations (gas stations, bars, etc.) around the state of Missouri. Defendants' devices constitute "slot machines" and games of chance, each of which are illegal under Missouri law.

2.      Among other things, Missouri provides that such devices are permitted only in casinos, which in turn must be operated pursuant to a Missouri gaming license. Torch does not have a Missouri gaming license and does not operate its amusement devices in a casino.

3.      Torch has repeatedly and systematically made false claims regarding the nature of its devices—namely, by asserting that its devices are "no chance" games that comply with Missouri law. As a result of Torch's false statements, it has been able to convince businessowners

across Missouri to place Torch devices in their establishments—some unwittingly, others with full knowledge of the illegal nature of the devices. Businesses have limited floor space and every spot taken up by an illegal Torch device is a spot taken away from a legal amusement device such as those offered by TNT.

4.     Defendants' misconduct violates (among other things), the Lanham Act, 15 U.S.C. § 1125; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; the mail fraud statute, 18 U.S.C. § 1341; the wire fraud statute, 18 U.S.C. § 1343; the federal prohibition of illegal gambling businesses, 18 U.S.C. § 1955; the Travel Act, 18 U.S.C. § 1952; Missouri's prohibition on the promotion of gambling in the first degree, Mo. Rev. Stat. § 572.030; Missouri's prohibition on the promotion of gambling in the second degree, Mo. Rev. Stat. § 572.040; Missouri's prohibition on the possession of slot machines, Mo. Rev. Stat § 572.070(1); and Missouri's prohibition on the possession of gambling devices, Mo. Rev. Stat. § 572.070(2); and constitutes unfair competition under Missouri common law.

5.     TNT seeks injunctive relief and monetary damages to stop Defendants' ongoing activities, which have resulted in immediate and irreparable harm.

## PARTIES

6.     TNT Amusements, Inc. ("Plaintiff" or "TNT"), which also does business as Play-Mor Coin-Op, is a Missouri corporation with its principal place of business in West Sullivan, Missouri.

7.     Defendant Torch Electronics, LLC ("Torch") is a Missouri limited liability company with its principal place of business in Jefferson City, Missouri.

8.     Defendant Steven Miltenberger is an individual residing in St. Louis County, Missouri, and is a co-owner of Torch.

9.     Defendant Sondra Miltenberger (together with Steven Miltenberger, the "Miltenbergers") is an individual residing in St. Louis County, Missouri, and is a co-owner of Torch.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over all claims in this Complaint.

11.     Federal jurisdiction is proper under 28 U.S.C. § 1331 because multiple of TNT's claims in this action arise under federal laws, to wit, RICO, 18 U.S.C. § 1961 *et seq.*, and the Lanham Act, 15 U.S.C. § 1121, *et seq.*

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any and all claims that arise under the laws of the state of Missouri because those claims are so related to the federal claims that they form a part of the same case or controversy and are derived from a common nucleus of operative facts.

13.     This Court has personal jurisdiction over each Defendant.

14.     Defendants Steven and Sondra Miltenberger are residents of this District.

15.     Defendant Torch actively conducts business within this District.

16.     Defendant Torch is a Missouri LLC purposefully availing itself of the benefits and protections of Missouri law.

17.     Defendant Torch has engaged in commercial activity in this District that gives rise, in part, to Plaintiff's claims.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and § 1391(c) because the Miltenbergers are residents of this District and all Defendants are residents of Missouri, because a substantial portion of Defendants' misconduct underlying TNT's claims

occurred in this district, and because Defendant Torch is subject to this Court's personal jurisdiction with respect to the present action.

### FACTS COMMON TO ALL COUNTS

***Plaintiff TNT and Its Business***

19.     Plaintiff TNT leases legal coin-, cash-, credit- and debit-card-operated amusement machines such as pool tables, video games, and jukeboxes to Missouri retailers such as gas stations, bars, taverns, restaurants, truck stops, and fraternal organizations (hereafter, "Amusement Locations").

20.     TNT was founded in West Sullivan, Missouri, and for more than thirty years has invested millions of dollars into creating and growing its amusement business and business relationships.

21.     The amusement device industry is highly competitive; among other things, there is finite space for such devices to be placed in Amusement Locations. Accordingly, participation in the industry is a zero-sum game: for every device placed by one company, all other competitors have lost a potential business opportunity.

22.     A company's competitive advantage is in large part dependent upon its ability to develop, maintain, and protect goodwill and relationships with customers. TNT expends substantial time and effort to develop, preserve, and strengthen its goodwill and relationships with its customers and prospective customers.

23.     TNT also relies on repeat customers. Once TNT has successfully contracted to place its devices at an Amusement Location, it is likely to continue doing business at the same location both through (i) the leasing of additional devices (*e.g.*, expanding from one device in a location to two devices), and (ii) renewal or replacement of the original device.

### *Gambling Laws in Missouri*

24.     Under Missouri law, a person engages in "gambling" when "he or she stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome." Mo. Rev. Stat. § 572.010(4).

25.     Missouri law defines a "contest of chance" as "any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein." Mo. Rev. Stat. § 572.010(3).

26.     Missouri law defines "gambling device" to mean "any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine," subject to exceptions that are inapplicable here. Mo. Rev. Stat. § 572.010(5).

27.     Missouri law also defines "slot machine" to mean "a gambling device that as a result of the insertion of a coin or other object operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value." Mo. Rev. Stat. § 572.010(11).

28.     Importantly, Missouri Revised State § 572.010(11) further provides that:

A device so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance[.]

29.     It is a crime in Missouri for anyone to "knowingly advance[] or profit[] from unlawful gambling or lottery activity." Mo. Rev. Stat. § 572.040(1). Gambling activity is "unlawful" if it is "not specifically authorized by law." Mo. Rev. Stat. § 572.010(1).

30.     Missouri law makes it a first-degree felony to knowingly profit from a gambling activity by "setting up and operating any slot machine" or "setting up and operating any gambling device to the extent that more than one hundred dollars of money is gambled upon or by means of the device in any one day." Mo. Rev. Stat § 572.030(1).

31.     Under Missouri law, a person "profit[s] from a gambling activity" "if, other than as a player, he or she accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates or is to participate in the proceeds of gambling activity." Mo. Rev. Stat. § 572.010(10).

32.     Missouri law also makes it a crime to knowingly manufacture, sell, transport, place, possess, or conduct any transaction involving a slot machine or other illegal gambling device. Mo. Rev. Stat. § 572.070.

33.     Gambling activities in Missouri are exempt from these criminal penalties only if authorized under sections 313.800 to 313.840 of the Missouri Revised Statutes. Mo. Rev. Stat. § 572.010(4). Sections 313.800 to 313.840 provide that the Missouri Gaming Commission has jurisdiction over gambling operations, including licensure. Mo. Rev. Stat. § 313.800, *et seq.* Generally, gambling outside of a licensed casino is a violation of Missouri law.

34.     The Code of State Regulations sets forth numerous regulations that apply to those who operate gambling devices, including regulations governing registration of devices, 11 CSR 45-5.230; safety standards, *id.* 45-5.270; integrity standards, *id.* 45-5.210; maintenance of records, *id.* 45-5.220; and payout percentages, *id.* 45-5.190.

35.     These powers arise under the Missouri Constitution, which provides limited authorization to the state legislature to "permit *upon the Mississippi and Missouri Rivers only*, which shall include artificial spaces that contain water and that are within 1000 feet of the closest edge of the main channel of either of those rivers, lotteries, gift enterprises and *games of chance* to be conducted on excursion gambling boats and floating facilities." Mo. Const. art. III, § 39(e) (emphasis added).

### *Torch's Illegal Gambling Devices*

36.     Like TNT, Torch is in the business of placing amusement devices in Amusement Locations.

37.     Unlike TNT, which provides legal devices such as video games, Torch owns and operates illegal, so-called "no chance" gambling devices (hereafter, the "Torch Devices") that it places in Amusement Locations throughout Missouri.

38.     As of the date of this Complaint, Torch has distributed thousands of Torch Devices in the state of Missouri, and its numbers continue to grow.

39.     The Torch Devices constitute illegal gambling devices and games of chance under Missouri law.

40.     Just like a slot machine operating in a licensed casino, when a player sits down to play a Torch Device, the player inserts money, selects a game, and decides how much to wager.

41.     Each of the Torch Devices has a screen with colorful, eye-catching visuals in a variety of themes.

42.     Torch Devices are often accompanied by enticing signage nearby advertising to gamblers that winnings of more than $500 are paid by the home office and winnings less than $500 are paid by the cashiers on site.

43.     One such Torch Device is depicted in the photograph below:



44.     If a player wins money, they can then cash out their earnings with the cashier or other employee at the Amusement Location.

45.     In written statements, Torch has characterized Missouri's definition of a "gambling device" as requiring a device to have the characteristics of "consideration (money in), prize (money out), and chance."

46.     Torch has admitted that its devices have two of these three elements—consideration and prize—but has falsely claimed that the Torch Devices "have been carefully designed to eliminate the element of 'chance.'"

47.     Torch claims that the Torch Devices are not games of chance for two reasons. First, Torch claims that "the proprietary software behind [the Torch Devices] ensures that each game outcome is pre-determined and in sequence."

48.     Second, Torch claims that players are able to "pre-reveal" the outcome of the next game before deciding whether to play it. On its website, Torch previously stated:

> Importantly, the player may view each and every outcome which may entitle them a prize before playing the game. They may simply touch the "Prize Viewer" button on the game console and view the result of the game before playing. As such, the player can decide if they want to play the game or not based on the pre-determined outcome.

49.     Contrary to Torch's representations, these attributes do not eliminate the element of chance in the Torch Devices.

50.     Even if the outcomes on the Torch Devices (whether the player wins or loses) are pre-determined, just as they are for other slot machines, there is nothing the player can do to affect the outcomes. There is no skill, knowledge, dexterity, timing, or any other influence the player can employ to change or bring about any particular outcome.

51.     From the perspective of the player, the outcomes are random and therefore based on chance, just as they would be for a slot machine or any number of other gambling devices.

52.     Additionally, the Torch Device tells a player whether the current turn is a winner or loser and the player can then decide whether or not to play the turn. In order to have a chance at a winning turn, the player must play through (and pay for) the current turn. Only then can the player "pre-reveal" the next turn.

53.     From the perspective of the player, there is no material distinction between a Torch Device and other electronic slot machines in terms of the existence of "chance" involved in winning or losing.

54.     As such, the gaming experience is substantially the same in both instances. Just as with the slot machine, the player of the Torch Device must continue to pay and play for losing turns in order for the chance to pay and play for a winning turn, and the player has (i) no idea when the next winning turn may occur until a winning turn begins; and (ii) no influence over the outcomes.

55.     Moreover, under Missouri law, the fact that a slot machine may deliver something of value on the basis of something other than chance is insufficient to make it a legal gaming device, so long as it is "readily adaptable or convertible" to use as a slot machine. *See* Mo. Rev. Stat. § 572.010(11).

56.     As such, the "pre-reveal" feature does not exempt the Torch Devices from the scope of Missouri's gambling laws, because a player who is not aware of or does not utilize that feature has no control over the outcome of the game, and a device operator who disables or limits use of the "pre-reveal" feature can further minimize a player's ability to ascertain the outcome of any particular game in advance.

57.     Thus, in addition to being illegal gambling devices by their very nature, the Torch Devices are also "readily adaptable or convertible" to use as slot machines, and thereby illegal under Missouri law. Mo. Rev. Stat. § 572.010(11).

58.     There is, however, one significant distinction between the Torch Devices and slot machines lawfully operated in Missouri's casinos: Torch has not complied with Missouri laws and regulations designed to protect the players from being exploited by such devices when they are lawfully operated within a casino.

59.     For example, Torch does not prevent vulnerable populations from playing its illegal devices, such as children and individuals suffering from gambling addiction.

60.     In a recently filed class action lawsuit against Steven Miltenberger and Torch, three named plaintiffs alleged they had seen minors playing the Torch Devices.[1]

61.      Two plaintiffs alleged they had seen children who appeared to be as young as 10 years old playing the Torch Devices.

62.     Nor has Torch complied with Missouri laws and regulations that regulate the rates at which slot machines must pay out.

63.     Under 11 CSR 45-5.190(1), a lawfully operated slot machine must pay out at least 80% of the funds inserted into it over the lifetime of the machine.

64.     Based upon a diligent investigation, TNT has not been able to identify any place where Torch has advertised the rate at which its machines will pay out.

### *Recognition of the Illegal Nature of the Torch Devices*

65.     It is well known and understood, especially within the amusement game industry, that the Torch Devices are illegal slot machines and illegal gambling devices under Missouri law.

---

[1]     *See Romano, et al. v. Torch Electronics, LLC, et al.*, Case No. 2:23-cv-04043-WJE (W.D. Mo. Mar. 3, 2023).

66.     Likewise, members of Missouri's state trade associations and its executive, legislative, and judicial branches have recognized that "no chance" devices such as the Torch Devices are illegal.

67.     The Missouri Gaming Association, the casino industry trade association, considers "no chance" gaming devices to be illegal.[2]

68.     In an official statement in October 2021, the Missouri Gaming Association said: "these illegal devices, which are essentially unregulated slot machines, still operate throughout Missouri. In fact, our state has one of the most rampant spreading of illegal gambling devices in the United States. These gambling devices bypass our state's strict gaming laws and divert tax revenue away from Missouri's students and veterans."[3]

69.     The Missouri Gaming Commission has likewise declared so-called "no chance" devices like the Torch Devices to be unregulated "slot machines," and to be illegal.[4]

---

[2]   *Official Statement from the Missouri Gaming Association*, Missouri Gaming Association (Oct. 27, 2021), https://www.missouricasinos.org/official-statement-from-the-missouri-gaming-association/.

[3]   *Id.*

[4]   Devin O'Connor, *Unregulated Missouri 'No Chance' Gaming Machine Controversy Heats Up*, Casino.org (Jan 6. 2020), https://www.casino.org/news/unregulated-missouri-no-chance-gaming-machine-controversy-heats-up; Kurt Erickson, *New Lawsuit Targets 'Rogue' Video Gambling Company Operating in Missouri*, St. Louis Post-Dispatch (Dec. 4, 2019), https://www.stltoday.com/news/local/crime-and-courts/new-lawsuit-targets-rogue-video-gambling-company-operating-in-missouri/article_4e50ed44-7cc7-53ee-970a-82e0386f7d36.html.

70.    The Missouri Highway Patrol has declared so-called "no chance" gaming machines to be illegal.[5]

71.    Members of the Missouri House of Representatives formed a committee in 2019 with the purpose of "the eradication of illegal gambling," including illegal so-called "no chance" gambling devices.[6]

72.    According to one state senator, "[illegal gambling devices] are siphoning money from education programs and veterans because players are not going to the state's casinos, where profits are taxed and distributed to schools."[7]

73.    On January 6, 2020, Linn County Prosecutor Shiante McMahon filed charges against Torch and two other vendors for promoting illegal gambling in the first degree, a class E felony.[8]

---

[5]    Kurt Erickson, *Slot Machine Money Finds Its Way into Race for Missouri Auditor*, St. Louis Post-Dispatch (Oct. 19, 2021), https://www.stltoday.com/news/local/govt-and-politics/slot-machine-money-finds-its-way-into-race-for-missouri-auditor/article_9c622da0-f819-5a6e-9bad-1f107a0d62f0.html.

[6]    Kurt Erickson & Jack Suntrup, *As Gambling Expansion Stalls in Missouri, Senate Leader Still Trying to Ban Gas Station Slot Machines*, St. Louis Post-Dispatch (May 5, 2021), https://www.stltoday.com/news/local/govt-and-politics/as-gambling-expansion-stalls-in-missouri-senate-leader-still-trying-to-ban-gas-station-slot/article_d8e6de27-8b23-5ad0-96ba-058f3d9af2c9.html.

[7]    Kurt Erickson, *Wildwood-Based Slot Machine Company Sues Missouri Over Crackdown on Unregulated Gambling*, St. Louis Post-Dispatch (Feb. 10, 2021), https://www.stltoday.com/news/local/crime-and-courts/wildwood-based-slot-machine-company-sues-missouri-over-crackdown-on-unregulated-gambling/article_de63ac85-1481-5cd5-a6f7-ed1067fb54a5.html.

[8]    Rudi Keller, *Convenience Store Owner Pleads Guilty in Missouri Illegal Gambling Case*, Missouri Independent (Mar. 19, 2021), https://missouriindependent.com/2021/03/19/convenience-store-owner-pleads-guilty-in-missouri-illegal-gambling-case.

74.     In December 2020, Franklin County Prosecutor Matthew C. Becker filed a three-count charge for misdemeanor possession of gambling devices under Mo. Rev. Stat. § 572.010 against James McNutt, owner of Midwest Petroleum, for possession of three "no chance" devices.[9]

75.     On March 31, 2021, Platte County Prosecuting Attorney Eric Zahnd filed a petition against Torch for "forfeiture of gambling devices" pursuant to Mo. Rev. Stat. § 513.660, stating the Torch Devices "violate the requirements set forth in Chapter 513."[10]

76.     On June 14, 2021, Greene County Prosecutor Dan Patterson issued a subpoena commanding Torch to provide documents related to the operation of its business and the Torch Devices.[11]

77.     In Adair County, Defendant Steven Miltenberger has himself faced three counts of possession of a gambling device, a class A misdemeanor.[12]

---

[9]     *See* Probable Cause Statement & Charging Document, Case No. 20AB-CR03465 (Nov. 16, 2020), attached hereto as **Exhibit 1**.

[10]    *See* Petition, Case No. 21AE-CC00076 (Mar. 31, 2021), attached hereto as **Exhibit 2**.

[11]    Jack Suntrup, *Probe in Wildwood Gaming Company Leads to Seizure of 'Multiple Gaming Machines,'* St. Louis Post-Dispatch (Aug. 24, 2021), https://www.stltoday.com/news/local/govt-and-politics/probe-into-wildwood-gaming-company-leads-to-seizure-of-multiple-gambling-machines/article_38e318fb-1617-5f45-b1b7-a6ed4c2ea12f.html;   Investigative   Subpoena - Exhibit A to Plaintiff's Petition, Case No. 2131-CC00764 (September 15, 2021), attached hereto as **Exhibit 3**.

[12]    Jack Suntrup, *Illegal Gambling Charges Don't Stop One Missouri Company's Political Contributions*, St. Louis Post-Dispatch (June 1, 2022), https://www.stltoday.com/news/local/crime-and-courts/illegal-gambling-charges-don-t-stop-one-missouri-company-s-political-contributions/article_760b944e-80b8-55e3-afa0-5ad03906d870.html.

78.     In September 2020, Judge Thomas Fincham of Platte County found so-called "no chance" gaming vendor Integrity Vending guilty of felony promotion of gambling and fined Integrity Vending $7,500.[13]

79.     According to one news outlet, the "[p]rosecutors proved that players did not have to use the 'prize viewer' feature to know the outcome of a game prior to playing. A representative of Integrity Vending also admitted that, if every player used the viewer, the company would not make a profit."[14]

80.     On October 7, 2021, the devices involved in the Platte County case were publicly destroyed.[15]

81.     In March 2021, a gas station owner in Andrew County pleaded guilty to possession of a gambling device, a class A misdemeanor, for allowing vendors to place 11 "no chance" games in its business.[16]

82.     Judges in states with similar statutory and regulatory constructs have likewise declared so-called "no chance" gaming machines similar to the Torch Devices to be illegal.

83.     For example, a Florida court that found similar devices to be illegal slot machines discussed the devices' "pre-reveal" feature, like that of the Torch Devices, and noted:

---

[13]   *Guilty Verdict Puts Halt to Parkville Gambling Operation*, The Platte County Citizen (Oct. 2, 2020), http://www.plattecountycitizen.com/theplattecountycitizen/guilty-verdict-puts-halt-to-parkville-gambling-operation2102020.

[14]   *Id*.

[15]   *Smashing Gambling Machines in Platte County*, Missouri Independent (Oct. 7. 2021), https://www.youtube.com/watch?v=uRwb_q9mbwg.

[16]   Rudi Keller, *Convenience Store Owner Pleads Guilty in Missouri Illegal Gambling Case*, Missouri Independent (Mar. 19, 2021), https://missouriindependent.com/2021/03/19/convenience-store-owner-pleads-guilty-in-missouri-illegal-gambling-case/.

While it is true that the user is advised of the outcome of the game at hand ahead of time through the preview feature, the user cannot predict that outcome until it is randomly generated and then displayed by the machine. Nor can the user predict the outcome of Game 2 while playing Game 1."[17]

84.     In Ohio, a court called the "pre-reveal" feature a "façade" intended to "take an otherwise illegal game outside of the scope of" state laws, that, like Missouri, make such devices illegal.[18]

85.     A Pennsylvania appellate court, affirming the trial court, held that machines like Torch's were illegal gambling devices. The court stated:

This Court cannot ignore the reality that chance ultimately determines losing outcomes, winning outcomes, and the different prize levels: which are programmed into the [machine's] finite pool for random sequential delivery . . . here a large random element is always present, and it predominates . . . the [machines] are games of chance."[19]

86.     In 2022, the Supreme Court of North Carolina evaluated machines similar to Torch's and recognized that, "chance controls plaintiffs' game . . . Accordingly, just as is the case with a traditional slot machine, the return to the player in plaintiffs' game is dependent on chance."[20]

---

[17]   *Gator Coin II, Inc. v. Fla. Dep't of Bus. & Prof'l Regulation*, 254 So. 3d 1113, 1118 (Fla. Dist. Ct. App. 2018).

[18]   *See Mayle Bingo Co., L.L.C. v. Ohio Dep't of Pub. Safety*, 152 N.E.2d 1237 (Ohio Ct. App. 2020), attached hereto as **Exhibit 4**.

[19]  *See Gracie Techs., Inc. v. Commonwealth*, 225 A.3d 943 (Pa. Commw. Ct. 2020), attached hereto as **Exhibit 5**.

[20]   *Gift Surplus, LLC v. State ex rel. Cooper*, 868 S.E.2d 20, 29 (N.C. 2022) ("Gift Surplus's kiosks appear like large video-game machines that look akin to video slot machines. When players put money into the kiosks, they receive what appear to be paper receipts called 'e-credits' that can be exchanged either for products on Gift Surplus's drop shipping website or to play Gift Surplus's phone games. . . . The kiosks offer five similar games, all featuring reel-spinning video resembling a slot machine."), attached hereto as **Exhibit 6**.

87.     Ten days later, the North Carolina Supreme Court again held that the device at issue in that case was an illegal gambling machine, like a slot machine.[21]

### *Defendants' Misrepresentations*

88.     Torch has repeatedly, in commercial advertising and promotion, misrepresented the nature, characteristics, and quality of the Torch Devices.

89.     Specifically, Torch has represented that the Torch Devices (i) are "no chance" games and do not involve the element of chance, and (ii) are not "gambling devices."

90.     Each of these representations is false.

91.     On its website, Torch has stated that its games "are the first of an entirely new entertainment concept; a game in which there is no element of chance."[22]

92.     Torch's website has invited visitors to "Contact us to find out more about our innovative no chance game machines," and contains a "Contact Us" link with a fillable form.[23]

93.     As of September 25, 2022, Defendants attached the below sign to many, if not all, of the Torch Devices, asserting their purported legality.

---

[21]     Deric Rush, *State Supreme Court Cracks Down on Video Sweepstakes*, WITN.com (Feb. 21, 2021), https://www.witn.com/2022/02/22/state-supreme-court-cracks-down-video-sweepstakes/.

[22]     *About No Chance Games,* Torch Electronics (2023), https://torchelectronics.com/about-no-chance-gaming/ (last accessed Mar. 14, 2023).

[23]     *Torch Electronics,* Torch Electronics (2023), https://torchelectronics.com/ (last accessed Mar. 14, 2023).



# No Contest/No Chance Amusement Device

The Amusement Device to which this disclaimer is attached provides each player of the device with information on the specific outcome of each electronic amusement game offered thereon. The information with respect to each such outcome is provided prior to such player's participation in any such game. Consequently, this amusement device is designed to provide no contest and no chance in the games offered to its players.

Section §572.010(4) of the Missouri Revised Statutes defines what constitutes "gambling" in the state of Missouri. Chapter 572 of the Missouri Revised Statutes further has various restrictions on certain activities and equipment related to "gambling". Only those activities that meet the definition of gambling are restricted under Chapter 572.

In Missouri (as in most states), in order to be considered "gambling" an element of chance or a contest must be present in the activity, as noted in the highlighted section of Missouri's gambling definition set forth below.1 Further, in order for a device to be considered a "gambling device", the device must be designed for use in the playing phase of "gambling". As noted above, this amusement device is designed to offer no contest of chance as the outcome is known by players before any amusement game is initiated. Therefore, the activity offered by this device clearly does not meet the definition of "gambling". As a result, this amusement device does not fit any definition of a "gambling device" in the state of Missouri and is not prohibited for use by you.

1. "Gambling", a person engages in gambling when he or she stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome. §572.010(4)

94.    Other similar signs have been posted to Torch Devices, as depicted below, including as recently as March 14, 2023.

95.    The above notice appears to read:

The Amusement Device to which this disclaimer is attached provides each player of the device with information on the specific outcome of each electronic amusement game offered thereon. The information with respect to each such outcome is provided prior to such player's participation in any such game. Consequently, this amusement device is designed to provide no contest and no chance in the games offered to its players.

Section 572.010(4) of the Missouri revised Statutes defines what constitutes "gambling" in the state of Missouri. Chapter 572 of the Missouri Revised Statute further has various restrictions on certain activities and equipment related to "gambling". Only those activities that meet the definition of gambling are restricted under Chapter 572.

In Missouri (as in most states), in order to be considered "gambling" an element of chance or a contest must be present in the activity as noted in the highlighted section in Missouri's gambling definition set forth below. Further, in order for the device to be considered as a "gambling device", the device must be designed for use in the playing phase of "gambling". As noted above, this amusement device is designed to offer no contest of chance as the outcome is known by players before any amusement game is initiated. Therefore, the activity offered by this device clearly does not meet the definition of "gambling". As a result, this amusement device does not fit any definition of "gambling device" in the state of Missouri and is not prohibited for use by you.

"Gambling", a person engages in gambling when he or she states or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome.

96.    As explained above, the Torch Devices are games of chance. A player has no control over the outcome of the game and does not have the opportunity to win unless they first play a turn in order to have the chance to win on a subsequent turn.

97.    As further explained above, the Torch Devices and/or other devices that function in the same manner as the Torch Devices have been determined to be games of chance by the Missouri Gaming Commission, Missouri courts, Missouri lawmakers, and Missouri law enforcement.

98.    Torch knows or has reason to know that the Torch Devices are games of chance.

99.     Torch knowingly and intentionally misrepresented, and continues to misrepresent, that the Torch Devices constitute "no chance" games.

100.     Torch has also claimed that the Torch Devices are not "gambling devices" under Missouri law.

101.     Missouri defines a "gambling device" as "any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine." Mo. Rev. Stat. § 572.010(5).

102.     A person engages in a gambling activity "when he or she stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome." Mo. Rev. Stat. § 572.010(4).

103.     The Torch Devices meet this definition because they involve contests of chance.

104.     Even if the Torch Devices did not involve chance, they involve a player staking something of value upon "a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome."

105.     Torch's representations that the Torch Devices are not "gambling devices" are false on their face.

106.     Upon information and belief, Torch does not have, has never applied for, and does not have an application pending for a Missouri gambling license as required by Section 313.807(1).

107.    Without a gambling license, those who operate gambling devices do so in violation of state statutes and regulations, including but not limited to Mo. Rev. Stat. §§ 572.030 and 527.070, and regulations within 11 CSR 45.

### *Torch's Damage to TNT's Business*

108.    TNT is in direct competition with Torch in the market for amusement games in the Amusement Locations.

109.    Torch's misrepresentations have allowed it to flourish at the expense of TNT's legal business.

110.    Upon information and belief, Torch splits the gambling revenue generated from the Torch Devices with the Amusement Locations.

111.    As a result of Torch's violation of Missouri's gambling laws, it is able to generate more revenue, both for itself and for the Amusement Locations, than that of legal businesses such as TNT. Accordingly, Amusement Locations are incentivized to dedicate space within their facilities to the illegal Torch Devices rather than TNT's legal amusement games.

112.    Torch has misrepresented the nature of the Torch Devices to the proprietors of some Amusement Locations, and Amusement Locations have relied upon those misrepresentations in selecting which devices to place in its businesses.

113.    Upon information and belief, the proprietors of other Amusement Locations have joined in Torch's illegal enterprise, either knowing or having reasonable cause to believe that the machines are not legal as Torch has suggested.

114.    TNT's revenue has plummeted as a result of Torch's illegal conduct.

115.    Torch operates in many of the same Amusement Locations as TNT.

116.    The presence of the Torch Devices at Amusement Locations directly impacts TNT's business.

117.    Some Amusement Locations containing the Torch Devices have actually ended their relationship with TNT as a result of the success of the Torch Devices.

118.    Some Amusement Locations containing the Torch Devices have threatened to remove TNT's machines to create space for additional Torch Devices.

119.    Some Amusement Locations containing the Torch Devices have actually removed TNT's machines to create space for additional Torch Devices.

120.    Beyond harming TNT's current business relationships, Torch's illegal conduct has also crowded TNT out of the market for potential new business relationships.

### FACTS PARTICULARLY RELEVANT TO RICO CLAIMS

#### *Federal Criminal Statutes Implicated by Defendants' Conduct*

121.    Title 18, United States Code, Section 1341 makes it unlawful for any person, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, [to] place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or [to] deposit[] or cause[] to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or [to] take[] or receive[] therefrom, any such matter or thing, or knowingly [to] cause to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing."

122.    Title 18, United States Code, Section 1343 makes it unlawful for any person, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, [to] transmit[]

or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

123.    Title 18, United States Code, Section 1952 makes it unlawful for any person to "travel[] in interstate or foreign commerce or use[] the mail or any facility in interstate or foreign commerce, with intent to . . . distribute the proceeds of any unlawful activity[] or . . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity" and to thereafter perform such an act.

124.    Section 1952 further defines "unlawful activity" to include "any business enterprise involving gambling . . . in violation of the laws of the State" in which the gambling occurs.

125.    Section 1955 makes it unlawful for any person to "conduct[], finance[], manage[], supervise[], direct[], or own[] all or part of an illegal gambling business."

126.    Section 1955 further defines "illegal gambling business" to include any gambling business that "is a violation of the law of a State or political subdivision in which it is conducted," "involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business," and "has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day."

127.    Title 18, United States Code, Section 1962(a) makes it unlawful for any person "who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

128.     Title 18, United States Code, Section 1962(b) makes it unlawful for any person "through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

129.     Title 18, United States Code, Section 1962(c) makes it unlawful for any person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

130.     Title 18, United States Code, Section 1962(d) makes it unlawful for any person to "conspire to violate any of the provisions" of Section 1962(a), (b), or (c).

131.     Title 18, United States Code, Section 1961(4) defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

132.     Title 18, United States Code, Section 1961(3) defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property."

133.     Title 18, United States Code, Section 1961(5) defines "pattern of racketeering activity" to require "at least two acts of racketeering activity, . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."

134.     Title 18, United States Code, Section 1961(1) defines "racketeering activity" to include any act which is indictable under Title 18, United States Code, Sections 1341, 1343, 1952, or 1955.

*Defendants' Pattern of Racketeering Activity*

135.    Defendants have caused irreparable harm to TNT's business through a pattern of related and continuous racketeering activities affecting an enterprise involved in interstate commerce described in the prior paragraphs and below in more detail.

136.    The Miltenbergers own, operate, and manage Torch Electronics, LLC.

137.    Torch, the Miltenbergers, and other as-yet unidentified associates, agents, and employees (the "Torch Enterprise") are each a person within the meaning of 18 U.S.C. § 1961(3).

138.    The members of the Torch Enterprise further conspired with as-yet unidentified owners and operators of Amusement Locations housing Torch Devices.

139.    The members of the Torch Enterprise agreed to disseminate statements and advertisements through federal mail.

140.    The members of the Torch Enterprise agreed to disseminate false statements and deceptive advertisements through federal mail in furtherance of their scheme.

141.    In furtherance of their scheme, the members of the Torch Enterprise did carry out multiple acts of mail and wire fraud over a substantial period of time.

142.    In furtherance of their scheme, the members of the Torch Enterprise agreed to disseminate false statements and deceptive advertisements through interstate wire communications.

143.    Defendants' scheme deceived third parties, including owners and operators of Amusement Locations and players of the Torch Devices.

144.    Defendants' scheme likely could have deceived third parties, including owners and operators of Amusement Locations and players of the Torch Devices.

145.    In furtherance of their scheme, the Torch Enterprise agreed to use interstate facilities with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, and thereafter performed or attempted to perform acts in furtherance of the same unlawful activity.

146.    In furtherance of their scheme, the Torch Enterprise did use interstate facilities with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, and thereafter performed or attempted to perform acts in furtherance of the same unlawful activity.

147.    In furtherance of their scheme, the Torch Enterprise, comprised of four or more persons and Defendants, knowingly agreed to conduct, finance, manage, supervise, direct, and own all or part of a gambling business.

148.    Torch conducted its business in violation of Missouri gambling laws.

149.    Torch's business was substantially continuous in operation for more than thirty days.

150.    Torch's business had a gross revenue of more than $2,000 on a single day.

151.    These acts are connected and related to the purpose of advancing Torch's business.

152.    Plaintiff is a person who has suffered a compensable injury within the meaning of 18 U.S.C. § 1961(3) due to the actions of Defendants.

153.    As a direct and proximate result of the Defendants' willfully and knowingly fraudulent actions, TNT suffered direct monetary losses in amount that has yet to be ascertained precisely.

### *Defendants' Acts of Mail and Wire Fraud*

154.    On a date not certain, but likely on or before October 5, 2015, Defendants began their scheme to intentionally defraud others by distributing the Torch Devices that Defendants represented as legal, "no chance" amusement devices.

155.    Defendants transmitted advertisements to the public promoting the Torch Devices as legal, "no chance" gaming devices.

156.     Defendants began soliciting owners and operators of Amusement Locations for potential business relationships, resting their solicitations on the premise that the Torch Devices were legal, "no chance" gaming devices.

157.    In the ordinary course of business the Defendants used and continue to use internet and telephone services for sales, advertisements, internal discussions, and administrative tasks.

158.    Defendants could foresee that the United States Postal Services ("USPS") and interstate wires would be used in the ordinary course of business.

159.    Defendants could foresee that the USPS and interstate wires would be used for the purpose of advancing, furthering, executing, concealing, conducting, participating in, and carrying out schemes within the meaning of 18 U.S.C. §§ 1341 and 1343.

160.    For the purpose of executing such scheme or artifice, Defendants caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce writings, signs, signals, pictures, and/or sounds.

161.    It is not possible, without further investigation and discovery, for Plaintiff to plead with particularity all instances of mail and wire fraud that Defendants conducted that advanced, furthered, executed, and concealed their scheme to commit fraud.

162.     The particulars of these communications are within the exclusive control and knowledge of Defendants, and potentially others within or associated with Defendants' unlawful enterprise.

163.     By way of example, however, Defendants' fraudulent behavior includes false representations posted to Torch's business website, torchelectronics.com, from at least 2018 until present.

164.     Defendant removed several claims from their website at some point between September 13 and 19, 2022.

165.     Defendants represented: "A No Chance Gaming Machine Overview . . . Torch's No Chance Game Machines are legal. Torch No Chance Game Machines are innovative non-gambling devices."

166.     Until at least September 13, 2022, Torch's website represented that

Torch's No Chance Games are unique in that both the outcome of the game and the prize are pre-determined. Those pre-determined outcomes are finite and in sequential order, thus eliminating the element of chance. Each 'play' by the user simply displays the pre-determined outcomes in an entertaining fashion . . . . Every No Chance Game is designed to ensure that the element of chance has no role in the outcome."

167.     Until at least September 13, 2022, Torch's website represented that

Why are NO Chance Game Machines different? Under Missouri law, a "gambling device" is defined as having three elements: consideration (money in), prize (money out), and chance (unknown outcome). Torch's No Chance games . . . have been carefully designed to eliminate the element of "chance" (which Missouri law defines as the material component of a gambling device) . . . The 'Prize Viewer' option on NCGs eliminates chance.

168.     Defendants also posted physical signs on many, if not all, of the Torch Devices.

169.     Through these signs, Defendants again claimed that the Torch Devices are legal, "no-chance" amusement devices that are not gambling devices under Missouri law.

170.    Additionally, Defendants or their agents repeatedly represent to the public via the media that the Torch Devices machines are legal, "no chance" amusement devices.

### *Interstate Travel or Transportation in Aid of Racketeering Enterprise*

171.    As described above and below, Defendants used or caused another to use interstate facilities.

172.    Defendants did so with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of its business.

173.    Defendants did so with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity.

174.    Defendants used several vehicles or instruments that crossed state lines in the course of commerce.

175.    Defendants caused others to use several vehicles or instruments that crossed state lines in the course of commerce.

176.    Defendants used and continue to make and receive telephone calls in the regular course of business.

177.    Through the regular course of business, Defendants caused others to make phone calls.

178.    Defendants used and continue to use email in the regular course of business.

179.    Through the regular course of business, Defendants caused others to use email.

180.    Defendants used and continue to use text messages and instant messages in the regular course of business.

181.    Through the regular course of business, Defendants caused others to use text messages and instant messages.

182.    Defendants used and continue to use the USPS in the regular course of business.

183.    Through the regular course of business, Defendants caused others to use the USPS.

184.    Defendants' calls and other behaviors using interstate facilities were performed with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activities.

185.    At all relevant times, Defendants were aware their activities violated state law.

186.    Defendants' awareness is evident, in part, by Defendant Steven Miltenberger's employment history, which includes years of experience in the video gambling industry.[24]

187.    Due to Steven Miltenberger's experience, Torch is knowledgeable about the statutory and regulatory landscape of the gambling industry.

188.    With Steven Miltenberger at its helm, Torch was and is aware of the illegality of its actions.

189.    Additionally, as more fully described above, the numerous news articles about and legal actions against Torch and other vendors of "no-chance" machines put Defendants on notice that their actions were illegal under the law of the state of Missouri.

190.    Defendants' unlawful activities include violations of the Missouri common law of unfair competition.

191.    Defendants' unlawful activities include violations of Missouri gambling statutes and regulations.

192.    Following Defendants' use of interstate facilities, Defendants performed or attempted to perform an act in furtherance of their unlawful activities.

---

[24]    Steven Miltenberger, "Steven A. Miltenberger," https://www.linkedin.com/in/steven-a-miltenberger-91b66225 (last accessed Mar. 14, 2023).

*Operation of an Illegal Gambling Business*

193.    Defendants and four or more other persons knowingly conducted, financed, managed, supervised, directed, and owned all or part of a gambling business that was conducted in and violated the law of Missouri.

194.    The gambling business was in substantially continuous operation for more than thirty days.

195.    The gambling business had a gross revenue of more than $2,000 on a single day.

196.    Defendants conducted a gambling business by participating in the operation of it in functions necessary for the operation of the business.

197.    Defendant Steven Miltenberger performed the necessary functions of management of the daily operations of the business and its employees.

198.    Defendants performed the necessary functions inherent to ownership of the gambling business.

199.    Defendants performed the functions necessary for perpetuating the business.

200.    Defendants performed any of the following functions: advertising to potential business partners, fielding business inquiries, transporting terminals to and from the location of business partners, servicing terminals, managing and updating Torch's website, interfacing with news media, and performing roles essential to any business, including payroll and other administrative duties.

201.    As stated above, Defendants' conducted their illegal gambling business in violation of the Missouri common law of unfair competition and Missouri's prohibition against illegal gambling.

202.    Torch has been in substantially continuous operation for more than thirty days.

203.    Torch has had a gross revenue of more than $2,000 in a single day.

**FACTS PARTICULARLY RELEVANT TO THE
LANHAM ACT AND MISSOURI UNFAIR COMPETITION CLAIMS**

204.    Defendants have and continue to make representations of fact about the Torch Devices in commercial advertisements: that the Torch Devices are legal "no chance" amusement devices.

205.    Defendants' representations are literally false.

206.    At the very least, Defendants' representations would cause a reader or listener to develop a false impression.

207.    Defendants' advertisements are likely to deceive consumers and the public.

208.    Defendants have caused the false statements in their commercial advertisements to enter interstate commerce through the Torch website, news media, and physical signs.

209.     Defendants have also caused their false statements to enter interstate commerce through advertisements to customers and potential business partners.

210.    Defendants are economically motivated to make these statements.

211.    The legality of the Torch Devices affect Defendants' basic ability to earn revenue through business partnerships and individuals using the machines.

212.    Whether the Torch Devices are slot machines affects Defendants' basic ability to earn revenue through business partnerships and individuals using the machines.

213.    Whether the Torch Devices are gambling devices affects Defendants' basic ability to earn revenue through business partnerships and individuals using the machines.

214.    Whether the Torch Devices involve an element of chance affects Defendants' basic ability to earn revenue through business partnerships and individuals using the machines.

215.    The legality of the Torch Devices is an inherent quality or characteristic of the Torch Devices.

216.    Whether the Torch Devices are slot machines is an inherent quality or characteristic of the Torch Devices.

217.    Whether the Torch Devices are gambling devices is an inherent quality or characteristic of the Torch Devices.

218.    Whether the Torch Devices involve an element of chance is an inherent quality or characteristic of the Torch Devices.

219.    Any assertion by Defendants of the legality of the Torch Devices is a material deception, as it is based on an inherent quality or characteristic of the Torch Devices.

220.    Any assertion by Defendants that the Torch Devices are not slot machines is a material deception, as it is based on an inherent quality or characteristic of the Torch Devices.

221.    Any assertion by Defendants that the Torch Devices are not gambling devices is a material deception, as it is based on an inherent quality or characteristic of the Torch Devices.

222.    Any assertion by Defendants that the Torch Devices are "no chance" games is a material deception, as it is based on an inherent quality or characteristic of the Torch Devices.

223.    Defendants are well aware that only those with a Missouri gambling license may legally operate gambling devices in Missouri.

224.    Upon information and belief, Defendants do not have, have never applied for, nor have an application pending for a Missouri gambling license.

225.    In contravention of this and other knowledge they possessed, Defendants acted knowingly and intentionally, with reckless disregard, or willful blindness to state and federal statutes and regulations.

226.    Plaintiff has suffered irreparable injury and substantial damages due to Defendants' deceptive advertising practices.

**COUNT ONE**
*Federal Unfair Competition*
**(Against Defendant Torch)**

227.     TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

228.     Defendants' actions constitute unfair competition in violation the Lanham Act, 15 U.S.C. § 1125(a).

229.     Defendants' actions described herein have been willful and intentional, with knowledge of their wrongful nature.

230.     Defendants made at least one false statement of fact about the Torch Devices.

231.     Defendants represented the Torch Devices were legal, so-called "no chance" amusement devices.

232.     Defendants' representation that the Torch Devices were legal "no chance" amusement devices was and is false.

233.     Defendants' representation that the Torch Devices comply with Missouri law is false because the Torch Devices are, in fact, unlicensed illegal gambling devices pursuant to Missouri law and Missouri Gaming Commission regulation.

234.     Defendants knew or should have known that legal operators of gambling devices in Missouri must apply for and receive a license from the Missouri Gaming Commission.

235.     Upon information and belief, Defendants did not submit an application for a gambling license nor have one either pending or granted for the Torch Devices.

236.     Defendants knew or should have known that they did not submit an application for a gambling license nor had one either pending or granted for the Torch Devices.

237.    Because such applications were never in fact applied for and/or granted and legal gambling operations in Missouri require a gambling license, Defendants cannot reasonably believe that the Torch Devices are legal.

238.    Defendants knew, or should have known, that the Torch Devices were and are advertised as legal, when no gambling license was either in existence or pending, and therefore the Torch Devices are in contravention of Missouri law and regulation.

239.    The Torch Devices do, in fact, involve an element of chance.

240.    Defendants knew, or should have known, that the Torch Devices do, in fact, involve an element of chance.

241.    The Torch Devices are, in fact, slot machines.

242.    Defendants knew, or should have known, that the Torch Devices are, in fact, slot machines.

243.    The Torch Devices are, in fact, gambling devices.

244.    Defendants knew, or should have known, that the Torch Devices are, in fact, gambling devices.

245.    Therefore, Defendants' representations were and are literally false.

246.    At the very least, Defendants' representations were sufficiently misleading so as to render a false impression when viewed in context.

247.    The foregoing acts of the Defendants, separately and in combination, actually deceived and continue to deceive or, alternatively, have a tendency to deceive a substantial segment of consumers.

248.    Further, the foregoing acts have created and will continue to create a likelihood of confusion, deception, or mistake on the part of the consuming public.

249.    The foregoing acts of the Defendants, separately and in combination, materially misrepresent the nature, characteristics, or qualities of the Torch Devices.

250.    The perceived legality and related qualities of Defendants' Torch Devices affect Defendants' basic ability to earn revenue through business partnerships and individuals using the Torch Devices.

251.    The perceived legality and related qualities of the Defendants' so-called "no chance" amusement devices is a material deception, based on an inherent quality or characteristic of the Torch Devices.

252.    The foregoing acts materially deceive Defendants' audience in that the misrepresentations are likely to influence the decisions of consumers.

253.    Defendants caused and continue to cause statements to enter interstate commerce through the Torch website and signs posted on many if not all of the Torch Devices, claiming the machines were and are legal "no chance" devices.

254.    These are false representations, as they claim the machines were and are legal, so-called "no chance" devices.

255.    As a proximate result of Defendants' willful conduct, TNT has suffered irreparable harm.

256.    TNT will continue to suffer irreparable harm unless and until Defendants cease making false statements in connection with and to promote the Torch Devices.

257.    Unless Defendants' activities cease, Defendants will unjustly profit based on consumer reliance on the false statements that Defendants have made and are making about the Torch Devices.

258.    TNT has suffered and will continue to suffer economic harms, including losses in revenue as proximately caused by Torch's actions.

259.    TNT has suffered and will continue to suffer economic harms and injuries to its commercial interests, including losses in revenue, which have been and are being proximately caused by Defendants' actions and misrepresentations.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

    a.    award Plaintiff actual damages in an amount to be determined at or before trial;

    b.    award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

    c.    order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

    d.    grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

    e.    award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

    f.    grant such other and further relief as the Court deems just and proper.

**COUNT TWO**
*Missouri Common Law of Unfair Competition*
**(Against All Defendants)**

260.    TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

261.    Defendants' actions violate the state of Missouri's common law of unfair competition.

262.    Defendants engaged in and continue to engage in unfair competition by making false, misleading, and deceptive statements about the Torch Devices.

263.    Defendants' misleading and deceptive statements have caused and continue to cause consumers to use the Torch Devices over the games of competitors, including TNT.

264.    TNT has suffered and will continue to suffer economic harms and injuries to its commercial interests, including losses in sales, due to Torch's misleading and deceptive statements.

265.    Defendants acted and continue to act in bad faith in making claims about the Torch Devices that they knew and know to be materially false and deceptive.

266.    Defendants' acts constitute unfair competition under the common law of the state of Missouri.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.    award Plaintiff actual damages in an amount to be determined at or before trial;

b.    award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

c.    order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

d.    grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

e.    award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

f.    grant such other and further relief as the Court deems just and proper.

## COUNT THREE
### *Civil RICO Violations – Conduct of Criminal Enterprise– 18 U.S.C. § 1962(c)*
### (Against All Defendants)

267.    TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

268.    Defendants' acts constitute violations of the federal RICO statute, 18 U.S.C. § 1961 *et seq.*

269.    At all relevant times, the Defendants associated in fact with each other and others so as to constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

270.    The Miltenbergers knowingly conducted or participated, directly or indirectly, in the affairs of the Torch Enterprise.

271.    The Miltenbergers directed and managed the Torch Enterprise's activities.

272.    The Miltenbergers directed and managed the Torch Enterprise's activities, as more fully alleged throughout this Complaint, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1962(c)–(d).

273.    Pursuant to Section 1962(c) of the RICO statute, it is unlawful "for any person employed by or associated with any enterprise" to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

274.    The RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5).

275.    Racketeering activity is defined in 18 U.S.C. § 1961(1)(B) to include wire fraud in violation of 18 U.S.C. § 1343, mail fraud in violation of 18 U.S.C. § 1341, violation of the Travel Act, 18 U.S.C. § 1952, and the operation of an illegal gambling business in violation of 18 U.S.C. § 1955.

276.    Defendants have engaged in at least two predicate acts of racketeering activity, as set forth in the below paragraphs and elsewhere in this Complaint.

277.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through their website, including, but not limited to, on or about September 13, 2022.

278.    On or about September 13, 2022, Torch's website represented that "Torch's No Chance Game Machines are legal. Torch No Chance Game Machines are innovative non-gambling devices."

279.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through physical signs affixed to Torch Devices, including, but not limited to, on or about September 25, 2022 and March 14, 2023.

280.    On or about September 25, 2022, Defendants falsely represented the Torch Devices are legal through a sign placed on a Torch Device located inside an Amusement Location located at 301 Ellis Boulevard, Jefferson City, Missouri.

281.    This sign stated, among other things: "the activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of a 'gambling device' in the state of Missouri and is not prohibited for use by you."

282.    On or about March 14, 2023, Defendants falsely represented the Torch Devices are "no chance" devices and therefore legal to operate through a sign placed on a Torch Device located inside an Amusement Location located at 513 N Service Road W, Sullivan, Missouri.

283.    This sign stated, among other things: "[T]he activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of 'gambling device' in the State of Missouri and is not prohibited for use by you."

284.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through news media, including, but not limited to, on or about November 7, 2019 and January 29, 2020.

285.     On or about November 7, 2019, the *St. Louis Post-Dispatch* quoted a Torch spokesperson as saying "Torch Electronic's [*sic*] machines follow the letter and spirit of Missouri law."[25]

286.     On January 29, 2020, the *St. Louis Post-Dispatch* quoted a Torch representative who responded to a lawsuit accusing the company of operating illegally, and who noted that the Torch Devices are "entirely legal games."[26]

287.     As described above and throughout this Complaint, Defendants engaged in a pattern of related and continuous predicate acts over a substantial period of time.

288.     These activities are linked, related, and consistent with Defendants' scheme of deceptive, false advertisements purporting that the Torch Devices are legal, so-called "no-chance" devices.

289.     Defendants engaged in racketeering activity as part of regular business practices.

290.     Defendants' behavior demonstrates a threat of continued criminal activity.

291.     The RICO statute defines "enterprise" as "any individual, partnership, corporation, or other legal entity." 18 U.S.C. § 1961(4).

292.     If the predicate acts ceased, the relationship of the Defendants would remain intact.

293.     The Torch Enterprise affected interstate commerce through the use of the internet, specifically through Torch's website.

---

[25]   Kurt Erickson, *They Work Like Slot Machines. They May Be Illegal. And They're Popping Up All Over St. Louis*, St. Louis Post-Dispatch (Nov. 7, 2019) https://www.stltoday.com/news/local/govt-and-politics/they-work-like-slot-machines-they-may-be-illegal-and-they-re-popping-up-all/article_4c7efafc-91f5-5e81-8b6a-5763d8a185ef.html.

[26]   Jack Suntrup, *Wildwood-Based Slot Machine Company Faces Illegal Gambling Charges in Linn County*, St. Louis Post-Dispatch (Jan. 29, 2020), https://www.stltoday.com/news/local/govt-and-politics/wildwood-based-slot-machine-company-faces-illegal-gambling-charges-in-linn-county/article_bb857406-81ef-5c53-a8aa-ff04c8d1e438.html.

294.    At all relevant times, the Torch Enterprise was engaged in, and its activities affected, interstate and foreign commerce that involved mail and wire communications that traveled interstate, and which were subject to federal regulatory authorities outside of the state of Missouri.

295.    In the ordinary course of business, the Torch Enterprise used and continues to use internet and telephone services for sales, advertisements, internal discussions, and administrative tasks.

296.    In furtherance of its fraudulent conduct, Defendants knowingly or willfully used the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate, and did so in repeated violations of 18 U.S.C. §§ 1341 and 1343, each of which services is an instrumentality of interstate commerce, and was used by Defendant to engage in interstate commerce as described herein.

297.    A foreseeable result of Defendants' knowing and willful actions was the use of the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate.

298.    Defendants have received income from the pattern of racketeering activity described above.

299.    Defendants have used and invested such income and the proceeds of such income to establish and operate the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(a).

300.    Defendants Steve Miltenberger and Sondra Miltenberger have, through the pattern of racketeering activity described above, acquired and maintained their interest in and control of the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(b).

301.    As the direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a)–(c), Plaintiff has been injured in its business and property in an amount which has not yet been ascertained precisely.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.   award Plaintiff actual damages in an amount to be determined at or before trial;

b.   award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

c.   order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

d.   grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

e.   award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

f.   grant such other and further relief as the Court deems just and proper.

## COUNT FOUR
### Civil RICO Violations – Use of Proceeds of Criminal Enterprise –18 U.S.C. § 1962(a)
#### (Against All Defendants)

302.    TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

303.    Defendants' acts constitute violations of the federal RICO statute, 18 U.S.C. § 1961 *et seq.*

304.    At all relevant times, the Defendants associated in fact with each other and others so as to constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

305.    The Miltenbergers knowingly conducted or participated, directly or indirectly, in the affairs of the Torch Enterprise.

306.    The Miltenbergers directed and managed the Torch Enterprise's activities.

307.    The Miltenbergers directed and managed the Torch Enterprise's activities, as more fully alleged throughout this Complaint, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1962(c)–(d).

308.    Pursuant to Section 1962(c) of the RICO statute, it is unlawful "for any person employed by or associated with any enterprise" to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

309.    The RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5).

310.    Racketeering activity is defined in 18 U.S.C. § 1961(1)(B) to include wire fraud in violation of 18 U.S.C. § 1343, and mail fraud in violation fraud in violation of 18 U.S.C. § 1341.

311.    Defendants have engaged in at least two predicate acts of racketeering activity, as set forth in the below paragraphs and elsewhere in this Complaint.

312.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through their website, including, but not limited to, on or about September 13, 2022.

313.    On or about September 13, 2022, Torch's website represented that "Torch's No Chance Game Machines are legal. Torch No Chance Game Machines are innovative non-gambling devices."

314.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through physical signs affixed to Torch Devices, including, but not limited to, on or about September 25, 2022 and March 14, 2023.

315.     On or about September 25, 2022, Defendants falsely represented the Torch Devices are "no chance" devices and therefore legal to operate through a sign placed on a Torch Device located inside an Amusement Location located at 301 Ellis Boulevard, Jefferson City, Missouri.

316.     This sign stated, among other things: "the activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of a 'gambling device' in the state of Missouri and is not prohibited for use by you."

317.     On or about March 14, 2023, Defendants falsely represented the Torch Devices are "no chance" devices and therefore legal to operate through a sign placed on a Torch Device located inside an Amusement Location located at 513 N Service Road W, Sullivan, Missouri.

318.     This sign stated, among other things: "[T]he activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of 'gambling device' in the State of Missouri and is not prohibited for use by you."

319.     Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through news media, including, but not limited to, on or about November 7, 2019 and January 29, 2020.

320.     On or about November 7, 2019, the *St. Louis Post-Dispatch* quoted a Torch spokesperson as saying "Torch Electronic's [*sic*] machines follow the letter and spirit of Missouri law."

321.     On January 29, 2020, the *St. Louis Post-Dispatch* quoted a Torch representative who responded to a lawsuit accusing the company of operating illegally, and who noted that the Torch Devices are "entirely legal games."

322.     As described above and throughout this Complaint, Defendants engaged in a pattern of related and continuous predicate acts over a substantial period of time.

323.    These activities are linked, related, and consistent with Defendants' scheme of deceptive, false advertisements purporting that the Torch Devices are legal, so-called "no chance" devices.

324.    Defendants engaged in racketeering activity as part of regular business practices.

325.    Defendants' behavior demonstrates a threat of continued criminal activity

326.    The RICO statute defines "enterprise" as "any individual, partnership, corporation, or other legal entity." 18 U.S.C. § 1961(4).

327.    If the predicate acts ceased, the relationship of the Defendants would remain intact.

328.    The Torch Enterprise affected interstate commerce through the use of the internet, specifically through Torch's website.

329.    At all relevant times, the Torch Enterprise was engaged in, and its activities affected, interstate and foreign commerce that involved mail and wire communications that traveled interstate, and which were subject to federal regulatory authorities outside of the state of Missouri.

330.    In the ordinary course of business, the Torch Enterprise used and continues to use internet and telephone services for sales, advertisements, internal discussions, and administrative tasks.

331.    In furtherance of its fraudulent conduct, Defendants knowingly or willfully used the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate, and did so in repeated violations of 18 U.S.C. §§ 1341 and 1343, each of which services is an instrumentality of interstate commerce, and was used by Defendant to engage in interstate commerce as described herein.

332.    A foreseeable result of Defendants' knowing and willful actions was the use of the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate.

333.    Defendants have received income from the pattern of racketeering activity described above.

334.    Defendants have used and invested such income and the proceeds of such income to establish and operate the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(a).

335.    Defendants Steve Miltenberger and Sondra Miltenberger have, through the pattern of racketeering activity described above, acquired and maintained their interest in and control of the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(b).

336.    As the direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a)–(c), Plaintiff has been injured in its business and property in an amount which has not yet been ascertained precisely.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.   award Plaintiff actual damages in an amount to be determined at or before trial;

b.   award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

c.   order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

d.   grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

e.   award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

f.   grant such other and further relief as the Court deems just and proper.

**COUNT FIVE**

***Civil RICO Violations – Control of Criminal Enterprise – 18 U.S.C. § 1962(b)***
**(Against All Defendants)**

337.    TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

338.    Defendants' acts constitute violations of the federal RICO statute, 18 U.S.C. § 1961 *et seq.*

339.    At all relevant times, the Defendants associated in fact with each other and others so as to constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

340.    The Miltenbergers knowingly conducted or participated, directly or indirectly, in the affairs of the Torch Enterprise.

341.    The Miltenbergers directed and managed the Torch Enterprise's activities.

342.    The Miltenbergers directed and managed the Torch Enterprise's activities, as more fully alleged throughout this Complaint, through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1962(c)–(d).

343.    Pursuant to Section 1962(c) of the RICO statute, it is unlawful "for any person employed by or associated with any enterprise" to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

344.    The RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within ten years. 18 U.S.C. § 1961(5).

345.    Racketeering activity is defined in 18 U.S.C. § 1961(1)(B) to include wire fraud in violation of 18 U.S.C. § 1343, and mail fraud in violation fraud in violation of 18 U.S.C. § 1341.

346.    Defendants have engaged in at least two predicate acts of racketeering activity, as set forth in the below paragraphs and elsewhere in this Complaint.

347.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through their website, including, but not limited to, on or about September 13, 2022.

348.    On or about September 13, 2022, Torch's website represented that "Torch's No Chance Game Machines are legal. Torch No Chance Game Machines are innovative non-gambling devices."

349.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through physical signs affixed to Torch Devices, including, but not limited to, on or about September 25, 2022 and March 14, 2023.

350.    On or about September 25, 2022, Defendants falsely represented the Torch Devices are "no chance" devices and therefore legal to operate through a sign placed on a Torch Device located inside an Amusement Location located at 301 Ellis Boulevard, Jefferson City, Missouri.

351.    This sign stated, among other things: "the activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of a 'gambling device' in the state of Missouri and is not prohibited for use by you."

352.    On or about March 14, 2023, Defendants falsely represented the Torch Devices are "no chance" devices and therefore legal to operate through a sign placed on a Torch Device located inside an Amusement Location located at 513 N Service Road W, Sullivan, Missouri.

353.    This sign stated, among other things: "[T]he activity offered by this device clearly does not meet the definition of 'gambling'. As a result, this amusement device does not fit any definition of 'gambling device' in the State of Missouri and is not prohibited for use by you."

354.    Defendants transmitted and caused to be transmitted false representations and deceptive advertisements through news media, including, but not limited to, on or about November 7, 2019 and January 29, 2020.

355.    On or about November 7, 2019, the *St. Louis Post-Dispatch* quoted a Torch spokesperson as saying "Torch Electronic's [*sic*] machines follow the letter and spirit of Missouri law."

356.    On January 29, 2020, the *St. Louis Post-Dispatch* quoted a Torch representative who responded to a lawsuit accusing the company of operating illegally, and who noted that the Torch Devices are "entirely legal games."

357.    As described above and throughout this Complaint, Defendants engaged in a pattern of related and continuous predicate acts over a substantial period of time.

358.    These activities are linked, related, and consistent with Defendants' scheme of deceptive, false advertisements purporting that the Torch Devices are legal, so-called "no chance" devices.

359.    Defendants engaged in racketeering activity as part of regular business practices.

360.    Defendants' behavior demonstrates a threat of continued criminal activity

361.    The RICO statute defines "enterprise" as "any individual, partnership, corporation, or other legal entity." 18 U.S.C. § 1961(4).

362.    If the predicate acts ceased, the relationship of the Defendants would remain intact.

363.    The Torch Enterprise affected interstate commerce through the use of the internet, specifically through Torch's website.

364.    At all relevant times, the Torch Enterprise was engaged in, and its activities affected, interstate and foreign commerce that involved mail and wire communications that

traveled interstate, and which were subject to federal regulatory authorities outside of the state of Missouri.

365.     In the ordinary course of business, the Torch Enterprise used and continues to use internet and telephone services for sales, advertisements, internal discussions, and administrative tasks.

366.     In furtherance of its fraudulent conduct, Defendants knowingly or willfully used the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate, and did so in repeated violations of 18 U.S.C. §§ 1341 and 1343, each of which services is an instrumentality of interstate commerce, and was used by Defendant to engage in interstate commerce as described herein.

367.     A foreseeable result of Defendants' knowing and willful actions was the use of the USPS, federally regulated television and radio media, and/or and federally regulated telephone, wire and internet services to communicate.

368.     Defendants have received income from the pattern of racketeering activity described above.

369.     Defendants have used and invested such income and the proceeds of such income to establish and operate the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(a).

370.     Defendants Steve Miltenberger and Sondra Miltenberger have, through the pattern of racketeering activity described above, acquired and maintained their interest in and control of the Torch Enterprise, in violation of Title 18, United States Code, Section 1962(b).

371.    As the direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a)–(c), Plaintiff has been injured in its business and property in an amount which has not yet been ascertained precisely.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.  award Plaintiff actual damages in an amount to be determined at or before trial;

b.  award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

c.  order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

d.  grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

e.  award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

f.  grant such other and further relief as the Court deems just and proper.

## COUNT SIX
### *Conspiracy to Commit Civil RICO Violations*
### (Against All Defendants)

372.    TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

373.    Steven and Sondra Miltenberger, in whole or in part, own Torch.

374.    Steven Miltenberger, in whole or in part, manages Torch.

375.    Steven Miltenberger, in whole or in part, operates Torch.

376.    The Miltenbergers and other as-yet identified associates, agents, and employees (together, "the Torch Enterprise") are persons within the meaning of 18 U.S.C. § 1962(a).

377.    The members of the Torch Enterprise formed an agreement constituting one or more persons to act in a manner furthering the criminal purposes of Torch.

378.     The members of the Torch Enterprise formed an agreement constituting one or more persons to commit at least two predicate offenses in violation of 18 U.S.C. § 1964.

379.     The agreement of the members of the Torch Enterprise constituted a conspiracy within the meaning of 18 U.S.C. § 1962(c).

380.      The members of the Torch Enterprise knowingly agreed to carry out at least one act in furtherance of the conspiracy.

381.     The Torch Enterprise and its members further conspired with operators or owners of Amusement Locations.

382.     At all relevant times, the Defendants associated in fact with each other and others so as to constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

383.     The Torch Enterprise affected interstate commerce in its regular course of business.

384.     The Torch Enterprise affected interstate commerce in its regular course of business, specifically through the Torch website.

385.     As the direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in an amount which has not yet been ascertained precisely.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.   award Plaintiff actual damages in an amount to be determined at or before trial;

b.   award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

c.   order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

d.   grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

e.   award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

f.   grant such other and further relief as the Court deems just and proper.

**COUNT SEVEN**
*Declaratory Judgment*
**(Against All Defendants)**

386.   TNT realleges and incorporates by reference the preceding allegations of this Complaint as if fully set forth herein.

387.   TNT seeks a declaration that the Torch Devices are illegal gambling devices and slot machines.

388.   This case presents an actual controversy within this jurisdiction.

389.   The controversy concerns the illegality of the Torch Devices.

390.   TNT is an interested party within the meaning of 28 U.S.C. § 2201(a).

391.   TNT is entitled to judicial determination of its rights and other legal relations pursuant to 28 U.S.C. § 2201 of the Federal Rules of Civil Procedure.

392.   Declaratory judgment holding the Torch Devices are illegal gambling devices and slot machines is warranted because Torch operates these gambling devices in contravention of state and federal law.

393.   Torch operates its devices without a license issued by the Missouri Gaming Commission.

394.   Torch's representations that the Torch Devices are legal, "no-chance" games constitute violations of the Lanham Act, 15 U.S.C. § 1125.

395.    Torch's representations that the Torch Devices are legal, "no-chance" games constitute violations of the Missouri common law of unfair competition.

396.   Torch's continued marketing and distribution of the Torch Devices constitutes a violation of the federal RICO statute, 18 U.S.C. § 1961 *et seq*.

397.    Torch's continued use of the Torch Devices constitutes a violation of the federal prohibition of illegal gambling businesses, 18 U.S.C. § 1955.

398.    Torch's continued use of the Torch Devices constitutes a violation of the Travel Act, 18 U.S.C. § 1952.

399.    As such, this Court should enter an order finding that the Torch Devices are illegal gambling devices and Defendants operate an illegal gambling business.

400.    The requested order shall have the force and effect of a final judgment.

WHEREFORE Plaintiff TNT Amusements, Inc. respectfully requests that the Court:

a.    enter declaratory judgment as requested above;

b.    award Plaintiff actual damages in an amount to be determined at or before trial;

c.    award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial;

d.    order Defendants to disgorge their profits and cost savings resulting from their unlawful activities;

e.    grant Plaintiff preliminary and permanent injunctive relief precluding the Defendants from falsely marketing and representing the Torch Devices to be "legal" "no-chance" gaming devices;

f.    award Plaintiff to be reimbursed for its attorneys' fees and the costs of this action; and

g.    grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

BRYAN CAVE LEIGHTON
PAISNER LLP

/s/ Sasha Riedisser
RICHARD E. FINNERAN, #60768MO
SASHA RIEDISSER, #71141MO
MARY GRACE WARREN, #73147MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*marygrace.warren@bryancave.com*
*sasha.riedisser@bclplaw.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*