IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00330-SRW |
| TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger (collectively "Torch") respectfully submit the following Memorandum in Support of their Partial Motion to Dismiss Plaintiff TNT Amusements, Inc., d/b/a Play-mor Coin-op's ("TNT") Complaint.

I.    **Introduction**

TNT takes aim at its competitor by, among other things, claiming Torch is a racketeering enterprise rather than a legitimate business and Torch has allegedly violated Missouri unfair competition common law. Torch disputes TNT's claims and questions TNT's motive in asserting them. TNT's specious claims will ultimately fail. However, at this early stage, Torch is limited to pointing out only the most glaring deficiencies in TNT's Complaint. To that end, two theories of recovery (spread out over six separate claims) stand out as fatally flawed. TNT cannot state a viable civil RICO claim against Torch, and TNT's claim for alleged unfair competition under Missouri common law does not exist. TNT's civil RICO claims (Counts Three through Seven), as

well as its alleged Missouri common law unfair competition claim (Count Two), should be dismissed.

TNT's civil RICO claims fail for several reasons. First, and most importantly, TNT's civil RICO claims fail because TNT has not (and cannot) satisfy the statutory standing requirements necessary to maintain civil RICO claims against Torch. TNT bases it right to assert a private civil RICO cause of action against Torch on 18 U.S.C. § 1964(c). Section 1964(c) includes a unique statutory standing requirement that forces "a plaintiff to demonstrate both 'but for' causation and proximate causation." *Adell v. Macon County Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1242 (M.D. Ala. 2011) (citing *Bridge v. Phoenix Bond & Endem. Co.*, 553 U.S. 639, 654 (2008)). "[A]ttenuated connection[s]" between alleged injury and alleged injurious conduct will not suffice. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 452 (2006). Here, TNT alleges only speculative and indirect injury that, as a matter of law, cannot support civil RICO claims against Torch.

Second, TNT's civil RICO claims fail for the separate and independent reason that TNT has failed to allege a RICO "enterprise" distinct from the RICO "person." The RICO enterprise and the RICO person must be distinct entities. TNT fails to make this distinction.

Third, TNT's civil RICO claims fail because TNT has failed to plead facts supporting its allegations of mail and wire fraud with particularity as required by Federal Rule of Civil Procedure 9(b). TNT claims mail and wire fraud were predicate acts of Torch's alleged racketeering activity. However, TNT's pleading in this regard is supported by nothing but formulaic and bald legal conclusions masquerading as factual allegations. TNT's claims with respect to wire and mail fraud should be dismissed.

Additionally, TNT has failed to state a common law Missouri unfair competition claim. TNT's allegations with respect to this claim are murky at best. TNT does not cite any Missouri

case to support this claim. Instead, the claim appears to simply be TNT's attempt to replead its federal Lanham Act false advertising claim as a claim under Missouri common law. Missouri does not recognize such a claim. *See Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14-CV-859-RWD, 2015 WL 1782661, at *10 (E.D. Mo. Apr. 20, 2015) (dismissing Missouri common law claim for false advertising "because it is not recognized under Missouri common law").

TNT has failed to plead a cognizable civil RICO claim against Torch. TNT has also failed to state a claim upon which relief may be granted for an alleged violation of Missouri common law unfair competition. Counts Two, Three, Four, Five, Six, and Seven[1] of TNT's Complaint should be dismissed without leave to amend.

## II.    Factual Background

On March 15, 2023, TNT filed this lawsuit.  TNT alleges it leases "amusement machines . . . to Missouri retailers such as gas stations, bars, . . . and fraternal organizations." (Complaint ("Compl."), ¶ 19). As TNT notes, "Torch is in the business of placing amusement devices in Amusement Locations." (*Id.* at ¶ 36). According to TNT, the amusement device industry is highly competitive; places like gas stations have limited space, and every amusement device placed means less space available for competitors to place their devices.  (*Id.* at ¶ 21).  TNT alleges it is "in direct competition with Torch in the market for amusement games" in relevant locations.  (*Id.* at ¶ 108).

According to TNT, Torch has caused TNT damage by competing against it while not complying with what TNT says are applicable laws. TNT specifically refers to Missouri's gambling laws, citing statutes, administrative regulations, and the Missouri constitution.  (*See id.*

---

[1] Count Seven seeks declaratory relief that encompasses aspects of TNT's civil RICO and Missouri common law unfair competition claims. To the extent the Court dismisses TNT's civil RICO and Missouri common law unfair competition claims, all averments within TNT's Count Seven related to those claims should be similarly stricken and dismissed.

at ¶¶ 24-35).  According to TNT, Torch's amusement devices are "illegal gambling devices[.]" (*Id*. at ¶ 57).  TNT alleges, in conclusory fashion, that Torch placing its amusement devices in retailers "directly impacts TNT's business[,]" with some retailers placing Torch machines instead of TNT machines, some locations removing TNT machines in favor of Torch machines, and Torch's actions generally resulting in a crowded market.  *See id*. at ¶¶ 116-120; *see also, e.g., id.* at ¶ 153 ("As a direct and proximate result of the Defendants' willfully and knowingly fraudulent actions, TNT suffered direct monetary losses in amount [sic] that has yet to be ascertained precisely.").  TNT also claims that Torch's representations that Torch is running a legal business and that its machines do not violate the law are misrepresentations that allegedly harm TNT by causing it to lose revenue.  *See, e.g., id.* at ¶¶ 163-70; 204-08; 226; and 262-64.

TNT's Complaint asserts seven causes of action. Counts One and Two are for unfair competition.[2]  The next four counts allege civil RICO violations.[3] TNT's final count, Count Seven, seeks a declaratory judgment finding, among other things, that "the Torch Devices are illegal gambling devices and slot machines[.]" (Compl., ¶ 392). Count One is asserted against Torch only, while the remaining six counts are asserted against all defendants.

## III.    Legal Standard

Torch's Motion to Dismiss should be granted for any claim for which the Complaint does not "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting

---

[2] Count One – federal unfair competition under the Lanham Act; Count Two – Missouri common law of unfair competition.

[3] Count Three – civil RICO violations related to conduct of an alleged criminal enterprise under 18 U.S.C. § 1962(c); Count Four – civil RICO violation related to alleged use of proceeds of a criminal enterprise under 18 U.S.C. § 1962(a); Count Five – civil RICO violation related to alleged control of criminal enterprise under 18 U.S.C. § 1962(b); and Count Six – alleged conspiracy to commit civil RICO violations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). In reviewing the Complaint to determine if it states a claim for relief, the Court assumes the truth of factual allegations and makes reasonable inferences in favor of the nonmoving party, but it is "not bound to accept the truth of legal conclusions couched as factual allegations" and "labels and conclusion" or "formulaic recitation[s] of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678; 129 S. Ct. at 1949. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citations and quotations omitted). Further, under Federal Rule of Civil Procedure 9(b), a party "must state with particularity the circumstances constituting fraud."

## IV.    Argument

### A.    TNT Fails to State a Civil RICO Claim

Four of TNT's seven counts assert civil RICO claims. Civil RICO "is considered an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Nettles*, 03-00082-CV-W-GAF, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010) (quotation marks omitted). Because "[t]he mere filing of civil RICO charges can have a stigmatizing effect," such claims "regularly receive heightened scrutiny at the motion to dismiss stage of litigation[.]" *Id.*; *see also Mondelus v. August W. Dev., LLC*, 19CV4832LDHLB, 2022 WL 182363, at *5 (E.D.N.Y. Jan. 20, 2022) ("[C]ourts have an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO[.]").

TNT's civil RICO claims are fatally flawed for multiple reasons. First, for each of its asserted RICO counts, TNT lacks what is referred to as statutory "RICO standing." TNT alleges that it is harmed by Torch's competition against it because Torch's success means less room for success for TNT in the marketplace. That is not a unique feature of the amusement device industry; competition for market share is a ubiquitous feature of commercial life. The Supreme Court has

held that a competitor cannot demonstrate it has been proximately harmed by RICO violations (as civil RICO requires) where its losses are exactly what TNT alleges – lost profits and loss of business relationships relative to a competitor who is alleged to be breaking the law.  TNT cannot demonstrate that the wrongs it alleges *directly* harmed TNT in its business or property.[4] In short, binding precedent forecloses TNT's civil RICO claims.

Second, TNT fails to allege a RICO "enterprise" distinct from the RICO "person."  The RICO enterprise and the RICO person must be distinct entities.  TNT alleges that the enterprise is a combination of Torch, the Miltenberger Defendants (who TNT alleges own and operate Torch), and unnamed and undescribed additional "agents" and "employees."  This fails to state a claim as a matter of law because Torch is not treated as distinct from Torch plus the persons that run it.

Additionally, TNT has failed to plead its allegations of alleged wire fraud and mail fraud as predicate acts with specificity as required under Fed. R. Civ. P. 9(b).  Accordingly, TNT's allegations regarding alleged wire and mail fraud should be stricken and dismissed.

### 1.    TNT fails to allege injuries proximately caused by the alleged racketeering offenses

Only one section in RICO grants private parties a right to assert civil RICO claims – 18 U.S.C. § 1964(c). "Under § 1964(c), civil RICO plaintiffs 'must show (1) the requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.'" *Adell*, 785 F. Supp. 2d at 1238 (quoting *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006), *abrogated on other grounds*). The "by reason of" language creates a

---

[4] Under its RICO Counts, TNT alleges only conclusory allegations that "[a]s the direct and proximate result of Defendants' racketeering activities and violations of [RICO], Plaintiff has been injured in its business and property in an amount which has not yet been ascertained precisely." (Compl., ¶¶ 301, 336, 371, and 385). As explained in the Legal Standards section and the discussion below, such boilerplate conclusory allegations are not to be accepted as true and are insufficient as a matter of law to satisfy the proximate cause element of civil RICO standing.

statutory standing requirement that forces "a plaintiff to demonstrate both 'but for' causation and proximate causation." *Adell*, 785 F. Supp. 2d at 1242 (citing *Bridge v. Phoenix Bond & Endem. Co.*, 553 U.S. 639, 654 (2008)); *Homes v. Securities Investor Protection Corp.*, 503 U.S. 258, 266 (1992) (rejecting an interpretation of § 1964(c) that would read "by reason of" to require only allegations of "but for" causation); *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well.") (quotation marks omitted).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation *led directly to* the plaintiff's injuries." *Anza*, 547 U.S. at 461 (emphasis added). "[A]ttenuated connection[s]" between alleged injury and alleged injurious conduct will not suffice. *See Anza*, 547 U.S. at 452. Here, TNT alleges only speculative injury and indirect harm.

TNT's claims are foreclosed by cases such as *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), and its progeny. In *Anza*, an entrepreneur brought civil RICO claims against its competitor, alleging, among other things, the competitor was selling produces without collecting the required sales tax and submitting fraudulent sales tax returns in violation of the mail fraud or wire fraud statutes. 547 U.S. at 451. The plaintiff alleged this practice allowed its competitor to unfairly and illegally lower its prices without affecting its profit margin, thereby reducing the number of customers that chose to do business with the plaintiff and causing plaintiff to lose money and market share as a result. *Id*. at 454.

The Supreme Court noted its "analysis begins—and . . . largely ends—with *Homes*." *Anza*, 547 U.S. at 456. "The Court [in *Homes*] recognized the phrase 'by reason of' [in § 1964(c)] could be read broadly to require merely that the claimed violation was a 'but for' cause of the plaintiff's

injury. It rejected this reading, however, noting the 'unlikelihood that Congress meant to allow all factually injured plaintiffs to recover [under RICO].'" *Anza*, 547 U.S. at 456 (citing *Homes*, 503 U.S. at 265-66) (internal citation omitted). Applying *Homes*' reasoning to the plaintiff's claim, the Court concluded the plaintiff could not maintain its §1962(c) civil RICO claim against the defendant. *Anza*, 547 U.S. at 457.

In doing so, the Court explained that while, "[t]o be sure, [the plaintiff] asserts it suffered its own harms when the [defendant] failed to charge customers for the applicable sales tax," the cause of the plaintiff's alleged harms "is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 458. The Court explained that one motivating principle for this "directness requirement" is "the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Id.*; *see also Homes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other independent factors."). A second motivating principle to the "directness requirement," especially where civil RICO claims are alleged against a competitor, is that "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [the plaintiff's] lost sales were the product of [the defendant's specific conduct]." *Anza*, 547 U.S. at 459. Third, and also important here, the Court explained a strictly applied direct proximate cause requirement was justified by "the speculative nature of the proceedings that would follow if [the plaintiff] were permitted to maintain its claim." *Anza*, 547 U.S. at 459. The Court pointed out:

> A court considering the claim would need to begin by calculating the portion of [the defendant's] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the price drop. **The element of proximate causation recognized in *Homes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation**.

*Anza*, 547 U.S. at 459 (emphasis added). Notably, the Court made clear this speculation problem "has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between Rico and the antitrust laws." *Id*. at 460.  In conclusion, the Court held "[a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Id*. at 460. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Id.* at 461. If the answer is "no," then the civil RICO claim must be dismissed. *Id.*

In a more recent case on facts similar to ours, the Ninth Circuit applied the rationale in *Anza* and *Homes* to dismiss one casino's civil RICO claims against a competitor casino. *See Club One Casino, Inc. v. Perry*, 837 Fed. Appx. 459 (2020). Club One alleged the defendants engaged in a scheme that violated the California Gambling Control Act and allowed for the illegal opening of a competing casino. *Id*. The court used the following factors, derived from *Homes*, to help determine if the alleged violation led directly to the plaintiff's injuries:

> (1) the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the [RICO] violation, as distinct from other, independent, factors; (2) directly injured victims can generally be counted on to vindicate the law, rendering unnecessary recognition of a cause of action for those only indirectly injured; and (3) allowing recovery by indirectly injured plaintiffs would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury . . . to obviate the risk of multiple recoveries.

*Club One*, 837 Fed. Appx. at 460-61 (quoting *Holmes*, 503 U.S. at 269-70) (internal quotations omitted). Applying these factors, the court affirmed the district court's dismissal of the civil RICO claims at the motion to dismiss stage without leave to amend, holding "Club One failed to allege that its injuries were proximately caused by the alleged RICO violations under 18 U.S.C. § 1964(c)." *Club One*, 837 Fed. Appx. at 460.

9

The court explained that "Club One's lost profits are not directly attributable to the Defendants' alleged illegal acts." *Id.* at 461. "A host of other market factors, including changes to the local economy, shifting consumer preferences, or the manner in which Club One operated its business, could have caused Club One's losses." *Id*. The court further explained Club One's theory of the case would require the court to "determine the percentage of Club One's financial losses attributable to Defendants' alleged racketeering activity, as opposed to other market factors," noting the Supreme Court "expressly rejected this speculative and complicated analysis in *Anza*, holding the proximate cause element is 'meant to prevent these types of intricate, uncertain inquires from overrunning RICO litigation.'" *Club One*, 837 Fed. Appx. at 461 (quoting *Anza*, 547 U.S. at 460). Finally, the court explained the state of California, not Club One, was the most immediate and direct victim of the alleged illegal activities and can be expected to "vindicate the law." *Club One*, 837 Fed. Appx. at 461. Accordingly, there "is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly." *Club One*, 937 Fed. Appx. at 461 (quoting *Anza*, 547 U.S. at 460) (quotations omitted).

Like the plaintiffs in *Anza* and *Club One*, TNT cannot plead facts demonstrating it suffered a direct proximate harm as a result of the racketeering activities alleged in the Complaint. Torch denies engaging in racketeering activities. But, in any event, TNT has only alleged (at most) speculative and indirect harm from Torch's alleged conduct. Here, the "central question [the Court] must ask is whether [Torch's] alleged violation led directly to the [TNT's] injuries." *Anza*, 547 U.S. at 461. The answer to this question is the same as in *Homes*, *Anza*, and *Club One* – no.

Like the plaintiffs in *Anza* and *Club One*, TNT fails to present well-pleaded facts showing direct proximate harm. Instead, TNT alleges Torch's actions "bypass [Missouri's] strict gaming laws and divert tax revenue away from Missouri's students and veterans." (Compl., ¶ 68). As the

court in *Club One* explained, this is an allegation *Missouri*, not TNT, was directly harmed. *See Club One*, 837 Fed. Appx. at 461. TNT's alleged harm is indirect and speculative. At its base, TNT complains Torch's conduct has negatively affected TNT's market share. But as the Supreme Court made clear in *Anza*, TNT "cannot circumvent the proximate-cause requirement simply by claiming that [Torch's] aim was to increase market share at [TNT's] expense." 547 U.S. at 460.

"Businesses [like TNT] lose and gain customers for many reasons." *See Anza*, 547 U.S. at 459. TNT's "lost profits are not directly attributable to [Torch's] alleged illegal acts." *See Club One*, 837 Fed. Appx. at 460. "A host of other market factors, including changes to the local economy, shifting consumer preferences, or the manner in which [TNT] operated its business, could have caused [TNT]'s [alleged] losses." *Id*. TNT improperly asks the Court to "determine the percentage of [TNT]'s [alleged] financial losses attributable to [Torch's] alleged racketeering activity, as opposed to other market factors." *See id.* at 461. The Supreme Court "expressly rejected this speculative and complicated analysis in *Anza*." *See id*. As the Supreme Court has made clear, "[t]he element of proximate causation recognized in *Homes* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Anza*, 547 U.S. at 459. To the extent Missouri takes issue with Torch's amusement devices, Missouri can address those issues. TNT's claims all essentially boil down to complaints of unfair competition, which TNT can attempt to pursue via its Lanham Act claim. But civil RICO is not a viable claim for TNT. TNT has not satisfied the proximate cause element of civil RICO standing, and TNT cannot satisfy this proximate cause element by further amendments to its pleading. TNT's civil RICO claims (Counts Three, Four, Five, Six, and Seven) should be dismissed without leave to amend.

## 2.   TNT has not alleged a RICO enterprise, because it named Torch as the enterprise and as a person-defendant

Section 1962(c) claims require a distinction between the RICO "person" who is named as the defendant and the "enterprise" whose affairs were allegedly conducted through a pattern of racketeering activity. *See Schoedinger v. United Healthcare of Midwest, Inc.*, 557 F.3d 872, 878 (8th Cir. 2009) (noting that this distinction is required in every circuit). TNT's Complaint does not make this distinction. Instead, TNT alleges that the RICO enterprise is the "Torch Enterprise" consisting of "Torch, the Miltenbergers, and other as-yet unidentified associates, agents, and employees[.]" (Compl., ¶ 137). A corporation cannot be both the enterprise and the defendant, and naming persons who are alleged to manage the corporation as *additional* members of the enterprise does not resolve the problem. As explained by the Second Circuit:

> A corporation can act only through its employees, subsidiaries, or agents. So if a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless. . . . Accordingly, a plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.

*U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205–06 (2d Cir. 2017) (quotation marks omitted). Because TNT has not alleged the existence of an enterprise separately from Torch (which it also named as a person), TNT has failed to state a civil RICO claim under § 1962(c). *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 536 (S.D.N.Y. 2014) ("Courts have repeatedly dismissed § 1962(c) claims alleging that a corporation was simultaneously a RICO 'person' and a RICO 'enterprise' (or part of a RICO 'enterprise' from which the corporation is not distinct).").

Furthermore, TNT cannot escape this requirement by pointing to its nonspecific allegation that the "Torch Enterprise" includes, in addition to the Torch Defendants, "other as-yet

unidentified associates, agents, and employees[.]" (Compl., ¶ 137). Civil RICO claims "must be pleaded with particularity under Rule 9(b)." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353-55 (8th Cir. 2011) (upholding dismissal of RICO claim where, among other problems, the plaintiffs failed to plead sufficient facts demonstrating the existence of an enterprise). "The existence of an enterprise at all times remains a separate element which must be proved by the plaintiff in order to establish a RICO violation." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1026 (8th Cir. 2008) (quotation marks omitted). Accordingly, with no enterprise, TNT's civil RICO claims must be dismissed.

### B.    TNT Has Failed to Plead Claims of Fraud with Particularity

TNT claims, in conclusory fashion, that "[i]n furtherance of their scheme, the members of the Torch Enterprise did carry out multiple acts of mail and wire fraud over a substantial period of time." (Compl., ¶ 141; *see also id.*, ¶¶ 154-160). TNT further alleges, again in conclusory fashion, that as a predicate act "members of the Torch Enterprise agreed to disseminate false statement and deceptive advertisements through interstate wire communications." (*Id.* at ¶ 142). Presumably in recognition of the fact its conclusory, boilerplate allegations regarding alleged mail and wire fraud fell woefully short of Rule 9(b)'s particularity standard, TNT proclaims at paragraph 161 of the Complaint, "[i]t is not possible, without further investigation and discovery, for Plaintiff to plead with particularity all instances of mail and wire fraud that Defendants conducted that advanced, furthered, executed, and concealed their scheme to commit fraud." (Compl., ¶ 161).

Far from pleading "all instances of mail and wire fraud" with particularity, TNT failed to plead *any* instances of mail or wire fraud with particularity. Paragraph 161 is an implicit admission TNT has failed to sufficiently plead claims of alleged wire or mail fraud. It also acts as an implicit admission TNT wants to use these claims to engage in an impermissible discovery fishing expedition. *See Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010

(8th Cir. 2015) (explaining Rule 9(b) serves a number of essential purposes, one of which is that "it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements") (quoting *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997)). TNT has failed to plead claims for wire and mail fraud as predicate acts with particularity as required by Rule 9(b), and these claims and allegations should be dismissed. *See Nettles*, 2010 WL 11618679, at *3 (granting motion to dismiss civil RICO claims for failure to plead claims of wire and mail fraud as predicate acts with particularity under Rule 9(b)) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1074 (D. Mid. 1991), *Qantel Corp. v. Niemuller*, 771 F. Supp. 1361, 1268-69 (S.D.N.Y. 1991) (holding that when wire fraud is plead as a predicate act, "fraud allegations ought to specify the time, place, speaker, and content of alleged misrepresentation"); and 5A Wright and Miller, *Federal Practice and Procedure*, § 1297 (3d ed.)).

### C.     TNT has Failed to State a Common Law Missouri Unfair Competition Claim

Count Two of TNT's Complaint alleges Torch's actions "violate the state of Missouri's common law of unfair competition." (Compl., ¶ 261). The count alleges Torch has competed unfairly "by making false, misleading, and deceptive statements" about Torch's amusement devices and that those statements have caused consumers to use Torch devices instead of TNT devices, allegedly causing harm to TNT in the form of lost sales.  (*See id*. at ¶¶ 262-64).

These generalized allegations do not satisfy the elements of a Missouri common law of unfair competition claim. "Under . . . common law, unfair competition is established by showing one party is 'passing off' his product as that of another so that the public is deceived regarding the source of the goods." *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 758 F. Supp. 512, 527 (E.D. Mo. 1991), *aff'd,* 989 F.2d 985 (8th Cir. 1993). Missouri does recognize common law unfair competition claims in the context of risk of confusion (generally trademark, trade dress, passing off, and misappropriation) claims.  *See id*.; *see also Fred Wehrenberg Circuit of Theatres,*

*Inc. v. Moviefone, Inc.*, 73 F. Supp. 2d 1044, 1048 (E.D. Mo. 1999) ("In Missouri, common law unfair competition encompassed several categories of legal claims, including palming or passing off, trademark violations, and misappropriation."). But TNT's allegations that Torch has deceived the public by making representations about the legality of *Torch's* machines, causing harm to TNT, do not state a claim under Missouri common law.

While the allegations are ambiguous, it appears TNT attempts to state a common law false advertising claim. This is not a viable claim; Missouri does not recognize a common law claim for false advertising. *See Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, 4:14 CV 859 RWS, 2015 WL 1782661, at *10 (E.D. Mo. Apr. 20, 2015) (dismissing claim for false advertising under Missouri common law "because it is not recognized under Missouri common law"). There is no alleged deception regarding the source of Torch's machines compared to TNT's machines that might trigger the common law of unfair competition. Accordingly, Count Two of TNT's Complaint should be dismissed for failure to state a claim.

## V.     Conclusion

For the foregoing reasons, Torch respectfully requests the Court dismiss Counts Two, Three, Four, Five, Six, and Seven (to the extent it seeks declaratory relief based on claims asserted in Counts Two through Six) of TNT's Complaint for failure to state a claim, and further requests the Court grant any additional relief the Court deems just and proper.

Dated:  April 21, 2023                    Respectfully submitted,

                                          GRAVES GARRETT, LLC

                                          By:  /s/ Todd P. Graves
                                              Todd P. Graves (MO Bar #41319)
                                              J. Aaron Craig (MO Bar #62041)
                                              1100 Main Street, Suite 2700
                                              Kansas City, MO 64105
                                              Phone: (816) 256-3181
                                              Fax: (816) 256-5958

tgraves@gravesgarrett.com

**Attorneys for Defendants Torch Electronics,
LLC, Steven Miltenberger, and Sondra
Miltenberger**

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Todd P. Graves*
Attorneys for Defendants Torch
Electronics, LLC, Steven Miltenberger, and
Sondra Miltenberger

16