**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT**

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a )<br>PLAY-MOR COIN-OP, )<br>  )<br>  Plaintiff, )<br>  )<br>v. )<br>  )<br>TORCH ELECTRONICS, LLC, )<br>STEVEN MILTENBERGER, and )<br>SONDRA MILTENBERGER )<br>  )<br>  Defendants. ) | Case No. 4:23-cv-00330-JAR |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
TNT'S MOTION FOR PRELIMINARY INJUNCTION**

TNT's argument for granting the emergency injunctive relief it seeks boils down to: "Just trust us – Torch's[1] machines are illegal under Missouri law." TNT fails to mention this case represents TNT's third bite at the proverbial apple. Despite filing two prior Missouri state court cases alleging Torch amusement devices are illegal, TNT has yet to convince a Missouri court. TNT apparently hopes it will have better luck before this Court. For the reasons explained below, the Court should deny TNT's request for injunctive relief.

Torch amusement devices are not "gambling devices" under Missouri law. As TNT knows (because a state court recently stayed one of its two prior cases against Torch because of it)[2], Torch

---

[1] Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger are collectively referred to herein as "Torch."

[2] Technically, this case was brought by TNT's President and owner, Jim Turntine, personally. *See* January 29, 2020 Petition, a true and correct copy of which is attached hereto as **Exhibit A**; *see also* TNT's April 26, 2023 Annual Registration Report filed with the Missouri Secretary of State, a true and correct copy of which is attached hereto as **Exhibit B** (identifying Jim Turntine as TNT's President and only Board member); March 28, 2023 Order Staying Case, a true and correct copy of which is attached hereto as **Exhibit C**.

has filed an action in the Circuit Court of Cole County, Missouri, asking the court for a declaration that Torch devices are not illegal gambling devices under Missouri law (the "Cole Co. Case").[3] Torch's Cole Co. Case, filed April 12, 2021, is set for a bench trial beginning July 31, 2023.[4] Torch's first-filed state court case is the proper forum for litigating the legality of Torch amusement devices under Missouri state law. TNT's motion should be denied and the case stayed pending the outcome of the Cole Co. Case on this ground alone.

Additionally, TNT cannot demonstrate a new threat of irreparable harm. TNT's claim that it needs emergency "[i]njunctive relief . . . to prevent irreparable harm to TNT" is, at best, an insincere and incongruent statement. (Doc. #15, p. 2). TNT's first state court case against Torch, filed on November 26, 2019, in Crawford County (the "2019 Crawford Co. Case"), sought the same type of injunctive relief TNT seeks now based on essentially the same underlying claims (though based on Missouri law) of alleged unfair competition.[5] That case was pending for more than *3 years* with TNT doing nothing to prosecute the case.[6] TNT never sought a preliminary injunction, and the case was placed on the court's dismissal docket after TNT failed to appear at a

---

[3] *See* April 12, 2021 Torch "First Amended Petition for Declaratory and Injunctive Relief" in Cole County Circuit Court Case Number 21AC-CC00044, at true and correct copy of which is attached hereto as **Exhibit D**. Relevant to this Exhibit (and those like it attached herein), which consist of Missouri state court records available and accessible via Missouri Courts' Case.net system, Torch requests the Court take judicial of the Missouri court records and filings attached herein as exhibits because they contain "fact[s] that [are] not subject to reasonable dispute because [said facts] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(c) & (b)(2).

[4] *See* 21AC-CC00044 - Docket Entries, a true and correct copy of which is attached hereto as **Exhibit E**.

[5] *See, generally,* November 26, 2019 Crawford County Petition, a true and correct copy of which is attached hereto as **Exhibit F**.

[6] Case.net 19CF-CC00065 - Docket Entries, a true and correct copy of which is attached hereto as **Exhibit G**; Change of Venue or Case Transfer Sheet (moving the 2019 Crawford Co. Case to St. Louis County under a new Case No.), a true and correct copy of which is attached hereto as **Exhibit H**; 20SL-CC03002 - Docket Entries, a true and correct copy of which is attached hereto as **Exhibit I**.

scheduled case management conference.[7] TNT ended up voluntarily dismissing the 2019 Crawford Co. Case on March 15, 2023.[8]

The *same day* (*i.e.*, March 15, 2023), TNT filed its Complaint with this Court. (Doc. #1). Thirty-six (36) days later (but 3 years, 4 months, and 25 days after TNT filed its 2019 Crawford Co. Case), TNT filed its emergency motion for preliminary relief. (Doc. #15). TNT fails to explain what changed in the 36 days between its decision to voluntarily dismiss its 2019 Crawford Co. Case and its decision to request expedited and extraordinary relief by way of a preliminary injunction. There is no explanation. Nothing changed. In fact, there has been no change in what could be said to be the status quo between TNT and Torch for *years* now. TNT cannot satisfy its burden to demonstrate a real, and new, threat of irreparable harm. *See Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) ("[D]elay alone may justify the denial of a preliminary injunction when the delay is inexplainable in light of a plaintiff's knowledge of the conduct of the defendant.") (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (delay in applying for injunctive relief "suggests that there is, in fact, no irreparable injury")).

TNT's request for a preliminary injunction, viewed through a historically correct lens, looks more like an attempt to venue shop than it does a legitimate request for extraordinary injunctive relief to prevent some new threat of irreparable harm. The timing of TNT's request is also suspect considering the upcoming Cole Co. Case trial date. Regardless of its motive, TNT cannot demonstrate injunctive relief is necessary or proper here. TNT's motion should be denied and the case stayed pending the outcome of Torch's first-filed and pending Cole Co. Case.

---

[7] October 31, 2022 Memorandum and Order, a true and correct copy of which is attached hereto as **Exhibit J** ("Plaintiff does not appear. Court to set case on Dismissal Docket.").
[8] *See* TNT's "Notice of Voluntary Dismissal," a true and correct copy of which is attached hereto as **Exhibit K**; March 15, 2023 Order of Dismissal, a true and correct copy of which is attached hereto as **Exhibit L**.

## I.        LEGAL STANDARD

"[I]t is undoubtedly the rule that a very heavy burden of persuasion rests on a party seeking the 'drastic remedy' of a preliminary injunction, especially a mandatory injunction giving assistance to one party during litigation and before the completion of discovery." *Lee v. Consol. Sch. Dist. No. 4, Grandview, Mo.*, 494 F. Supp. 987, 989 (W.D. Mo. 1980). "If summary judgment motions must be approached with caution, requests for preliminary injunctions before the completion of discovery must be viewed with even greater reservations." *Id.* at 989. "To doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3rd Cir. 1937); *see also Lee*, 494 F. Supp. at 989; *accord Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950,959 (D. Minn. 1999) (denying injunctive relief because of the "contradictory nature of the evidence."). "The burden of demonstrating that a preliminary injunction is warranted is a heavy one where, as here, granting the preliminary injunction will give plaintiff substantially the relief [it] would obtain after a trial on the merits." *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991)

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant, (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant, (3) the probability that the movant will succeed on the merits, and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). No single factor is determinative, but the Eighth Circuit has made clear the movant is *always* required to show the threat of irreparable harm to establish entitlement to a preliminary injunction. *Id*. at 114, n.9 (explaining "under any test the movant is required to show the threat of irreparable harm").

## II.       ARGUMENT

### A.       Public Policy Weighs in Favor of Denying TNT's Motion and Staying the Case Pending the Outcome of the Cole Co. Case

The Court should deny TNT's motion and stay the case pending the outcome of the Cole Co. Case. In its Cole Co. Case, Torch, in relevant part, seeks a declaration from the court that: (a) "Torch amusement devices are not gambling devices"; (b) the defendants' "construction and interpretation of the statutes, as applied to Torch devices, is incorrect"; and (c) Torch has "the legal right to operate the amusement devices." (**Ex. D** (Cole County First Am. Pet.), p. 10). The defendants in the Cole Co. Case include the Missouri Department of Public Safety, the Missouri Highway Patrol, and the Missouri Division of Alcohol and Crime Control.[9] The Missouri Gaming Association also joined the case as an Intervenor, asserting claims against Torch. (*See* **Ex. M**).

One factor relevant to a request for preliminary injunction is the public interest. Given Torch's pending Cole Co. Case, this factor weighs heavily against granting TNT's requesting relief (as well as heavily in favor of staying the case). Even in a typical, one-off competitor versus competitor case (which this is not), there is a strong public interest in ensuring competitors are allowed to compete in the market. *See Lasermaster Corp. v. Sentinel Imaging, a Div. of Sentinel Bus. Sys., Inc.*, 931 F. Supp. 628, 638 (D. Minn. 1996) ("A strong public interest exists in ensuring that two companies . . . are allowed to compete[.]"). But here, Torch filed its Cole Co. Case, directly suing three regulatory bodies within the Missouri state government, specifically because Torch believed having a Missouri state court apply Missouri state laws and regulations to determine whether Torch devices are "gambling devices" serves the public interest. The public interest is not served by allowing TNT to use this Court of limited federal jurisdiction to make an end run around the Cole Co. Case. Doing so runs the very real risk of creating multiple incongruent rulings regarding the legality of Torch amusement devices under Missouri law.

---

[9] *See* Cole Co. Case - Party Information Sheet, a true and correct copy of which is attached hereto as **Exhibit M**.

Additionally, *Burford* abstention is "indicated where there are important issues of public policy" in play and "where a comprehensive administrative scheme exists and there are on-going proceedings within that framework." *See Metro Riverboat Ass'n, Inc. v. Bally's Louisiana, Inc.*, 142 F. Supp. 2d 765, 775 (E.D. La. 2001) (applying *Burford* abstention where the parties and claims in federal court were also "the subject of on-going litigation" regarding "the interpretation of the Louisiana Gaming Control Law and regulations"). The doctrine is premised on the idea that it "is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943) (internal quotations omitted).

TNT's present request for injunctive relief is equitable in nature, but the Supreme Court has made clear *Burford* abstention can be used in cases involving equitable or legal relief. If, however, legal damages are sought, *Burford* abstention may not be used to dismiss the case; rather, a stay of the federal case pending the outcome of the state court proceedings is the proper course. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996) ("[W]e have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether."). According to the Supreme Court, "*Burford* might support a federal court's decision to postpone adjudication of a damages action pending resolution by state courts of a disputed question of state law." *Id.* at 730. That result is certainly supported here.

All of TNT's claims in this case turn on TNT's belief that Torch amusement devices are illegal under Missouri law. Torch initiated the Cole Co. Case to address that question of state law head on in a Missouri state court. TNT's claims are "entangled in a skein of state law that must be untangled before the federal case can proceed." *Quackenbush*, 517 U.S. at 727. The Court should deny TNT's motion and issue an order staying the case pending the outcome of the Cole Co. Case.

**B.** **TNT Cannot Demonstrate a Likelihood of Success on the Merits**

TNT uses hyperbolic language, cites to non-applicable decisions by other states involving different statutory language and machines, and misrepresents certain facts to suggest Torch devices are "slot machines" because they look like slot machines. "However, merely calling something a duck does not make it a duck." *In re Constitutional Trust No. 2-562*, 114 B.R. 627, 633 n.14 (D. Minn. 1990). "Here, . . . [a Torch device] may look something like a duck, but it neither walks nor quacks like a duck." *See id.* Torch devices are not "slot machines" or "gambling devices."

Nick Farley is the President of Nick Farley & Associates, Inc., a full-service regulatory compliance test laboratory and electronic gaming device consulting organization. (*See* Declaration of Nick Farley ("Farley Dec."), a true and correct copy of which is attached hereto as **Exhibit N**, at ¶ 1). Nick Farley & Associates serves the regulated gaming, amusement and vending industries, and Mr. Farley has been testing electronic gaming equipment for regulated gaming jurisdictions since 1987. (*Id.* at ¶¶ 1-2). Mr. Farley has had an opportunity to review and examine an exemplar Torch amusement device, and his Declaration contains an overview of how the device works and why "chance," which becomes very important in the context of the elements of a "gambling device" under Missouri law, "does not play a role" in the outcome of any game played on the device. (*See generally id.* at ¶¶ 3-9).

As Mr. Farley explains, for any game available for play with the Torch device, there is a "Prize Viewer" feature that allows the player to push the "Prize Viewer" icon on the screen at any time prior to the play of a given turn and view upcoming game outcomes. (*Id.* at ¶ 4). This "Prize Viewer" feature allows the player to view upcoming game outcomes on the screen without committing to any payment or purchase. (*Id.*). The player can then choose to either play the turn for the predetermined outcome as displayed to the player using the Prize viewer feature, or not

play the turn and exit the game. (*Id.* at ¶ 5). If a player has deposited money into the device prior to initiation of game play, the player can get a refund of his/her money. (*Id.*). The player initiates game play by touching the "PLAY" icon on the screen or the device cabinet. (*Id.* at ¶ 7). Additionally, unlike regulated "slot machines," Torch devices do not utilize a random number generator to determine the outcome of a game or the prize awarded. (*Id.* at ¶ 8). Instead, the outcomes and prizes are "based on predetermined finite outcomes that are in sequential order."[10] (*Id.*). The Torch device software does not randomize or shuffle outcomes based on play, and it does not allow any operator interaction with the machine to alter the predefined game outcomes. (*Id.* at ¶ 7).  Neither the player nor the operator can affect the game outcomes. (*Id.*). Since the outcome of every game is determined sequentially from a predetermined finite pool, and because the "Prize Viewer" allows a player to see, in advance of playing a game, whether the game will be a winning game and the amount, if anything, that will be paid for the game, "chance does not play a role" in how a Torch device operates. (*Id.* at ¶ 9).

An analysis of Missouri laws related to regulated gaming devices demonstrates Torch devices do not fall into such category. The Missouri Constitution, at Article III, Section 39, addresses "lotteries" and gambling. On numerous occasions, the Missouri Supreme Court has made clear the three "elements of a lottery are: (1) consideration; (2) prize; and (3) chance." *Mobil Oil Corp. v. Danforth*, 455 S.W.2d 505, 507 (Mo. 1970) (quoting *State ex inf. McKittrick v. Globe-*

---

[10] To analogize, imagine that for any given game at a given play level (*e.g.,* one play for $0.25) there is an electronic "rolodex" that contains a fixed number of card files, each with a predetermined finite outcome printed on it (*e.g.*, card file 1 for play 1 dictates that play will result in a $1.00 payout; card file 2 for play 2 dictates the second sequential play will result in a $0.00 payout; and so forth). When the game has been played enough times the "rolodex" of preprogramed sequential outcome card files has been exhausted, the next play will start the same preprogramed sequential cycle again from card file 1 from play 1 with the same exact preprogramed sequential outcome for each game played thereafter. (*See id.* at ¶¶ 7-8).

*Democrat Pub. Co.*, 341 Mo. 862, 874 (1937)) (internal quotes omitted). "Chance" is "central and is defined as 'something that happens unpredictably without any discernible human intention or direction . . ..'" *Harris v. Mo. Gaming Com'n*, 869 S.W.2d 58, 62 (Mo. 1994) (quoting *Webster's Third New Int'l Dictionary* 373 (1976)).  RSMo. § 572.010(4) defines "Gambling," in relevant part, as occurring when a person, "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome." Subsection (3) defines "Contest of Chance" as, "any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that the skill of the contestants may also be a factor therein." Subsection (5) defines a "Gambling device," in relevant part, as, "any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine."

Again, a common theme is the requirement of "chance," which is absent in Torch amusement devices. Logically, nothing stops a prospective Torch device player from using the Prize Viewer to view the fixed outcome for every single possible next play for every available game and, if one of those plays is predetermined to be a "winner," play that turn and receive the predetermined "win" – or if no play will yield a "win," the player can choose not to play. Regardless, there is no element of "chance" vis-à-vis the Torch device.

TNT knows Torch devices are designed to eliminate the element of chance. Aware this is problematic, TNT attempts a pivot to make an argument that would only have merit if Missouri's gaming laws were rewritten. Paragraph 51 of TNT's Complaint (Doc. #1) is a prime example of TNT's attempt to lead the Court down a primrose path. TNT argues, "[f]rom the perspective of the

player, the outcomes are random and therefore based on chance . . ..” In other words, TNT seeks

to impose *the player's subjective intent* on Torch amusement devices. Under TNT's desired law,

if the player *thinks* he or she is gambling on the device it becomes a "gambling device." That is

not the current law in Missouri. TNT knows this because it cites to and includes internet links to

news articles, like the one cited in footnote 6 to paragraph 71 of its Complaint titled "*As Gambling*

*Expansion Stalls in Missouri, Senate Leader **Still Trying to Ban Gas Station Slot Machines***," that

discuss the ongoing debates in the Missouri Legislature over potential changes to gaming rules

that would, if ever passed, attempt to redefine "gambling device" to incorporate an element of the

player's subjective intent.[11] (Doc. #1, ¶ 71 n.6) (emphasis added).

TNT also attempts to support its motion by claiming Torch devices are illegal because this

organization, some other state, or "the prosecutors of three Missouri counties [out of 114] have

said so." (Doc. #16, p. 1). These arguments are meritless. As shown below, many of TNT's

statements simply are not true. For example, on page one of its brief, TNT represents "the Missouri

Gaming Commission has said" Torch devices are illegal under Missouri law.[12] (Doc. #16, p. 1).

At least one of MGC's key employees failed to get that memo.

MGC's Electronic Gaming Device Specialist II, Cody Hanavan,[13] has admitted, during live

---

[11] *See* Senate Bill No. 632, pp. 20-1 ("SB 632"), a true and correct copy of which is attached hereto
as **Exhibit O**. Specifically, SB 632, proposed amending the definition of "Gambling device" in
RSMo. § 572.101(5) to include a device "regardless of whether the . . . device . . . includes a
preview of the outcome or whether the outcome is known, displayed, or capable of being known .
. . to the player," as well as "[a]ny devices . . . that a reasonable person would believe is usable or
can be made readily usable in gambling . . .." The Missouri Legislature rejected this language and
a player's subjective intent continues to be irrelevant to whether a device is a gambling device.
[12] As TNT admits a few lines later, "the Missouri Gaming Commission's position [is] that its
enforcement authority, which covers [only] casinos, does not extend to gas stations, truck stops,
and the like" (*i.e.*, the Missouri Gaming Commission's ("MGC") opinion on the matter is
irrelevant). (Doc. #16, pp. 1-2).
[13] Identified as "Cody Canavan," but Torch believes this was a transcription error based on Cody
"Hanavan's" publicly available LinkedIn profile listing his title as "Electronic Gaming Device

testimony under oath before a Missouri state court judge, Torch devices operate in a manner that eliminates chance and therefore do not fit Missouri's definition of a "gambling device." In *State of Missouri v. Hussain*, Case No. 20HE-CR00629 filed in the Circuit Court of Henry County, the Henry County prosecutor charged Ijaz Hussain for allegedly violating Missouri gaming laws in connection with placing Torch devices in his retail location. On April 22, 2022, the circuit court heard testimony in a preliminary hearing and the prosecution called Mr. Hanavan as its witness, presumably intending to develop testimony by a MGC representative that Torch devices are illegal gambling devices.[14]

After being sworn in, Mr. Hanavan testified, "I work for the Missouri Gaming Commission" as "an electronic gaming device specialist." (**Ex. Q**, 44:21-40). He explained generally what that job entailed. (*Id.* at 44:42-45:25). The prosecution attempted to get Mr. Hanavan to testify that MGC considers Torch devices to be illegal slot machines, but Mr. Hanavan testified, "The Gaming Commission doesn't necessarily hold an opinion on—on how these are classified." (*Id.* at 48:31-49:1). On cross-examination by the defense, Mr. Hanavan admitted the MGC had no jurisdictional or enforcement authority outside of casinos and Bingo parlors. (*Id.* at 52:4-20). Mr. Hanavan confirmed the MGC, which regulates "slot machines," does not refer to Torch devices as "slot machines," but rather as "gray gaming devices." (*Id.* at 52:22-53:10). He agreed that when a person plays a "slot machine" "they have no idea whether the next play is a winner or a loser" and "they have no way of knowing" that. (*Id.* at 53:12-20). Instead, a player

---

Specialist II at Missouri Gaming Commission." *See* **Exhibit P**, image of Cody Hanavan's publicly available LinkedIn bio page from the following website address, last accessed 4/29/2023: https://www.linkedin.com/in/cody-hanavan-27972b114/.   Accordingly, Torch will identify this person as "Cody Hanavan," though the relevant transcript of his sworn testimony refers to him as Mr. "Canavan."

[14] The hearing was transcribed and a true and correct copy of relevant excerpts of the hearing transcript is attached hereto as **Exhibit Q**.

"put[s] their dollar in and if the random number generator goes through, stops, maybe it's a winner; maybe its not." (*Id.* at 53:12-26). He also agreed, consistent with Mr. Farley's Declaration: "Torch machines do not have random number generators in them"; he believed "[t]hey're called fixed algorithm outcome"; "[t]here's nothing random about it . . . [n]othing by chance about when it's going to pay out. [A Torch device is] going to do the exact same every time until it runs back through the sequence . . . [a]nd then it goes back through the exact same winning spot. Nothing random about it. Nothing by chance about it"; and Torch devices operate "[t]otally opposite" of a "slot machine." (*Id.* at 53:38-54:44). Mr. Hanavan understood, "[c]onsideration, chance and prize" are necessary element for a "gambling device." (*Id.* at 55:1-8). Unlike TNT, Mr. Hanavan accurately explained to the court that a player's subjective intent is irrelevant under the law: **Q**: "There's nothing in the Missouri statute as to what makes something a gaming device that talks about the subjective intentions of the player; does it?" **A**: "No." **Q**: "It's all about the machine; isn't it?" **A**: "Yes." **Q**: ". . . as of the state of the law right now, the subjective intention of the player just doesn't matter as far as the statute is concerned; correct?" **A**: "*You are correct*." (*Id.* at 57:15-43 (italics added)). And ultimately, Mr. Hanavan agreed, based on his expertise, Torch devices are not gaming devices under Missouri law: **Q**: "So, under the – under the definition of the statute, [the torch device is] not a gaming device based on those two issues, Right?" **A**: "As the – the definition of the – of a gaming device, as you say, if you say it has no chance, it would not be. Yes. That's correct." **Q**: "And you've agreed it doesn't have a chance if you use both the pre-reveal button and because it's a set, pre-determinative outcome; right? You've said that." **A**: "*I think I would say that. Yes*." (60:3-13 (italics added)).

While Mr. Hanavan's opinion as the MGC's electronic gaming specialist does not alter Missouri law or regulations, he would seem competent to offer expert testimony in the field (the

Henry Country prosecutor certainly thought so, and court accepted his testimony as such). TNT has not and cannot demonstrate a likelihood of success on the merit because Torch devices are not illegal "gambling devices" under Missouri law. But the Court does not have to take Torch's word for it: the MGC's own expert Electronic Gaming Device Specialist II has said so.[15]

### C.   TNT Cannot Demonstrate a Threat of Irreparable Harm

"Failure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023). True to theme, TNT's assertions of irreparable harm take the form of factually unsupported conclusions disguised as arguments. In short, TNT argues the "irreparable harm" it is suffering is the alleged competition-related losses it seeks as damages in the Complaint.[16] This conflation of reparable and irreparable harms is consistent with the Complaint, which repeatedly claims entitlement to legal and injunctive relief for the same alleged harms.[17] However, "[e]conomic loss, on its own, is not an irreparable

---

[15] TNT further claimed in its introduction "the Circuit Court of Platte County has said [Torch amusement devices are illegal gambling devices]." (Doc. # 16, p. 1). This is patently false. There has been no adjudication in Platte County by any court finding a Torch amusement device qualifies as a "gambling device" under Missouri law. The case to which TNT refers involved an entirely different company, Integrity Vending, LLC. *See State v. Integrity Vending, LLC*, Case No. 21AE-CC00070, Motion for Judgment, a true and correct copy of which is attached hereto as **Exhibit R**. The prosecution in *Hussain* – after Mr. Hanavan admitted he believed Torch devices are legal – similarly attempted to cloud the record with misleading allusions to a "Platte County" case; Mr. Hanavan clarified on further recross-examination the Platte County case involved different machines than Torch devices and "the settings were configured a little differently for certain." (**Ex. Q**, 62:6-34).

[16] TNT attempts to bootstrap alleged "irreparable harm to [other] law-abiding competitors" in support of this factor. (*See, e.g.*, Doc. #16, p. 2). Arguments about irreparable harm to *third parties* (including "the public at large") cannot satisfy the irreparable harm factor. *See Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 707 (8th Cir. 2011).

[17] *See, e.g.,* Doc. #1, ¶¶ 5, 135, 226, 255-258. Simply styling claimed damages as "irreparable harm" does not convert a claim for money damages to a proper claim for injunctive relief. *See Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 487 n.5 (8th Cir. 2022) (noting that party's pleading demonstrated that it understood its harms to be reparable, as under claim for which it sought injunctive relief it sought "damages . . . in an amount to be proven at trial").

injury so long as the losses can be recovered." *Wildhawk Investments, LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022). In *Wildhawk*, the Eighth Circuit held that a competitor failed to support its claim of "irreparable harm" when it provided details of lost revenues and allegations that it faced additional risks of lost customers and lost profits; those items are reparable by money damages, not irreparable. *Id*. The same result follows here.

TNT's main argument under this prong, however, is not so much that it truly does face a threat of irreparable harm but instead that it is entitled to the *presumption of irreparable harm* under the Lanham Act. The Lanham Act's rebuttable presumption only applies if the movant shows a likelihood of success on the merits, which, for the reasons stated above, TNT has not shown. *See H&R Block, Inc.*, 58 F.4th at 951 ("Without showing a likelihood of confusion, H&R Block is not entitled to a rebuttable presumption of irreparable harm . . . [under] 15 U.S.C. § 1116(a)."). But even assuming TNT could satisfy the likelihood of success factor, the statute only creates a "rebuttable presumption." *See* 15 U.S.C. § 1116(a). This rebuttable presumption *is* rebutted by TNT's own excessive delay in bringing this lawsuit and petitioning this Court for injunctive relief. "[D]elay in moving for preliminary injunctive relief negates any presumption of irreparable harm based on consumer confusion and may, standing alone, justify denial of preliminary injunctive relief[.]" *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1010 (8th Cir. 2019).[18] Again, TNT waited 3 years, 4 months, and 25 days after TNT filed its unfair

---

[18] *See also Novus*, 725 F.3d at 894; *Citibank*, 756 F.2d at 277; *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 301 (S.D.N.Y. 2021) (delay of three months suggested there was, in fact, no irreparable injury); *Vita-Mix Corp. v. Tristar Prods., Inc.*, 1:07 CV 275, 2008 WL 11383504, at *8–9 (N.D. Ohio Sept. 30, 2008) (collecting cases where a delay of "even a few months" rebutted any claim of irreparable harm); *BeatStars, Inc. v. Space Ape Ltd.*, A-21-CV-000905-LY, 2022 WL 4128534, at *4 (W.D. Tex. Aug. 26, 2022) (presumption rebutted where party waited one year after allegedly infringing mark used and nine months after it filed suit despite excuses of death of attorney and attempted negotiated resolution).

competition 2019 Crawford Co. Case against Torch to ask a court to provide any form of emergency, temporary, or preliminary injunctive relief. TNT cannot show irreparable harm.

### D.    The Balance of Harms Do Not Tip in TNT's Favor

For the reasons stated above, TNT cannot demonstrate a likelihood of success on the merits. Where a plaintiff fails to establish a probability of ultimate success, "the possibility that it will suffer any harm . . . is highly speculative and therefore does not serve to tip the balance of equities" in the plaintiff's favor. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1184 (8th Cir. 1998); *see also Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 479 F. Supp. 2d 968, 993 (N.D. Iowa 2007). Regardless, this factor is insufficient standing alone to grant TNT's motion.

### E.    The Court Should Deny TNT's Request for a Hearing

TNT's motion is dependent on convincing the Court Torch devices are illegal. Nevertheless, TNT failed to attach a single affidavit, declaration, or any other form of reasonably reliable evidence to support its claims or arguments. TNT requests a hearing, but its written submission fails to show a right to relief on its face so clearly that a hearing would be pointless. "Federal Rule of Civil Procedure 65 does not require a hearing to be held when the court denies a motion for preliminary injunction." *Hanes v. Frankes*, No. 8:22CV156, 2022 WL 29747662, at 1 (D.C. Neb. July 27, 2022) (slip copy); *see also* 11A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed.) ("[P]reliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless.").

## III.    CONCLUSION

For the foregoing reasons, Torch respectfully requests the Court deny TNT's Motion for Preliminary Injunction on the parties' briefs, stay the case pending resolution of the Cole Co. Case, and grant any additional relief the Court deems just and proper.

Dated:  May 1, 2023                  Respectfully submitted,

GRAVES GARRETT, LLC

By: */s/ J. Aaron Craig*
    Todd P. Graves #41319 (MO)
    J. Aaron Craig #62041 (MO)
    1100 Main Street, Suite 2700
    Kansas City, MO 64105
    Phone: (816) 256-3181
    Fax: (816) 256-5958
    tgraves@gravesgarrett.com
    acraig@gravesgarrett.com

**Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

## CERTIFICATE OF SERVICE

       I hereby certify that on May 1, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    */s/ J. Aaron Craig*
    Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger