IN THE CIRCUIT COURT OF CRAWFORD COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JIM TURNTINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| | ) Division No. |
| TORCH ELECTRONICS, LLC, | ) |
| MIDWEST PETROLEUM CO, and | ) |
| CRAWFORD COUNTY | ) |
| | ) |
| | ) |
| Defendants. | ) |

## PETITION FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Jim Turntine and states:

### Parties

1. Plaintiff Jim Turntine is an individual who resides in Crawford County, State of Missouri. He has, at all times relevant hereto, paid both *ad valorem* real property taxes and sales taxes to Defendant Crawford County.

2. Defendant Torch Electronics, LLC ("Torch) is a Missouri limited liability company. Torch engages in the business of placing illegal gambling machines, which effectively are "slot machines", to retailers such as restaurants, truck stops, and fraternal organizations in Missouri.

3. Defendant Midwest Petroleum Company ("Midwest") is a Missouri for-profit corporation that owns and operates, among numerous other facilities, the Midwest Travel Plaza located in Cuba, MO.

4. Defendant Crawford County is a third class county of the State of Missouri.

**Jurisdiction and Venue**

5. Jurisdiction is appropriate in this Court in that the acts and circumstances described in this Petition took place within Crawford County, State of Missouri.

6. Venue is appropriate in this Court pursuant to § 508.010, RSMo, et seq.

**Count I - Declaratory Judgment**

7. TNT incorporates ¶¶ 1-6, above.

8. Commencing at a time unknown to Plaintiff, but prior to August, 2018 and continuing through the present, Torch installed at least seven (7) illegal gambling machines at the Midwest Travel Plaza with the knowledge and affirmative cooperation of Midwest. These illegal gambling machines have been continuously present at the Midwest Travel Plaza since their installation and have been in operation 24 hours a day, seven days a week. On information and belief, Torch has installed and operated other illegal gambling machines at other locations in Crawford County dating back to at least 2016 and has participated in operating them continuously, or nearly continuously, since their dates of installation. Torch and Midwest operate these illegal gambling machines on a for-profit basis.

9. The illegal gambling machines placed by Torch referenced above have been determined to be illegal gambling devices by the Missouri Gaming Commission in violation of Sections 572.030, 572.040, and 572.070 RSMo. See Exhibit 1.

10. Neither Midwest, nor any of the other owners of locations where such illegal gambling devices have been installed, have ever applied for or received a license from the Missouri Gaming Commission to operate an "excursion gambling boat" pursuant to §§ 313.800-313.850, RSMo.

11. Torch has neither applied for nor received a license from the Missouri Gaming

2

Commission to be a licensed and approved supplier of gambling games pursuant to §§ 313.800-313.850, RSMo.

12.     On information and belief, Torch and Midwest share revenues from the illegal gambling machines and are thereby jointly operating an unlicensed gambling operation in violation of Section 313.830.1(1), RSMo.

13.     On information and belief, Torch intends to continue to place its illegal gambling machines in additional locations and facilities in Crawford County, and Midwest intends to continue to cause illegal gambling machines to be located and operated for profit at the Midwest Travel Plaza.

14.     In order to lawfully participate in the operation of illegal gambling machines in Missouri, Torch and Midwest have been, at all relevant times, been required to comply with the Excursion Gambling Boats statutes, §§313.800, RSMo, et. seq, and Mo. Const. Art. III, §39(e). Neither has ever so-complied in their operation and derivation of revenue from the subject illegal gambling machines. In effect, Torch and Midwest have acted as rogue shadow casinos, not only lacking legal sanction for their illegal gambling operation activities, but brazenly flouting the Constitution and statutes of the State of Missouri, and regulations duly promulgated by the Missouri Gaming Commission.

15.     Neither Midwest nor Torch has ever remitted to the State of Missouri any tax payment(s) that all duly licensed excursion gambling boats ("Casinos") are required to so pay; their failures to make such remittances are unlawful.

16.     The sole path offered by the Missouri Constitution for operating gambling machines/slot machines is on a licensed Excursion Gambling Boat ("Casino") governed by §§ 313.800-850, RSMo.

17. Accordingly, if Torch and its retailers, such as Midwest, desire to operate gambling machines/slot machines in Missouri, they must be subject to the same fees, taxes, rules and regulations governing constitutionally authorized Casinos.

18. Section 313.807.1, RSMo, requires anyone seeking to operate a Casino to file an extensive application providing extensive information on location, economic impact, and ownership to the Missouri Gaming Commission ("MGC") along with a non-refundable application fee of $50,000.

19. Torch and its retailers, such as Midwest, made no such application and paid no such fee, depriving the MGC of needed operation revenue.

20. Section 313.820(1), RSMo, requires operators of Casinos to pay an "Admission Fee" of $2.00 to the MGC for every person admitted. One Dollar of each Admission Fee is allocated to the Gaming Commission Fund. The other One Dollar of each Admission Fee is paid directly by the MGC to the home city or county of the Casino.

21. Torch and its retailers, such as Midwest, pay no such Admission Fees to the MGC, depriving the MGC as well as home cities and counties of needed operating revenue.

22. Section 313.822, RSMo, imposes a tax of 21% on the Adjusted Gross Receipts ("AGR") received from gambling games/slot machines. These AGR taxes are payable to the Missouri Director of Revenue in accord with applicable rules and regulations.

23. Section 313.822(1), RSMo provides that 10% of the AGR tax revenues will be remitted to the home city or county of the Casino.

24. Section 313.822(2) RSMo provides that the remainder of the AGR tax revenues will be remitted to the specially created "Gaming Proceeds For Education Fund."

4

Electronically Filed - Crawford Circuit Division - January 29, 2020 - 04:08 PM

25. Torch and its retailers, such as Midwest, pay no such AGR tax on revenues from their illegal gaming machines/slot machines, depriving home cities and counties as well as statewide educational initiatives of needed operating revenue.

26. 11 CSR 45-11.040 requires Casino operators to file tax returns and remit tax due for both Admission Fees and the AGR tax on a daily basis subject to penalties for non-compliance.

27. Torch and its retailers, such as Midwest, file no such tax returns and should be subject to penalties.

28. While individual gamblers make different levels of wagers resulting in some variability in per gambling machine/slot machine AGR, recent MGC data suggests that the average monthly AGR from slot machines in legal Casinos is approximately $8,000.

29. Defendant Crawford County has been deprived of a large stream of revenue by virtue of the failure and refusal of Torch and Midwest to pay to the State of Missouri the taxes they have owed to it by virtue of conducting gambling activities over a substantial period of time.

30. On information and belief, Torch and Midwest contend that the subject illegal gambling machines are neither gambling devices nor slot machines within the meaning of §§572.010 (5), (11), RSMo, and also would argue that they have never owed any of the taxes identified above. Thus, this Petition presents justiciable controversies and disputes between the parties to this lawsuit that are susceptible to resolution via this Court's entry of a declaratory judgment in this case.

31. Plaintiff Turntine requested Crawford County to pursue Torch and Midwest in a civil action to recover for itself, and its taxpayers and citizens, the tax revenue streams that he

has identified herein, but the County has failed and refused to do so.  See Exhibit 2 hereto. Crawford County is nevertheless named as a nominal Defendant in this case due to its abiding and strong interests in ensuring that tax liabilities are pursued from all entities that, and who, owe taxes based on activities conducted in Crawford County, and its receipt of revenue streams that duly required payments of such taxes generate for Crawford County.

32. Pursuant to § 1.010, RSMo, Missouri has adopted "the common law of England and statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature …."  Under that adopted law, Plaintiff Turntine has the legal right to pursue this lawsuit, and the claims set forth herein, for the benefit of Crawford County, and to receive compensation for his efforts herein, and his litigation expenses, including his reasonable attorneys fees incurred in bringing and prosecuting this action, which compensation should be made from the common fund this case produces.

WHEREFORE, Plaintiff Turntine requests that this Court enter its declaratory judgment providing that Defendants have conducted themselves, owed and owe the taxes, and have refused and failed to remit them, as described above, and that Plaintiff Turntine is entitled to a fair and equitable share of the Defendants' tax obligations described above, an award of his reasonable attorney's fees and litigation costs he has incurred herein, and such other relief as is just.

**BICK & KISTNER, P.C.**

By: /s/ Elkin L. Kistner
    Elkin L. Kistner     #35287
    William E. Kistner     #70540
    101 South Hanley Road, Suite 1280
    St. Louis, Missouri 63105
    Telephone: (314) 571-6823
    Facsimile:  (314) 727-9071
    E-mail: elkinkis@bick-kistner.com
    E-mail: bill@bick-kistner.com
    *Attorneys for Plaintiff Jim Turntine*