SECOND REGULAR SESSION

# SENATE BILL NO. 632

**101ST GENERAL ASSEMBLY**

INTRODUCED BY SENATOR HEGEMAN.

4085S.01I                                          ADRIANE D. CROUSE, Secretary

## AN ACT

To repeal sections 311.660, 311.680, 311.710, 311.720, 313.004, 313.255, 572.010, 572.015, and 572.100, RSMo, and to enact in lieu thereof nine new sections relating to illegal gambling, with penalty provisions and an emergency clause.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section A.  Sections 311.660, 311.680, 311.710, 311.720, 313.004, 313.255, 572.010, 572.015, and 572.100, RSMo, are repealed and nine new sections enacted in lieu thereof, to be known as sections 311.660, 311.680, 311.710, 311.720, 313.004, 313.255, 572.010, 572.015, and 572.100, to read as follows:

311.660.  1.  The supervisor of liquor control shall have the authority to suspend or revoke for cause all such licenses; and to make the following regulations, without limiting the generality of provisions empowering the supervisor of liquor control as in this chapter set forth as to the following matters, acts and things:

(1)  Fix and determine the nature, form and capacity of all packages used for containing intoxicating liquor of any kind, to be kept or sold under this law;

(2)  Prescribe an official seal and label and determine the manner in which such seal or label shall be attached to every package of intoxicating liquor so sold under this law; this includes prescribing different official seals or different labels for the different classes, varieties or brands of intoxicating liquor;

**EXPLANATION-Matter enclosed in bold-faced brackets [thus] in this bill is not enacted and is intended to be omitted in the law.**

16      (3)  Prescribe all forms, applications and licenses and
17  such other forms as are necessary to carry out the
18  provisions of this chapter, except that when a licensee
19  substantially complies with all requirements for the renewal
20  of a license by the date on which the application for
21  renewal is due, such licensee shall be permitted at least an
22  additional ten days from the date notice is sent that the
23  application is deficient, in which to complete the
24  application;

25      (4)  Prescribe the terms and conditions of the licenses
26  issued and granted under this law;

27      (5)  Prescribe the nature of the proof to be furnished
28  and conditions to be observed in the issuance of duplicate
29  licenses, in lieu of those lost or destroyed;

30      (6)  Establish rules and regulations for the conduct of
31  the business carried on by each specific licensee under the
32  license, and such rules and regulations if not obeyed by
33  every licensee shall be grounds for the revocation or
34  suspension of the license;

35      (7)  The right to examine books, records and papers of
36  each licensee and to hear and determine complaints against
37  any licensee;

38      (8)  To issue subpoenas and all necessary processes and
39  require the production of papers, to administer oaths and to
40  take testimony;

41      (9)  Prescribe all forms of labels to be affixed to all
42  packages containing intoxicating liquor of any kind; **[**and**]**

43      (10)  **To refer to the Missouri gaming commission,**
44  **Missouri state highway patrol, and local law enforcement**
45  **agencies any suspected illegal gambling activity punishable**
46  **under chapter 572 being conducted on the premises of a**

47   **location licensed under this chapter, which shall be**
48   **investigated under section 43.380; and**

49   **(11)**   To make such other rules and regulations as are
50   necessary and feasible for carrying out the provisions of
51   this chapter, as are not inconsistent with this law.

52   2.   Notwithstanding subsection 1 of this section, the
53   supervisor of liquor control shall not prohibit persons from
54   participating in the sale of intoxicating liquor within the
55   scope of their employment solely on the basis of being found
56   guilty of any felony offense, except for prohibitions set
57   forth in sections 311.191 and 311.193.

311.680.   1.   Whenever it shall be shown, or whenever
2   the supervisor of liquor control has knowledge, that a
3   person licensed hereunder has not at all times kept an
4   orderly place or house, or has violated any of the
5   provisions of this chapter, the supervisor of liquor control
6   may warn, place on probation on such terms and conditions as
7   the supervisor of liquor control deems appropriate for a
8   period not to exceed twelve months, suspend or revoke the
9   license of that person, but the person shall have ten days'
10   notice of the application to warn, place on probation,
11   suspend or revoke the person's license prior to the order of
12   warning, probation, revocation or suspension issuing.

13   2.   Any wholesaler licensed pursuant to this chapter in
14   lieu of, or in addition to, the warning, probation,
15   suspension or revocation authorized in subsection 1 of this
16   section, may be assessed a civil penalty by the supervisor
17   of liquor control of not less than one hundred dollars or
18   more than twenty-five hundred dollars for each violation.

19   3.   Any solicitor licensed pursuant to this chapter in
20   lieu of the suspension or revocation authorized in
21   subsection 1 of this section may be assessed a civil penalty

22    or fine by the supervisor of liquor control of not less than
23    one hundred dollars nor more than five thousand dollars for
24    each violation.

25        4.  Any retailer with less than five thousand occupant
26    capacity licensed pursuant to this chapter in lieu of the
27    suspension or revocation authorized by subsection 1 of this
28    section may be assessed a civil penalty or fine by the
29    supervisor of liquor control of not less than fifty dollars
30    nor more than one thousand dollars for each violation.

31        5.  Any retailer with five thousand or more occupant
32    capacity licensed pursuant to this chapter in lieu of the
33    suspension or revocation authorized by subsection 1 of this
34    section, may be assessed a civil penalty or fine by the
35    supervisor of liquor control of not less than fifty dollars
36    nor more than five thousand dollars for each violation.

37        6.  **(1)  Upon notification by the Missouri gaming**
38    **commission or a law enforcement agency of possession of a**
39    **gambling device, as defined pursuant to section 572.010, by**
40    **a person licensed pursuant to this chapter, the supervisor**
41    **of liquor control shall suspend or revoke the license of**
42    **such person on such terms and conditions as the supervisor**
43    **of liquor control deems appropriate, provided such person**
44    **shall be given ten days to remove such gambling device from**
45    **the premises prior to the supervisor of liquor control**
46    **taking action pursuant to this subsection.  Upon a second or**
47    **subsequent notification pursuant to this subsection of the**
48    **possession of a gambling device by a person licensed**
49    **pursuant to this chapter, the supervisor of liquor control**
50    **shall not be required to give such person ten days to remove**
51    **such gambling device from the premises prior to taking**
52    **action pursuant to this subsection.**

53      **(2)  The supervisor of liquor control shall, by no**
54  **later than August 15, 2022, provide written or electronic**
55  **notice to all persons licensed pursuant to this chapter**
56  **informing such persons of the provisions of this subsection**
57  **and section 311.720.**
58      **7.**  Any aggrieved person may appeal to the
59  administrative hearing commission in accordance with section
60  311.691.
61      **[7.] 8.**  In order to encourage the early resolution of
62  disputes between the supervisor of liquor control and
63  licensees, the supervisor of liquor control, prior to
64  issuing an order of warning, probation, revocation,
65  suspension, or fine, shall provide the licensee with the
66  opportunity to meet or to confer with the supervisor of
67  liquor control, or his or her designee, concerning the
68  alleged violations.  At least ten days prior to such meeting
69  or conference, the supervisor shall provide the licensee
70  with notice of the time and place of such meeting or
71  conference, and the supervisor of liquor control shall also
72  provide the licensee with a written description of the
73  specific conduct for which discipline is sought, a citation
74  of the law or rules allegedly violated, and, upon request,
75  copies of any violation report or any other documents which
76  are the basis for such action.  Any order of warning,
77  probation, revocation, suspension, or fine shall be
78  effective no sooner than thirty days from the date of such
79  order.
    311.710.  1.  In addition to the penalties and
2  proceedings for suspension or revocation of licenses
3  provided for in this chapter, and without limiting them,
4  proceedings for the suspension or revocation of any license
5  authorizing the sale of intoxicating liquor at retail may be

6   brought in the circuit court of any county in this state, or
7   in the City of St. Louis, in which the licensed premises are
8   located and such proceedings may be brought by the sheriff
9   or any peace officer of that county or by any eight or more
10  persons who are taxpaying citizens of the county or city for
11  any of the following offenses:
12      (1)  Selling, giving or otherwise supplying
13  intoxicating liquor to a habitual drunkard or to any person
14  who is under or apparently under the influence of
15  intoxicating liquor;
16      (2)  Knowingly permitting any prostitute, degenerate,
17  or dissolute person to frequent the licensed premises;
18      (3)  Permitting on the licensed premises any disorderly
19  conduct, breach of the peace, or any lewd, immoral or
20  improper entertainment, conduct or practices;
21      (4)  Selling, offering for sale, possessing or
22  knowingly permitting the consumption on the licensed
23  premises of any kind of intoxicating liquors, the sale,
24  possession or consumption of which is not authorized under
25  his or her license;
26      (5)  Selling, giving, or otherwise supplying
27  intoxicating liquor to any person under the age of twenty-
28  one years;
29      (6)  Selling, giving or otherwise supplying
30  intoxicating liquors between the hours of 1:30 a.m. and 6:00
31  a.m. any day of the week;
32      **(7)  Permitting on the licensed premises any form of**
33  **gambling device punishable under chapter 572.**
34      2.  Provided, that said taxpaying citizen shall submit
35  in writing, under oath, by registered United States mail to
36  the supervisor of alcohol and tobacco control a joint
37  complaint, stating the name of the licensee, the name under

38  which the licensee's business is conducted and the address
39  of the licensed premises, setting out in general the
40  character and nature of the offense or offenses charged,
41  together with the names and addresses of the witnesses by
42  whom proof thereof is expected to be made; and provided,
43  that after a period of thirty days after the mailing of such
44  complaint to the supervisor of alcohol and tobacco control
45  the person therein complained of shall not have been cited
46  by the supervisor to appear and show cause why his or her
47  license should not be suspended or revoked then they shall
48  file with the circuit clerk of the county or city in which
49  the premises are located a copy of the complaint on file
50  with the supervisor of alcohol and tobacco control.

51      3.  If, pursuant to the receipt of such complaint by
52  the supervisor of alcohol and tobacco control, the licensee
53  appears and shows cause why his or her license should not be
54  suspended or revoked at a hearing held for that purpose by
55  the supervisor and either the complainants or the licensee
56  consider themselves aggrieved with the order of the
57  supervisor then, after a request in writing by either the
58  complainants or the licensee, the supervisor shall certify
59  to the circuit clerk of the county or city in which the
60  licensed premises are located a copy of the original
61  complaint filed with him or her, together with a copy of the
62  transcript of the evidence adduced at the hearing held by
63  him or her.  Such certification by the supervisor shall not
64  act as a supersedeas of any order made by him or her.

65      4.  Upon receipt of such complaint, whether from the
66  complainant directly or from the supervisor of alcohol and
67  tobacco control, the court shall set a date for an early
68  hearing thereon and it shall be the duty of the circuit
69  clerk to cause to be delivered by registered United States

70   mail to the prosecuting attorney of the county or to the
71   circuit attorney of the City of St. Louis and to the
72   licensee copies of the complaint and he or she shall, at the
73   same time, give notice of the time and place of the
74   hearing.  Such notice shall be delivered to the prosecuting
75   attorney or to the circuit attorney and to the licensee at
76   least fifteen days prior to the date of the hearing.
77       5.  The complaint shall be heard by the court without a
78   jury and if there has been a prior hearing thereon by the
79   supervisor of alcohol and tobacco control then the case
80   shall be heard de novo and both the complainants and the
81   licensee may produce new and additional evidence material to
82   the issues.
83       6.  If the court shall find upon the hearing that the
84   offense or offenses charged in the complaint have been
85   established by the evidence, the court shall order the
86   suspension or revocation of the license but, in so doing,
87   shall take into consideration whatever order, if any, may
88   have been made in the premises by the supervisor of alcohol
89   and tobacco control.  If the court finds that to revoke the
90   license would be unduly severe, then the court may suspend
91   the license for such period of time as the court deems
92   proper.
93       7.  The judgment of the court in no event shall be
94   superseded or stayed during pendency of any appeal therefrom.
95       8.  It shall be the duty of the prosecuting attorney or
96   circuit attorney to prosecute diligently and without delay
97   any such complaints coming to him or her by virtue of this
98   section.
99       9.  The jurisdiction herein conferred upon the circuit
100  courts to hear and determine complaints for the suspension
101  or revocation of licenses in the manner provided in this

102    section shall not be exclusive and any authority conferred

103    upon the supervisor of alcohol and tobacco control to revoke

104    or suspend licenses shall remain in full force and effect,

105    and the suspension or revocation of a license as provided in

106    this section shall be in addition to and not in lieu of any

107    other revocation or suspension provided by this chapter.

108        10.  Costs accruing because of such hearings in the

109    circuit court shall be taxed in the same manner as criminal

110    costs.

       311.720.  Conviction in any court of any violation of

2      this chapter, or any felony violation of chapter 195 **or**

3      **chapter 572,** in the course of business, shall have the

4      effect of automatically revoking the license of the person

5      convicted, and such revocation shall continue operative

6      until said case is finally disposed of, and if the defendant

7      is finally acquitted, he may apply for and receive a license

8      hereunder, upon paying the regular license charge therefor,

9      in the same manner as though he had never had a license

10     hereunder; provided, however, that the provisions of this

11     section shall not apply to violations of section 311.070,

12     and violations of said section shall be punished only as

13     therein provided.

       313.004.  1.  There is hereby created the "Missouri

2      Gaming Commission" consisting of five members appointed by

3      the governor, with the advice and consent of the senate.

4      Each member of the Missouri gaming commission shall be a

5      resident of this state.  No member shall have pled guilty to

6      or shall have been convicted of a felony or gambling-related

7      offense.  Not more than three members shall be affiliated

8      with the same political party.  No member of the commission

9      shall be an elected official.  The overall membership of the

10    commission shall reflect experience in law enforcement,

11    civil and criminal investigation and financial principles.

12      2.  The initial members of the commission shall be

13    appointed within thirty days of April 29, 1993.  Of the

14    members first appointed, one shall be appointed for a one-

15    year term, two shall be appointed for a two-year term and

16    two shall be appointed for a three-year term.  Thereafter,

17    all members appointed shall serve for a three-year term.  No

18    person shall serve as a member more than six years.  The

19    governor shall designate one of the members as the chair.

20    The governor may remove any member of the commission from

21    office for malfeasance or neglect of duty in office.  The

22    governor may also replace any member of the commission, with

23    the advice and consent of the senate, when any

24    responsibility concerning the state lottery, pari-mutuel

25    wagering or any other form of gaming is placed under the

26    jurisdiction of the commission.

27      3.  The commission shall meet at least quarterly in

28    accordance with its rules.  In addition, special meetings

29    may be called by the chair or any two members of the

30    commission upon twenty-four-hour written notice to each

31    member.  No action of the commission shall be binding unless

32    taken at a meeting at which at least three of the five

33    members are present and shall vote in favor thereof.

34      4.  The commission shall perform all duties and have

35    all the powers and responsibilities conferred and imposed

36    upon it relating to excursion gambling boats and, after June

37    30, 1994, the lawful operation of the game of bingo under

38    this chapter.  Within the commission, there shall be

39    established a division of gambling and after June 30, 1994,

40    the division of bingo.  Subject to appropriations, the

41    commission may hire an executive director and any employees

42  as it may deem necessary to carry out the commission's
43  duties.  The commission shall have authority to require
44  investigations of any employee or applicant for employment
45  as deemed necessary and use such information or any other
46  information in the determination of employment.  The
47  commission shall promulgate rules and regulations
48  establishing a code of ethics for its employees which shall
49  include, but not be limited to, restrictions on which
50  employees shall be prohibited from participating in or
51  wagering on any game or gaming operation subject to the
52  jurisdiction of the commission.  The commission shall
53  determine if any other employees of the commission or any
54  licensee of the commission shall participate or wager in any
55  operation under the jurisdiction of the commission.
56      5.  On April 29, 1993, all the authority, powers,
57  duties, functions, records, personnel, property, matters
58  pending and all other pertinent vestiges of the state
59  tourism commission relating to the regulation of excursion
60  gambling boats and, after June 30, 1994, of the department
61  of revenue relating to the regulation of the game of bingo
62  shall be transferred to the Missouri gaming commission.
63      6.  The commission shall be assigned to the department
64  of public safety as a type III division, but the director of
65  the department of public safety has no supervision,
66  authority or control over the actions or decisions of the
67  commission.
68      7.  Members of the Missouri gaming commission shall
69  receive as compensation, the amount of one hundred dollars
70  for every day in which the commission holds a meeting, when
71  such meeting is subject to the recording of minutes as
72  provided in chapter 610, and shall be reimbursed for
73  reasonable expenses incurred in the performance of their

74   duties.  The chair shall receive as additional compensation
75   one hundred dollars for each month such person serves on the
76   commission in that capacity.
77       8.  No member or employee of the commission shall be
78   appointed or continue to be a member or employee who is
79   licensed by the commission as an excursion gambling boat
80   operator or supplier and no member or employee of the
81   commission shall be appointed or continue to be a member or
82   employee who is related to any person within the second
83   degree of consanguinity or affinity who is licensed by the
84   commission as an excursion gambling boat operator or
85   supplier.  The commission shall determine by rule and
86   regulation appropriate restrictions on the relationship of
87   members and employees of the commission to persons holding
88   or applying for occupational licenses from the commission or
89   to employees of any licensee of the commission.  No peace
90   officer, as defined by section 590.010, who is designated to
91   have direct regulator authority related to excursion
92   gambling boats shall be employed by any excursion gambling
93   boat or supplier licensed by the commission while employed
94   as a peace officer.  No member or employee of the commission
95   or any employee of the state attorney general's office or
96   the state highway patrol who has direct authority over the
97   regulation or investigation of any applicant or licensee of
98   the commission or any peace officer of any city or county
99   which has approved excursion boat gambling shall accept any
100  gift or gratuity from an applicant or licensee while serving
101  as a member or while under such employment.  Any person
102  knowingly in violation of the provisions of this subsection
103  is guilty of a class A misdemeanor.  Any such member,
104  officer or employee who personally or whose prohibited
105  relative knowingly violates the provisions of this

106  subsection, in addition to the foregoing penalty, shall,
107  upon conviction, immediately and thereupon forfeit his
108  office or employment.
109      9.  The commission may enter into agreements with the
110  Federal Bureau of Investigation, the Federal Internal
111  Revenue Service, the state attorney general, **the Missouri**
112  **state highway patrol,** or any state, federal or local agency
113  the commission deems necessary to carry out the duties of
114  the commission, **including investigations relating to and the**
115  **enforcement of the provisions of chapter 572 relating to**
116  **illegal gambling.**  No state agency shall count employees
117  used in any agreements entered into with the commission
118  against any personnel cap authorized by any statute.  Any
119  consideration paid by the commission for the purpose of
120  entering into, or to carry out, any agreement shall be
121  considered an administrative expense of the commission.
122  When such agreements are entered into for responsibilities
123  relating to excursion gambling boats, **or for the purpose of**
124  **investigating illegal gambling pursuant to chapter 572**
125  **utilizing existing Missouri state highway patrol personnel**
126  **assigned to enforce the regulations of licensed gaming**
127  **activities governed by chapter 313,** the commission shall
128  require excursion gambling boat licensees to pay for such
129  services under rules and regulations of the commission.  The
130  commission may provide by rules and regulations for the
131  offset of any prize or winnings won by any person making a
132  wager subject to the jurisdiction of the commission, when
133  practical, when such person has an outstanding debt owed the
134  state of Missouri.
135      10.  No person who has served as a member or employee
136  of the commission, as a member of the general assembly, as
137  an elected or appointed official of the state or of any city

138 or county of this state in which the licensing of excursion
139 gambling boats has been approved in either the city or
140 county or both or any employee of the state highway patrol
141 designated by the superintendent of the highway patrol or
142 any employee of the state attorney general's office
143 designated by the state attorney general to have direct
144 regulatory authority related to excursion gambling boats
145 shall, while in such office or during such employment and
146 during the first two years after termination of his office
147 or position, obtain direct ownership interest in or be
148 employed by any excursion gambling boat licensed by the
149 commission or which has applied for a license to the
150 commission or enter into a contractual relationship related
151 to direct gaming activity.  A "direct ownership interest"
152 shall be defined as any financial interest, equitable
153 interest, beneficial interest, or ownership control held by
154 the public official or employee, or such person's family
155 member related within the second degree of consanguinity or
156 affinity, in any excursion gambling boat operation or any
157 parent or subsidiary company which owns or operates an
158 excursion gambling boat or as a supplier to any excursion
159 gambling boat which has applied for or been granted a
160 license by the commission, provided that a direct ownership
161 interest shall not include any equity interest purchased at
162 fair market value or equity interest received as
163 consideration for goods and services provided at fair market
164 value of less than one percent of the total outstanding
165 shares of stock of any publicly traded corporation or
166 certificates of partnership of any limited partnership which
167 is listed on a regulated stock exchange or automated
168 quotation system.  Any person who knowingly violates the
169 provisions of this subsection is guilty of a class E

170    felony.  Any such member, officer or employee who personally
171    and knowingly violates the provisions of this subsection, in
172    addition to the foregoing penalty, shall, upon conviction,
173    immediately and thereupon forfeit his office or employment.
174    For purposes of this subsection, "appointed official" shall
175    mean any official of this state or of any city or county
176    authorized under subsection 10 of section 313.812 appointed
177    to a position which has discretionary powers over the
178    operations of any licensee or applicant for licensure by the
179    commission.  This shall only apply if the appointed official
180    has a direct ownership interest in an excursion gambling
181    boat licensed by the commission or which has applied for a
182    license to the commission to be docked within the
183    jurisdiction of his or her appointment.  No elected or
184    appointed official, his or her spouse or dependent child
185    shall, while in such office or within two years after
186    termination of his or her office or position, be employed by
187    an applicant for an excursion gambling boat license or an
188    excursion gambling boat licensed by the commission.  Any
189    other person related to an elected or appointed official
190    within the second degree of consanguinity or affinity
191    employed by an applicant for an excursion gambling boat
192    license or excursion gambling boat licensed by the
193    commission shall disclose this relationship to the
194    commission.  Such disclosure shall be in writing and shall
195    include who is employing such individual, that person's
196    relationship to the elected or appointed official, and a job
197    description for which the person is being employed.  The
198    commission may require additional information as it may
199    determine necessary.
200        11.  The commission may enter into contracts with any
201    private entity the commission deems necessary to carry out

202     the duties of the commission, other than criminal law
203     enforcement, provision of legal counsel before the courts
204     and other agencies of this state, and the enforcement of
205     liquor laws.  The commission may require provisions for
206     special auditing requirements, investigations and
207     restrictions on the employees of any private entity with
208     which a contract is entered into by the commission.
209          12.  Notwithstanding the provisions of chapter 610 to
210     the contrary, all criminal justice records shall be
211     available to any agency or commission responsible for
212     licensing or investigating applicants or licensees applying
213     to any gaming commission of this state.
214          **13.  (1)  The commission shall establish a telephone**
215     **contact number, which shall be prominently displayed on the**
216     **commission's website, to receive reports of suspected**
217     **illegal gambling activities.  Upon the receipt of such**
218     **report, the commission shall refer such reports to the**
219     **Missouri state highway patrol for investigation pursuant to**
220     **this section.  The commission shall notify the subject of**
221     **such investigation within thirty days of receiving a report**
222     **under this subsection.**
223          **(2)  The superintendent of the highway patrol shall**
224     **initiate investigations of potential violations punishable**
225     **under chapter 572, including referrals made by the Missouri**
226     **gaming commission pursuant to this section.**
227          **(3)  Upon the request of a prosecuting or circuit**
228     **attorney, the attorney general shall aid a prosecuting or**
229     **circuit attorney in prosecuting violations referred by the**
230     **superintendent of the highway patrol.**
231          **(4)  Local law enforcement agencies shall notify the**
232     **supervisor of liquor control, the state lottery commission,**

233    and the Missouri gaming commission of all investigations of
234    potential violations punishable under chapter 572.
235         (5)  The provisions of this subsection shall not
236    preclude or hinder the ability of a local law enforcement
237    agency to conduct investigations into potential violations
238    punishable under chapter 572 or any other crime or criminal
239    activity in its jurisdiction.
240         (6)  Any person or establishment licensed under this
241    chapter that is convicted of or pleads guilty to a violation
242    punishable under chapter 572, and any affiliated company of
243    such person or establishment, shall be permanently
244    prohibited from being licensed to participate in any way in
245    a program implementing video lottery gaming terminals should
246    such a program be implemented in this state.
       313.255.  1.  The director shall issue, suspend,
2     revoke, and renew licenses for lottery game retailers
3     pursuant to rules and regulations adopted by the
4     commission.  Such rules shall specify that at least ten
5     percent of all licenses awarded to lottery game retailers in
6     constitutional charter cities not within a county and
7     constitutional charter cities with a population of at least
8     four hundred fifty thousand not located wholly within a
9     county of the first class with a charter form of government
10    shall be awarded to minority-owned and -controlled business
11    enterprises.  Licensing rules and regulations shall include
12    requirements relating to the financial responsibility of the
13    licensee, the accessibility of the licensee's place of
14    business or activity to the public, the sufficiency of
15    existing licenses to serve the public interest, the volume
16    of expected sales, the security and efficient operation of
17    the lottery, and other matters necessary to protect the
18    public interest and trust in the lottery and to further the

19   sales of lottery tickets or shares.  Lottery game retailers
20   shall be selected without regard to political affiliation.
21       2.  The commission may sell lottery tickets at its
22   office and at special events.
23       3.  The commission shall require every retailer to post
24   a bond, a bonding fee or a letter of credit in such amount
25   as may be required by the commission, and upon licensure
26   shall prominently display his license, or a copy thereof, as
27   provided in the rules and regulations of the commission.
28       4.  All licenses for lottery game retailers shall
29   specify the place such sales shall take place.
30       5.  A lottery game retailer license shall not be
31   assignable or transferable.
32       6.  A license shall be revoked upon a finding that the
33   licensee:
34       (1)  Has knowingly provided false or misleading
35   information to the commission or its employees;
36       (2)  Has been convicted of any felony; or
37       (3)  Has endangered the security of the lottery.
38       7.  A license may be suspended, revoked, or not renewed
39   for any of the following causes:
40       (1)  A change of business location;
41       (2)  An insufficient sales volume;
42       (3)  A delinquency in remitting money owed to the
43   lottery; **[**or**]**
44       (4)  Any violation of any rule or regulation adopted
45   pursuant to this section by the commission; **or**
46       **(5)  Possession of a gambling device as defined**
47   **pursuant to section 572.010.**

     572.010.  As used in this chapter the following terms
2    mean:

3    (1)  "Advance gambling activity", a person advances

4    gambling activity if, acting other than as a player, he or

5    she engages in conduct that materially aids any form of

6    gambling activity.  Conduct of this nature includes but is

7    not limited to conduct directed toward the creation or

8    establishment of the particular game, lottery, contest,

9    scheme, device or activity involved, toward the acquisition

10   or maintenance of premises, paraphernalia, equipment or

11   apparatus therefor, toward the solicitation or inducement of

12   persons to participate therein, toward the actual conduct of

13   the playing phases thereof, toward the arrangement or

14   communication of any of its financial or recording phases,

15   or toward any other phase of its operation.  A person

16   advances gambling activity if, having substantial

17   proprietary control or other authoritative control over

18   premises being used with his or her knowledge for purposes

19   of gambling activity, he or she permits that activity to

20   occur or continue or makes no effort to prevent its

21   occurrence or continuation.  The supplying, servicing and

22   operation of a licensed excursion gambling boat under

23   sections 313.800 to 313.840 does not constitute advancing

24   gambling activity;

25   (2)  "Bookmaking", advancing gambling activity by

26   unlawfully accepting bets from members of the public as a

27   business, rather than in a casual or personal fashion, upon

28   the outcomes of future contingent events;

29   (3)  "Contest of chance", any contest, game, gaming

30   scheme or gaming device in which the outcome depends in a

31   material degree upon an element of chance, notwithstanding

32   that the skill of the contestants may also be a factor

33   therein;

34      (4)  "Gambling", a person engages in gambling when he
35  or she stakes or risks something of value upon the outcome
36  of a contest of chance or a future contingent event not
37  under his or her control or influence, upon an agreement or
38  understanding that he or she will receive something of value
39  in the event of a certain outcome.  Gambling does not
40  include bona fide business transactions valid under the law
41  of contracts, including but not limited to contracts for the
42  purchase or sale at a future date of securities or
43  commodities, and agreements to compensate for loss caused by
44  the happening of chance, including but not limited to
45  contracts of indemnity or guaranty and life, health or
46  accident insurance; nor does gambling include playing an
47  amusement device that confers only an immediate right of
48  replay not exchangeable for something of value.  Gambling
49  does not include any licensed activity, or persons
50  participating in such games which are covered by sections
51  313.800 to 313.840;
52      (5)  "Gambling device", any device, machine,
53  paraphernalia or equipment that is **not approved by the**
54  **Missouri gaming commission or state lottery commission under**
55  **the provisions of chapter 313 and that:**
56      **(a)  Contains a random number generator where prize**
57  **payout percentages are controlled or adjustable;**
58      **(b)  Is used in any scenario where coins or cash prizes**
59  **are involved or any scenario where a prize is converted to**
60  **cash or monetary credit of any kind related to the use of**
61  **the gambling device; or**
62      **(c)  Is** used or usable in the playing phases of any
63  gambling activity, whether that activity consists of
64  gambling between persons or gambling by a person with a
65  machine, **regardless of whether the machine or device or**

66   **system or network of devices includes a preview of the**
67   **outcome or whether the outcome is known, displayed, or**
68   **capable of being known or displayed to the user;**

69   **Any device not described in paragraphs (a) to (c) of this**
70   **subdivision that a reasonable person would believe is usable**
71   **or can be made readily usable in gambling or any phases of**
72   **gambling activity shall be prima facia evidence of a**
73   **gambling device and may be subject to seizure by any peace**
74   **officer in this state.** However, lottery tickets, policy
75   slips and other items used in the playing phases of lottery
76   and policy schemes are not gambling devices within this
77   definition;

78        (6) "Gambling record", any article, instrument,
79   record, receipt, ticket, certificate, token, slip or
80   notation used or intended to be used in connection with
81   unlawful gambling activity;

82        (7) "Lottery" or "policy", an unlawful gambling scheme
83   in which for a consideration the participants are given an
84   opportunity to win something of value, the award of which is
85   determined by chance;

86        (8) "Player", a person who engages in any form of
87   gambling solely as a contestant or bettor, without receiving
88   or becoming entitled to receive any profit therefrom other
89   than personal gambling winnings, and without otherwise
90   rendering any material assistance to the establishment,
91   conduct or operation of the particular gambling activity.  A
92   person who gambles at a social game of chance on equal terms
93   with the other participants therein does not otherwise
94   render material assistance to the establishment, conduct or
95   operation thereof by performing, without fee or
96   remuneration, acts directed toward the arrangement or

97   facilitation of the game, such as inviting persons to play,
98   permitting the use of premises therefor and supplying cards
99   or other equipment used therein.  A person who engages in
100  "bookmaking" as defined in subdivision (2) of this section
101  is not a player;

102       (9)  "Professional player", a player who engages in
103  gambling for a livelihood or who has derived at least twenty
104  percent of his or her income in any one year within the past
105  five years from acting solely as a player;

106       (10)  "Profit from gambling activity", a person profits
107  from gambling activity if, other than as a player, he or she
108  accepts or receives money or other property pursuant to an
109  agreement or understanding with any person whereby he
110  participates or is to participate in the proceeds of
111  gambling activity;

112       (11)  "Slot machine", a gambling device that as a
113  result of the insertion of a coin or other object operates,
114  either completely automatically or with the aid of some
115  physical act by the player, in such a manner that, depending
116  upon elements of chance, **from the perspective of a player or**
117  **a reasonable person**, it may eject something of value,
118  **regardless of whether the machine or device or system or**
119  **network of devices includes a preview of the outcome or**
120  **whether the outcome is known, displayed, or capable of being**
121  **known or displayed to the user.**  A device so constructed or
122  readily adaptable or convertible to such use is no less a
123  slot machine because it is not in working order or because
124  some mechanical act of manipulation or repair is required to
125  accomplish its adaptation, conversion or workability.  Nor
126  is it any less a slot machine because apart from its use or
127  adaptability as such it may also sell or deliver something
128  of value on a basis other than chance;

129        (12)  "Something of value", any money or property, any
130   token, object or article exchangeable for money or property,
131   or any form of credit or promise directly or indirectly
132   contemplating transfer of money or property or of any
133   interest therein or involving extension of a service,
134   entertainment or a privilege of playing at a game or scheme
135   without charge;
136        (13)  "Unlawful", not specifically authorized by law.
  1        572.015.  **1.**  Nothing in this chapter prohibits
  2   constitutionally authorized activities under Article III,
  3   Sections 39(a) to 39(f) of the Missouri Constitution.
  4        **2.  For the purposes of this section and Article III,**
  5   **Section 39(f) of the Missouri Constitution, the following**
  6   **terms shall mean:**
  7        **(1)  "Net proceeds", the gross amount paid for tickets**
  8   **for a raffle or sweepstakes minus the payment of prizes and**
  9   **administrative expenses.  Administrative expenses relating**
 10   **to the purchase or rental of supplies and equipment utilized**
 11   **in conducting the raffle or sweepstakes shall not be in**
 12   **excess of the reasonable market purchase price or reasonable**
 13   **market rental rate for such supplies and equipment, and in**
 14   **no case shall such administrative expenses be based on a**
 15   **percentage of proceeds;**
 16        **(2)  "Raffle" or "sweepstakes", the award by chance of**
 17   **one or more prizes to one or more persons among a group of**
 18   **persons who have paid or promised something of value in**
 19   **exchange for a ticket that represents one or more equal**
 20   **chances to win a prize, and for which all tickets have been**
 21   **sold prior to the selection of a winner or winners;**
 22        **(3)  "Sponsor", the offering of a raffle or sweepstakes**
 23   **by an organization recognized as charitable or religious**
 24   **pursuant to federal law in which the entire net proceeds of**

25   such raffle or sweepstakes shall be exclusively devoted to
26   the lawful purposes of the organization permitted to conduct
27   the raffle or sweepstakes.

572.100.  The general assembly by enacting this chapter
2   intends to preempt any other regulation of the area covered
3   by this chapter.  No governmental subdivision or agency may
4   enact or enforce a law that regulates or makes any conduct
5   in the area covered by this chapter an offense, or the
6   subject of a criminal or civil penalty or sanction of any
7   kind, except for the revocation, suspension, or denial by
8   the Missouri lottery commission, the Missouri gaming
9   commission, or the division of alcohol and tobacco control
10   of a license issued under chapter 311 or 313.  The term
11   "gambling", as used in this chapter, does not include
12   licensed activities under sections 313.800 to 313.840.

Section B.  Because of the need to eliminate illegal
2   gambling activity in this state, section A of this act is
3   deemed necessary for the immediate preservation of the
4   public health, welfare, peace, and safety, and is hereby
5   declared to be an emergency act within the meaning of the
6   constitution, and section A of this act shall be in full
7   force and effect upon its passage and approval.

✓