IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-330 JAR |
| | ) |
| TORCH ELECTRONICS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF TNT AMUSEMENTS, INC.'S**
**REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

The Defendants' Memorandum in Opposition to TNT's Motion for Preliminary Injunction (Doc. #21) (the "Opposition") plays a familiar tune: "just wait." It is the same theme that the Defendants have trumpeted to avoid an adjudication of the legality of its so-called "No Chance" gambling devices (the "Torch Devices") in prior litigation. But despite the Defendants' protestations, there is no basis for this Court to deny TNT a hearing on its claims, nor any basis to stay this case pending the outcome of other litigation to which TNT is not a party. Far from asking the Court to merely "trust us" as to the illegality of the Torch Devices, TNT has offered to put its proof on display at the very outset of this case by applying for a preliminary injunction. It is the Defendants who ask this Court to trust that the issues in this case can be resolved in other litigation, without TNT's participation. But as explained below, the evidence presented at the preliminary injunction hearing will straightforwardly and persuasively convince the Court that the Torch Devices are illegal gambling devices and illegal slot machines and that TNT is being irreparably harmed each day by the Defendants' false representations to the contrary. For those reasons, TNT respectfully requests that the Court grant TNT the preliminary injunction it has requested.

## DISCUSSION

### I. At the Very Least, TNT's Motion Presents a Substantial Basis for Preliminary Injunctive Relief That Entitles It to a Hearing

TNT's reply starts where the Opposition ends: with the Defendants' suggestion that TNT is not even entitled to a ***hearing*** on its Motion for Preliminary Injunction. Yet despite this assertion, the Opposition instead persuasively demonstrates why TNT is entitled to a hearing: "[a]n evidentiary hearing is ***required*** prior to issuing a preliminary injunction . . . when a material factual controversy exists." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002) (emphasis added). Ironically, in attempting to deny TNT the opportunity for a hearing, the Opposition reveals several material factual disputes that make a hearing mandatory.

For example, the Opposition argues that "Torch devices are not 'slot machines' or 'gambling devices'" and do not involve an element of chance. Opp'n (Doc. #21) at 7. TNT's motion, however, asserts that the Torch Devices are, in fact, slot machines and gambling devices and do involve an element of chance. *See* Mem. (Doc. #16) at 1–5, 11, 15; *see also infra* § II. The Opposition argues that TNT cannot show irreparable harm because its damages are capable of being measured. Opp'n (Doc. #21) at 13–14. But TNT's motion asserts that its damages go beyond ordinary economic losses, to include harms that are difficult or impossible to quantify, including harm to its goodwill. *See* Mem. (Doc. #16) at 1–3, 9–11, 15; *see also infra* § III. Finally, the Opposition argues that public policy weighs in favor of denying the preliminary injunction. Opp'n (Doc #21) at 4–6. But again, TNT asserts that the public policy weighs heavily in favor of granting the injunction. *See* Mem. (Doc. #16) at 10–15; *see also infra* § IV.

Thus, far from establishing that TNT is not entitled to a hearing, the Opposition in fact establishes several genuine disputes between the parties, and the existence of those disputes is exactly why an evidentiary hearing is required.

**II.    The Opposition Fails to Rebut—and in Fact Admits—TNT's Central Contention: The Torch Devices Are Illegal Under Missouri Law**

The Opposition repeats the same refrain that appears on the false advertisements that form the basis of TNT's Lanham Act claim in this case: that the Torch Devices' "Prize Viewer" mechanism eliminates the element of chance and thereby places them beyond the reach of Missouri's gambling laws. But those claims are false for two independent reasons: (1) the "Prize Viewer" mechanism does not eliminate the element of chance; and (2) even if it did, that is not enough to keep the Torch Devices from being illegal gambling devices and slot machines under Missouri law.[1]

**A.    The "Pre-Reveal" Mechanism Does Not Eliminate the Element of Chance**

So-called "pre-reveal" mechanisms like the "Prize Viewer" in the Torch Devices do not significantly differentiate so-called "no chance" devices from conventional slot machines; rather, they are merely a "façade" intended to "take an otherwise illegal game outside of the scope" of state gambling laws. *See Mayle Bingo Co., L.L.C. v. Ohio Dep't of Pub. Safety*, 152 N.E.3d 1237, 1242 (Ohio Ct. App. 2020). This Court should see through the Defendants' subterfuge and recognize what is evident from simply playing the game: the element of chance is present in every play of the Torch Devices, even when the player elects to use the "Prize Viewer" option.

---

[1] The Opposition misleadingly contends that the Missouri Gaming Commission ("MGC") has taken the position that the Torch Devices are not illegal gambling devices by mischaracterizing the prior testimony of a single MGC employee. *See* **Ex. 7** (Friedman Decl.) ¶¶ 14–16, 25–26 (explaining why Mr. Hanavan's testimony supports a finding that the Torch Devices are illegal gambling devices and illegal slot machines). But in fact, MGC is on record that so-called "No Chance" games like those on the Torch Devices satisfy the statutory criteria to make them illegal gambling devices and illegal slot machines. *See* **Ex. 8** (MGC General Counsel's July 3, 2019 letter to Nathan Howard) at 1 (stating that such devices are "used or USABLE in the playing phases of gambling activities and therefore constitute 'gambling devices' and 'slot machines'" under Missouri law; and further stating that "the fact that the players can choose to reveal a prize prior to the first game play . . . does not remove the devices from the[] prohibitions" of Missouri law).

As TNT's retained expert, Stacy Friedman, is prepared to testify, even when a player chooses to use the "Prize Viewer" option and see the outcome of the subsequent game, the element of chance remains. *See* **Ex. 7** (Friedman Decl.) ¶¶ 16, 18–19.[2] Even for a player using the "Prize Viewer," that player can only learn whether the next "spin" of the reels will be a "winner" by first paying for a losing outcome. *See id.* ¶ 26. At the time the player pays for the losing outcome, they have no information about the subsequent outcome or any later outcome. *See id.*; *see also Gator Coin II, Inc. v. Fla. Dep't of Bus. & Prof'l Regulation*, 254 So. 3d 1113, 1118 (Fla. Dist. Ct. App. 2018) ("While it is true that the user is advised of the outcome of the game at hand ahead of time through the preview feature, the user cannot predict . . . the outcome of Game 2 while playing Game 1.").

As Mr. Friedman's declaration helpfully explains, the role of chance in the operation of the Torch Devices is, in at least that respect, no different from a roll of scratch-off lottery tickets. A player who scratches off one of several lottery tickets has no information about the outcome of the subsequent tickets in the roll, and the "winning" and "losing" tickets are not arranged in any predictable order. *See* **Ex. 7** ¶¶ 22–24, 26. Thus, even if the player knows that the first ticket on the roll is a loser, playing the remaining lottery tickets still involves an element of chance. *See id.* The Torch Devices operate in much the same way. Although a player who is aware of the "Prize Viewer" mechanism can choose to learn the outcome of the very next play, using that mechanism has no effect on the chance involved in subsequent plays. *Id.* ¶ 26.

Despite the Defendants' emphatic focus the "predetermined finite outcomes that are in sequential order" on the Torch Devices, Mr. Friedman persuasively explains why that does not

---

[2] To avoid confusion, exhibits to this reply are numbered sequentially with the exhibits to TNT's initial motion for preliminary injunction.

eliminate chance from the games. Perhaps most obviously, the element of chance is involved based on when and where a player chooses to play a Torch Device, as this impacts when they enter the "predetermined" sequence of outcomes. *See* **Ex. 7** ¶ 23. Similarly, to the extent that the initial sequence of outcomes was determined by a random or otherwise unpredictable process, that is but another respect in which chance is involved in the game. *See id.* ¶ 22.

    B. **Even If the "Pre-Reveal" Mechanism Could Eliminate Chance for Some Players, the Torch Devices Are Still Illegal**

As the Defendants' briefing concedes, when the player does not use the "Prize Viewer" option, the Torch Devices "essentially play just like a slot machine." *See* Ex. Q to Opp'n (Hanavan Transcript) at 51:13–17. And as the Defendants' chosen expert Nick Farley acknowledges, the "Prize Viewer" feature is optional; a player must actively choose to use it. *See* **Ex. 7** ¶ 25. Thus, for any player who does not know of or chooses not to use the "Prize Viewer," the player chooses to play a game of chance—and that alone is enough to make the Torch Devices illegal gambling devices under Missouri law. *See* Mo. Rev. Stat. § 572.010(5) (defining "gambling device" to include any device that is "used *or usable* in the playing phase of any gambling activity" (emphasis added)).

But the Defendants' concessions do not stop there. Mr. Farley's declaration also states that "[n]either the operators nor the players have the ability to affect the game outcomes that are distributed from the finite pools" that dictate those outcomes. *See* Ex. N to Opp'n (Doc. #21-14) ¶ 7. That admission—that players are unable to affect the outcomes of the games—is, once again, sufficient to make the Torch Devices illegal gambling devices under Missouri law. *See* Mo. Rev. Stat. § 572.010(4) ("[A] person engages in gambling when he or she stakes or risks something of value upon the outcome of a contest of chance *or* a future contingent event *not under his or her control or influence* . . . ." (emphasis added)).

Nor does the Opposition respond to one of the central arguments of TNT's motion: that, even if the Torch Devices are not gambling devices in every instance of their operation, they are "readily adaptable or convertible" for use as a slot machine. *See* Mem. (Doc. #16) at 5; Mo. Rev. Stat. § 572.010(11) ("A device so constructed or readily adaptable or convertible to such use is no less a slot machine . . . because some mechanical act of manipulation . . . is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance."). As the Defendants' briefing reflects, for any player that does not select the "Prize Viewer" option, the Torch Devices operate just as slot machine, as they "may eject something of value" following "the insertion of a coin or other object," and "operate[], either completely automatically or with the aid of some physical act by the player." *Id.* As such, the Defendants have all but conceded, just as TNT's motion argued, the Torch Devices are illegal gambling devices or illegal slot machines under at least one of the provisions of the Missouri gambling statute. *See* **Ex. 7** ¶¶ 15–27 (explaining why the Torch Devices independently satisfy several of the statutory criteria to be either "gambling devices" or "slot machines").

### III. The Fact That TNT Did Not Seek Preliminary Injunctive Relief in Its One Prior Case Against Torch Does Not Defeat Its Entitlement to Relief for the Distinct Wrongs Alleged in This Case

The Defendants do not appear to contest TNT's assertion that it has lost existing business relationships and continues to be threatened with the loss of additional business relationships as a result of the Defendants' conduct. Instead, they seek to both shift and exaggerate the burden on TNT to demonstrate irreparable harm by requiring TNT to demonstrate "new" harms that must be remedied on an "emergency" basis. Opp'n (Doc. # 21) at 2. But once TNT demonstrates a likelihood of success, the Lanham Act requires this Court to presume irreparable harm to TNT from the Defendants' illegal conduct, as the Defendants themselves acknowledge. 15 U.S.C.

§ 1116(a) ("A plaintiff . . . shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction . . . ."); *see also Breeze Smoke LLC v. Yatin Enters. Inc.*, No. 1:22-CV-1182, 2023 WL 3070893 at *11 (W.D. Mich. Apr. 25, 2023) (interpreting presumption of irreparable harm, enacted in 2020); *MGMT Residential, LLC v. Reeves*, No. CV 22-3966, 2023 WL 2471263 at *3 (E.D. Pa. Mar. 10, 2023) (same).

As the Defendants' own citations reflect, all a plaintiff needs to establish for the Lanham Act's presumption to attach is that the falsities complained of had a "tendency to deceive." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023) (discussing whether harm was sufficiently established only because rebuttable presumption did not attach); *see also Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980) (same analysis under Section 43(a)); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 789 (8th Cir. 2004) ("A showing that confusion is likely supports a strong presumption of irreparable harm."); *Google LLC v. Saeed*, No. 1:23-CV-03369-VEC, 2023 WL 3122179 at *3 (S.D.N.Y. Apr. 25, 2023) (determining statutory presumption triggered by showing of likelihood to confuse or deceive).

As set forth above, TNT has pled (and at the hearing will prove) that it is likely to succeed on the merits of its claims, thereby triggering the Lanham Act's presumption of irreparable harm. But TNT does not rest on that presumption alone: as its initial submission made clear, it will prove at the hearing that the Defendants' illegal conduct has caused and will continue, absent an injunction from this Court, to cause significant harm to TNT's existing and potential business relationships.

**A. Even Without the Benefit of the Lanham Act's Presumption, TNT Can Establish Irreparable Harm**

The only rebuttal that the Defendants offer in response to the Lanham Act's presumption of irreparable harm is TNT's supposed "delay" in pursuing preliminary injunctive relief. Although the Defendants are correct that some courts, prior the 2020 amendment to the Lanham Act, viewed a plaintiff's delay in seeking injunctive relief as weighing against a finding of irreparable harm,[3] here TNT is not merely relying upon a presumption of irreparable harm: it can demonstrate it. TNT will present evidence at the hearing of numerous instances, as recently as December 2022, in which its legal amusement games have been removed by its customers to make room for the Defendants' illegal gambling devices. *See* **Ex. 9** (Timeline of Removal of TNT Machines) (detailing twelve such instances). Those customers (and other potential customers) have limited floor space, and every spot taken up by an illegal Torch Device is a spot taken away, either actually or potentially, from a legal amusement device such as those offered by TNT. *See NTD I, LLC v. Alliant Asset Mgmt. Co., LLC*, 337 F. Supp. 3d 877, 889 (E.D. Mo. 2018) (recognizing "real property is unique, and monetary relief is inadequate compensation for the loss of property" (citing *O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir. 1996))).

---

[3] *But see Safety-Kleen Sys., Inc. v. Hennkens,* 301 F.3d 931, 936 (8th Cir. 2002) (holding that the "issue is whether 'the length of delay was unreasonable,' an issue that turns on the facts of each case" and affirming grant of preliminary injunction in spite of delay); *Tari Labs, LLC v. Lightning Labs, Inc.*, No. 3:22-CV-07789-WHO, 2023 WL 2480739, at * 11 (N.D. Cal. Mar. 13, 2023) (holding excusable delay in seeking injunctive relief not sufficient to overcome statutory presumption in Lanham Act); *City of New York v. Henriquez*, No. 22-CV-3190, 2023 WL 2186340, at *26 (E.D.N.Y. Feb. 23, 2023) (holding delay caused by good faith investigation did not rebut statutory presumption in Lanham Act); *Agape Hospice Care, Inc. v. Hospice Care of Georgia, LLC*, No. 1:22-CV-00927-VMC, 2022 WL 18777532, at *10 (N.D. Ga. Nov. 2, 2022) (holding delay caused by attempts to amicably resolve dispute not unreasonable and did not rebut statutory presumption in Lanham Act); *Hydrojug, Inc. v. Five Below, Inc.*, No. 1:22-CV-00728-PAB, 2022 WL 4017443, at *18 (N.D. Ohio Sept. 2, 2022) (same).

Absent a preliminary injunction, these harms are bound to continue. Every day that the Defendants' false advertisements are displayed to the public is another day that those advertisements inflict immeasurable losses to TNT, both in the form of lost goodwill and relationships with existing customers and lost opportunities with an inestimable number of potential customers who are deceived by the Defendants' false representations. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2023 WL 2918724 at *2 (C.D. Cal. Apr. 12, 2023) (holding presumption may be rebutted by showing "that the alleged injuries are purely pecuniary, or that [the defendant has] ceased or will soon cease the infringing activities."); *see also Kroupa v. Nielsen*, 731 F.3d 813, 821 (8th Cir. 2013) (recognizing irreparable harm where evidence presented risk of injury, notwithstanding asserted delay); *NTD*, 337 F.Supp.3d at 889 ("Loss of reputation and goodwill can constitute irreparable injury.").

Nor can that harm be readily measured in money damages. Indeed, the Lanham Act was amended in 2020 to add a presumption of irreparable harm for precisely that reason: the harms inflicted by false advertising are not susceptible to simple mathematical calculation. *Cisco Sys., Inc. v. Wuhan Wolon Commc'n Tech. Co.*, No. 5:21-CV-04272-EJD, 2021 WL 4962661, at *2 (N.D. Cal. July 23, 2021) (describing 2020 enactment of statutory presumption). It is not possible to contact every consumer who views a false advertisement, let alone reliably measure the impact that the false advertisement has had on the consumer's purchasing decision. *See MGMT*, 2023 WL 2471263, at *3 (interpreting the newly enacted statutory presumption and recognizing that "injunctive relief has been the 'usual and normal remedy' for false advertising claims"). While TNT will present evidence at the hearing to demonstrate particular locations where its legal games have been replaced by the Torch Devices, *see* **Ex. 9**, it is impossible to say how many other business opportunities have been lost by virtue of the Defendants' illegal conduct.

### B. TNT's Supposed "Delay" in Filing Its Motion Does Not Undermine a Finding of Irreparable Harm

In any event, even if this Court were to consider any alleged "delay" by TNT as bearing on the question of irreparable harm, the timing of TNT's motion in this case is entirely justified. Before TNT could file the instant action and pursue preliminary injunctive relief, it first had to develop and marshal the evidence it would need in order to support its claims. Among other things, it needed to establish the existence of a forward-looking injury that would continue in the event that the Defendants' activities continued unabated, in order to refute any rebuttal the Defendants might make as to the existence of irreparable harm. Next, despite the repeated findings of courts, the Missouri Gaming Commission, and a host of others, TNT had to assemble its own evidence to establish, as a factual matter, that the Torch Devices did indeed meet the prerequisites to be "gambling devices" and "slot machines" under Missouri law.

To do so, TNT retained Stacy Friedman only as recently as March 2, 2023, and only thereafter was Mr. Friedman able to decompile the software of such a device in order to apprehend its nature and function. It was only then, once TNT felt it had assembled the evidence necessary to persuade a factfinder of each of the factors supporting its request for injunctive relief, that TNT filed its motion. To do anything else would have been a dereliction of the undersigned's duty as an officer of this Court not to file an unsupported request for relief. Now that it has done so, TNT merely seeks the opportunity to present that evidence for the Court's consideration, so that the Defendants may finally have the judicial determination as to the legality of the Torch Devices that they claim to long for.

The Defendants also fault TNT for not seeking preliminary injunctive relief in prior litigation between Torch and TNT, as well as a taxpayer derivative action filed by one of TNT's owners, Jim Turntine. However, neither case pled the types of claims or alleged the types of

forward-looking harms at issue here; instead, each alleged historical harms not readily susceptible to preliminary injunctive relief. *See Turntine v. Torch Electronics, LLC*, Case No. 20CL-CC03000 (Mo. Cir. Ct. 2020) (taxpayer derivative suit seeking to collect taxes alleged to be owed to Crawford County); *TNT Amusements, Inc. v. Torch Electronics LLC*, 20SL-CC03002 (Mo Cir. Ct. 2020) (tortious interference action alleging lost business in connection with single location). And, to the extent that the Defendants imply that TNT could have assembled the evidence it needed to pursue this action through discovery in those cases, that contention is undermined by Torch's outright refusal to respond to prior discovery requests, resulting in an order compelling Torch to do so. *See* **Ex. 10** (Order on Mot. to Compel).

Finally, and quite remarkably, the Defendants take issue with TNT's decision to file its motion approximately one month after filing its Complaint in this action. As explained above, TNT was still at that time in the process of assembling the evidence it would need to file a meritorious motion for preliminary injunctive relief. But even then, it is perfectly logical that TNT should wait to seek such relief until the Defendants' counsel had both appeared in this action and consented (or in this case, objected) to the assigned judge's jurisdiction.[4]

As explained above, TNT has been, and will continue to be, irreparably harmed by the Defendants' illegal conduct, absent preliminary injunctive relief from this Court. That was true, it is true, and it will continue to be true, whether TNT had filed its motion a month ago or a month

---

[4] Incidentally, as the Defendants' counsel is aware, TNT acceded to the Defendants' request for an extension of time to answer or otherwise to respond to the Complaint as a courtesy to Defendants' counsel given the short interval between counsel's retention by the Defendants and what would have otherwise been the deadline for filing an answer, as well as the press of other business that counsel disclosed to the undersigned. It would have been inconsistent with that courtesy for the undersigned to have filed a motion for preliminary injunction at a time when the undersigned knew that the demands on the Defendants' counsel's time would not have permitted a timely response. It is disappointing that the Defendants' counsel now seeks to use the undersigned's courtesy as a sword to deny TNT its day in court.

from now. The irreparable harm that TNT continues to experience has not abated with the passage of time, *see* **Ex. 9**, and there is no reason to think it will do so now. TNT should be permitted to present the evidence of that irreparable harm to this Court in order to prove its entitlement to the injunctive relief it seeks.

**IV.    No Substantial Public Interest Would Be Served by Staying This Case**

The Defendants further request that this Court enter a stay of this case pending the outcome of a declaratory judgment action that Torch has initiated in the Circuit Court of Cole County (the "Cole County Case"). That argument fails for the simple reason that the ruling in the Cole County Case will have no effect on the viability of TNT's claims in this action. Under established principles of res judicata, a party cannot be bound by a judgment to which he is not a party. *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 640 (8th Cir. 2008). The only way that the outcome of the Cole County Case could even plausibly affect the Court's disposition of this case is if Torch were to *lose* that case—in which case TNT could seek to assert nonmutual issue preclusion against Torch as a basis for finding that the Torch Devices are illegal gambling devices. *See Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003); *Twin City Pipe Trades Serv. Ass'n, Inc. v. Wenner Quality Servs., Inc.*, 869 F.3d 672, 676 (8th Cir. 2017). But in the event that Torch prevails in the Cole County Case, that would in no way prevent TNT from seeking and obtaining the very same relief it seeks in this case under principles of res judicata. As such, there is no warrant for delaying a hearing in this matter pending the outcome of the Cole County Case—an outcome that may be months or even years away—and thereby forcing TNT to suffer continued irreparable harm in the interim. *See Martin v. Medicredit, Inc.*, No. 4:16CV01138 ERW, 2016 WL 6696068, at *3–4 (E.D. Mo. Nov. 15, 2016) (denying motion to stay because parties not identical or substantially similar in related cases: "To

constitute parallel actions, a determination in one action should leave little or nothing to be determined in the other.").

Defendants also exaggerate the impact that an injunction from this Court would have on the Cole County Case. If TNT prevails on its motion for preliminary injunction, the Court will at most issue *preliminary* injunctive relief and find that TNT is *likely* to succeed on the merits of its claim. Since these determinations are by definition preliminary and not final, neither would preclude the Circuit Court of Cole County from reaching its own judgment on the merits of the claims in that litigation, nor would this Court be precluded from revisiting or amending its order if other developments called for it. Instead, the question presented by TNT's motion is a simple one: should TNT be required to suffer irreparable harm while it awaits final judgment, either in this case or the Cole County Case (to which it is not even a party)? So long as TNT demonstrates that it is likely to succeed, then the answer must be an emphatic "no."[5]

The Defendants, meanwhile, ignore the substantial public interests raised by TNT's motion. Not only does the Defendants' continued illegal conduct cause irreparable harm to TNT; it also causes continuing harm to players and business owners deceived by Defendants' false claims. In enjoining the Defendants from continuing their illegal enterprise, this Court will vindicate not only TNT's interests, but also the interests of those innocent parties affected by the Defendants' wrongful conduct. In the absence of an injunction, that wrongful conduct will

---

[5] TNT acknowledges, as the Opposition points out, that the Circuit Court of Crawford County has entered in a stay in the taxpayer derivative action brought by Mr. Turntine. Although Mr. Turntine opposed Torch's motion to stay that action, the court's decision on that motion is rationalized by a consideration not present here: in that case, Mr. Turntine is essentially pursuing a claim on behalf of the taxpayers of Crawford County, whose interests were likewise being represented, at least in name, by the State of Missouri in the Cole County Case. TNT, by contrast, is not a party to the Cole County Case and cannot conceivably be bound by any outcome in that case.

continue, with its attendant consequences for problem gamblers and children who are exposed to the Defendants' games and the business owners and players who have been duped by the Defendants' false advertisements. [6]

## CONCLUSION

The Opposition effectively admits that the Torch Devices are illegal gambling devices and illegal slot machines, in part because the declaration of the Defendants' own expert admits one of the factual predicates to make them so under Missouri law. With that proposition established, the Lanham Act's presumption of irreparable harm attaches, and this Court need only determine whether the public interest and the balance of the equities weighs in favor of an injunction. For all the reasons explained in TNT's motion and this reply, and based upon the evidence that TNT shall present at the hearing, the answer to each of those questions is "yes." TNT therefore respectfully requests that the Court issue the preliminary injunction requested by TNT.

---

[6] The Defendants appeal to the *Burford* abstention doctrine, but that doctrine simply has no application to this case since there is no "state administrative process" at issue. *See Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1503 (8th Cir. 1992) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943)); *see also Bilden v. United Equitable Ins. Co.*, 921 F.2d 822, 826 (8th Cir. 1990) (citing *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) ("[A]bstention should be used only in the extraordinary and narrow circumstances where it would clearly serve an important countervailing interest.")). The doctrine is relevant only when "complex state administrative processes demand[] significant familiarity with distinctively local regulatory facts" and a federal court's interpretation of state laws is "dangerous to the success of state policies." *Dixon v. City of St. Louis*, 4:19-CV-0112-AGF, 2021 WL 616151, at *6 (E.D. Mo. Feb. 17, 2021). As was true in *Dixon*, "[s]uch is not the case here." *Id.*

Dated: May 5, 2023

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
SASHA RIEDISSER, #71141MO
MARY GRACE WARREN, #73147MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*sasha.riedisser@bryancave.com*
*marygrace.warren@bryancave.com*

*Attorneys for TNT Amusements, Inc. d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2023, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO