## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MISSOURI
## EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, ) ) )  **Plaintiff,** ) ) v. ) ) TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER ) ) ) ) ) **Defendants.** ) | Case No. 4:23-cv-00330-JAR |

TNT AMUSEMENTS, INC., d/b/a
PLAY-MOR COIN-OP,

      Plaintiff,

v.                         Case No. 4:23-cv-00330-JAR

TORCH ELECTRONICS, LLC,
STEVEN MILTENBERGER, and
SONDRA MILTENBERGER

      Defendants.

## DEFENDANTS' REPLY IN SUPPORT OF PARTIAL MOTION TO DISMISS

In the short amount of time TNT's case has been on file, a clear pattern has emerged – if the *applicable* legal standard is unhelpful to TNT's position, TNT will declare a more favorable standard applies and hope the Court simply takes TNT at its word. TNT would like the Court to spare its civil RICO claims based on broad and generalized statements about liberal pleading standards. But the United States Supreme Court, on several occasions, has made clear civil RICO claims are not judged by liberal pleading rules when it comes to satisfying civil RICO's heightened and strict statutory standing requirements. In fact, according to the Supreme Court, its "RICO proximate cause precedent" creates much more than "a mere pleading rule."[1] TNT has failed to satisfy that standard, and TNT cannot resolve its RICO standing problem by amending to add additional verbiage to its 400-paragraph Complaint.

---

[1] *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 10-12 (2010) ("[T]he City cannot escape the proximate cause requirement merely by alleging that the fraudulent scheme embraced all those indirectly harmed by the alleged conduct. Otherwise our RICO proximate cause precedent would become a mere pleading rule.").

Rather than squarely addressing the applicable civil RICO statutory standing requirements, TNT presents a string of red herrings and straw man arguments in a desperate attempt to keep its RICO claims alive. TNT attempts to conflate civil RICO with the Lanham Act. In doing so, TNT ignores case law (again by the Supreme Court) making clear that while the Lanham Act (essentially a form of antitrust law) was enacted specifically to address claims by one competitor against another competitor, that was not the intended purpose of civil RICO. As the Supreme Court has explained, the heightened statutory standing requirements applicable to a civil RICO claim are specifically "meant to prevent . . . uncertain inquiries from overrunning RICO litigation" and those standards have "particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws." *Anza v. Ideal Steel Supply*, 547 U.S. 451, 460 (2006). Torch[2] chose to specifically target TNT's civil RICO claims because the standard, as defined by the Supreme Court, is specific and exacting to a degree that, as a matter of law, TNT cannot satisfy it here. Civil RICO was simply not intended to be used in the manner TNT would like. And case law bears that out.

The Supreme Court made a conscious decision in *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258 (1992), to limit the scope of civil RICO's applicability and impose a strict statutory standing requirement of "directness" and proximate causation that goes well beyond the typical "but for" conclusory pleading standard that might be acceptable to, for example, satisfy the less stringent Article III constitutional standing requirements. The Court in *Holmes* confirmed the district court properly dismissed the plaintiffs' civil RICO claims at the motion to dismiss stage, reversing the Ninth Circuit's opinion to the contrary. 503 U.S. at 258-60.

---

[2] Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger are collectively referred to herein as "Torch."

2

In 2006, the Supreme Court again upheld those strict standards – adding they apply with even more force where, as here, a civil RICO claim is asserted by one competitor against another. *Anza*, 547 U.S. at 453-54. The Court in *Anza* concluded the plaintiffs' civil RICO claims against their competitor should have been dismissed at the motion to dismiss stage. *Id*.

A few years later, in 2010, the Supreme Court once again took up the question of the proper civil RICO statutory standing requirements after the Second Circuit reversed the district court's dismissal of the City of New York's civil RICO claims at the motion to dismiss stage. *Hemi*, 559 U.S. at 10-12. The Court rejected the Second Circuit's attempt to equate the civil RICO standing proximate cause requirement with "foreseeability." *Hemi*, 559 U.S. at 10-12. The Supreme Court explained "*Anza* and *Holmes* never mention the concept of foreseeability," and it further noted the dissent in *Anza* (*i.e.*, not the law or current standard) criticized the majority's decision as "permit[ting] a defendant to evade liability for harms that are not only foreseeable, but the *intended* consequences of the defendant's unlawful behavior." *Hemi*, 559 U.S. at 12 (quoting *Anza*, 547 U.S. at 470 (Thomas, J., concurring in part and dissenting in part)) (further noting "the dissent there did not carry the day, and no one has asked us to revisit *Anza*").

And, more recently and on facts very similar to ours, the Ninth Circuit applied *Holmes* and *Anza* to affirm dismissal – at the motion to dismiss stage and without leave to amend – of Club One Casino's civil RICO claims against its competitor. *Club One Casino, Inc. v. Perry*, 837 Fed. Appx. 459 (2020). The court in *Club One* pointed out the plaintiff's "lost profits are not directly attributable to Defendants' alleged illegal acts" because "[a] host of other market factors, including changes to the local economy, shifting consumer preferences or the manner in which [the plaintiff] operated its business, could have caused [the plaintiff's] losses." *Club One*, 837 Fed. Appx. at 461.

Every case above originated from a district court's decision at the motion to dismiss stage. And in every case, the court confirmed dismissal is required where the circumstances surrounding the claim fail to clearly show injury proximately caused as a *direct* result of the alleged racketeering activity (and not some other *potential* cause like "shifting consumer preferences or the manner in which [the plaintiff] operated its business"). *Club One*, 837 Fed. Appx. at 461. TNT's claim that "at the motion to dismiss stage, TNT need not prove anything" and it only needs to "***ultimately***" demonstrate "proximate cause between a pattern of racketeering activity and the harm alleged" at trial, is impossible to square with the applicable standard established by the Supreme Court in *Holmes*, *Anza*, and *Hemi*. (*See* Doc. # 20, p. 3).

TNT's alleged harm, if any, is not direct. At best, TNT has alleged "but for" causation, but TNT cannot satisfy civil RICO's heightened statutory standing requirement for direct proximate causation. TNT's alleged loss of market share could have resulted from numerous causes entirely unrelated to the racketeering activity TNT alleges in its Complaint. Consumers might simply find TNT's games tired or out of date. Retailers might not like dealing with TNT's management. In any event, TNT's claimed injuries all relate to its alleged loss of market share (and thus income) based on Torch's conduct.[3] The Supreme Court has made very clear "[a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense." *Anza*, 547 U.S. at 460 (citing *Associated Gen Contractors*, 459 U.S. 519, 537 (1983) ("We are also satisfied that an allegation of improper

---

[3] (*See, e.g.,* Complaint (Doc. # 1) at ¶¶ 108 ("TNT is in direct competition with Torch in the market for amusement games in the Amusement Locations."); 109 (alleging Torch's conduct has "allowed it to flourish at the expense of TNT's legal business" (*i.e.*, by allegedly taking away TNT's market share)); 111 (alleging Torch's conduct "incentivize[s] [Amusement Locations] to dedicate space [aka market share] within their facilities to the . . . Torch Devices rather than TNT's . . . games"); 116 ("The presence of the Torch Devices at Amusement Locations directly impacts TNT's business" . . . because more Torch devices means less *market share* for TNT)).

motive . . . is not a panacea that will enable any complaint to withstand a motion to dismiss")). TNT cannot satisfy the civil RICO statutory standing requirements and, thus, its RICO claims should be dismissed.

Aside from standing, there is a basic civil RICO element that TNT's pleading fails to allege here – separateness of RICO "person" and RICO "enterprise" – because TNT named Torch as both the enterprise and as a person-defendant. In response to this problem, TNT cites a Supreme Court case that confirms this is the law in nearly every single federal circuit (including the Eighth Circuit) before explaining a distinction inapplicable here. That is, while a business can be the "enterprise" and its owners the RICO "persons" (because they are legally distinct entities), that is not the pattern TNT's pleading presents. Instead, TNT named the same business entity, Torch, as *both*. An enormous body of case law (in nearly every federal circuit as identified in the Supreme Court case TNT cites) is clear that alleging the enterprise *just is* the business plus the persons that comprise the business does not name a separate entity from the business. While the individual owners are separate from the business, it does not work the other way around: the business is not different from the business plus its owners and agents. That is just a business. Here, TNT erroneously named Torch as both a defendant and the enterprise, which also warrants dismissal.

Separately from the critical civil RICO problems identified above, TNT's Complaint asserts a Missouri common law unfair competition claim – false advertising – that has not been recognized. TNT's response is that Missouri does recognize common law unfair competition claims, applicable to deceptive marketing. There is no dispute common law unfair competition claims exist, even claims that relate to false or deceptive advertisements. However, the common law authorities recognizing "unfair competition" regarding advertising all arise in the context of one competitor making allegedly deceptive comparisons to another's product. TNT does not claim

Torch has made allegedly deceptive comparisons to TNT's games, nor has TNT identified any Missouri cases recognizing the existence of the common law claim TNT has attempted to bring here. Accordingly, TNT's Missouri common law claim should also be dismissed.

## I.      TNT Does Not Have Standing to Assert RICO Claims

TNT's Complaint attempts to turn its competition-related grievances into a sprawling civil RICO action. Because "[t]he mere filing of civil RICO charges can have a stigmatizing effect," such claims "regularly receive heightened scrutiny at the motion to dismiss stage of litigation[.]" *Nettles v. UMB Bank, N.A.*, 03-00082-CV-W-GAF, 2010 WL 11618679, at *3 (W.D. Mo. Sept. 13, 2010); *see also Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) (noting the "widespread abuse of civil RICO" by business competitors). As the Eleventh Circuit emphasized in a case TNT relies on, "[c]ourts should ***scrutinize proximate causation at the pleading stage*** and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Corcel Corp., Inc. v. Ferguson Enters., Inc.*, 551 Fed. Appx. 571, 575 (11th Cir. 2014) (emphasis added); *see also Hemi*, 559 U.S. at 17-18 (civil RICO's "reach is limited by the requirement of a direct causal connection between the predicate wrong and the harm") (internal quotations omitted).

As Torch explained in its Memorandum, TNT cannot satisfy this threshold standing requirement. (Doc. #19 at pp. 6-11). In response to this authority, TNT argues it went further than alleging it lost profits because of Torch's successes.  (*Cf.* Compl., ¶¶ 111, 114 (Doc. #1 at p. 21) (claiming TNT experienced declining revenues because Torch is able to generate more revenue for itself and location operators by allegedly violating gaming laws)); *see also Anza*, 547 U.S. at 454 (upholding 12(b)(6) dismissal for lack of proximate cause where the plaintiff alleged its business competitor's illegal scheme was aimed at 'gaining sales and market share at [the plaintiff's]

expense'") (original alterations omitted). According to TNT, it escapes *Anza* and its progeny because third parties (or "Amusement Locations") "***actually removed***" TNT's machines (*i.e.*, TNT lost market share to Torch). (TNT's Opp'n (Doc. #20 at p. 4) (emphasis in original)).

TNT's attempted distinction fails. *See Anza*, 547 U.S. at 460. TNT relies on *Corcel*, an Eleventh Circuit decision discussing the *Anza* proximate causation requirement and finding, under unique circumstances in a competitive bid process, that a business competitor had alleged proximate cause. The facts of *Corcel* differ greatly from those in *Anza* (and TNT's Complaint), as the Eleventh Circuit explained below:

> Critically, plaintiff Corcel alleges that—if the County had not relied on the defendants' false and fraudulent documents and actions—the County would have awarded plaintiff Corcel the supply and construction contract at issue because plaintiff Corcel was the next lowest SBE bidder.

*Corcel*, 551 Fed. Appx. at 577. In other words, Corcel's specific and singular loss (*i.e.*, not being selected by the County for the relevant work) was "direct." Corcel, as "the next lowest SBE bidder" was, thus, next in line for the bid and would have, by the nature of the County's bid-letting process, been selected and paid for the relevant work absent the winning bidder/defendants' alleged illegal conduct. *Corcel* does not help TNT. TNT alleges it is *a* competitor in the relevant market space, not *the only alternative* competitor in the market space. Unlike the plaintiff in *Corcel*, TNT does not plead a binary, "if not Torch, then TNT" theory of direct injury. Neither TNT nor Torch can claim a "right" to have their devices or games placed in any "Amusement Location." Like the plaintiff in *Anza* or *Club One*, TNT can only speculate regarding what an "Amusement Location" owner might choose to put in place of a Torch device if one were removed – it might be a fourth slushy machine rather than a TNT game. What *Holmes*, *Anza*, *Hemi*, and *Club One* all make clear is the fact that TNT's alleged harm depends on decisions of third parties (an Amusement Location owner's preference; a player's independent decision to play this thing, play that thing, or refrain

from playing entirely) means TNT's alleged harm is too "attenuated" and indirect to satisfy the civil RICO proximate cause statutory standing requirement. *See Anza*, 547 U.S. at 460-61; *see also Hemi Group*, 559 U.S. at 10 (the "directness" requirement under civil RICO's proximate cause standard mandates that courts do not look "beyond the first step"). Those third parties represent intervening causes that break the "direct" link required to satisfy civil RICO standing.

Unlike *Corcel*, TNT alleges precisely the type of garden variety competition-related market share loss that *Anza* foreclosed. TNT's Complaint does not – nor can it – demonstrate *how* Torch's alleged criminal activity has directly harmed TNT *other than* by arguing Torch's alleged scheme was aimed at gaining sales and market share at TNT's expense.[4] Again, the Supreme Court has made clear that is not enough to state a civil RICO claim.  *See Anza*, 547 U.S. at 460 ("A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense.").

TNT also argues that, under *Anza*, TNT is the party with the incentive to sue and, thus, likely to be the directly injured party. But TNT's claims of illegal gambling promotion are exactly the type of claim that, if they were actionable under Missouri law, the State would have the means and incentive to pursue. (*See* Compl., ¶ 68 (Doc. #1 at 12) (approvingly quoting a casino industry trade organization to allege "these gambling devices bypass our state's strict gaming laws and divert tax revenue away from Missouri's students and veterans"); *see also id*. at ¶¶ 71-80 (Doc. #1

---

[4] *Compare Anza*, 547 U.S. at 454-61 (plaintiffs' theory of alleged harm was that a competitor was using an illegal scheme that allowed it to offer better pricing, secure more customers, and reduce the plaintiffs' market share – and that theory was deemed insufficient to satisfy civil RICO's proximate cause statutory standing requirement as a matter of law), *with* Compl., ¶¶ 21, 108, 111, 114, 116-120, 153, 163-70, 204-08, 226, 262-64 (generally alleging TNT lost revenue because Torch's alleged illegal gambling allows Torch to offer more revenue to location owners, giving them reason to choose Torch over TNT, resulting in TNT losing market share and corresponding profits).

at 13-15) (alleging a variety of state enforcement action and legislative activity regarding Torch's machines)); *see also Hemi*, 559 U.S. at 12 ("The State certainly is better situated . . . to seek recovery from Hemi. And the State has an incentive to sue—the State imposes its own $2. 75 per pack tax on cigarettes possessed within the State . . . We do not opine on whether the State could bring a RICO action for any lost tax revenue. Suffice it to say that the State would have concrete incentives to try.").

In short, unlike the government contract bidding scheme at issue in *Corcel Corp*., TNT's alleged facts of "machine removal" do not add anything material to change the outcome dictated by *Anza*. Alleging a TNT game was displaced by a Torch device does not make the alleged loss more direct; that is a literally nothing more than an apt illustration of what losing "market share" looks like (*e.g.*, TNT had 100 games in place on Day 1; on Day 2, retail owner A replaced 1 TNT game with 1 Torch game; as a result, on Day 2, TNT lost 1 percent of its *market share*). TNT lacks standing despite its attempted recharacterizations. *See Anza*, 547 U.S. at 460.

Finally, as mentioned above, TNT attempts to use the fact Torch did not seek dismissal of TNT's Lanham Act claim to somehow argue TNT has satisfied the strict civil RICO statutory standing requirements established in *Holmes*, *Anza*, and *Hemi* (all cases discussing civil RICO and interpreting RICO's unique statutory language – not Lanham Act claims or interpreting the Lanham Act's very different statutory language). (*See* Doc. # 20, pp. 2, 6). This is a non sequitur. For one, motions to dismiss are not mandatory; for any number of reasons, a party may choose to attack one claim on a motion to dismiss and refrain from attacking another claim. Nothing is "conceded" by moving on some claims and not others. Secondarily, and this seems rather obvious, the Lanham Act and the RICO are not the same. Not surprisingly, caselaw interpreting these two very different acts is not the same. For example, courts frequently dismiss civil RICO claims

9

improperly brought by business competitors while allowing Lanham Act claims based on the same allegations to pass through the motion to dismiss gateway. *See, e.g., JST Distrib., LLC v. CNV.com, Inc.*, CV176264PSGMRWX, 2018 WL 6113092, at *8 (C.D. Cal. Mar. 7, 2018) ("In contrast to Plaintiff's Lanham Act claim, in which injury could be inferred because the parties are competitors . . . because Plaintiff's FAC does not plausibly allege that it was Defendant's alleged RICO conduct and not one or more of various other factors that resulted in diverted sales, it has not adequately pleaded an injury under a civil RICO claim."); *Diamond Sawblades Mfrs.' Coal. v. Diamond Tools Tech., LLC*, 504 F. Supp. 3d 927, 946 (S.D. Ind. 2020) (dismissing civil RICO claims brought by competitor for lack of statutory standing with prejudice while permitting amendment of Lanham Act claims); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 446 (E.D.N.Y. 2007) (dismissing business competitor's civil RICO claims and common law unfair competition claims while permitting Lanham Act false advertising claim to proceed). TNT's Lanham Act claims will eventually fail. But for now, the focus is properly on TNT's civil RICO claims because numerous Supreme Court and circuit court cases make clear the RICO statutory standing requirements should be addressed on a motion to dismiss and, unlike a Lanham Act claim, a competitor attempting to assert civil RICO claims against another competitor faces very real and very high hurdles to overcome the civil RICO statutory standing requirements.

Where, as here, a plaintiff lacks standing to bring a civil RICO claim, further amendment would be futile. *See Ozeran v. Jacobs*, CV177965DOCJDEX, 2018 WL 1989525, at *10 (C.D. Cal. Apr. 25, 2018), *aff'd,* 798 Fed. Appx. 120 (9th Cir. 2020) ("[B]ecause Plaintiff is unable to allege proximate cause, as required to have standing to bring a civil RICO claim, further amendment of this claim would be futile."); *see also Club One*, 837 Fed. Appx. at 461-62. Accordingly, TNT's civil RICO claims should be dismissed without leave to amend.

10

## II.     The Complaint Fails to Satisfy a Basic Civil RICO Element: Separateness of Person and Enterprise

To assert a civil RICO claim, TNT "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In *King*, the Supreme Court held that a corporate entity's sole proprietor could be sued as a RICO person, because he is distinct from the corporate entity (which was named as the RICO enterprise). TNT argues *King* saves its erroneous naming of Torch as both the RICO person and the RICO enterprise. (*See* Doc. # 20, p. 9). It seems TNT simply misunderstands the holding in *King*. *See King*, 533 U.S. at 162 (noting the requirement that the RICO defendant and the RICO enterprise are distinct is "legally sound and workable" because it has been adopted by "12 Court of Appeals[,]" including the Eighth Circuit). TNT claims Torch is "misconstru[ing]" precedent by affirming this principle without explaining how. TNT did not do what the plaintiff did in *King*, which was sue Don King, the sole proprietor of a separate entity that was named as the enterprise, as the RICO person.  Here, TNT sued Torch as *both*, which, as *King* affirms, fails to meet the "separateness" element under civil RICO. *Id*. at 161; *accord Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355-57 (11th Cir. 2016):

> The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities . . . The plaintiffs argue that the distinction highlighted by the Supreme Court is not one that compels a different result because the relationships alleged in this case are just as much an enterprise as those found in *Cedric Kushner*. But recognizing that distinction—far from being an exercise in sophistry—is very important. . . . When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself. In that situation, the rule announced in *Cedric Kushner* makes sense. In contrast to an individual, a corporation cannot act except through its officers, agents, and employees. Thus, a corporate defendant acting through its officers, agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate "person" by a different name.

TNT has similarly named Torch as a defendant and then alleged that the "enterprise" is Torch plus its owners and agents.

TNT also attempts to recover from this error by pointing to allegations that refer to unnamed, undescribed others. According to TNT, Rule 9(b) does not apply to these allegations, and so apparently TNT believes it need not satisfy this element with factual allegations at all. TNT is mistaken. *See Nelson v. Nelson*, 833 F.3d 965, 969 (8th Cir. 2016) (affirming 12(b)(6) dismissal of civil RICO claim for "failure to plead the existence of an enterprise sufficiently"). TNT specifically and emphatically notes that it alleged Torch "***and others***" have formed an association-in-fact. (*See* Doc. # 20, p. 8). This conclusory allegation is repeated under each of the four RICO counts,[5] but the only "others" that are alleged to have been part of the enterprise in the factual allegations are other employees and agents of Torch.  (*See* Compl., ¶ 137 (Doc. #1, p. 25)).

Eventually, TNT misrepresents its own allegations to say that it has "plausibly allege[d] that Torch and the Miltenbergers have joined with others . . . including the owners of Amusement Locations[.]" (Doc. # 20, p. 9). But that is not the enterprise alleged by the Complaint.  (*See* Compl., ¶ 137 (Doc. #1 at 25) (identifying the enterprise as "Torch, the Miltenbergers, and other as-yet unidentified associates, agents, and employees")).  The Complaint does not allege that the amusement location owners participated in alleged racketeering other than a conclusory statement that the members of the Torch Enterprise "further conspired with as-yet unidentified" persons at the Amusement Locations.  (*Id*. ¶ 138 (Doc. #1 at 25); *accord id*. at ¶ 381 (Doc. #1 at 53) (alleging, under conspiracy count, that the enterprise and its members "further conspired" with unnamed owners and operators)).  These allegations do not plausibly allege that the unnamed persons were part of the enterprise; the pleading distinguishes them *from* the enterprise and simply tries to rope

---

[5] *See* Compl., ¶¶ 269, 304, 339, and 382 (Doc. #1 at 38, 43, 48, and 53).

them into the civil RICO conspiracy count. TNT cannot use its response to rewrite its pleading. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (new factual allegations presented in an opposition to a motion to dismiss cannot be considered in ruling on the motion). The enterprise it alleged is Torch, but Torch is a named defendant and alleged RICO person.  This mistake separately warrants dismissal. *Ray*, 836 F.3d at 1355-57; *accord Nelson*, 833 F.3d at 969; *TMT Mgmt. Group, LLC v. U.S. Bank Nat'l Ass'n*, CV 14-4692 (MJD/JSM), 2016 WL 730254, at *18 (D. Minn. Jan. 4, 2016), *report and recommendation adopted,* CV 14-4692 (MJD/JSM), 2016 WL 740410 (D. Minn. Feb. 24, 2016) (dismissing civil RICO claim with prejudice for failure to distinguish between person and entity where the alleged RICO persons included the defendant bank, which was effectively the enterprise).

### III.    TNT Cites No Authority Recognizing the Common Law Claim It Asserts

TNT argues Missouri common law recognizes a claim for "false and deceptive marketing." (*See* Doc. # 20, p. 13). Torch agrees Missouri common law unfair competition claims exist, even claims that relate to false or deceptive advertisements. The problem for TNT is that, unlike the Lanham Act, Missouri does not recognize a common law claim for deceptively marketing or advertising one's *own* products.  That is why this Court has held that there is no common law false advertising claim in Missouri.  *Nestle Purina PetCare Co. v. Blue Buffalo Co.,* 4:14-CV-859-RWS, 2015 WL 1782661, at *10 (E.D. Mo. Apr. 20, 2015).

TNT suggests that if a claim exists under the Lanham Act it exists under the Missouri common law of unfair competition, citing *Home Builders Ass'n of Greater St. Louis v. L & L Exhibition Mgmt., Inc.*, 4:97CV1905 MLM, 1999 WL 34803788, at *15 (E.D. Mo. Aug. 13, 1999), *aff'd sub nom. Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Mgmt., Inc.*, 226 F.3d 944 (8th Cir. 2000) (noting "Missouri common law of unfair competition follows the general

principles of unfair competition expressed in the Lanham Act" and proceeding to decide the matter on Lanham Act grounds). That "general principle" concept does not mean that all Lanham Act claims are deemed to retroactively exist under Missouri common law; there is no basis for that assertion, and it would contradict one of the Missouri cases *Home Builders* was relying on in making that assertion. *See Bass Buster, Inc. v. Gapen Mfg. Co., Inc.*, 420 F. Supp. 144, 147, n.1 (W.D. Mo. 1976) (explaining the differences in trademark rights under Missouri law and the Lanham Act). It may be a useful simplifying principle, but it does not justify the Court recognizing a new cause of action under Missouri law.

Missouri common law has long held that the "test of unfair competition" is whether the public is being misled about the comparison or distinction between two competing products. *See Ralston Purina Co. v. Checker Food Prods. Co.*, 80 S.W.2d 717, 720 (Mo. Ct. App. 1935). When satisfying this more basic test, a common law unfair competition claim related to advertising makes sense and indeed is recognized. *See, e.g., Nestle Purina PetCare Co.,* 4:14-CV-859-RWS, 2015 WL 1782661, at *10 (statements on website concerning competitor's product could form basis for unfair competition claim). But the Lanham Act's cause of action for falsely advertising one's own goods – without implicit or explicit reference to or comparison with a competitor's product – is not a recognized Missouri common law cause of action, and TNT cites no authority recognizing it as such. Accordingly, this claim should be dismissed.

**IV.    Conclusion**

For the foregoing reasons and those set forth in their Memorandum in Support (Doc. #19), Defendants respectfully request the Court grant their Partial Motion to Dismiss, Doc. #18.

Dated:  May 8, 2023                    Respectfully submitted,

                                       GRAVES GARRETT LLC,

                                       By:  _/s/ Todd P. Graves_____
                                            Todd P. Graves #41319 (MO)
                                            J. Aaron Craig #62041 (MO)
                                            1100 Main Street, Suite 2700
                                            Kansas City, MO 64105
                                            Phone: (816) 256-3181
                                            Fax: (816) 256-5958
                                            tgraves@gravesgarrett.com
                                            acraig@gravesgarrett.com

                                            **Attorneys for Defendants Torch Electronics,
                                            LLC, Steven Miltenberger, and Sondra
                                            Miltenberger**

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 /s/ Todd P. Graves_____
Attorneys for Defendants Torch
Electronics, LLC, Steven Miltenberger, and
Sondra Miltenberger
