STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a<br>PLAY-MOR COIN-OP,<br><br>        Plaintiff,<br><br>v.<br><br>TORCH ELECTRONICS, LLC,<br>STEVEN MILTENBERGER, and<br>SONDRA MILTENBERGER<br><br>        Defendants. | Case No. 4:23-cv-00330-JAR |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR ORAL ARGUMENT
ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

TNT makes no attempt to explain in its Request for Oral Argument why it believes the Court needs oral arguments to rule on TNT's motion for preliminary injunction. Rather, TNT represents it "explained why a hearing is necessary in its Reply to Defendants' Opposition." (Doc. # 25, p. 1). Torch[1] takes issues with TNT's claim, made in its Reply and alluded to in this new Request for Oral Argument, that the Court is mandated to give TNT a hearing if TNT is merely able to manufacture "a disagreement" between the parties in briefing. That is not the standard. TNT is not entitled to oral arguments or an evidentiary hearing.[2] The Court should deny Plaintiffs'

---

[1] Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger are collectively referred to herein as "Torch."

[2] TNT's Request for Oral Argument specifically and exclusively "requests oral argument on its Motion for Preliminary Injunction." (Doc. # 25, p. 1). TNT seems to appreciate the difference between an oral argument and an evidentiary hearing because TNT mentions both in the Request for Oral Argument in a mutually exclusive fashion (offering dates for "oral argument and/or a hearing"). By filing a separate Request for Oral Argument that does not specifically include a request for an evidentiary hearing, it is Torch's position TNT has abandoned its earlier request for an evidentiary hearing and, as the Request for Oral Argument states, TNT now wishes only to present the same arguments contained in the parties' respective briefing during oral arguments. However, because TNT has been less than clear in this regard and purports to rely on its arguments

Request for Oral Argument.

TNT began its Reply by claiming, "at the very least," the Court should order a hearing on TNT's request for a preliminary injunction.[3] (Doc. # 23, p. 2). To support this claim, TNT misconstrues *United Healthcare Insurance v. AdvancePCS*, 316 F.3d 737, 744 (8th Cir. 2002), claiming the case stands for the proposition the Court "is *required*" to hold an evidentiary hearing "when a material factual controversy exists." (Doc. # 23, p.2 (citing *United Healthcare*, 316 F.3d at 744)). The language TNT quotes is dicta, and, ironically, the actual holding by the Eighth Circuit in that case was to affirm the district court's ruling on a motion for preliminary injunction *without a hearing* over the losing party's objection and demand for a hearing. *See United Healthcare*, 316 F.3d at 744 (citing *Movie Sys., Inc. v. MAD Minn. Audio Distribs.*, 717 F.2d 427, 431-432 (8th Cir. 1983) (affirming the district court's order modifying injunction without a hearing)); *see also Hanes v. Frankes*, No. 8:22CV156, 2022 WL 29747662, at 1 (D.C. Neb. July 27, 2022) (slip copy) ("Federal Rule of Civil Procedure 65 does not require a hearing to be held when the court denies a motion for preliminary injunction."); 11A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2949 (3d ed.) ("[P]reliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless.").

---

in its Reply in Support of TNT's Motion for Preliminary Injunction (which were framed in the context of a request for an evidentiary hearing), Torch addresses TNT's Request for Oral Argument in broad terms. Regardless of whether TNT only seeks oral arguments or a more formal evidentiary hearing, neither is required nor, in Torch's view, necessary.

[3] Given this plea, it is unclear why TNT deemed it necessary to file a new "Request for Oral Argument" unless, again, the purpose was to abandon its earlier requests for an evidentiary hearing. Adding to the confusion, TNT specifies that its request for oral argument is brought "pursuant to Local Rule 4.02(B)," (Doc. # 25, p. 1), but that rule requires a party requesting oral argument to make the request "with its motion or memorandum," not after briefing is complete. L.R. 4.02(B). Accordingly, there is an argument TNT's Request for Oral Argument is untimely.

2

Nothing prevents the Court from denying TNT's motion for preliminary injunction on the parties' briefs and without a hearing. Contrary to TNT's claims otherwise, the sheer weight of all available caselaw indicates the existence of *any doubt* as the veracity of TNT's factual or legal assertions vis-à-vis its request for preliminary injunctive relief means TNT's request should be denied. *See U.S. v. Tilley*, 124 F.2d 850, 859 (8th. Cir. 1941) ("If any grave doubt should exist . . . , it would be our duty to deny an injunction in the present case, since 'our process does not issue unless the path is clear.'") (quoting *Hawks v. Hamill*, 288 U.S. 52, 61 (1933)); *Cannon Servs., Inc. v. Culhane*, No. Civ.04-1597ADM/AJB, 2004 WL 950414, at *3 (D. Minn. April 30, 2004) (denying request for preliminary injunction where evidence offered by the parties was directly contradictory and explaining "[s]uch circumstances present a classic dispute of material fact that **precludes finding a decisive likelihood of success by Plaintiffs**") (emphasis added); *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 959 (D. Minn. 1999) (denying injunctive relief because of the "contradictory nature of the evidence"); *Lee v. Consol. Sch. Dist. No. 4, Grandview, Mo.*, 494 F. Supp. 987, 989 (W.D. Mo. 1980) ("To doubt is to deny.").

The Court now has Mr. Farley's opinions (Doc. # 21-14), Mr. Hanavan's sworn testimony and opinions (Doc. # 21-17), and Mr. Friedman's opinions (Doc. # 23-1) (addressed separately below). TNT does not argue those opinions will change if witnesses are forced to repeat them during a hearing. Instead, TNT appears to argue that because it attached (to its Reply) a new declaration from Mr. Friedman containing opinions that attempt (but fail) to contradict Mr. Farley's and Mr. Hanavan's opinions, "at a minimum" TNT has created a dispute that allegedly gives TNT an unfettered right to either a hearing or oral arguments. As explained below, Mr. Friedman's opinions do not save TNT's request for preliminary injunction, and they do not entitle TNT to a mandatory hearing or oral arguments. Based on the parties' respective written

3

submissions, there are reasons to seriously doubt TNT's claims. In the context of TNT's extraordinary request for preliminary injunctive relief, that is all that is required to deny TNT's request.

I. **Mr. Friedman's Opinions Do Not Support TNT's Demand for a Hearing or Oral Arguments**

TNT appears to believe that by injecting Stacy Friedman's Declaration into its Reply at the last minute, TNT has somehow guaranteed its entitlement to a hearing or oral arguments. Again, that is not the case. (*See* cases cited above). At the outset, Torch disagrees with TNT's decision to attach Mr. Friedman's declaration to its *Reply* rather than include it in TNT's moving brief. Both Fed. R. Civ. P. 6(c)(2) and Local Rule 4.01(A) require a moving party to serve or file any supporting affidavit or declaration with the party's motion. *See* Fed. R. Civ. P. 6(c)(2) ("***Supporting Affidavit.*** Any affidavit supporting a motion must be served with the motion."); Local Rule 4.01(A) ("Unless otherwise direct by the Court, the moving party must file with each motion a memorandum in support of the motion . . . If the motion requires consideration of facts not appearing in the record, the party also must file all documentary evidence relied upon.").

Regardless, TNT admits in its Reply, "TNT retained Stacy Friedman [] as recently as March 2, 2023." (Doc. # 23, p. 10). It remains unclear why TNT omitted Mr. Friedman's declaration and opinions as evidence supporting its moving brief (filed on April 20, 2023 (Doc. #16)). TNT's rationale is not explained in its Reply (Doc. # 23) or its new Request for Oral Argument (Doc. # 25). It is also unclear why TNT waited until March 2, 2023, to retain *an* expert considering TNT has been claiming since at least November 26, 2019, when it filed the 2019 Crawford Co. unfair competition case, Torch amusement devices are allegedly illegal. (*See* Doc. # 21-4, Ex. D). Nevertheless, for the reasons discussed below, Mr. Friedman's declaration and opinions do nothing to support TNT's request for a preliminary injunction, which is an

4

"extraordinary remedy,"[4] or its renewed request for a hearing or oral arguments. Like TNT's Reply more broadly, Mr. Friedman's opinions suffer fatal flaws. First and foremost, Mr. Friedman (like TNT) bases his claims of illegality on arguments of a player's subjective intent. As Torch explained in its Opposition (and tellingly TNT did not rebut), subjective intent of the player has no bearing on whether a device is a "gambling device" under current Missouri law.

Secondarily, Mr. Friedman's attempt to compare Torch devices to a continuously reshuffled game of blackjack or scratch-off lottery tickets indicates Mr. Friedman fails to fully comprehend either how Torch devices work or Missouri's rather unique and specific laws regulating lotteries and "gambling devices" (or both). Like TNT, Mr. Friedman is grasping at straws to come up with clever analogies that attempt to paint both Torch devices and applicable Missouri law as something different than they actually are.

      **A.**    **Mr. Friedman Attempts to Improperly Inject Players' Subjective Opinions and Intent into the Definition of "Gambling Device"**

At numerous points throughout Torch's Opposition, Torch pointed out TNT's arguments regarding illegality would only make sense if Missouri laws were rewritten to inject a player's subjective intent into the definition of "gambling device." (*See, e.g.*, Doc. # 21, pp. 9-10, 12; *see also* Doc. # 21-17 (testimony by MGC expert Mr. Hanavan agreeing that "as of the state of the law right now, the subjective intention of the player just doesn't matter as far as the statute is concerned"); Doc. # 21-15 (Senate Bill. No. 632, pp. 20-21 (proposed – but rejected – language amending the definition of "gambling device" to inject players' subjective intent)). Tellingly, there is no mention of Senate Bill No. 632 or any attempt to explain Mr. Hanavan's testimony regarding

---

[4] *Berry v. Kander*, 191 F. Supp. 3d 982, 985 (E.D. Mo. 2016) (explaining "[i]njunctive relief is an extraordinary remedy, and the burden of establishing the propriety of such relief is on the movant"; denying the requested preliminary injunction).

the impropriety of attempting to read subjective intent into applicable Missouri law anywhere in Mr. Friedman's declaration. TNT, presumably aware this is the proverbial "third rail" for its motion (and case more broadly), made no attempt to address or rebut Torch's arguments in this regard. This omission seems rather glaring, especially considering many, if not all, Mr. Friedman's opinions (and thus TNT's arguments in the Reply) only make sense if a player's subjective intent is considered.

Mr. Friedman (and by extension TNT) repeatedly opines Torch devices are allegedly illegal "gambling devices" simply because "when the player declines to use the Prize Viewer option, the Torch Device plays 'just like a slot machine.'" (Doc. # 23-1, ¶¶ 15, 25). In other words, Mr. Friedman is saying that depending on *how a player* chooses to interact with a Torch device, it is possible *a player* might (incorrectly) subjectively believe he/she is playing a "slot machine." (*Id.*). Mr. Friedman has no idea what any given player might subjectively believe while playing a Torch device. He can only speculate. His opinion in this regard, even if a player's subjective intent were a factor under Missouri law when determining whether a device is a "gambling device," would represent an inadmissible *ipse dixit* opinion. *See Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) (affirming exclusion of expert opinion testimony based on nothing more than "the *ipse dixit* of the expert"). But that is not the law in Missouri. And TNT does not point to any Missouri law to the contrary – because none exists.[5]

---

[5] TNT points to out-of-state authorities under different statutory regimes (Ohio and Florida) in an attempt to support its claim Torch devices are illegal. Both states' statutes differ from Missouri's. Florida, for instance, applies a *presumption* that a device is a "prohibited slot machine" if it displays images of games of chance and involves payment of consideration with an award, and the Florida statute further deems certain devices slot machines even in the complete absence of any element of chance. *See* Fla. Stat. Ann. §§ 849.16(1), (3). And Ohio's statutory definition of a "slot machine" includes a subjective element. *See Mayle Bingo Co., L.L.C. v. Ohio Depart. of Public Safety*, 152 N.E.3d 1237, 1241 (Ohio Ct. App. 2020) (case relied on by TNT; noting a "slot machine" includes "[a]ny mechanical, electronic, video, or digital device that is capable of

### B. Mr. Friedman's Attempts to Paint Torch Devices as the Equivalent of Blackjack or Lottery Scratch Off Tickets is Non-Sensical

Mr. Friedman attempts to compare the Torch devices' use of "predetermined finite outcomes that are in sequential order" (one characteristic of Torch devices that eliminates "chance") to blackjack and lottery scratch-off tickets. Sadly, Mr. Friedman failed to identify the specific casino allegedly running a mythical game of blackjack with the same deck of cards that are never shuffled or the retailer selling lottery scratch-off tickets that allow the prospective player to look at the ticket and know both whether that particular card will win and the amount that will be won (inquiring minds want to know). Obviously, those things do not exist. Blackjack is not similar to a Torch device. Blackjack is not even similar to a slot machine. It is a game of both skill and chance, which the Missouri Supreme Court has noted distinguishes "riverboat games" from "lottery," and blackjack is therefore regulated differently. *Harris v. Missouri Gaming Comm'n*, 869 S.W.2d 58, 62 (Mo. 1994). But more significant is the fact Mr. Friedman's attempted analogy begins with an admission that "a casino dealer [] shuffles a standard deck of cards . . . ." (Doc. #23-1, ¶ 21). As Torch stated in its Opposition (supported by reference to Mr. Farley's declaration and Mr. Hanavan's admissions), "[t]he Torch device software does not randomize or shuffle outcomes based on play." (*See e.g.*, Doc. # 21, p. 8). The six to nine decks of cards the casino dealer randomly and continuously shuffles during blackjack gameplay vitiates any attempt to compare Torch devices to blackjack.

Mr. Friedman's attempted analogy between a Torch device and lottery scratch-off tickets

---

accepting anything of value, directly or indirectly, from or on behalf of a player *who gives the thing of value in the hope of gain*") (quoting Ohio Rev. Code § 2915.01) (emphasis added). In other words, in Ohio, if a player inserts money into an electronic device and the player subjectively hopes to gain from doing so, then the device is a "slot machine." *See id*. Neither TNT nor Mr. Friedman point to a Missouri law corollary – because none exists.

is equally devoid of logic. If anything, it serves to shine a bright light on the prize viewer function of a Torch device, which eliminates chance for each and every turn a player may choose to play. Mr. Friedman (and TNT) want the Court to ignore the fact a person buying a lottery scratch-off ticket has absolutely no way of knowing whether the ticket purchased is a winner or loser *before* they pay the money and buy the ticket. Mr. Friedman instead highlights the fact that even though a "pre-printed roll of scratch-off instant lottery tickets contains a predetermined sequence of predetermined outcomes" he assumes Mr. Farley would still agree those "lottery scratch tickets do in fact involve an element of chance." (Doc. # 23-1). One would assume Mr. Farley would agree lottery scratch-off tickets do in fact involve an element of chance . . . because (unlike Torch devices) they clearly do. That does nothing to suggest Torch devices involve chance. "[L]ottery . . . tickets" are specifically referenced, defined, and regulated in the Missouri Constitution (at Article III, Section 39) and Missouri statutes as games of chance. Again, unlike a Torch device, a player literally has no way of knowing whether a given scratch-off ticket will be a winner until (a) paying money to the vendor to purchase the ticket and (b) scratching off the "stuff" applied to the ticket to purposefully obscure the information printed on the ticket dictating a win versus loss and the prize amount, if anything. The player must rely on luck of the draw (*aka* "chance").

      Mr. Friedman stretches credulity and logic in his attempt to pigeon hole Torch devices into the same classification as blackjack (a game of both skill and luck where card decks are systematically and regularly randomly reshuffled) and "lottery" scratch-off tickets (*i.e.*, a quintessential example of a game of pure chance that is specifically identified in the Missouri Constitution and specifically regulated by Missouri law). His opinions do not save TNT's motion, nor do they give rise to a right to oral arguments or a hearing by manufacturing "disagreement."

8

TNT's motion, moving brief, and Reply (which doubles-down on Mr. Friedman's opinions based on the subjective intent of the player and his apples to oranges analogies), fail to demonstrate entitlement to relief, especially when contrasted against the backdrop of Torch's Opposition (Doc. # 21), Nick Farley's Declaration (Doc. # 21-14), MGC expert Mr. Hanavan's sworn testimony (Doc. # 21-17), and proposed – but rejected – Senate Bill. No. 632, pp. 20-21(Doc. # 21-15). TNT does not explain *why* a hearing or oral argument is necessary or what additional evidence it intends to present at a hearing or oral argument. Instead, TNT simply demands a hearing or oral argument and claims the Eighth Circuit mandates it. That is not the case; district courts certainly can and often do rule on requests for preliminary injunction without a hearing. The decision is discretionary. Here, the parties have clearly staked out their positions (and the positions of their respective experts) in fulsome briefing. TNT's Request for Oral Argument (or a hearing) should be denied.

**II.   Conclusion**

For the reasons set forth above, as well as those explained in Defendants' Memorandum in Opposition to TNT's Motion for Preliminary Injunction (Doc. # 21), the Court should deny TNT's Request for Oral Argument on Plaintiff's Motion for Preliminary Injunction.

Dated:  May 10, 2023                                 Respectfully submitted,

                                            GRAVES GARRETT LLC,

                                        By:  */s/ Todd P. Graves*
                                               Todd P. Graves #41319 (MO)
                                               J. Aaron Craig #62041 (MO)
                                             1100 Main Street, Suite 2700
                                             Kansas City, MO 64105
                                             Phone: (816) 256-3181
                                             Fax: (816) 256-5958
                                             tgraves@gravesgarrett.com
                                             acraig@gravesgarrett.com

**Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                                 */s/ Todd P. Graves*
                                                            Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger