## THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MISSOURI
## EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No. 4:23-cv-00330-JAR ) |
| TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER | ) ) ) ) ) |
| Defendants. | ) |

### DEFENDANTS' POSITION BRIEF REGARDING A PROSPECTIVE CONSOLIDATION OF PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF PROCEEDINGS

**I.  INTRODUCTION**

Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger (collectively referred to herein as "Torch") respectfully respond to the Court's June 15, 2023 Order (Doc. #32) regarding Torch's position on a prospective consolidation of TNT's injunctive relief proceedings.

On June 15, 2023, the Court heard oral arguments on TNT's Motion for Hearing (Doc. #25) to determine issues related to a hearing on TNT's Motion for Preliminary Injunction (Doc. #15). After the hearing (and as discussed during the hearing), the Court ordered the parties to submit briefs "on the issue of consolidating preliminary and permanent injunction proceedings." (Doc. #32). First, Torch presently lacks sufficient information as to what the Court envisions consolidating TNT's preliminary injunction with permanent injunction proceedings would entail, and therefore, cannot consent to such a consolidation at this time.

Second, while Torch continues to maintain TNT has failed to establish any immediate right to entry of a preliminary injunction (which seems implicit in the Court's suggestion to effectively bypass the preliminary injunction hearing for some form of consolidated adjudication), Torch requests that, at a minimum, the Court allow the parties to get past the initial pleading stage before any decision regarding consolidation. As the Court knows, Torch has filed a Motion to Dismiss various of TNT's claims (Doc. ##18, 19, 24) and has not filed an Answer. The Court's decision on that fully briefed motion may narrow the scope of the litigation and fix TNT's initial claims to allow Torch an opportunity to file its Answer and potential counterclaims that should be litigated on a parallel track.

Finally, Torch questions the feasibility of consolidating TNT's preliminary injunction with a permanent injunction while preserving the parties' respective constitutional and due process rights. Consolidation is not permissible if it would jeopardize any party's right to a jury on any issues triable to a jury. Further, no permanent injunction can be issued unless and until TNT has demonstrated complete success on the merits, which requires decisions on legal issues (*e.g.*, harm, damages, treble damages depending on what claims remain viable at the time of trial). *See Perkins v. Spivey*, 911 F.2d 22, 34 (8th Cir. 1990) ("[W]here a single action involves both legal and equitable claims, the court must conduct a jury trial on the legal claims first."); *Perficient, Inc. v. Munley*, No. 4:19-cv-01565 JAR, 2019 WL 4247056, at *1 (E.D. Mo. Sept. 5, 2019) (explaining "courts enter a permanent injunction after a trial on the merits of the underlying claims" and noting that before a permanent injunction may issue, the movant must demonstrate four elements: "(1) actual success on the merits of its claims; (2) threat of irreparable harm; (3) that the threatened harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest"). Torch cannot consent to any form of consolidated permanent injunction hearing that

would allow TNT to potentially obtain a permanent injunction *before* TNT has demonstrated "actual success on the merits of its claims." *See id.* Torch disputes the merit of TNT's claims, which seek much broader relief than a mere declaration of legality or illegality. Accordingly, Torch is entitled to a full and fair opportunity to engage in standard discovery as to all aspects of any claims that survive the pending Motion to Dismiss. A jury then must decide TNT's legal claims as well as Torch's legal counterclaims that survive dispositive motions before the Court can issue the equitable remedy of permanent injunctions.

TNT has not and cannot establish a threat of immediate irreparable harm that warrants granting extraordinary preliminary injunctive relief. TNT chose to litigate nearly identical parallel state claims against Torch for *years* before voluntarily dismissing those claims and suddenly seeking emergency injunctive relief in this Court. Simply put, TNT's actions demonstrate there is no emergency. Without a demonstrable emergency, it remains unclear why Torch should be forced to litigate TNT's claims in an expedited or emergency fashion.

## II.     POSITION AND LEGAL UNDERSTANDING OF ISSUES

### A. Torch Lacks Sufficient Clarity Regarding the Court's Thoughts on Consolidation.

Hindsight being what it is, it would have been helpful during the hearing to ask the Court for a more detailed explanation of how the Court envisioned a potential consolidated hearing would look and the steps and timing involved. As demonstrated by Mr. Finneran's questions towards the end of the hearing, which lead to the Court's Order for this briefing, it appears neither party had contemplated "consolidation" nor necessarily understood the potential ramifications of a prospective consolidation. Although counsel now has a better understanding of Fed. R. Civ. P. 65(a)(2), without more information as to what the Court envisions, Torch cannot voluntarily consent to such a process or waive any constitutional or due process rights.

That said, there may be a pathway to consolidation that the Court, TNT, and Torch could theoretically agree on, but as explained below, there appears to be too many potential unknowns, undecideds, and potential legal pitfalls associated with an expedited consolidated permanent injunction hearing for Torch to consent at this early stage of litigation.

### B. Any Decision Regarding Potential Consolidation is Premature.

This case is still in its infancy - Torch does not even know what claims it will have to defend and has yet to even file its Answer. In its fully briefed Motion to Dismiss (Doc. ##18, 19, 20, and 24), Torch explains why TNT's civil RICO and Missouri unfair competition claims must be dismissed as a matter of law. (*See* Doc. ##19, 24). In addition to equitable injunctive relief, TNT seeks legal damages under these claims (and its Lanham Act claim), to include potentially an award of treble damages. (*See, e.g.*, Complaint (Doc. #1), ¶ 301(a) and (b) ("WHEREFORE Plaintiff TNT . . . respectfully requests the Court: award Plaintiff actual damages in an amount to be determined at or before trial; award Plaintiff an amount of damages equal to three times the actual damages determined at or before trial . . ..")). As explained below, TNT's request for legal relief in the form of legal damages must be tried and found meritorious by a jury *before* the Court can enter an order for equitable permanent injunction.

Relatedly, neither the parties nor the Court know at this point what *counterclaims* for legal or equitable injunctive relief *TNT* might have to defend once Torch files its Answer and potential counterclaims. Once filed, the Court will learn TNT operates and distributes, among other things, coin pusher devices that members of the Missouri Highway Patrol have testified are illegal "gambling devices" under Missouri law. Torch does not believe Torch devices are illegal under current Missouri law and it has filed a declaratory judgment action in Cole Country, Missouri,

4

against various Missouri State agencies[1] to prove it. The same cannot be said for TNT and its devices that TNT acknowledged compete with Torch in specific geographical areas. Torch's responsive pleadings may include similar claims against TNT – claims that include equitable requests for permanent injunctive relief. If so, those counterclaims for equitable relief would need to be factored into any decision on consolidation.

### C. Consolidation Would Likely Violate the Parties' Respective Due Process Rights.

If the Court's envisions consolidating TNT's preliminary injunction with a equitable permanent injunction hearing before the parties have had complete discovery and an opportunity to try their legal claims and defenses to a jury, it will violate the parties' constitutional and due process rights.

As explained by Fed. R. Civ. P. 65(a)(2) and applicable caselaw, "advance[ing] the trial on the merits and consolidate[ing] it with the hearing" is subject to the restriction the Court "must preserve any party's right to a jury trial." It is also noteworthy that Rule 65(a)(2) speaks only to the possibility of consolidating "trial on the merits" with the preliminary injunction hearing. This

---

[1] At one point during the hearing, the Court asked counsel whether the Missouri Gaming Commission was a party to that action. Counsel for Torch correctly informed the Court the Missouri Gaming Commission was not a party to the case. There is a reason why. The Missouri Gaming Commission's rulemaking authority is legislatively limited to regulating only riverboat casinos and, after June 30, 1994, the game of bingo at bingo halls. *See* RSMo. §313.004.1 and .4. Torch devices are not found in any Missouri "excursion gambling boat[s]" nor do they allow users to play the game of bingo. Accordingly, it is Torch's position the Missouri Gaming Commission has no standing or authority or power to regulate Torch devices in the state of Missouri. The Missouri Gaming Commission could have attempted to intervene in the Cole County case (as the Missouri Gaming Association did) but it chose not to. Consequently, Torch named the Missouri Department of Public Safety, the Missouri State Highway Patrol, and the Missouri Division of Alcohol and Crime Control as defendants in the Cole County case. The State of Missouri – via whatever agency, division, or entity the State believes might have authority to regulate or weigh in on the legality of Torch devices under Missouri law – is actively defending and litigating first filed state court case. Torch has previously made a request for application of *Burford* abstention, which Torch continues to believe could be and should be properly invoked here.

5

is important because no permanent injunction may be issued unless and until TNT has demonstrated success on the merits for its claims – claims that include both legal claims for damages to be tried to a jury and equitable claims for permanent injunctive relief that can only be determined *after* a jury trial on all legal issues triable to a jury. *See Perkins*, 911 F.2d at 34 ("[W]here a single action involves both legal and equitable claims, the court must conduct a jury trial on the legal claims first."); *Miller v. Thurston*, 967 F.3d 727, 735–36 (8th Cir. 2020) ("A permanent injunction requires the moving party to show actual success on the merits. . . . If actual success is found, courts must then consider [the additional] three factors[.]"); *Oglala Sioux Tribe v. C & W Enterprises, Inc.*, 542 F.3d 224, 229 (8th Cir. 2008) ("If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with any injury an injunction might inflict on other parties; and (3) the public interest.").

Torch is aware the Court has previously presided over a case where a party's preliminary injunction was consolidated with a permanent injunction hearing that took place on an expedited basis and before a full trial on the merits. *See Perficient*, 2019 WL 4247056, at *1. But in that case, the Court noted such an expedited consolidated process was "unique." *Id.* In fact, it was only possible because "the parties agreed to an expedited briefing schedule and combined hearing on the preliminary and permanent injunctions [], meaning the Court is left to rule on the merits of the relevant underlying claims without the benefit of a full trial." *Id*. As the Court explained, "[o]rdinarly, courts enter a permanent injunction after a trial on the merits of the underlying claims." *Id*. (citing *Tovaritch Spirits Int'l SA v. Luxco, Inc.*, No. 4:11CV950 JCH, 2012 WL 6652949, at *1 (E.D. Mo. Dec. 21, 2012)). And in citing the applicable legal standard, the Court correctly noted that the movant "must show the following elements to obtain a permanent

6

injunction: (1) actual success on the merits of its claims; (2) threat of irreparable harm; (3) that the threatened harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest." *Perficient*, 2019 WL 4247056, at *1.

Torch has no intention of waiving its right to a full and fair discovery process or its right to a full and fair jury trial on the merits with respect to (a) TNT legal claims, (b) Torch's legal defenses to TNT's legal claims, or (c) any legal claims Torch might assert as counterclaims. Accordingly, if the Court had in mind an expedited and consolidated preliminary and permanent injunction hearing similar to the process used in *Perficient*, Torch does not consent. While Torch has not yet filed its Answer or had an opportunity to elect a jury trial, Torch will timely do so, as has TNT in its Complaint. (Doc. #1, p. 1).

Not only do TNT's claims seek legal remedies triable to a jury, even the question of whether Torch devices are legal under current Missouri law involves numerous factual questions such as how Torch devices operate, how they are played, and where they are located. These factual questions involve witness testimony, credibility determinations, and expert opinions that a jury must determine as the finder of fact before the Court can enter a permanent injunction.

In any event, the Court cannot enter a permanent injunction until after TNT "show[s] actual success on the merits." *See Miller*, 967 F.3d at 735–36; *Oglala Sioux Tribe*, 542 F.3d 224, 229. In *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508-09 (1959), the Supreme Court held the district court abused its discretion when it attempted to use its discretion under the Federal Rules of Civil Procedure to allow equitable claims to be tried ahead of legal ones. In *Beacon*, the plaintiff's complaint was labeled as a request for declaratory relief (but included requests for both legal and equitable relief) against the defendant, Beacon, based on claims Beacon was unfairly attempting to restrain competition in violation of the Sherman Antitrust Act and the Clayton Act.

*Id*. at 502. When Beacon filed its Answer, it also asserted a counterclaim against the plaintiff and a cross-claim against another party alleging it was the plaintiff and its distributors who were engaged in a conspiracy to restrain trade in violation of antitrust laws. *Id.* at 502-03. Beacon also sought treble damages as allowed by the Clayton Act and demanded a jury trial on factual issues. *Id*. The district court in *Beacon* viewed the issues raised in the plaintiff's "Complaint for Declaratory Relief" "as essentially equitable," and "it directed that these issues be tried to the court before jury determination of the validity of the charges of antitrust violations made in the counterclaim and cross-claim." *Id*. According to the Supreme Court, this was clear error.

The Supreme Court explained, "the use of discretion by the trial court under Rule 42(b) to deprive Beacon of a full jury trial on its counterclaim and cross-claim, as well as on [the plaintiff's] plea for declaratory relief, cannot be justified." *Beacon*, 359 U.S. at 508. "Under the Federal rules the same court may try both legal and equitable causes in the same action," and "[w]hatever permanent injunctive relief [the plaintiff] might be entitled to on the basis of the decision in the case could, of course, be given by the court after the jury renders its verdict." *Id.* "[T]he holding of the court below[,] while granting [the plaintiff] no additional protection unless the avoidance of [a] jury trial be considered as such, would compel Beacon to split his antitrust case, trying part to a judge and part to a jury. Such a result, which involves the postponement and subordination of [the plaintiff's] own legal claim for declaratory relief as well as of the counterclaim which Beacon was compelled by the Federal Rules to bring, is not permissible." *Id*. The Supreme Court explained that the right to a jury trial "cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, or a demand for equitable relief in aid of the legal action, or during its pendency." *Id.* at 510 (quoting *Scott v. Neely*, 140 U.S. 106, 109-10 (1891)) (internal quotations omitted).

TNT's claims seek both legal and equitable relief. TNT must demonstrate success on the merits with respect to both its legal and equitable claims before any equitable permanent injunctive relief may be granted. As explained in *Beacon*, the parties have a right to have TNT's legal claims decided by a jury before the Court acts in equity. As *Beacon* also demonstrates, any counterclaims Torch might assert against TNT in its responsive pleading will need to be addressed in a similar fashion. Accordingly, it remains unclear to Torch how consolidation of TNT's preliminary injunction with an expedited permanent injunction hearing before a full trial of the merits could occur without violating the parties' constitutionally protected due process rights.

### III.   CONCLUSION

For the reasons set forth above, Torch cannot consent to consolidation of TNT's preliminary injunction with a permanent injunction hearing before a full and fair trial by jury of TNT's claims, as well as any Torch counterclaims. Given the ambiguity around such a process, the due process concerns expressed above, and TNT's clear failure to demonstrate entitlement to immediate injunctive relief, Torch believes TNT's request for preliminary injunctive relief should be denied and the parties allowed to litigate their disputes against one another in typical fashion and to a typical and proper conclusion.

Dated:  June 22, 2023                                              Respectfully submitted,

                                                                                    GRAVES GARRETT LLC,

                                                                                    By:  */s/ J. Aaron Craig*
                                                                                            Todd P. Graves #41319 (MO)
                                                                                            J. Aaron Craig #62041 (MO)
                                                                                            Chandler E. Carr #68836 (MO)
                                                                                            1100 Main Street, Suite 2700
                                                                                            Kansas City, MO 64105
                                                                                            Phone: (816) 256-3181
                                                                                            Fax: (816) 256-5958

tgraves@gravesgarrett.com
acraig@gravesgarrett.com
ccarr@gravesgarrett.com

**Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 22, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                       */s/ J. Aaron Craig*
                                                      Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger