IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cv-00330-JAR |
| ) | |
| TORCH ELECTRONICS, LLC, et al. ) | |
| ) | |
| Defendants. ) | |

**TNT'S MEMORANDUM IN OPPOSITION TO CONSOLIDATION
OF PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE MERITS**

At its recent oral argument regarding the forthcoming hearing on TNT's Motion for Preliminary Injunction (Doc. #15) (the "Motion"), the Court inquired whether TNT would object to consolidating the preliminary injunction hearing with a trial on the merits (at least with respect to liability) under Federal Rule of Civil Procedure 65(a)(2) and granted the parties time to provide a written submission on the question. Although TNT shares the Court's desire to improve the speed and efficiency of these proceedings, upon due consideration, TNT must object to consolidation, for two principal reasons. First, this Court lacks the discretion under Rule 65(a)(2) to consolidate where doing so would undermine any party's right to a trial by jury, as would be the case here. Second, consolidation, especially if it were accompanied by any additional delay in obtaining preliminary injunctive relief, would cause further irreparable harm to TNT, undermining Congress's manifest intent in the Lanham Act that the Court presume irreparable harm and grant such injunctive relief if TNT demonstrates a likelihood of success on the merits at the outset of the proceedings. For these reasons, TNT respectfully requests that the Court decline consolidation and set a hearing on TNT's Motion without further delay.

## DISCUSSION

**I.  Consolidating the Preliminary Injunction and Permanent Injunction Hearings Would Impermissibly Deprive the Parties of Their Right to a Jury Trial on the Merits of TNT's Claims**

The Federal Rule of Civil Procedure gives the Court wide latitude to consolidate a hearing on a motion for a preliminary injunction with trial on the merits, but that discretion is subject to an important caveat: the Court "must preserve any party's right to a jury trial." Fed. R. Civ. P. 65(a)(2). In this case, that limitation is decisive. As explained below, TNT's various claims are all triable to a jury, and TNT demanded a jury in its Complaint. *See* Compl. (Doc. #1) at 1. Were the Court to consolidate the preliminary injunction hearing with trial on the merits and make final (as opposed to preliminary) determinations on TNT's claims, both parties would be deprived of a jury on those claims, in violation of their Seventh Amendment rights. As such, the Court lacks the discretion under Rule 65(a)(2) to order consolidation in this case, because doing so would deprive the parties of their right to a jury trial on the merits of TNT's claims, as demanded in the Complaint and as guaranteed by the Constitution.

**A.  TNT Is Entitled to a Trial by Jury on at Least One of Its Claims**

"'Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Kampa v. White Consol. Indus., Inc.*, 115 F.3d 585, 586 (8th Cir. 2004) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959)). Here, applying the scrutiny required by *Kampa* and *Beacon Theatres*, TNT has a right to trial by jury of each of its claims under the Seventh Amendment. *See* U.S. Const. amend. VII. That is true both of the Complaint's single common law claim*, see* Compl. (Doc. #1) at 37 (Missouri common law of unfair competition claim), which falls within the express text of the Seventh Amendment,

and its statutory claims, *see* Compl. (Doc. #1) at ¶¶ 34–52 (claims under the Lanham Act and the RICO Act), each of which meets the two-part test the Supreme Court has established for determining whether a statutory claim carries with it a right to trial by jury. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005) ("First, we must compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." (citing *Tull v. United States*, 481 U.S. 412, 417–18 (1987) (cleaned up))). Here, each prong of the *Taylor* analysis supports TNT's entitlement to a jury trial on its statutory claims.

First, both TNT's Lanham Act claims and its RICO Act claims have ready common-law analogues. As multiple courts have recognized, a Lanham Act unfair competition claim is closely analogous to a common law unfair competition claim, the very common law claim that TNT has brought in this case. *See Home Builders Ass'n of Greater St. Louis v. L & L Exhibition Mgmt., Inc.*, No. 4:97-CV-1905 MLM, 1999 WL 34803788, at *15 (E.D. Mo. Aug. 13, 1999), *aff'd*, 226 F.3d 944 (8th Cir. 2000) (describing the provisions of the Lanham Act and common law unfair competition as analogous actions in tort); *NordicTrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415 (D. Minn. 1994) (holding that a jury is required where a plaintiff alleges it "has been damaged by defendant's conduct and that accounting for damages is being pursued as is permitted for violations of Lanham Act's prohibitions against false and misleading advertising."); *see also TrueNorth Cos., LC v. TruNorth Warranty Plans of N.A., LLC,* Case No. 17-CV-31-LTS-KEM, 2019 WL 8301690, at *10 (N.D. Iowa June 3, 2019) ("[Plaintiff] is also entitled to a jury trial on 'common issues of fact' between its legal and equitable claims.").

The RICO Act, meanwhile, closely resembles a tortious interference claim, which is likewise a straightforward common-law analogue. *See NSC Int'l Corp. v. Ryan*, 531 F. Supp. 362, 363 (N.D. Ill. 1981) (holding the Seventh Amendment guarantees a jury trial in civil RICO actions because they closely resemble an action for tortious interference with economic relations, a common law tort); *see Compound Prop. Mgmt. v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 871 (S.D. Ohio 2020) ("'[A civil RICO claim] resembles an action sounding in tort that would have been recognized as legal in 18th-century England . . . More importantly . . . the relief authorized by § 1964(c) is distinctly legal, not equitable, in nature. Thus, Civil RICO actions under § 1964(c) are legal, and the jury right attaches to it.'" (quoting *Maersk, Inc. v. Neewra*, 687 F. Supp. 2d 300, 340 (S.D.N.Y. 2009))).

As such, TNT is entitled to a jury on each claim in its Complaint. But TNT need not demonstrate an entitlement to a jury on every one of its claims in order for it to establish its right to a jury trial: a right to a jury under even one count of the Complaint is enough. *Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co.*, 713 F.3d 933, 937 (8th Cir. 2013) ("The constitutional right to a jury trial must be preserved when the litigation involves legal and equitable claims with common issues." (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73 (1962))). Thus, the Complaint's inclusion of even one common-law claim (Count II) prevents this Court from ordering consolidation in this case, lest TNT (and the Defendants) be deprived of the right to trial by jury on the claims of its Complaint.

B.  **Consolidation Would Deprive TNT of Its Jury Trial Right**

As TNT understands the Court's proposal, it would seek to consolidate a hearing on TNT's Motion for a preliminary injunction with a trial on at least issue of liability with respect to each of TNT's claims (though not perhaps the issue of damages), after which the Court could issue a

permanent injunction if TNT carried its burden at trial. The trouble with this approach is that, if such a trial were to occur, it would represent a final determination of the issue of liability, which is an issue on which, as established above, the parties have a right to trial by jury. *See Relig. Sisters of Mercy v. Becerra*, 55 F.4th 583, 608 (8th Cir. 2022) ("A permanent injunction requires the moving party to show actual success on the merits."); *Tovaritch Spirits Int'l SA v. Luxco, Inc.*, No. 4:11CV950 JCH, 2012 WL 6652949, at *1 (E.D. Mo. Dec. 21, 2012) ("Ordinarily, courts enter a permanent injunction after a trial on the merits of the underlying claims."); *Burlington N. & Santa Fe Ry. Corp. v. Dakota Mo. Valley & W. R.R.*, 347 F. Supp. 2d 708, 721 (D.S.D. 2004) ("A permanent injunction is ordinarily issued only 'after a full trial on the merits.'").

In a preliminary injunction hearing, by contrast, the Court would merely be making a preliminary (and thereby not final) determination as to whether TNT is *likely* to succeed on the merits of its claims. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (1981) (identifying probability of success on the merits as among the factors considered at a preliminary injunction hearing). Thus, the approach suggested by TNT, whereby the question of preliminary injunctive relief is kept separate from any ultimate determination of liability, is the best approach to ensure that TNT is able to exercise both its right to seek preliminary injunctive relief under Rule 65 and its right to a jury trial on its claims under the Seventh Amendment.

Preservation of the jury trial right requires that the Court not reach a final determination on the merits of TNT's claims before a jury decides its legal claims. As the Supreme Court has itself stated:

> In the Federal courts this jury right cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency. This long-standing principle of equity dictates that only under the most imperative circumstances, circumstances which in view of the

>flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims.

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11 (1959). Combining the preliminary injunction hearing in this case with a final adjudication of the merits of TNT's claims would risk the very "impair[ment]" of the jury right "prior determination of equitable claims" that the *Beacon Theatre* Court cautioned against. Instead, in order to preserve the quintessential constitutional right of trial by jury, this Court must avoid consolidation of the trial in this case with a prelminary injunction hearing.

**II.   Even If the Court Had the Discretion to Consolidate in This Case, It Would Be Inappropriate to Exercise It Here**

As explained above, the Court lacks the discretion to consolidate the preliminary injunction hearing sought by the Motion with trial on the merits of this case. But even if the Court had such discretion, exercising it here would cause needless delay in granting preliminary injunctive relief that will continue to threaten irreparable harm to TNT. Congress has expressed its endorsement of such preliminary injunctive relief in the plain text of the Lanham Act itself, wherein it has created a presumption of irreparable harm in any case where a plaintiff can show a likelihood of success on the merits, as TNT is prepared to do here. *See* 15 U.S.C. § 1116(a); *see Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178 (8th Cir. 2011) (applying similar presumption even before the 2020 amendments to § 1116 codifying the presumption); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980) (likewise, applying a presumption of irreparable harm); *see* Pl.'s Mem. in Supp. of Mot. at 6 ("[T]he Lanham Act requires this Court to presume irreparable harm to TNT from the Defendants' illegal conduct, as the Defendants themselves acknowledge.").

Every day that passes without TNT having the opportunity to have its Motion heard is another day that it is threatened with further irreparable harm—and we are now 63 days since the Motion was filed. This Court should therefore order a hearing without further delay. *See* Pl.'s

Mem. in Supp. of Mot. (Doc. #16) at 1 ("TNT is being irreparably harmed each day by the Defendants' false representations[.]"); Compl. (Doc. #1) at ¶ 20 ("The amusement devices industry is highly competitive; among other things, there is finite space for such devices to be placed in Amusement Locations. Accordingly, participation in the industry is a zero-sum game: for every device placed by one company, all other competitors have lost a potential business opportunity.").

### A. The Existence of Other Litigation Involving Overlapping Questions Is Not a Sufficient Reason to Delay a Hearing Here

It is evident from the recent oral argument that the Court may be inclined to delay the preliminary injunction hearing in anticipation of the disposition of the action brought by Defendant Torch in the declaratory judgment action pending before the Cole County Circuit Court. *See Torch Electronics, LLC, et al. v. Mo. Dep't of Public Safety, et al.*, Case No. 21AC-CC00044 (the "Cole County Case"). As the undersigned acknowledged at oral argument, the Court would be free to consider any result in that case in reaching its decision here, although any such disposition would not be binding on the Court. *See Twin City Pipe Trades Serv. Ass'n, Inc. v. Wenner Quality Servs., Inc.*, 869 F.3d 672, 676 (8th Cir. 2017) (describing the requirements necessary for a result to bind a court's decision in a separate matter); *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 640 (8th Cir. 2008) (same); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003) (same). But there are several reasons why the disposition of that case might turn out to be less useful to the Court than it might hope.

First, although Torch's counsel struggled to answer the question at oral argument, a review of the docket confirms that the Missouri Gaming Commission (the "MGC") is not a party to the Cole County Case. Indeed, it is conspicuous that Torch has not sought to join the MGC as a party to that case, despite the fact that the MGC is the agency tasked with enforcing Missouri's gambling laws. Perhaps Torch did not include the MGC because, in fact, the MGC has already made its

position clear: as explained in TNT's Motion, the MGC issued an opinion in 2019 declaring that so-called "no chance" devices like Torch's are illegal gambling devices. *See* Pl.'s Mem. in Supp. of Mot. (Doc. # 15) at Ex. 8, attached here as **Exhibit A**. The MGC stated, in relevant part:

> Upon examination and analysis . . . [t]he MGC determined that the machines are used or USABLE in the playing phases of gambling activities and therefore constitute gambling devices and slot machines as defined in sections 572.010(5) and (11) RSMo. Therefore . . . setting up and operating these devices . . . would be illegal, in violation of sections 572.030, 572.040 and 572.070, RSMo. . . . If these particular devices or any other devices substantially similar to them are found on your organization's premises, the devices will be deemed illegal, and the [MGC] will take action to discipline [the organization].

*Id*. (emphasis in original). Likewise, the Missouri Highway Patrol has stated that machines like the Torch Devices are illegal gambling machines. Compl. (Doc. #1) ¶ 69; *see* Kurt Erickson, Slot Machine Money Finds Its Way into Race for Missouri Auditor, *St. Louis Post-Dispatch* (Oct. 19, 2021), https://tinyurl.com/MOHghwyPatrol.

Yet even if Torch were to prevail in the Cole County case, such a decision would merely represent a single opinion by a single state circuit court, which would not bind other courts in the state, let alone this Court. And, to the extent that the Court would benefit from the view of a state court on the application of Missouri's gambling laws, two coequal state circuit courts, the Circuit Court of Platte County and the Circuit Court of Andrew County, have already found no-chance devices like Torch's to violate Missouri law, as described below.

In September 2020, Judge Thomas Fincham of the Circuit Court of Platte County found so-called "no chance" gaming vendor Integrity Vending guilty of felony promotion of gambling after an investigation by the Missouri Highway Patrol. *See State v. Integrity Vending, LLC*, Case No. 19AE-CR00948-01; Compl. (Doc. #1) ¶¶ 75, 79–80; Guilty Verdict Puts Halt to Parkville Gambling Operation, *The Platte County Citizen* (Oct. 2, 2020), https://tinyurl.com/PlatteCo. Judge Fincham's decision followed almost two years of litigation. The Platte County case scrutinized

machines that were called "no chance" machines, just as Torch describes its own games, and the games were described in the parties' pleadings as functioning the same way Defendants describe the function of the Torch Devices. At trial, a representative of the MGC testified as to how "no chance" machines operated. *Id*. Based on this and other testimony, the State explained that "no chance" games functioned "exactly the same" as slot machines when played without the pre-reveal mechanism, rendering the entire device illegal under Missouri law. Case No. 19AE-CR00948-01, State's Post-Trial Brief (Sept. 1, 2020), attached hereto as **Ex. B**. Ultimately, Judge Fincham agreed. Rather than appealing this decision, Integrity Vending chose to move all of its gambling machines out of Missouri. Rudi Keller, Convenience Store Owner Pleads Guilty in Missouri Illegal Gambling Case, *Missouri Independent* (Mar. 19, 2021) https://tinyurl.com/FelonyGamblingNoChanceGames.

Likewise, in the Circuit Court of Andrew County, Judge Michael Ordnung accepted a gas station owner's plea of guilty for possession of a gambling device, a class A misdemeanor, for allowing vendors to place 11 "no chance" games in his business. Rudi Keller, Convenience Store Owner Pleads Guilty in Missouri Illegal Gambling Case, *Missouri Independent* (Mar. 19, 2021), https://tinyurl.com/FelonyGamblingNoChanceGames. This followed a reduction in charges from felony promotion of gambling. When seized, the machines were discovered to have a total cash intake of $538,974. *Id*.

Still, proceedings in other counties only bolster the outcome of the Platte County and Andrew County cases. In one proceeding in Linn County, Torch was charged with promoting illegal gambling in the first degree, a class E felony. Compl. (Doc. #1) ¶ 73; Jack Suntrup, Illegal Gambling Charges Don't Stop One Missouri Company's Political Contributions, *St. Louis Post-Dispatch* (June 1, 2022), https://tinyurl.com/Political-Gambling. And in Adair County, Steven

Miltenberger, who is also a Defendant in the instant case, was charged with three counts of possession of a gambling device, a class A misdemeanor. Compl. (Doc. #1) ¶ 77; Suntrup, *Illegal Gambling Charges Don't Stop One Missouri Company's Political Contributions*, https://tinyurl.com/Political-Gambling.

Perhaps the Circuit Court of Cole County will become the first court in Missouri to disagree with the Missouri Gaming Commission, the Missouri Highway Patrol, and prosecutors in four other Missouri counties. But if it does, it will represent a single dissenting voice in a choir of state courts, state enforcement agencies, and state prosecutors who agree with TNT's position in this case. As explained below, any marginal persuasive power that such a decision might hold for this Court cannot outweigh the irreparable harm that will befall TNT in the interim.

B. **Further Delay Can Only Come at the Risk of Irreparable Harm to TNT, in Contravention of Congress's Clear Intent under the Lanham Act**

If this Court were to further delay a hearing in this matter by awaiting the Cole County case's outcome, it would effectively sanction further irreparable harm to TNT. The number of Torch Devices has grown even since TNT initiated this suit, having been placed in at least one additional gaming location owned by a company with whom TNT has an existing business relationship. *See* **Ex. C** (photographs depicting numerous Torch Devices installed since the initiation of this suit in one of the many locations in which TNT operates). In the absence of injunctive relief, Torch will not be prevented from continuing to install its illegal machines in such locations, further threatening TNT's ongoing business relationships.

Permitting such delay would be contrary to the clear intent of Congress, as manifested most explicitly in the Lanham Act's presumption of irreparable harm. Congress amended the Lanham Act in 2020 to include that presumption to make it easier, not harder, for plaintiffs in TNT's position to obtain preliminary relief in advance of any trial on the merits. *See Bisous Bisous LLC*

*v. The Cle Group, LLC*, 3:21-CV-1614-B, 2021 WL 3618042, at *12 (N.D. Tex. Aug. 16, 2021) ("Congress recently clarified by amendment to the Lanham Act that when a [plaintiff bringing a Lanham Act claim] has established likelihood of success on the merits, irreparable injury is presumed."); *SoClean, Inc. v. Sunset Healthcare Sols., Inc.*, 52 F.4th 1363, 1371 (Fed. Cir. 2022) ("Under the Trade-mark Modernization Act of 2020, [plaintiff] is entitled to a rebuttable presumption of irreparable harm once the court has [it] is entitled to a likelihood of success on the merits.")). Waiting any longer to give TNT that opportunity would run afoul of that Congress's manifest intent in amending the Lanham Act.

## CONCLUSION

As explained above, this Court cannot consolidate the preliminary hearing in this case with a trial on the merits without impermissibly depriving the parties of their right to trial by jury on TNT's claims. But even if it could, there appears to be little reason to do so, except for the possibility that the Court might, at some indeterminate future date, receive persuasive guidance in the form of a verdict in the Cole Country Case. But no possible outcome in the Cole County Case is worth the wait. A decision by the Circuit Court of Cole County would carry no more persuasive power than the decision already reached in Platte County in 2020 and in Andrew County in 2022. A ruling in the Cole County Case will simply be a single case, decided by a single court, in a proceeding where neither TNT nor the MGC is a party. If Torch were to succeed in Cole County, then that outcome would create a split among the state circuit courts, but it would still have no binding effect on the Missouri Supreme Court, Missouri Courts of Appeals, or this Court. And if Torch fails, then that decision will only reinforce what two coequal state courts have already determined, and what we will establish at the hearing in this case: that "no chance" devices like Torch's are illegal gambling devices. Neither of these potential results is compelling enough to

justify further delay at the risk of continued irreparable harm to TNT. TNT therefore respectfully requests that the Court set a preliminary injunction hearing at the earliest available date.

Dated: June 22, 2023

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
MARY GRACE WARREN, #73147MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*marygrace.warren@bryancave.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2023, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN #60768MO