IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-00330-JAR |
| | ) |
| TORCH ELECTRONICS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF TNT'S REPLY
IN SUPPORT OF ITS MOTION FOR STATUS CONFERENCE**

Despite its title, the Defendants' Memorandum in Opposition does not oppose the relief that TNT requests: that the Court set a status conference. *See* Mem. in Opp. (Doc. #36) (the "Opposition") at 1 ("In short, if the Court desires to schedule a status conference, Torch would not object to the Court's decision."). Yet while accusing TNT of "repeatedly briefing essentially the same issue in an attempt to prompt the Court into taking action," *id.*, the Defendants attempt to utilize the opportunity presented by TNT's simple (and unopposed) request to once again seek to relitigate whether TNT is even entitled to an evidentiary hearing on its Motion for Preliminary Injunction (Doc. # 15) in the first place. But the Court already answered that question nearly two months ago, when it indicated at oral argument that the purpose of the argument was not to determine "if" TNT was entitled to a hearing on its Motion for Preliminary Injunction, but "when." It is far past time for that question to be answered. TNT therefore respectfully requests that the Court set a status conference at its earliest convenience.

## DISCUSSION

**I.     The Recent Continuance of the Cole County Case Makes It Unreasonable for This Court to Further Delay Setting an Evidentiary Hearing**

The principal reason that this Court previously appeared hesitant to set a hearing date was the hope that a resolution in the Cole County Case might provide guidance to the Court in determining whether the "no chance" devices in this case are illegal, as multiple other Missouri courts have recognized. After waiting nearly six weeks, Torch has now delayed judgment day in that case for at least another two months. This Court should not permit them the same reprieve in this case.

Torch's effort to delay the Cole County Case and this Court's adjudication of TNT's Motion for Preliminary Injunction is just the latest variation on the same theme: Torch's use of the Cole County Case as a means to stall the adjudication of other cases challenging the legality of its conduct. Torch previously sought a stay of proceedings in *Turntine v. Torch Electronics, LLC,* Case No. 20SL-CC03000 (Circuit Court of St. Louis County) in March 2023, citing the adjudication of the Cole County Case. *See* **Ex. 1** (Torch's motion to stay pending further proceedings in the Cole County Case). Torch also failed to comply with prior discovery orders in 2022 in that same case, resulting in a motion to compel its discovery responses. *See* **Ex. 2** (order granting in part motion to compel Torch's responses to interrogatories following Torch's failure to respond to plaintiff's Golden Rule letter). Considering that past behavior, it is ironic that the Defendants now seek to accuse TNT of delay, when it is the Defendants that continue to delay setting a hearing in this matter, and Torch that continues to drag its feet as the plaintiff in the Cole County Case.

Although Torch attempts to blame the defendants in the Cole County Case for the delay, a review of the docket in that case demonstrates that Torch waited until three months before trial to

serve the discovery requests that resulted in the recent production of some 5,000 pages of documents and the resulting stay, despite the fact that the case had been pending for more than two years at that point. *See* **Ex. 3** (certificate of service for Torch's May 5, 2023 requests for production and interrogatories, the first such discovery directed to Defendant Missouri State Highway Patrol). The docket also reflects that the parties to the Cole County Case have scheduled multiple additional depositions to be completed within the next several weeks, casting further doubt on whether the trial will proceed on its current schedule. *See* **Ex. 4** (docket of Cole County Case, current as of August 10, 2023). Presumably, even once the trial has concluded, the parties will need to submit proposed findings of fact and conclusions of law, which they are unlikely to do before a trial transcript is prepared. *See* Mo. Sup. Ct. R. 73.01 ("The court may, or if requested by a party shall, include in the opinion findings on controverted material fact issues . . . ."); 19th Cir. Local R. 51.03 ("In all court-tried cases in which findings of fact and conclusions of law are required or properly requested or as directed by the court, the parties, through their attorneys, shall submit proposed findings of fact and conclusions of law at the conclusion of the trial or within a reasonable time as directed by the Court."). How many more such delays must TNT brook before it is entitled to its day in court? The Defendants' Opposition provides no reassurance.

Instead, the Defendants blithely suggest that an additional two-month delay "hardly seems unduly prejudicial." Mem. in Opp. (Doc. #36) at 1. But TNT's evidence and allegations are to the contrary. As TNT will demonstrate at the hearing, the Defendants' continued false marketing and placement of their illegal gambling devices with TNT's customers threatens to put TNT out of business entirely if current trends continue. *See* Mem. in Supp. of Mot. for Prelim. Inj. (Doc. #16) at 3 ("Defendants have already decimated countless business relationships that TNT has spent decades building with its customers . . . . [W]ithout relief from this Court, that trend is likely to

put TNT out of business entirely."). As noted in TNT's Motion for Status Conference (Doc. #15), another of TNT's customer relationships has already been threatened in just the two months since the oral argument. *See* Mot. for Status Conference (Doc. #35) at ¶ 22. If TNT's Motion for Preliminary Injunction (Doc. #15) is not heard expeditiously, it appears likely that this relationship will suffer the same fate as the numerous specific examples of lost customer relationships that TNT has set forth in its prior briefing. *See* Reply (Doc. #23) at 11–12; *see also* Reply Ex. 9, Timeline of Removal of TNT Machines (Doc. #23-3) at 2; *see also* Pl.'s Opp. to Consolidation (Doc. # 34) at 8.

The Defendants will presumably dispute that evidence. But whether TNT's claims are supported by the evidence is a question that can only be resolved in an evidentiary hearing. Likewise, the legal issues presented by TNT's Motion are not likely to be resolved by the Cole County Case even if it does reach final judgment, because (1) TNT is not a party to that case and will not bound by any judgment therein, *see* Mem. in Opp. (Doc. #36) at 4 n.1 (acknowledging that a decision in the Cole County Case would not represent mandatory authority); and (2) any interpretation made by that court would, at best, represent a single dissenting voice among numerous coequal Missouri courts that have already found no-chance devices like Torch's to violate Missouri law, *see* Compl. (Doc. #1) at ¶¶ 73–81.[1]

---

[1] For the first time, the Defendants now contend that the Torch Devices have some unspecified difference from other "no-chance" devices found to be illegal by Missouri courts that somehow exempts the Torch Devices from the requirements of Missouri law. *See* Mem. in Opp. (Doc. #36) at 4 n.1. It is not at all clear what difference the Defendants are referring to, but in any event, any such claims are contradicted not only by Mr. Friedman's expert declaration filed in support of the Motion for Preliminary Injunction, *see* Decl. (Doc. #23-1), but by the declaration of the Defendants' own expert Nick Farley, which admits that the outcomes of the Torch Devices are entirely outside the control of a player, *see* Decl. (Doc. #21-14) at ¶ 7. *Cf.* Mo. Rev. Stat. § 572.010(4)–(5) (defining "gambling device" to include any device that is "used or usable" in any phase of an activity in which a player "stakes something of value upon a contest of chance or a future contingent event not under his or her control or influence").

That said, it seems less likely than ever that the Cole County Case will turn in Torch's favor, seeing as corporate representatives of the Missouri Gaming Commission recently provided deposition testimony in that very case affirming the Commission's view that "no chance" games like the Torch Devices are illegal gambling devices. *See* **Ex. 5** (letter from Missouri Gaming Commission reflecting that "no chance" devices meet the definition of illegal gambling devices under Missouri law); **Ex. 6** (Dep. Tr.) at 107:11–108:14 ("[Q:] With respect to some of the documents that we've talked about today, for instance, MGC-3, the opinion letter from the general counsel for the commission, the Commission's neither rescinded that nor has there been any vote taken to rescind that letter. True? [A:] True. [Q:] As far as you're concerned that letter remains a reliable letter for people in Missouri to refer to and consider in determining whether or not to utilize or to allow these types of devices to be placed on their business location? [A:] Correct.").

Taking these recent developments together, this Court should not have any confidence that the Cole County Case will come to a conclusion in the near future. Nor does it appear likely that any determination there could have the impact the Defendants hope for on this Court's adjudication of TNT's claims. This Court should therefore not await the conclusion of the Cole County Case to set an evidentiary hearing in this matter.

**II.   The Fact That TNT Did Not Pursue Its Claims Earlier Does Not Preclude Its Entitlement to a Hearing on Its Motion**

Nor should the Court be distracted by the Defendants' attempts to shift the blame for the continued delay onto TNT. This Court has already expressed its view that TNT is entitled to such a hearing, indicating at oral argument that the only question to be resolved was not "if," but "when" the hearing would be held. That view is entirely consistent with this Court's obligations under the Federal Rules of Civil Procedure and the Lanham Act, and this Court should therefore set a status conference to permit it to fulfill those obligations by setting a hearing.

Contrary to Torch's insinuations, TNT had ample justification for seeking relief when it did. As TNT has previously explained, it has been subjected to new and repeated injuries by the Defendants' conduct over the course of time, and it sought relief from this Court promptly after assembling the evidence necessary to support the federal claims set forth in its Complaint. *See* Reply (Doc. #23) at 10–11.

To the extent, however, that the Defendants wish to argue that TNT's conduct in that regard was unreasonable, that is but another reason for the Court to promptly set a hearing on TNT's Motion for Preliminary Injunction. Only then will the Court be able to address the Defendants' "delay" arguments, after it has assessed the nature of the harms alleged by TNT and determined whether preventing those harms through injunctive relief has been made impossible by the passage of time. *See Kroupa v. Nielsen*, 731 F.3d 813, 821 (8th Cir. 2013) (recognizing irreparable harm where evidence presented likelihood of future injury, notwithstanding asserted delay); *see also* Reply (Doc. #23) at 12 ("The irreparable harm that TNT continues to experience has not abated with the passage of time . . . and there is no reason to think it will do so now. TNT should be permitted to . . . prove its entitlement to the injunctive relief it seeks.").

As TNT has elaborated in prior briefing, the mere passage of time does not undermine the ongoing threat of irreparable harm to TNT due to Defendants' unlawful conduct; to the contrary, the continued delay only increases that threat. The fact that TNT has suffered past harms, as TNT will demonstrate at the hearing, does not mean it will not also suffer future harms in the absence of injunctive relief—indeed, the fact that such harms have resulted in the past is all the more reason to believe that additional harms will occur in the future. *See* Ex. 9, Timeline of Removal of TNT Machines (Doc. #23-3) at 2; *see Kroupa*, 731 F.3d at 820 ("Because damage to one's reputation is a harm that cannot be remedied by a later award of money damages, the threat of reputational harm

may form the basis for preliminary injunctive relief."); *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 936 (8th Cir. 2002) (affirming grant of preliminary injunction in spite of delay, stating that "the issue is whether 'the length of delay was unreasonable,' an issue that turns on the facts of each case"); *Tari Labs, LLC v. Lightning Labs, Inc.*, No. 3:22-CV-07789-WHO, 2023 WL 2480739, at * 11 (N.D. Cal. Mar. 13, 2023) (holding delay in seeking injunctive relief not sufficient to overcome statutory presumption in Lanham Act).

That reasoning is especially applicable in the context of false advertising claims arising under the Lanham Act. It is the very nature of false advertising that such ads are designed and intended to induce new and additional customers to purchase goods and services, and thereby cause damage to competitors on an ongoing basis. That is why the Lanham Act presumes that the irreparable harm will continue to arise from false advertising such as the Defendants', regardless of the fact that other harms have also been suffered by TNT in the past. *See* 15 U.S.C. § 1116(a) ("A plaintiff . . . shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation [under § 1125] in the case of a motion for a preliminary injunction."); *see also Buetow v. A.L.S. Enters., Inc.,* 650 F.3d 1178 (8th Cir. 2011) ("[W]hen a competitor's advertisement . . . is proved to be literally false, the court may presume that consumers were misled . . . without requiring consumer surveys or other evidence of the ad's impact on the buying public."); *Breeze Smoke LLC v. Yatin Enters. Inc.*, No. 1:22-CV-1182, 2023 WL 3070893 at *11 (W.D. Mich. Apr. 25, 2023) (interpreting presumption of irreparable harm, enacted in 2020); *MGMT Residential, LLC v. Reeves*, No. CV 22-3966, 2023 WL 2471263 at *3 (E.D. Pa. Mar. 10, 2023) (same).

Whatever past harms Torch's false advertising has visited upon TNT, the fact that Defendants continue to advertise and market the Torch Devices as legal, so-called "no chance"

gaming devices presents the risk of future harm that TNT seeks to prevent through a preliminary injunction. And the Lanham Act and the Federal Rules of Civil Procedure give it that right. *See* 15 U.S.C. § 1116; Fed. R. Civ. P. 65(b). [2]

## CONCLUSION

TNT and the Defendants disagree about much, but there is at least one thing on which they agree: "enough ink has already been spilled on the question of whether TNT is entitled to an evidentiary hearing on its Motion for Preliminary Injunction." Mem. in Opp. (Doc. #36) (quoting Reply (Doc. #30) at 1). The Defendants do not oppose TNT's request for a status conference. TNT therefore respectfully requests that the Court grant its unopposed Motion for Status Conference without delay.

Dated: August 10, 2023

Respectfully submitted,

BRYAN CAVE LEIGHTON
PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
MARY GRACE WARREN, #73147MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*marygrace.warren@bryancave.com*

*Attorneys for TNT Amusements, Inc.*

---

[2] In earlier briefing, the Defendants suggested that the Court should delay adjudication of TNT's Motion for Preliminary Injunction (Doc. #21) until it has ruled on the Defendants' Partial Motion to Dismiss (Doc. #18). But as its title suggests, the Defendants have not moved to dismiss TNT's claim under the Lanham Act. *See* Mot. to Dismiss (Doc. # 19) at 3, 15 ("TNT can attempt to pursue . . . its Lanham Act claim."); *see also* Pl.'s Opp. Mot. to Dismiss (Doc. # 20) at 2 ("[T]he Defendants do not assert [TNT's claim under the] Lanham Act has been insufficiently pled."). As a result, a ruling on that Motion cannot possibly eliminate the need for a hearing on TNT's Motion for Preliminary Injunction.

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 10, 2023, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

                                            */s/ Richard E. Finneran*
                                            RICHARD E. FINNERAN, #60768MO