# EXHIBIT O

**To:** Tom Cobb (tomcobb@acmemusic.us)[tomcobb@acmemusic.us]; 'Tony.Luetkemeyer@senate.mo.gov'[Tony.Luetkemeyer@senate.mo.gov]
**From:** Jim Turntine[jturntine@playmor.com]
**Sent:** Tue 7/28/2020 8:56:00 PM (UTC)
**Subject:** FW: Attorney Opinion GC/AG Authority To Investigate Illegal Gaming
MGC Memo.docx

Tony,
I hope all is well with you and yours. Tom and I felt we should share the attached information with you. I have been in communication with Senator Schatz and he is going to take some action on this soon. I will let him know we have now shared this with you.
Jim

**From:** Jim Turntine <jturntine@playmor.com>
**Sent:** Tuesday, July 28, 2020 9:36 AM
**To:** Tom Cobb (tomcobb@acmemusic.us) <tomcobb@acmemusic.us>; Kathi Harness <kathi@kathiharness.com>; scott@swaingroup.biz; Casey Wasser <casey@swaingroup.biz>
**Subject:** Fwd: Attorney Opinion GC/AG Authority To Investigate Illegal Gaming

A lot happened yesterday. Jim
Get Outlook for iOS

---

**From:** Jim Turntine
**Sent:** Tuesday, July 28, 2020 9:23:55 AM
**To:** Dave.Schatz@senate.mo.gov <Dave.Schatz@senate.mo.gov>; Dave Schatz <dschatz@schatzunderground.com>
**Subject:** Attorney Opinion GC/AG Authority To Investigate Illegal Gaming
Get Outlook for iOS

TNT0000000208

**EXHIBIT 45**

MEMORANDUM

From: PMH
To:     ELK
Cc:     Jim Turntine
Re:     Missouri Gaming Commission Jurisdiction
Date:  July 22, 2020

ISSUE:  Does the Missouri Gaming Commission ("MGC") have jurisdiction to investigate the operation of illegal gaming machines outside of licensed casinos? If so, is there a mechanism available for statewide enforcement by the attorney general?

ANSWER: Yes. MGC Has broad supervisory jurisdiction granted by sec. 313.805 RSMo over all gambling operations governed by sections 313.800 to 313.850 including the power to investigate alleged violations. If MGC determines reasonable grounds exist to believe that criminal violations are taking place, it has the duty to refer such matters to the state attorney general and the local prosecuting attorney or circuit attorney for further action. The attorney general has full, concurrent jurisdiction to prosecute violations.

FACTUAL BACKGROUND:  Our client, Jim Turntine, has been lobbying to no avail across the State of Missouri to get law enforcement engaged in putting a stop to the illegal gaming machines placed by Torch Electronics and others in bars and convenience stores. MGC, in its letter of July 3, 2019, expressly found that the machines are illegal and that operation of the machines violates sections 572.030, 572.040, and 572.070 RSMo. Mr. Turntine approached MGC to encourage it to take whatever action it could to stop the illegal machines which were decimating his legal coin-operated amusement device business.

MGC has consistently taken the confounding position that it has no jurisdiction outside of licensed casinos to regulate gaming machines that it has already determined violate Missouri law. We have been asked to perform a thorough review of Missouri law related to MGC and to provide our independent analysis of what, if anything, MGC is empowered to do to combat the continued influx of illegal gaming machines.

ANALYSIS:  To begin, we review the Mission and Vision of MGC, proudly displayed on its website, www.mgc.dps.mo.gov as follows:

OUR MISSION

The Missouri Gaming Commission will regulate charitable and commercial gaming in a manner which promotes a positive impact on the State and insures the integrity of the industry.

OUR VISION

We will be a proactive organization recognized for its fair, firm and consistent enforcement of regulations and statutes.

Any fair reading of the foregoing watchwords would lead the public to believe in a few key functions of MGC:

(1)  MGC will regulate "commercial gaming";
(2)  MGC has a core interest in promoting "positive impact" on Missouri;

(3) MGC will "insure the integrity" of the commercial gaming industry;
(4) MGC will be "proactive" with its internal and external stakeholders, including the public;
(5) MGC will enforce pertinent laws in a firm and consistent manner.

The statute governing the authority of MGC is section 313.805 RSMo which states in relevant part, "The commission shall have full jurisdiction over and shall supervise all gambling operations governed by sections 313.800 to 313.850." The statute goes on to enumerate certain specific powers granted to MGC. Subsection (5) empowers MGC to investigate alleged violations of sections 313.800 to 313.850 or the commission's rules, orders, or final decisions. Subsection (10) grants MGC subpoena power when, in the judgment of MGC, it is necessary to enforce the foregoing statutes. Finally, subsection (19) gives MGC the broad power to take any other action as may be reasonable or appropriate to enforce its statutory mandate.

Section 313.830.1(1) makes it a Class E felony to "operate a gambling excursion" without a license issued by MGC. Basically, what this means is that it is a felony in Missouri to operate gambling machines outside a licensed casino. The statute (313.800(12)) defines "gambling excursion" as the time during which gambling games may be operated on an excursion gambling boat. Excursion gambling boat is defined by state (313.800(9)) as a facility licensed by MGC on which gambling games are allowed. Importantly, gambling games are not allowed anywhere but on "excursion gambling boats," i.e., licensed facilities.

Why is this important? The legislature went to great pains to set up a system whereby operators of gambling machines have to undergo rigorous examination for licensing, to insure integrity. Among other requirements, the statutes require that gambling devices be acquired from vetted and licensed suppliers. Going deeper, to maintain their licenses, all operators are required to comply with strict and extensive "Minimum Internal Control Standards for Electronic Gaming Devices." These so-called MICs consist of 30 pages of highly technical regulations all designed to protect the integrity of electronic gaming machines to earn the trust of the public. Without these kinds of protections afforded by the licensing protocols, the public can have no basis to trust that games outside casinos will be operated with integrity.

Moreover, as to "positive impact" licensed casino operators are required to collect admission fees and to pay a 21% tax on adjusted gross revenues ("AGR"). By statute, these admission fees and tax revenues are earmarked to help the casinos' home cities or counties and statewide educational initiatives. The amounts at stake are not trivial. According to MGC reports, the average monthly AGR for duly licensed slot machines in 2019 was just over $8000 per month. According to Julie O'Donoghue's November 27, 2019 report on St. Louis Public Radio the best estimate was that there were 14,000 illegal machines in operation. If the illegal machines produce like AGR to the licensed machines, it means that Torch and the other illegal operators could be siphoning approximately $23 million **per month** from Missouri tax coffers.

Torch and its imitators openly flout the licensing statutes and regulations by placing their machines throughout Missouri. Section 313.830.4(5) makes it a Class E felony to sell or distribute any game or device intended to violate any provision of sections 313.800 to 313.850. Gambling games are only allowed on "excursion gambling boats." Therefore, any gambling devices placed elsewhere, such as in bars, restaurants, or convenience stores, by definition, circumvent and violate these laws. Such machines not only do not pay gambling fees and taxes but also do not provide any substantial assurances of fair play or integrity.

Chapter 572 of the Missouri Statutes defines and outlines punishment for illegal gambling for the protection of the public. Gambling and the promotion of gambling is illegal in Missouri. The sole

exception to this rule according to section 572.015 is for constitutionally authorized activities under Article III, sections 39(a)-39(f) for bingo, the state lottery, pari-mutuel betting, certain raffles, and <u>excursion gambling boats.</u> While many gambling crimes are misdemeanors, the legislature takes a dim view of promoters of gambling. Section 572.030.1(1) defines promoting gambling in the first degree as knowingly profiting from illegal gambling by setting up and operating a gambling device where more than $100 is played in any one day, or setting up and operating any slot machine. Violation of this statute is classified as a Class E felony. Accordingly, any placement of gambling devices or slot machines other than on fully licensed facilities is illegal.

MGC has already investigated the devices in question, i.e., "no-chance game machines." MGC examined and analyzed such devices and specifically found them to constitute "gambling devices" and "slot machines" in violation of Chapter 572. MGC's findings and conclusions are set forth in its July 3, 2019 letter to the St. James VFW Post 5608, a copy of which is attached hereto.

The gambling devices placed by Torch and others outside of licensed casino facilities subject them to prosecution under at least three Class E felonies, as outlined above. Amazingly, MGC has claimed that it lacks authority to do anything about it. In fact, nothing could be further from the truth. <u>Section 313.830.7 RSMo</u> provides that if MGC determines that reasonable grounds to believe a violation of sections 313.800 to 313.850 has occurred or is occurring which is a criminal offense, MGC **shall** (emphasis added) refer such matter to both the state attorney general and the local prosecuting attorney who shall have concurrent jurisdiction to prosecute. The fact is that MGC has a mandatory duty to refer criminal behavior to prosecutorial authorities. MGC has already determined that criminal activity has and continues to take place with the operation of illegal gambling devices outside licensed facilities.

In addition to felony prosecution, the above-noted violations of sections 313.830.1(1) and 313.830.4(5) make the illegal machines subject to forfeiture because the operation of these machines forms the basis of the crimes. Section 313.832.1(2) provides that anything of value, including personal property and money, is subject to forfeiture if the item was used to facilitate a violation of sections 313.800 to 313.840. The attorney general is also empowered to enforce these forfeitures under the CAFA statute at <u>section 513.607 RSMo.</u>

<u>CONCLUSION</u>:  The time to act is now. There is no reasonable basis for delay. Consistent with its Mission, Values, and duly enacted Statutes of the State of Missouri, MGC clearly has the power and jurisdiction to investigate the proliferation of illegal gambling devices outside licensed facilities. Moreover, to the extent it already knows of violations through its website's tip line or otherwise, MGC has a mandatory obligation to the people of the State of Missouri to refer such cases to statewide prosecution and or forfeiture by the attorney general.