**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00330-JAR |
| TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STRIKE UNTIMELY
AND IMPROPER EXPERT REPORTS AND FOR SANCTIONS
PURSUANT TO FED. R. CIV. P. 37(c)(1)**

TNT offers several excuses for its conduct. None of those excuses are valid. Some of the excuses simply are not true. Kneuper's Dec. 12th Report was not a "supplemental" report. Kneuper's Dec. 12th Report was an entirely new report containing entirely new information, analysis, methodology, and (for the first time) Kneuper's own opinions. Friedman's Dec. 15th Rebuttal was similarly not a "supplemental" report – it was, as Friedman admitted in paragraph 2 of his Dec. 15th Rebuttal, a rebuttal of Torch's rebuttal expert Nick Farley's November 6th report. TNT suggests the Court "implicitly" granted TNT leave to "supplement" TNT's expert reports whenever and however TNT saw fit. That position falls flat when compared to both (1) the explicit language of the Court's CMO expert disclosure deadlines and (2) TNT's conduct and interpretation of the Court's expert disclosure deadline language when Torch was seeking an extension of Torch's expert rebuttal report deadline in October 2023.

There is also irony in TNT's arguments based on the fact "the discovery deadlines in the case have been highly expedited—with identification of experts required only 40 days after

discovery began." The Court may recall Torch objected strenuously to TNT's proposed expedited scheduling order and deadlines. (*See* Doc. #40). In part, Torch stated TNT's proposed schedule was "so abbreviated and expedited that it is not only untenable and unreasonable, but it risks the undersigned counsel's ability to adequately and ethically defend this case." (*Id.* at p. 2). The Court ultimately issued the CMO and essentially adopted TNT's schedule "for the reasons set forth in Plaintiff's proposed scheduling plan." Thereafter, Torch complied with the Court's scheduling order and the expert disclosure deadlines stated therein. That included disclosing both the identity and Rule 26(a)(2)(B) expert report of Torch's *rebuttal* technical expert, Nick Farley, on November 6, 2023, despite the fact Farley had not had an opportunity to see TNT's affirmative technical expert's report due the same day. Torch never sought leave thereafter to have Farley submit further rebuttal opinions. TNT also never sought leave of Court to submit further expert opinions (rebuttal or otherwise). TNT just served new expert reports and opinions on Torch shortly before Torch was scheduled to depose each of TNT's experts – without leave of Court. In the case of Friedman, TNT waited **41 days** after receiving Farley's report to serve Torch with Friedman's rebuttal opinions. In the case of Kneuper, TNT waited **36 days** (and 6 days *after* receiving Torch's rebuttal damages expert's report) to serve Torch with Kneuper's entirely new report and opinions.

TNT had the burden to demonstrate TNT's untimely expert reports and opinions were substantially justified or harmless. *See Norbrook Labs. Ltd v. G.C. Hanford Mfg. Co.*, 297 F. Supp. 2d 463, 481 (N.D.N.Y. 2003) ("The burden to prove substantial justification or harmlessness rests with the party who failed to comply with Rule 26."); *see also Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 705 (8th Cir. 2018) ("It is the obligation of the party facing sanctions for belated disclosure [or nondisclosure] to show that its failure to comply with the Rule was . . . deserving of some lesser sanction" than exclusion) (quotes and citation omitted). TNT has failed

2

to satisfy that burden. Simply put, there is no justification for TNT's dilatory "supplementations" and flouting of clear expert deadlines. And TNT's actions clearly prejudiced Torch.

TNT does not deny both of its experts' "supplemental" reports were sprung on Torch, at most, 48 hours before Torch was scheduled to depose each expert. Those facts, standing alone, demonstrate prejudice to Torch. As TNT points out, discovery was highly expedited. Before TNT dropped its "supplemental" reports on Torch shortly before each of TNT's expert witness's depositions, Torch had spent what little time it had available preparing to depose TNT's respective experts on their November 6th reports. Torch did not have spare days to spend completely retooling its deposition cross-examination outlines and re-conferring with its own experts to prepare new lines of questioning regarding TNT's experts' new opinions. As counsel for Torch explained to counsel for TNT, "All the excuses you've offered could have been solved with more time for discovery . . . as I've said many times now, if your expert witnesses needed more time to properly complete their analysis or you believed you were missing critical information they needed to complete their reports, the time to address that issue was before November 6th." (*See* Email Chain Dated December 18, 2023, a true and correct copy of which is attached as **Exhibit 22**). For whatever reason, TNT chose a different path. That path was inconsistent with the Court's CMO and the Federal Rules, it was not justified, and it prejudiced Torch. TNT's "supplemental" expert reports should be stricken and all opinions therein should be excluded pursuant to Fed. R. Civ. P. 37(c)(1).  If TNT needed relief from the CMO's expert deadlines, TNT should have sought relief from the Court and explained why TNT's conduct required the Court to amend all subsequent deadlines and the Court's trial setting – that was not Torch's responsibility.

A.      **Pursuant to Fed. R. Civ. P. 37(c)(1), Kneuper's and Friedman's Untimely and Improper "Supplemental" Reports Should Be Stricken**

"Rule 37(c)(1) makes exclusion of evidence the default, self-executing sanction for the

failure to comply with Rule 26(a)." *Vanderberg*, 906 F.3d at 705. As the Eighth Circuit explained recently in *Vanderberg*, Rule 37(c)(1) is clear – "a party that fails to make its required Rule 26(a) disclosures 'is not allowed to use that information or witness'" unless the party can demonstrate the failure was substantially justified or harmless. *Vanderberg*, 906 F.3d at 705. The Eighth Circuit was also clear about when alternative sanctions may be imposed based on the language of Rule 37(c)(1) – Rule 37(c)(1) "also states that alternative sanctions may be imposed 'instead of [exclusion] . . . *on motion*.'" *Vanderberg*, 906 F.3d at 705 (quoting Fed. R. Civ. P. 37(c)(1)) (alterations in original). The dissent in *Vanderberg* suggested the mere fact that the party alleged to have violated Rule 26(a) provided a "vigorous opposition furnished the district court with the discretion to consider other options outside of exclusion." *Vanderberg*, 906 F.3d at 706 (quoting the dissent) (quotations omitted). The Eighth Circuit majority rejected that position: "The dissent's approach would collapse the rule's provision of automatic exclusion of undisclosed evidence (except where harmless or substantially justified), with the option of alternative or additional sanctions on a party's motion, into an open-ended approach that is divorced from the text of the rule." *Id.* TNT has not filed any motion with the Court asking the Court to impose an alternative or lesser sanction for TNT's untimely and improper expert reports and opinions.

        **B.**        **TNT's Claim that TNT was "Obligated" By the Federal Rules to "Supplement" Kneuper's and Friedman's Report is a Farce**

TNT claims TNT "was obligated by the Federal Rules of Civil Procedure" to "supplement" because (a) Kneuper and Friedman reserved a right to supplement and (b) Kneuper's and Friedman's supplements were allegedly "in part" based on new information. Neither expert's report was a proper "supplemental" report. And this excuse is not novel – courts consistently and correctly hold that labelling an untimely new report or new rebuttal report as "supplemental" is not a magic bullet excusing clearly improper expert disclosures.

Kneuper admitted his Dec. 12th Report contained the first instance of Kneuper's own independent analysis of TNT's financial data and Kneuper's opinions regarding TNT's alleged damages. Friedman admits on page 1, paragraph 2 of his Dec. 15th Rebuttal that his "supplemental" report is actually a *rebuttal* to things Farley stated in his November 6th Report. (*See* Friedman's Dec. 15th Rebuttal at ¶ 2). "Supplementation does not cover failures of omission," and "[s]upplementation is not appropriate to attempt to fix weaknesses in an expert report identified by an opposing party." *Ruiz v. Walmart Inc.*, No. CV 20-01129-RAO, 2021 WL 4796960, at *6 (C.D. Cal Apr. 27, 2021) (striking all four of the plaintiff's expert witnesses' untimely and improper "supplemental" reports under similar circumstances); *Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 189 (S.D. Cal. 2020) (explaining courts "have rejected supplemental expert reports that were significantly different from the expert's original report and effectively altered the expert's theories or attempted to deepen and strengthen the experts' prior reports"); *Cantrell v. Coloplast Corp.*, 76 F.4th 1113, 1115 (8th Cir. 2023) (explaining district court correctly excluded untimely disclosed expert opinions and rejected the plaintiff's argument new expert opinions were Rule 26(e) supplements); *Sierra Club*, 73 F.3d at 569-71 (striking all of the plaintiff's untimely "supplemental" reports where the court's "order set[] an accelerated discovery schedule" requiring "simultaneous" disclosure of the reports; supplemental disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information"). As a number of courts have put it, "[t]o construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would wreak havoc in docket control and amount to unlimited expert opinion preparation." *Martinez*, 336 F.R.D. at 189. (quotations omitted); *Arnold v. CNH Indus. Am., LLC*, Case No. 21-2341-DDC, 2023 WL 6312266, at *6 (D. Kan. Sept. 28, 2023) (slip op.) (same; also explaining a "plaintiff can't utilize Rule 26(e)(1) to sandbag his

opponent or to deepen or strengthen his case where the information should have been included in the expert report") (quotations and citation omitted).

The fact that Kneuper and Friedman put a boilerplate reservation of a right to supplement in their respective November 6th reports has zero legal effect; those reservations cannot trump the Federal Rules or the Court's deadlines. Further, TNT's attempt to claim Kneuper's "supplement" was based on new information is simply dishonest. Kneuper admitted during his deposition all the information he relied on in issuing his entirely new opinions in his Dec. 12th Report *came from TNT and TNT's own financial information*. (Kneuper Dep., **Ex. 15** (Doc. #66-15), 41:4-8 (Q: "[T]here's nothing that you relied on in your December 12th report as far as information, new information that Torch gave TNT; correct? It's all TNT's data that you are relying on; correct?" A: "**That is correct.**"). Further, TNT's allusion to the parties' agreement to limit discovery to certain overlapping location is a red herring – that agreement was not even floated as a possibility *until after November 6th*. And Kneuper further admitted during his deposition that he knew of nothing that would have prevented TNT prior to November 6th from doing its own homework regarding the locations where TNT operates to determine if Torch also had devices in those locations (i.e., TNT's suggestion that it was somehow in the dark about *TNT's* customer locations that had both TNT devices and Torch devices until *Torch* told TNT is a farce). (*See* Additional Excerpts from Kneuper's Dep., a true and correct copy of which is attached as **Exhibit 23**, 106:23-111:6). Additionally, Kneuper admitted that *on October 19, 2023*, during TNT's initial 30(b)(6) deposition, counsel for Torch provided TNT with a roadmap for conducting essentially the same type of device-level analysis Kneuper performed in his Dec. 12th Report for any location where TNT believed it may have had TNT devices displaced by Torch. (*Id*. (**Ex. 23**), 111:15-115:12). Kneuper further admitted that had TNT simply asked him to and provided him with *TNT*'s own

data on that issue, he was "capable of doing that sort of analysis" prior to November 6th. (*See id.*).

TNT's arguments with respect to Friedman's rebuttal report fare no better. TNT claims TNT understood "the Case Management Order [to] *implicitly* acknowledge that the parties would have to produce supplemental reports" to offer rebuttal opinions. This interpretation cannot be squared with the *explicit* language of the Court's CMO. Moreover, TNT's new alleged interpretation stands in stark contrast to TNT's earlier conduct and interpretation of the same language in this case when Torch's counsel was seeking an extension of Torch's deadline to serve TNT with Torch's rebuttal damages expert report. (*See* Doc. #66, p. 5). Tellingly, TNT failed to address those circumstances in its Opposition or explain why, now that TNT is the party feeling the pressure from the CMO and expert deadlines, TNT has suddenly had a change of heart regarding the "reasonable" interpretation of the Court's expert disclosure deadline language. As discussed in his declaration attached to Torch's moving brief, Torch's counsel had to both get Turntine to admit on the record it would only be fair to allow Torch's rebuttal damages expert to see TNT's affirmative damages expert's report before Torch's rebuttal expert had to disclose his rebuttal report *and* threaten TNT with a motion for sanctions for TNT's failure to properly prepare its Rule 30(b)(6) corporate representative to get TNT to agree to a simple 30-day extension of Torch's expert rebuttal deadline. (Doc. #66-3, ¶¶ 3-12). TNT failed to dispute or even address those facts. Those facts cannot be squared with TNT's new interpretation of the CMO.

Further, if TNT was unclear about what the Court's CMO language meant (which Torch denies), the proper course of action was to file a motion with the Court seeking clarification *before* the November 6th deadline. Instead, TNT used the Court's expedited schedule and expert disclosure language/deadlines as a sword against Torch when it was convenient for TNT but now claims an inability to read and interpret the clear, express language in the Court's CMO when

7

inconvenient for TNT. And, even if TNT's new interpretation was correct (which it is not), <u>TNT</u>

<u>still failed to comply with Fed. R. Civ. P. 26(a)(2)(D) and Friedman's rebuttal was still untimely</u>.

Specifically, Fed. R. Civ. P. 26(a)(2)(D) says, in relevant part:

> *Time to Disclose Expert Testimony.* A party must make these disclosures at the times and in the sequence that the court orders. **Absent a stipulation or a court order, the disclosures must be made: . . . (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), <u>within 30 days after the other party's disclosure</u>**.

(emphasis added). TNT does not deny Friedman's Dec. 15th Rebuttal is, in fact, a rebuttal report.

According to TNT, "[r]eceiving Mr. Farley's personal examination of [] five devices between 2018

and 2021 was critical to Mr. Friedman's work." (Opposition, Doc. #69 at pp. 4-5). Again, Friedman

admits his Dec. 15th Rebuttal was a rebuttal in response to Farley's November 6th report. TNT also

does not deny Torch received Friedman's Dec. 15th Rebuttal on December 17, 2023 – ***41 days*** after

TNT received Farley's November 6, 2023 report. So, even if the Court failed to supply the parties

with a specific deadline for disclosing Friedman's rebuttal opinions (which Torch denies),

Friedman's rebuttal report was still untimely by *11 days*. TNT fails to explain why, if TNT truly

did interpret the Court's CMO as supplying no deadline for rebuttal reports, TNT still failed to

disclose Friedman's rebuttal opinions within the 30-day period required under Rule 26(a)(2)(D).

**C.     TNT Served "Supplemental" Reports Because TNT Failed to Ask Its Experts to Perform Work that Could Have Been Done Before November 6, 2023**

TNT's excuses are mere pretext. Kneuper admitted the real reason why he failed to include

his own independent analysis and opinions regarding TNT's financial information and alleged

damages in his initial November 6th Report – prior to November 6, 2023, "**I wasn't asked to do**

**that.**" (**Ex. 15** (Doc. # 66-15), 36:8-38:1 (emphasis added)).

Torch had to wait 41 days after the November 6 deadline to see Friedman's new revelations

regarding his opinions about how a device TNT independently sourced and sent to Friedman *at the end of March 2023* allegedly operates.[1] (Additional Excerpts from Friedman's Dep., a true and correct copy of which is attached as **Exhibit 24**, 31:6-21 (Q: "When did you receive that TNT no chance type device?" A: "I'd have to check my records, but it was sometime I think end of March, beginning of April [2023]."). Friedman admitted "nothing prevented [him] prior to November 6 from conducting [his] own independent analysis of TNT's own independently sourced Banila no chance type device, and including any finding or conclusion from that analysis that [he] deemed relevant in [his] November 6 report." (*Id*. at 53:5-15; *see also id.* at 22:13-23:7, 25:24-26:6, 31:6-40:24, 52:16-60:20). As Torch stated in its moving brief, Torch was surprised upon receiving Friedman's November 6, 2023 Report Friedman had failed to include his analysis of and opinions related to TNT's device. Torch was even more surprised when, 41 days later (two days before Friedman's deposition and only 16 days before the close of discovery), TNT attempted to "supplement" Friedman's opinions with new opinions regarding the TNT devices he admits he had for more than eight months prior. Like Kneuper, when asked why he failed to conduct that analysis, Friedman's answer was he was not asked to do so – instead TNT chose to simply instruct Friedman to "assume the veracity of the sources that I relied on" including "everything Nick Farley [] stated in his May 1ˢᵗ filed declaration . . . [regarding] how Torch Devices operate." (**Ex. 20** (Doc. # 66-20), 105:12-106:19).

TNT's failure to have its experts say what TNT needed them to say by November 6 does

---

[1] Torch never had an opportunity or reason to want to inspect TNT's independently sourced device before receiving Friedman's untimely rebuttal on Sunday, December 17, 2023. There were only 16 days between December 17, 2023, and the January 2, 2023 discovery deadline. Pursuant to Fed. R. Civ. P. 34, which requires 30 days for notices of inspection, Torch had no way at that point of even compelling further discovery regarding TNT's independently sourced device, let alone providing Torch's expert with sufficient time to conduct his own independent inspection of that device, without completely derailing all subsequent deadlines and the Court's trial setting.

not provide TNT with an excuse to abuse Rule 26(e)'s supplementation process. TNT's untimely disclosures were neither justified nor required by Rule 26(e).

### D.      TNT's Untimely Reports Were Not Harmless

TNT asserts "Defendants cannot feign surprise that Dr. Kneuper and Mr. Friedman supplemented their respective reports." (Doc. # 69 at 12). Torch's emails with TNT's counsel after receiving each untimely supplementation hours before Torch was scheduled to depose each expert tell a different story. Undersigned counsel will say without any hesitation he was exceedingly surprised to receive Kneuper's entirely new report, analysis, and opinions a day before Kneuper's deposition and six days after Torch served TNT with Torch's rebuttal damages expert's report (which was *completely rendered moot* by Kneuper's Dec. 12th Report) and beyond surprised (as he was standing in line with his children to see Santa on a Sunday morning, December 17, 2023) to receive Friedman's new rebuttal opinions 41 days after the November 6 deadline and two days before Friedman's deposition. The timing alone of TNT's supplementations was unfairly prejudicial. The parties were preparing for and taking numerous other depositions at the same time, and Torch's counsel had little to no time to prepare to cross examine TNT's experts on their new reports and opinions. There was also no spare time to push TNT's experts' depositions back further and still comply with the Court's deadlines and trial setting in the CMO. Friedman was not even available for an in-person deposition until *after* discovery was to close on January 2, 2024. (*See* **Ex. 22**). Simply put, there is no way to unwind TNT's conduct and allow TNT's untimely and improper "supplemental" reports to stand that does not involve reopening discovery, nullifying the parties recent *Daubert* and Motion for Summary Judgment filings, and rescheduling trial.

### CONCLUSION

TNT did not want to ask the Court for relief from the deadlines in the CMO or to tell the

Court the dispositive motion/*Daubert* deadline and the trial setting would have to be moved –

because TNT insisted on the expedited schedule and trial setting. TNT apparently did not want to

seek leave of Court in advance of issuing TNT's supplemental reports. But those were TNT's

obligations if it wanted to prevent harm to Torch and wanted to be able to use the information and

opinions in those reports at trial. TNT's conduct was not justified, and it was not harmless.

Pursuant to Fed. R. Civ. P. 37(c)(1), Kneuper's Dec. 12th Report and Friedman's Dec. 15 Rebuttal

should be stricken and all information and opinions therein excluded from evidence.

Dated:  January 22, 2024                             Respectfully submitted,


                                                      GRAVES GARRETT GREIM LLC,


                                                      By: _/s/ J. Aaron Craig_____
                                                           Todd P. Graves #41319 (MO)
                                                           J. Aaron Craig #62041 (MO)
                                                           1100 Main Street, Suite 2700
                                                           Kansas City, MO 64105
                                                           Phone: (816) 256-3181
                                                           Fax: (816) 256-5958
                                                           tgraves@gravesgarrett.com
                                                           acraig@gravesgarrett.com

                                                      **Attorneys for Defendants Torch Electronics,
                                                      LLC, Steven Miltenberger, and Sondra
                                                      Miltenberger**

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2024, I caused the foregoing to be filed on the Court's ECF electronic filing system, which automatically gave notice of this filing to all counsel of record.

 */s/ J. Aaron Craig*

Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger