# EXHIBIT A



James Turntine - Volume II

December 22, 2023

TNT Amusements, Inc., d/b/a Play-Mor Coin-Op

vs.

Torch Electronics, LLC, et al.

1    given to us and what the move tickets say?
2         A   I think they're included along with the
3    move tickets and the work orders to tell the whole
4    story of the under- -- the underlying documents,
5    as I've said, to the actual things that happen
6    because of the Torch machines coming into that
7    location and us needing to move our machines out.
8         Q   Okay.
9         A   They're the underlying document.  That's
10   the discovery that we presented and -- and shared
11   with our attorneys, and they, apparently, passed
12   it on to you.
13        Q   And -- and did you ask Donna Havey to do
14   that sort of summary for the move tickets as part
15   of the --
16        A   I -- I -- I think you might --
17        Q   -- litigation process?  Sorry.
18        A   I'm sorry.  I didn't mean to talk over
19   you.  I think I did ask her to write down anything
20   that she could remember as well as the documents
21   that we have.  And whether she wrote it that day
22   on the 17th of August, 2018, or whether she wrote
23   it, you know, two months ago as she was pulling
24   the documents together, sitting here right this
25   moment, I can't say because I don't know if that's

1   what a version of our call log looks like.
2         And I'm -- I'm honestly saying I know we
3   have a call log where when we receive a service
4   call or, you know, activity that's going to create
5   work, we log it.  And I don't know that I've ever
6   seen one printed out.
7       Q  Okay.
8       A  And it may be printed out and look just
9   like this, and that could be her call log document
10  printed out, or it could just be here's the
11  underlying document we have, and this is my memory
12  of what else went along with that.  I don't know,
13  honestly, which it is yet.  I might be able to
14  figure it out if you show me more.  As the day
15  goes along, I may back up and say, "Yeah.  That's
16  our -- apparently, that's what our call log looks
17  like when it's printed."  I --
18      Q  Okay.
19      A  -- I --
20      Q  Okay.  Yeah.
21      A  -- honestly at this moment don't know what
22  the call log itself looks like.
23      Q  Sure.  No.  Yeah.  That's -- that's fine.
24  Do you know if the call log has been produced in
25  this case?

306

PohlmanUSA Court Reporting
(877) 421-0099   www.PohlmanUSA.com

1    A   Well, on one of the other documents that
2    we've shared through discovery, we have -- in each
3    instance of machines being moved, we have a header
4    that tells us do we have a work order?  Do we have
5    a call log?  Do we have move tickets?
6         And so without seeing that document or
7    have it in front of me in association with this
8    particular move, I don't want to answer and say,
9    yes.  This is the call log.  Or, no, it's not the
10   call log.  It's just her personal recollection
11   that she memorialized along with the other
12   documents that are associated with that move.
13   Q   Okay.  Can we agree that if this -- if
14   these cover pages on these, you know, move
15   ticket-type documents were, in fact, you know, her
16   attempt to memorialize her recollection, you know,
17   about those documents for purposes of this
18   litigation, then that -- that, obviously, would've
19   happened sometime between March 15th of this year
20   and today; right?
21   A   I don't know if I can agree with that,
22   Aaron.  I -- I -- I'm speaking for a third party
23   that I'd have to ask and say when do you think you
24   wrote this?  Or is this a version of our call log?
25   I don't mean to be difficult, but I don't want to

307

PohlmanUSA Court Reporting
(877) 421-0099   www.PohlmanUSA.com

1   answer something that I honestly don't know the --
 2   the -- the truth of.
 3       Q   Yeah.  Well, and that's fair.  But I think
 4   you said as well that you think you may have asked
 5   Donna Havey to memorialize in writing what she
 6   could remember about these types of move tickets.
 7   And I think we could both agree that if that
 8   happened, it would have happened sometime during
 9   the pendency of this litigation; correct?
10       A   Not necessarily done.  This is --
11           MR. FINNERAN:  Hold on.  Hold on, Jim.
12   I've got to -- we've got to make sure there's time
13   for me to object.
14           Objection.  Calls for speculation.
15           You may answer.
16       A   Okay.  No.  We've had previous legal
17   action, and we've been dealing with the Torch
18   problem since 2000, what, '17?  And so once we
19   became aware we've got a problem and we don't know
20   how to deal with this, we're going to have to
21   figure out a legal recourse or something, I've
22   instructed her to -- to keep notes and keep --
23   keep a diary, so to speak, keep notes if you have
24   anything that -- that's affected or caused by
25   this.  And so I don't know if this is that.

PohlmanUSA Court Reporting
(877) 421-0099   www.PohlmanUSA.com

1          I'd have to ask her.  What is this?  Is
2     this the call log printed off?  Or is this a note
3     you made recently that just supports what's
4     already shown in the move tickets?  I think it's
5     very consistent with the work orders and move
6     tickets.  It seems to me to be more helpful.  And
7     so I -- I don't understand, you know, when it
8     happened, really.
9          And I guess there's a reason you're
10    asking, but without understanding more, I don't
11    know how to answer the question any more honestly
12    than I'm not sure what the top page is without
13    seeing more or stopping and asking Donna Havey,
14    when -- when do you think you wrote this and --
15    and why?
16    Q    Okay.  That's fine.  I believe that you'll
17    probably recall that a number of our topics for
18    the 30(b)(6), when we met last, they talked about
19    communications between TNT, anybody associated
20    with TNT, and a -- and a broad range of people,
21    entities, and organizations to include Senator
22    Schatz, topic 9; news media, topic 10; Missouri
23    Department of Public Safety, topic 11; Missouri
24    Division of Alcohol and Tobacco Control was topic
25    12; communications with Missouri Gaming Commission