THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP,<br><br>     Plaintiff,<br><br>v.<br><br>TORCH ELECTRONICS, LLC, et al.,<br><br>     Defendants. | Case No. 4:23-cv-00330-JAR |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO COMPEL THE TESTIMONY OF TORCH ELECTRONICS, LLC**

Throughout discovery, Defendant Torch Electronics, LLC ("Torch") has chosen to shroud the details of its business practices, including the inner workings of their "no chance" gaming devices, in secrecy. Torch's final tactic, on the eve of the discovery deadline, was to produce an unprepared Rule 30(b)(6) witness—Torch's founder and President, Defendant Steven Miltenberger—who disclaimed knowledge on some of the most basic topics imaginable. *See, e.g.*, **Ex. 1** (Rule 30(b)(6) Dep. of S. Miltenberger) at 45:1–5 ("Q. As the president of Torch you don't know how patrons use your games? . . . A. I don't know how they play the game."). As set forth below, Mr. Miltenberger admitted that he did little to prepare for his deposition and then demonstrated an astonishing lack of knowledge for the founder/president of a two-employee company whose exclusive business is distributing the games at the heart of this dispute. Rule 30(b)(6) prohibits such evasive tactics by a corporate deponent. Therefore, the Court should compel Torch to produce Mr. Miltenberger or another witness to sit for another Rule 30(b)(6) deposition at which those questions can be answered after adequate preparation.

1

FACTS

A. <u>Background Regarding Torch</u>

Defendant Steven Miltenberger is the manager, president, founder, and majority owner of Torch. *See* **Ex. 2** (Personal Dep. of S. Miltenberger) at 19:18–20, 25:7–9. Torch has two employees: Mr. Miltenberger and his wife, codefendant Sandra Miltenberger. *Id.* at 29:2–4. The company also retains approximately 65 individuals who perform daily work for Torch as independent contractors. *Id.* at 42:15–44:1. As set forth in prior filings, Torch touts its gaming devices as "no chance" games because the games purport not to involve any element of chance. The legality of these devices is the central question in this lawsuit.

B. <u>Mr. Miltenberger's Personal Deposition</u>

On December 15, 2023, Plaintiff TNT Amusements, Inc. took the deposition of Steven Miltenberger in his personal capacity. During his initial deposition, Mr. Miltenberger testified to a lack of knowledge or memory on certain topics—for instance: how the sequential list of payout amounts allegedly used in each Torch Device is generated, *id.* at 168:1–169:15; how Torch's devices select the starting point for the sequential list of payout amounts, *id.* at 162:9–14; the descriptions of Torch's devices on its website, *id.* at 113:8–116:20, 118:3–120:16; and the activities that lobbyists perform on Torch's behalf, *id.* at 281:16–21, 283:11–21. TNT took note of these issues before the deposition of Torch as likely topics for the forthcoming 30(b)(6) deposition.

C. <u>The Parties Met and Conferred on Topics for Torch's 30(b)(6) Deposition</u>

Before the 30(b)(6) deposition, TNT originally proposed 45 specific topics for questioning. *See* **Ex. 3** (30(b)(6) Deposition Notice). TNT later agreed to reduce the number of topics to 24 in light of Miltenberger's prior deposition. *See id.* Further communication between counsel as part

of the parties' meet-and-confer efforts set additional expectations regarding the precise scope and limitations of questioning and preparation for the 24 topics prior to the 30(b)(6) deposition. Despite those efforts, Torch's 30(b)(6) witness was still unprepared to answer basic, relevant questions related to at least 10 of the 24 topics as to which the parties had not reached any agreement to withdraw or otherwise limit. *See infra* Part E.

### D. Mr. Miltenberger's Preparation for the 30(b)(6) Deposition

In response to TNT's Rule 30(b)(6) notice, Torch designated Mr. Miltenberger as its corporate representative. As a result, TNT deposed Mr. Miltenberger a second time on January 9, 2024.

On January 9, Mr. Miltenberger was unable to describe how he prepared for his deposition other than a meeting with counsel on the day before the deposition. *See* **Ex. 1** at 23:13–24:17. To prepare, Mr. Miltenberger did not speak to his wife—i.e., Torch's only other employee—did not consider speaking to her, and was unable to explain to TNT's counsel why he did not speak to her. *Id.* at 18:17–24; 24:18–25:2. Mr. Miltenberger also did not speak to any of Torch's approximately 65 independent contractors, although he could have called, emailed, or texted them, and said he "didn't feel like I needed to" speak to them. *Id.* at 20:19–22; 21:9–25, 25:3–8. He did not speak to the defendants' expert witness, Nick Farley, and did not remember reviewing Mr. Farley's expert reports that have been produced in this case. *Id.* at 25:9–12; 171:21–25. Mr. Miltenberger also did not discuss any financial information with the company's accountants. *Id.* at 57:8–10. Finally, despite his failure of memory in prior deposition questioning, Mr. Miltenberger made no efforts to determine who had authored text on Torch's website about the gaming devices at issue. *Id.* at 217:20–218:4.

### E. **Mr. Miltenberger's Lack of Knowledge for 30(b)(6) Topics**

Mr. Miltenberger subsequently testified to a lack of knowledge or memory on numerous routine topics squarely within the topics of TNT's 30(b)(6) notice.

#### 1. **Topic 18: "The nature, function, and operation of any Torch Device"**

Most significantly, Mr. Miltenberger was unable to answer the following questions relating to the nature of the Torch Devices, which is the central issue in this case:

- How the games on Torch Devices work, *see* **Ex. 1** at 44:4–10;

- How patrons play games on Torch Devices, *see* **Ex. 1** at 44:18–45:5, 174:9–21, 176:8–25, 223:7–13;

- Examples of games on Torch Devices, *see* **Ex. 1** at 178:9–13;

- Whether Torch Devices all have a sequential list of payout amounts for games, *see* **Ex. 1** at 42:12–17;

- Whether Torch Devices have a predetermined list of payout amounts before the player begins playing the game, *see* **Ex. 1** at 43:5–10;

- Whether Torch Devices have a finite list of payout amounts, *see* **Ex. 1** at 43:11–15;

- Who selected the length of the list of predetermined payout amounts, *see* **Ex. 1** at 188:11–14;

- Whether Torch Devices randomly select the first payout amount from the list, *see* **Ex. 1** at 43:16–21;

- Whether Torch Devices cycle through the sequential list of payout amounts, *see* **Ex. 1** at 42:18–23;

- Whether Torch Devices repeat the same sequential list of payout amounts after cycling through the outcomes, *see* **Ex. 1** at 42:24–43:4;

- Whether a player can view the list of predetermined payout amounts, *see* **Ex. 1** at 188:15–20;

- Whether players and location owners can modify, influence or otherwise control the outcome of any turn, *see* **Ex. 1** at 43:22–44:3;

- Whether the "Prize Viewer" mechanism shows the outcome of any play *after* the next play, *see* **Ex. 1** at 42:7–11;

4

- Whether any employee or independent contractor of Torch has ever observed someone play the game without using the "Prize Viewer" mechanism, *see* **Ex. 1** at 189:20–190:10;

- Whether Torch is able to review the metadata of the devices with respect to the use of the "Prize Viewer" mechanism, *see* **Ex. 1** at 189:7–12;

- The odds of a player winning on the next turn ***after*** using the "Prize Viewer" mechanism, *see* **Ex. 1** at 184:17–185:17;

- The range of payouts, including low and high, *see* **Ex. 1** at 185:19–187:4;

- Whether a ticket that isn't redeemed within 24 hours is null and void, *see* **Ex. 1** at 199:2–6; and

- Whether any employees or independent contractors other than Nick Farley have examined the software for Torch Devices, *see* **Ex. 1** at 173:14–17.

2. **Additional Topics**

Mr. Miltenberger also testified that he was unable to answer the following questions, arranged by topic:

a. **Topic 8: "Torch's financial information, including but not limited to profit and loss statements for Torch that cover any part of the Relevant Period, with respect to the Overlapping Locations."[1]**

- Whether Mr. Miltenberger searched for documents created in the ordinary course of business regarding the profitability of the Overlapping Locations, *see* **Ex. 1** at 80:5–18;

- How Torch's profits are allocated related to the Overlapping Locations, *see* **Ex. 1** at 84:5–85:3; and

- Whether Torch allocates its labor costs (i.e., its 65 independent contractors) to individual locations, *see* **Ex. 1** at 82:7–22.

b. **Topic 13: "Communications between Torch and any registered lobbyist regarding Torch Devices, the legality of Amusement Devices, 'grey gaming' devices or machines, 'slot machines,' Missouri gaming laws, the casino industry, amusement**

---

[1] "Overlapping Location" was a defined term used in the deposition notice to refer to approximately 22 locations in which the parties had agreed that may have had, at one time or another, both Torch Devices and devices owned by TNT, whether simultaneously or at different times. *See* **Ex. C** (30(b)(6) Deposition Notice) at 5.

device legislation, or TNT" —and—**Topic 27**: "Communications between Torch and … lobbyists … concerning the element of chance as it relates to Torch Devices, similarity between Torch Devices and slot machines or other gambling devices, or the legality or illegality of the Torch Devices."

- The type of work Torch's three lobbying firms are performing for Torch in Jefferson City, *see* **Ex. 1** at 206:5–207:4, 209:21–210:12, 211:4–216:9; and

- The type of "consulting" that these lobbying firms allegedly provide to Torch, *see* **Ex. 1** at 206:5–207:4, 209:21–210:12, 211:4–216:9.

c. <u>Topic 17</u>: "The name, location, model, purchase price, and manufacturer of each Torch Device owned, operated, leased, or sold by Defendants within the Relevant Period."

- The purchase price that Torch pays for the NCG 1, NCG2, NCG 3, NCG 4, NCG 5, NCG Deluxe 1, NCG Deluxe 2, NCG Deluxe 3, NCG Deluxe 4, NCG Deluxe 5, NCG Dual, NCG Skyriser, or NCG Hot Locks at the Overlapping Locations, *see* **Ex. 1** at 70:17–72:14.

d. <u>Topic 19</u>: "The changes and reasons for such changes to any Torch Device during the Relevant Period, including changes to software, design, operation, or visual appearance" —and—**Topic 36**: "Torch's relationship and Communications with Banilla Games, including any attorney for Banilla Games."

- Whether Torch has requested that Banilla Games make changes to its gaming devices, specifically NCG 1, NCG 2, NCG 3, NCG 4, NCG 5, NCG Deluxe 1, NCG Deluxe 2, NCG Deluxe 3, NCG Deluxe 4, NCG Deluxe 5, NCG Dual, NCG Skyriser, or NCG Hot Locks, *see* **Ex. 1** at 45:23–47:25.

e. <u>Topic 25</u>: "The changes and reasons for such changes to any representations relating to any Torch Device on any website owned or operated by Torch during the Relevant Period."

- Text changes on Torch's website in September 2022, including the deletion of a prior representation that "Torch's No Chance Game machines are innovative, non-gambling game machines," and the author of that text, *see* **Ex. 1** at 217:20–219:10.

f. <u>Topic 27</u>: "Communications involving members of the Torch Enterprise relating to the operation, function, marketing, distribution, transportation, sale, leasing, legality, or illegality of any Torch Device."

- Whether the terms of Torch's oral agreements with its customers have any terms other than placing the equipment and sharing in the profit, *see* **Ex. 1** at 53:23–55:3;

- How many customers' legal fees Torch has paid, *see* **Ex. 1** at 204:11–16; and

- Whether Torch distributed marketing flyers to any of the Overlapping Locations saying that, in its games, "chance has absolutely no role in any possible outcome," and who prepared that marketing flyer, *see* **Ex. 1** at 196:22–197:2.

g. **Topic 34**: "**The steps that Torch has taken to obtain and review documents responsive to TNT's First and Second Requests for Production and to prepare its answers to TNT's First and Second Interrogatories.**"

- Whether Torch ever entered into a written contract with any of its customers, *see* **Ex. 1** at 53:18–22.[2]

h. **Topic 35**: "Torch's relationship and Communications with Nick Farley and Nick Farley & Associates, Inc."

- How long Torch has had a business relationship with Mr. Farley or his company, *see* **Ex. 1** at 165:2–5;

- How much Torch has paid Mr. Farley for all of his testing of Torch devices, *see* **Ex. 1** at 165:16–18; and

- Whether Mr. Farley has examined NCG 5, NCG Deluxe 2, NCG Deluxe 3, NCG Deluxe 4, NCG Deluxe 5, NCG Dual, NCG Skyriser, or NCG Hot Locks, *see* **Ex. 1** at 169:22–171:25.[3]

**F. Mr. Miltenberger's Lack of Knowledge on 30(b)(6) Topics Previously Testified to at His Personal Deposition**

In addition, in several of the cases identified above, Mr. Miltenberger professed a lack of knowledge even when he had previously testified to the topics in his personal deposition a mere three weeks earlier. For instance, Mr. Miltenberger's testimony about the randomness elements of the Torch Devices differed substantially between his two depositions. In his personal deposition on December 15, Mr. Miltenberger testified as follows:

> I would describe the games as a – also having a predetermined set of events in a finite pool that would go through that finite pool and that static script. And then it would repeat after that. The script itself does not shuffle. There isn't a random

---

[2] Torch has produced unsigned template contracts, but no signed contracts with customers.

[3] Farley's expert report in this case states that, in prior years, he has tested NCG 1, NCG 2, NCG 3, NCG 4, and NCG Deluxe 1.

>number generator in the machine. And so when it is done with those -- that sequence of outcomes, it starts back over at outcome number one.

**Ex. 2** at 54:16–55:21. Yet in his 30(b)(6) deposition on January 9, Mr. Miltenberger claimed to lack that very same knowledge:

>"Q. For all of these devices, do they all have a sequential list of outcomes? … A. I don't know." **Ex. 1** at 42:12–17.

>"Q. For all of these devices, do the games cycle through that sequential list of outcomes? … A. I don't know." **Ex. 1** at 42:18–23.

>"Q. For all of these devices is that list pre-determined before the player begins playing the game? … A. I don't know." **Ex. 1** at 43:5–10.

>"Q. For all of these devices, is that list finite? … A. I don't know." **Ex. 1** at 43:11–15.

>"Q. For all these devices, does the device randomly select the first outcome on that list … A. I don't know." **Ex. 1** at 43:16–21.[4]

Thus, rather than gain an increased understanding of how the Torch Devices operate, as the 30(b)(6) notice required him to do, Mr. Miltenberger seemed to have somehow become less informed in the three weeks between his personal and 30(b)(6) depositions about the topics designated for examination.

## DISCUSSION

**The Court Should Compel Torch's Testimony on the Topics for Which Mr. Miltenberger Was Unable to Provide Answers During the 30(b)(6) Deposition**

Under Rule 30(b)(6), a designated deponent "must testify about information known or reasonably available to the organization." The rule prevents organizations from "bandying" their

---

[4] Mr. Miltenberger's lack of knowledge and preparation was particularly surprising considering that fact that, when Defendants had raised their own objections as to TNT's 30(b)(6) witnesses' alleged lack of preparation, TNT accommodated opposing counsel's request for an opportunity to redepose the witness and ultimately produced its 30(b)(6) witness Jim Turntine for a total three days of depositions that lasted over 16 hours, including breaks and objections, the transcripts for which span more than 600 pages.

8

opponents with deposition witnesses who disclaim knowledge on the topics the adversary seeks to investigate. 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2103 (3d ed. Apr. 2023 update). "[A] Rule 30(b)(6) deponent 'does not give his personal opinion. Rather, he presents the [company's] position on the topic.'" *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12-CV-00246 CDP, 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013) (quoting *Sprint Comms. Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006)). "An unprepared designee is tantamount to a failure to appear for a deposition." *Oliver v. Greenwell*, No. 1:19-cv-00137 ACL, 2023 WL 1778158, at *1 (E.D. Mo. Feb. 6, 2023).

Rule 30(b)(6) imposed multiple duties on Torch following its receipt of TNT's Rule 30(b)(6) notice. "First, the entity has a duty to produce a knowledgeable witness." *CitiMortgage*, 2013 WL 3946116, at *1. The witness does not have to be an officer. *See* Fed. R. Civ. P. 30(b)(6). "Second, if necessary to respond to the topics described with reasonable particularity in the notice, the entity must designate more than one deponent." *Id.* "Third, the designating entity has a duty to prepare the witness to testify on matters not only known by the deponent, but those that should be reasonably known by the designating party." *Id.* (internal quotation omitted). "Fourth, the designating party has a duty to substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiry." *Id.* (internal quotation omitted) (citing *FDIC v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986) (corporation has duty "to make a conscientious good-faith endeavor" to choose knowledgeable deponent and to prepare deponent to "answer fully, completely, unevasively"); *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (appearance by unknowledgeable deponent "is, for all practical purposes, no appearance at all")).

Torch failed on all of these fronts. TNT took care to reduce the scope of the deposition to a manageable number of topics. The remaining topics were straightforward. TNT's questions were equally straightforward, even rudimentary. At worst, Mr. Miltenberger demonstrated a level of evasiveness that is inappropriate for any witness, and especially a Rule 30(b)(6) witness charged with the knowledge of the organization. It defies belief that Mr. Miltenberger, the person running a two-employee company that focuses exclusively on distributing the Torch Devices and collecting profits, has managed to accumulate no knowledge of how the devices work (and evidently, even forget what he knew a mere three weeks earlier—and had been representing to the public for years). Even assuming *arguendo* that Mr. Miltenberger somehow has no idea how his core business works, he had an obligation to find someone who does, across the other 60-plus individuals affiliated with the company. At best, Mr. Miltenberger demonstrated a complete lack of preparedness to testify on those and other issues within the scope of the Rule 30(b)(6) notice. By his own admission, it appears that he prepared for a single day with his attorneys and made no effort to speak with other individuals within his own organization.

When a 30(b)(6) deposition is ineffective, a court may order as appropriate relief a second deposition. *See Cedar Hill Hardware & Const. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009) (finding a court may levy "appropriate sanction[s] for a corporation's inadequate designation" in response to a Rule 30(b)(6) notice, including the "exclusion of testimony as to designated topics"); 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2103 (3d ed. Apr. 2023 update) ("One remedy frequently invoked when the [30(b)(6)] witness initially designated is unable to provide adequate answers is to require that another witness be designated."); *Ronnoco Coffee, LLC v. Castagna*, No. 4:21-CV-00071 JAR, 2021 WL 2105000, at *2 (E.D. Mo. May 25, 2021) ("[A]n ineffective Rule 30(b)(6) deposition may be remedied by a

10

second deposition of the corporation."). Furthermore, "[f]ailing to provide a knowledgeable witness in response to a Rule 30(b)(6) notice is a sanctionable action under Rule 37(b)(2)." *CitiMortgage*, 2013 WL 3946116, at *2; *see also Ronnoco*, 2021 WL 2105000, at *2.

Accordingly, TNT respectfully requests that the Court order a second Rule 30(b)(6) deposition of Torch, with a properly prepared witness who can answer the questions Mr. Miltenberger was unprepared to answer, along with appropriate follow-ups.

## CONCLUSION

Mr. Miltenberger cannot be faulted for having a failure of memory in his personal deposition. But in his 30(b)(6) deposition, he had an obligation to fill the gaps in his knowledge in order to fully prepare himself to discuss the topics TNT had noticed for discussion. Instead, Mr. Miltenberger's knowledge seems to have gone in the opposite direction, such that he professed a lack of knowledge on topics that he was perfectly capable of discussing a few weeks earlier. Those same topics—including, most critically, the basic nature and functions of the devices his company sells—have been the subject of repeated representations by Defendants that "chance has no role" in the operation of the machines. Defendants have had no trouble making such claims in commercial advertisements for the past six years, but it now seems they are unwilling to testify to them under oath. The Court should not permit such gamesmanship. Instead, TNT respectfully asks that the Court order Defendant Torch Electronics, LLC to produce Mr. Miltenberger or another witness to sit for another deposition to address each and every one of the topics and questions that

Mr. Miltenberger professed a lack of knowledge with respect to during the January deposition, along with any reasonable follow-up questions.

Dated: February 5, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
MARY GRACE WARREN, #73147MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
richard.finneran@bryancave.com
marygrace.warren@bryancave.com

*Attorneys for TNT Amusements, Inc. d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via ECF on February 5, 2024, upon all counsel of record.

*/s/ Richard E. Finneran*