**Exhibit 3**

30(b)(6) Deposition Notice

THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP,<br><br>      Plaintiff,<br><br>v.<br><br>TORCH ELECTRONICS, LLC, et al.,<br><br>      Defendants. | Case No. 4:23-cv-00330-JAR |

**PLAINTIFF TNT AMUSEMENTS, INC.'S AMENDED
NOTICE OF RULE 30(b)(6) DEPOSITION OF DEFENDANT
TORCH ELECTRONICS, LLC'S CORPORATE REPRESENTATIVE**

**YOU ARE HEREBY NOTIFIED** that, pursuant to Fed. R. Civ. P. 26 and 30(b)(6), Plaintiff TNT Amusements, Inc. ("TNT"), by and through undersigned counsel, will take the deposition by oral examination of Defendant Torch Electronics, LLC ("Torch") remotely (over Zoom), on **January 2, 2024**, beginning at **9:00 AM (CT)**, as agreed by the parties.

The deposition will proceed before an official authorized by law to administer oaths and will be recorded by audiovisual and stenographic means. The examination will continue from hour to hour, up to the length allowed by rule. The deposition will be taken for the purpose of discovery, for use at trial, and for such other purposes as permitted by applicable state and federal law.

In accordance with the requirements of Fed. R. Civ. P. 30(b)(6), Torch shall designate and make available one or more of its officers, members, directors, employees, agents, or other persons knowledgeable about the subject matters and topics of examination set forth in **Exhibit A**, attached hereto. TNT requests that, at least five (5) days prior to the deposition, Torch indicates the subject matter(s) with respect to which each designated person shall testify.

Dated: December 27, 2023

        Respectfully Submitted,

        BRYAN CAVE LEIGHTON
        PAISNER LLP

        */s/ Richard E. Finneran*
        RICHARD E. FINNERAN, #60768MO
        MARY GRACE WARREN, #73147MO
        211 North Broadway, Suite 3600
        St. Louis, Missouri 63102
        Tel: (314) 259-2000
        Fax: (314) 259-2020
        richard.finneran@bryancave.com
        marygrace.warren@bryancave.com

        *Attorneys for TNT Amusements, Inc.*
        *d/b/a Play-Mor Coin-Op*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December 2023, a true and correct copy of the foregoing document was served on counsel for Defendants via electronic mail.

        Respectfully submitted,

        */s/   Richard E. Finneran*
        Richard E. Finneran

# EXHIBIT A

# DEFINITIONS

In the event of any conflict of ambiguity between the following definitions, common usage and reference to any cited rules, statutes, or regulations, the broadest interpretation of the term in question should be used.

1. "**Defendants**," "**you**," or "**your**" means the Defendants in the above-captioned matter, Torch Electronics, LLC, Steven Miltenberger, Sondra Miltenberger, and all related entities, predecessors, current or former agents, officers, directors, representatives, attorneys, and employees of any of them.

2. "**Relevant Period**" means from November 21, 2014, to the present.

3. "**Torch**" means Defendant Torch Electronics, LLC, as well as current or former agents, officers, directors, representatives, attorneys, and employees.

4. "**The Miltenbergers**" includes Sondra and Steve Miltenberger

5. "**Torch Device**" means any electronic gaming device marketed, owned, leased, or sold by **Torch**, **the Miltenbergers**, or anyone else included within the definition of Defendants, along with any associated payment kiosks, cabinets, devices, software, or management tools.

6. "**Amusement Location**" means any public or private place within the state of Missouri in which a **Torch Device** may currently be found or may have previously been found within the **Relevant Period**.

7. "**Torch Employee**" means any person or entity working for one or more of the Defendants, including an employee, an independent contractor, an intern, or any other worker, whether paid or unpaid.

8. "**Torch Customer**" means a person or entity who leases, owns, operates, manages, or otherwise has lawful control of any **Amusement Location**.

9. "**Torch Patron**" means any person who has played or otherwise used a **Torch Device**, other than for the purpose of inspection or maintenance.

10. "**Any**," "**each**," and "**all**" shall be read to be inclusive.

11. "**And**," "**or**," and "**and/or**" and any other conjunctions or disjunctions used herein shall be read both conjunctively and disjunctively.

12. "**Identity**" means, as it refers to an individual, the first and last name of that person; as it refers to an Amusement Location, the name of the business and the owner, operator, or manager; and as it refers to an entity, the registered name or fictitious registrations or aliases for that entity.

13. "**Person**" means any natural person, corporation, partnership, association, trust, trustee, joint venture, sole proprietorship, firm or business enterprise and any other business or legal entity, as well as all divisions, subdivisions, bureaus, offices or other units thereof.

14. "**Document**" or "**Documents**" shall mean and include any medium upon which intelligence, data, or information can be recorded or retrieved, and includes, without limitation, the original and each copy, regardless of origin and location, of any written, typed, printed, recorded, or graphic material of any kind, including, but not limited to, petitions, pleadings, motions, notices, contracts, agreements, records, papers, notes, memoranda, drafts, minutes, summaries, correspondence, e-mails, telegrams, communications, diaries, drawings, specifications, computer printouts, computer tapes, computer disks, microfilm, microfiche, periodicals, books, pamphlets, newspaper articles, resumes, financial and accounting records and statements, receipts, canceled checks, tax returns, appointment books, calendars, notebooks, desk pads, tape recordings, transcriptions of tape recordings, transcripts, phonograph records, disks from word processors, electronic and computer files (to be produced in their native format)

memorials of conversations, meetings, or conferences, messages, invoices, all reproductions and copies of documents by whatever means made, including those which are not identical to the originals due to markings which have been made on the copies, and any other data compilations from which information can be obtained.

15. "**Communication**" means any transmittal of information (in the form of facts, ideas, inquiries or otherwise), including communications in writing, over email, through text messages, telephone communication, voicemail communication, face-to-face communication, video conference communication, or any other mode of communication.

16. "**Concerning**," "**referring**," "**relating**," or "**pertaining**" means commenting on, referring to, pertinent to, discussing, tending to support, or relevant in any way. Documents that "relate to" a subject matter are Documents that constitute, contain, support, modify, contradict, criticize, discuss, mention, describe, record, report, reflect, pertain to, were prepared in connection with, or arise in connection with the subject matter of each particular deposition topic.

17. "**Overlapping Locations**" means the locations specified in Exhibit A to the Stipulation and Order dated December 1, 2023 (Doc. #55-1) and any **Amusement Location** where **TNT's Amusement Devices** have been found during the Relevant Period, whether simultaneously with a **Torch Device** or at a different time.

## TOPICS

In accordance with Fed. R. Civ. P. 30(b)(6), TNT designates the topics identified below for examination.

1. ~~The~~ **Identity** ~~of every~~ **Torch Employee** ~~during the~~ **Relevant Period**, ~~including name, job title, payment (including the amount, whether payment via commission is~~ **or** ~~was available to the employee,~~ **and** ~~whether the employee is~~ **or** ~~was paid on an hourly~~ **or** ~~annual salaried basis),~~ **and** ~~the employee's job duties.~~

2. ~~The~~ **Identity** ~~of the membership of~~ **Torch's** ~~corporate board, shareholders (including name, number of shares,~~ **and** ~~value of shares),~~ **and any** ~~parent~~ **or** ~~subsidiary entities.~~

3. The **Identity** of **all Torch Customers** during **any** part of **the Relevant Period**, including with which **Amusement Location(s)** each such **Torch Customer** is associated, <u>to the extent such **Amusement Locations** are among the **Overlapping Locations**</u>.

4. **Torch's** discussions of **TNT**, Jim Turntine, Marla Turntine, **or any TNT** employee, internally between **Torch employees,** including **between the Miltenbergers**; or externally with **any** third party.

5. ~~**Communications** involving **Torch** with **any** member of the media, including but not limited to online, print,~~ **or** ~~video news sources such as newspapers, magazines, television stations~~ **or** ~~radio stations relating to~~ **TNT or** ~~the~~ **Torch Devices**~~.~~

6. ~~**Any** connection, agreement,~~ **or** ~~other relationship, whether past, present,~~ **or** ~~potential, between~~ **any or all** ~~of the~~ **Defendants** ~~with~~ **any** ~~representative~~ **or** ~~constituent of Accel Entertainment, including~~ **any** ~~employee, investor, member, owner, shareholder, board member,~~ **or** ~~other person affiliated with Accel Entertainment.~~

7. **Torch's** gross **and** net income on an annualized basis since 2014 with respect to the **Overlapping Locations**.

8. **Torch's** financial information, including but not limited to the profit **and** loss statements for **Torch** that cover **any** part of **the Relevant Period**, with respect to the **Overlapping Locations**.

9. ~~**Documents** submitted by **Torch** to the IRS during **the Relevant Period** with respect to the **Overlapping Locations**, including **all** Forms 1099, W-2,~~ **and** ~~W-9,~~ **all Documents** ~~reflecting~~ **any** ~~tax withholding,~~ **and any** ~~exhibits~~ **and** ~~attachments.~~

10. ~~**Documents** submitted by **Torch** to the Missouri Department of Revenue during the **Relevant Period** with respect to the **Overlapping Locations**, including **all Documents** reflecting **any** tax withholding, **and any** exhibits **and** attachments.~~

11. ~~The percentage of **Torch's** gross **and** net annual income that relates to selling, leasing, **or** otherwise placing **Torch Devices**.~~

12. For **each Torch Device** currently **or** previously located in the **Overlapping Locations**, the total amount received in U.S. dollars (i.e., the "hard meter in") **and** the total amount paid out in U.S. dollars (i.e., the "hard meter out") by **each** such **Torch device** for **each** week of **the Relevant Period.**

13. **Communications** between **Torch and any** registered lobbyist regarding **Torch Devices**, the legality of **Amusement Devices**, "grey gaming" devices **or** machines, "slot machines," Missouri gaming laws, the casino industry, amusement device legislation, **or TNT**, Jim Turntine, Marla Turntine, **or any** employee of **TNT**.

14. **Torch's** political donations, fundraising, non-monetary support, **or** other related action, **and any** subsequent actions by the recipient(s) **or** intended recipient(s) of such donations, non-monetary support, **or** other related action, including but not limited to the refusal to accept the donation, recusal from certain litigation, **or** the return of certain donations by candidates **or** incumbents.

15. ~~The total number of **Torch Devices and Amusement Locations** at which **Torch** has sold, leased, **or** otherwise placed a **Torch Device** since 2014.~~

16. The **Identity** of the **Amusement Locations** at which a **Torch Device** was sold, leased, **or** otherwise placed by **Torch**, including those **Amusement Locations** where **Torch** placed

and later removed one **or** more **Torch Devices**, as well as the **Amusement Locations** where one **or** more **Torch Devices** are currently located **and** available for play **or** use.

17. The name, location, model, purchase price, **and** manufacturer of **each Torch Device** owned, operated, leased, **or** sold by **Defendants** within **the Relevant Period**.

18. The nature, function, **and** operation of **any Torch Device**, including:

    a. No Chance Game Suite I Terminal version 2.3.0.23596;

    b. No Chance Game Suite II Terminal version 3.2.0.19403;

    c. No Chance Game Suite 3 Terminal version 3.4.0.1;

    d. NCG Suite 4 Terminal version 4.2.1.31972; **and**

    e. NCG Deluxe Terminal version 5.5.0.17.

19. The changes **and** reasons for such changes to **any Torch Device** during **the Relevant Period**, including changes to software, design, operation, or visual appearance.

20. **Communications** involving **any Torch Customer relating to any Torch Device**.

21. ~~Contracts, leases, agreements, memoranda of understanding, letters, **or** other **Documents** describing **any** agreement **or** understanding with **any Torch Customer relating to any Torch Device**, as well as **any** verbal **or** oral agreements **or** understandings with **any Torch Customer** relating to **any Torch Device**.~~

22. Payments **or** other transfers of value made to **or** received from **any Torch Customer or Torch Patron** within **the Relevant Period** <u>to the extent such payments or transfers of value involve any of the **Overlapping Locations**</u>.

23. ~~The posters, notices, signs, **or** other **Documents** posted, **or** created for the purpose of being posted, at **any Amusement Location** that contain **any** representation as to the nature,~~

function, **or** legality of **any Torch Device**, including **any** such **Document** referencing **any** statute **or** regulation, **and any** drafts thereof.

24. **Torch's** advertising **and** marketing practices, including but not limited to advertising via brochures, pamphlets, flyers, oral advertising (e.g., a "sales pitch"), **or** other promotional materials that **Torch** creates **or** approves of for use by **Torch Employees**; advertising practices, including the employment **or** contracting of advertising professionals; training, instruction, **or** direction provided to **Torch Employees** regarding statements they should, should not, may, **or** may not make; **and Communications** from **Torch Employees** to actual **or** potential **Torch Customers**.

25. The changes **and** reasons for such changes to **any** representations relating to **any Torch Device** on **any** website owned **or** operated by **Torch** during **the Relevant Period**.

26. **Communications** involving members of the **Torch Enterprise** relating to the operation, function, marketing, distribution, transportation, sale, leasing, legality, **or** illegality of **any Torch Device**.

27. **Communications** between **Torch** and **Torch Customers**, **or Torch Patrons** (actual **or** potential), elected officials, political candidates, employees of the state of Missouri, lobbyists, state **or** federal regulators, trade associations, media representatives, **or** members of the amusement device industry **concerning** the element of chance as it relates to **Torch Devices**, similarity between **Torch Devices and** slot machines **or** other gambling devices, **or** the legality or illegality of the **Torch Devices**.

28. Whether **and** to what extent **any Torch Patron or Torch Customer** may modify, influence, **or** otherwise control the behavior of **any Torch Device**, including whether **and** how **any** actions that might be performed, **or** which might fail to be performed, by **Torch Patrons or**

~~**Torch Customers** might affect the likelihood of **any** payouts, the timing of **any** payouts, the amount of **any** payouts,~~ **and** ~~the sequence in which **any** outcomes occur, including whether either **Torch Patrons or Torch Customers** are required to perform **any** such action in order to operate a **Torch Device**.~~

~~29.     **Communications** involving **any** employee **or** representatives of the state of Missouri, the federal government, **or any** other regulatory agency **or** law enforcement agency **relating to any Torch Device**.~~

~~30.     Criminal prosecutions, convictions, **or** charges relating to **any Torch Device** within **the Relevant Period**, regardless of whether such information is part of the public record.~~

31.     The lawsuit initiated by **Torch** in the Circuit Court of Cole County against the Missouri State Highway Patrol, the Missouri Division of Alcohol and Crime Control, and the Missouri Department of Public Safety, with the Missouri Gaming Association intervening, on or about February 5, 2021, Case No. 21AC-CC0004.

32.     Any **Communications** relating to the seizure of Integrity Vending machines by law enforcement officials in Platte County in or around October 2018 and any related prosecution.

33.     Any **Communications** relating to the March 2021 petition filed by Platte County Prosecuting Attorney Eric Zahnd against **Torch** for "forfeiture of gambling devices" pursuant to Mo. Rev. Stat. § 513.660, stating that the **Torch Devices** "violate the requirements set forth in Chapter 513."

34.     The steps that **Torch** has taken to obtain and review **Documents** responsive to **TNT's** First and Second Requests for Production and to prepare its answers to **TNT's** First and Second Interrogatories.

35. **Torch**'s relationship and **Communications** with Nick Farley and Nick Farley & Associates, Inc.

36. **Torch**'s relationship and **Communications** with Banilla Games, including any attorney for Banilla Games.

37. ~~**Torch**'s relationship and **Communications** with Amusement Concepts, Inc. ("ACI"), including any attorney for ACI.~~

38. ~~**Torch**'s relationship and **Communications** with Integrity Vending, including any attorney for Integrity Vending.~~

39. ~~**Torch**'s relationship and **Communications** with Grover Gaming, including any attorney for Grover Gaming.~~

40. ~~**Torch**'s relationship and **Communications** with James McNutt, including any attorney for Mr. McNutt.~~

41. The factual basis for **Torch**'s denial of the allegations of **TNT**'s Complaint in the instant matter.

42. The factual basis for each of the affirmative defenses listed in **Torch**'s Answer (Doc. #44).

43. ~~The factual basis for **Torch**'s belief that **TNT** has engaged in a conspiracy with the Missouri Gaming Association, as **Torch** alleged in Counts III **and** IV of its Answer (Doc. #44).~~

44. ~~The factual basis for **Torch**'s belief that **TNT** has engaged in a conspiracy with the Missouri Gaming Association, as **Torch** alleged in Count VII of **its** Answer (Doc. #44).~~

45. ~~The factual basis for **Torch**'s belief **TNT's** conduct has caused **Torch** to suffer damages, **and** the amount of damages that result from that alleged conduct, as alleged in **Torch**'s Answer (Doc. #44).~~