# Exhibit 3

Excerpts of Personal Deposition of S. Miltenberger
dated December 15, 2023

Page 1

1  IN THE UNITED STATES DISTRICT COURT
2  EASTERN DISTRICT OF MISSOURI
3  EASTERN DIVISION
4
5  TNT AMUSEMENTS, INC.,                      )
6                                             )
7       Plaintiff,                            )
8                                             ) Cause No.
9  vs.                                        ) 4:23-cv-330
10                                            ) JAR
11 TORCH ELECTRONICS, LLC, et al.,            )
12                                            )
13      Defendants.                           )
14
15      VIDEO DEPOSITION OF STEVEN MILTENBERGER
16          Taken on behalf of the Plaintiff
17               December 15, 2023
18
19           Sheryl A. Pautler, RPR,
20      MO-CCR 871, IL-CSR 084-004585
21
22
23     (The proceedings began at 9:21 a.m.)
24
25

Page 104

1   time frame you might know it, daily, weekly,
2   monthly, yearly basis, do you happen to know how
3   much revenue was produced by the Torch devices at
4   Midwest Petroleum's two locations?
5        A.   I do not.
6        Q.   Okay.  And if I were to ask you a similar
7   line of questions as I just did about each of the
8   other locations on this list, is it fair to say you
9   just don't have that information at your disposal
10  today?
11       A.   That's correct.
12       Q.   Do you also agree, however, that's
13  information that should be contained in Torch's
14  records and that upon proper request, could be
15  produced to me and to my client?
16       A.   Yes.
17            MR. FINNERAN:  Okay.  We can move on from
18       that then.  I'm going to now mark this as
19       Exhibit B -- excuse me -- Exhibit 2.
20                 (Whereupon the reporter marked
21                 Exhibit 2 for identification.)
22            THE WITNESS:  Thank you.
23       Q.   (By Mr. Finneran)  Mr. Miltenberger, I've
24  just handed you what's been marked for
25  identification as STM 2.  Do you recognize this

```
 1   document?
 2        A.   I do.
 3        Q.   Can you describe what it is?
 4        A.   It is a picture of a decal that we place
 5   on all of the Torch Electronics' games.
 6        Q.   And you say on all of Torch Electronics'
 7   games.  Has that been consistently true throughout
 8   the time Torch has been in operation in the state of
 9   Missouri?
10        A.   Yes.
11        Q.   Has this decal been modified in terms of
12   the actual words on the decals at any time in the
13   time that Torch has been operating in Missouri?
14        A.   Not that I can remember, no.
15        Q.   Are you the author of the words on this
16   document?
17        A.   I am not.
18        Q.   Do you know who the author is?  Don't tell
19   me who it is, but do you know who it is?
20        A.   Yes.
21        Q.   Okay.  Do you know if this document was
22   authored -- well, let me be clear in the way I ask
23   this question.  I'm not asking you to reveal any
24   communications with any attorney that might have
25   produced this document.  But this document is
```

Page 106

1   obviously a public document that is put on things,
2   on devices.  So the actual document itself is not
3   privileged.
4            So all I'm asking you is, do you
5   know -- can you identify for me who is the author of
6   this document?
7       A.   Yes.
8       Q.   Who is that?
9       A.   The attorney that authored document?
10      Q.   Yes.
11      A.   His name is Robert Cantwell.
12      Q.   Okay.  And who is Robert Cantwell?
13      A.   He is an attorney.
14      Q.   Do you know what firm he practices at
15  today?
16      A.   I do not.
17      Q.   Do you know what firm he previously
18  practiced with?
19      A.   Lathrop & Gage.
20      Q.   Okay.  Was that the firm he was affiliated
21  with at the time he authored this document?
22      A.   Yes.
23      Q.   Was he a firm that -- excuse me.
24           Was Mr. Cantwell an attorney who was
25  retained by Torch Electronics?

Page 107

1      A.   Yes.
2      Q.   And, again, I don't want you to reveal any
3  communications, but can you tell me the purpose for
4  which Mr. Cantwell was retained by Torch
5  Electronics?
6      A.   He was retained as an attorney for legal
7  counsel.
8      Q.   I understand that.  More specifically, are
9  there particular matters that he was asked to advise
10 Torch Electronics on?
11          MR. CRAIG:  I'm going to object.  I don't
12      know that you get that.  I mean, other than
13      giving legal advice that relates to the
14      business?
15          MR. FINNERAN:  Are you instructing him not
16      to answer that question I assume?
17          MR. CRAIG:  He can -- if you've got
18      something more specific.
19          MR. FINNERAN:  Why don't I rephrase the
20      question.
21     Q.   (By Mr. Finneran)  Why did you decide to
22  hire Mr. Cantwell?
23     A.   He was an attorney that we knew from --
24  from previous.  He -- we had a previous
25  relationship, me myself had a relationship with him.

Page 108

1  Q. What was the nature of your prior
2  relationship with Mr. Cantwell?
3  A. He was a -- he was our -- an attorney for
4  a company that we -- that I set up in Illinois that
5  is no longer in existence.
6  Q. Are you aware of what, if any, background
7  or experience Mr. Cantwell has with respect to the
8  interpretation of Missouri's law pertaining to
9  gambling prior to the time that he authored this
10 document?
11 A. Can you say that again?
12 Q. Yes.
13     Are you aware what, if any,
14 experience Mr. Cantwell had with the interpretation
15 or application of Missouri's laws related to
16 gambling prior to the time that you retained him as
17 Torch Electronics?
18 A. As far as any experience with -- with
19 gambling?
20 Q. Yes?
21     MR. CRAIG: If you know.
22 A. I mean, I -- other -- I don't know. I
23 don't remember what experience he had.
24 Q. (By Mr. Finneran) Okay. Does Mr. Cantwell
25 still represent Torch Electronics today?

Page 109

1  A. No.
2  Q. Okay. If you would look at the bottom of
3  the form, there is a footnote. Do you see the
4  footnote?
5  A. Yes.
6  Q. Do you see that the phrase "upon the
7  outcome of a contest of chance" is highlighted?
8  A. Yes.
9  Q. Is that a highlight that is on the actual
10 decals that are attached to Torch devices or not?
11 A. Yes, I believe so.
12 Q. Do you have an understanding of why that
13 phrase is highlighted? If you can answer that
14 without revealing communication with an attorney.
15 A. No.
16 Q. Okay. So if you look at that sentence, it
17 actually -- the sentence I'm going to read into the
18 record. It says: A person engages in gambling when
19 he or she stakes or risks something of value upon
20 the outcome of a contest of chance or a future
21 contingent event not under his or her control or
22 influence, upon an agreement or understanding that
23 he or she will receive something of value in the
24 event of a certain outcome.
25           First, did I read that sentence

Page 255

1  request that TNT has previously issued in this case
2  to yourself and your co-defendants.  My question is
3  simply --
4         MR. CRAIG:  I didn't get 36.
5         MR. FINNERAN:  Which one are you missing?
6         MR. CRAIG:  I got 34 --
7         MR. FINNERAN:  Are you missing the second
8     request for production or the second set of
9     interrogatories?
10        MR. CRAIG:  Here's the first, second --
11    it's the second.  I've got the first
12    interrogatories and RFPs.
13        MR. FINNERAN:  Oh, you don't have the
14    seconds?
15        MR. CRAIG:  No.
16        MR. FINNERAN:  So then here are 36 and 37.
17        I'm sorry, Mr. Miltenberger.  Can you tell
18    us the title of 36 just so we can mark it
19    correctly?
20        THE WITNESS:  36.  Yes.
21        MR. CRAIG:  Rogs.  37.  Okay.  I'm good.
22   Q.  (By Mr. Finneran)  So these,
23   Mr. Miltenberger, are simply the discovery requests
24   that we have previously sent to Torch and its
25   co-defendants through your counsel.  My question is

Page 256

1  first with respect to our request for production,
2  can you tell me the steps that you took to collect
3  documents to hand to your attorneys that might be
4  responsive to our requests?  I don't want you to
5  share communications with your attorneys, just what
6  you did physically and mechanically to collect
7  documents.
8          MR. CRAIG:  Yeah.  If anything that you
9      did was something that myself or somebody from
10     my firm told you to do, do not talk about that
11     either.
12         THE WITNESS:  Okay.  I can't answer that.
13     Q.  (By Mr. Finneran)  Okay.  Well, I'm going
14 to have ask you some more specific questions then.
15 Did you perform a review of your e-mails after
16 receiving the first and second requests of
17 production?
18     A.  No.
19     Q.  Am I to understand that you have not
20 reviewed your e-mails to determine whether or not
21 your e-mails contain any documents that are
22 responsive to TNT's request?
23         MR. CRAIG:  I think -- I think before
24     your -- it would probably help if I say we have
25     taken an image of all his e-mails.  He did not

Page 257

1      do that.
2              MR. FINNERAN:  I understand.
3              MR. CRAIG:  That's why he's testifying to
4      that.
5              MR. FINNERAN:  That makes a lot more
6      sense.  I got very confused for a minute.
7      Okay.  Okay.  Fair enough.
8           Q.  (By Mr. Finneran)  Is it fair to say then
9      that -- well, let me start here.  You have
10     multiple -- do you have multiple e-mail addresses
11     that you use in connection with your work for Torch
12     Electronics?
13          A.  No.  "Multiple" meaning what?
14          Q.  E-mail addresses.  Do you have more than
15     one e-mail address that you use in the course of
16     your business?
17          A.  There are two e-mail addresses.
18          Q.  Okay.  Fair enough.
19              In addition to e-mails, are there
20     other forms of records that you keep in the course
21     of your business with Torch Electronics?
22          A.  Such as?
23          Q.  So for example, do you keep any paper
24     records?
25          A.  I mean, we have paper records about some

Page 258

```
 1    of our business.
 2         Q.   Okay.  Have you reviewed any of those
 3    records to determine whether or not they contain
 4    responsive documents to our questions?
 5              MR. CRAIG:  You mean him personally?
 6              MR. FINNERAN:  Yes.
 7         Q.   (By Mr. Finneran)  Have you personally
 8    reviewed those records to determine whether they
 9    contain records responsive to TNT's requests?
10         A.   I don't remember that, no.
11         Q.   Okay.  Do you also, as I think you said
12    earlier, use text message in the course of
13    communications for your business?
14         A.   Yes.
15         Q.   Have you reviewed your text messages to
16    determine whether or not they contain any
17    potentially responsive documents?
18         A.   No.
19              MR. CRAIG:  You're asking him personally?
20         Q.   (By Mr. Finneran)  I'm asking you
21    personally.
22         A.   No.
23         Q.   Okay.  I also am interested to know -- you
24    mentioned using the Signal app earlier.  Have you
25    reviewed your communications on the Signal app to
```

Page 259

```
 1   determine whether or not there are any responsive
 2   documents, and again I mean you personally?
 3        A.   No.
 4        Q.   And I think you also mentioned you used
 5   WhatsApp in the past.  Have you reviewed your
 6   communications on WhatsApp so see if there are any
 7   responsive documents in your WhatsApp?
 8        A.   No.
 9        Q.   Okay.  Are you aware of your obligation
10   to -- as a party to this case, to produce any
11   responsive documents to which there's not a valid
12   objection?
13             MR. CRAIG:  Object to form.  I don't know
14        that that is his obligation, his personal.  I
15        don't know if that's him or me or who.  So with
16        that objection.
17        Q.   (By Mr. Finneran)  Well, let me ask this
18   question:  Do you believe that you either have or
19   will make available to your attorney any documents
20   that might potentially be responsive to our request
21   for production?
22        A.   If they are required to, yes.
23        Q.   Okay.  Great.
24             I also have handed you copies of the
25   first and second interrogatories.  Those are also in
```