IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>TORCH ELECTRONICS, LLC, et al.  )<br><br>Defendants.  ) | Case No. 4:23-cv-00330-JAR |

**PLAINTIFF TNT AMUSEMENTS, INC.'S RESPONSE TO
DEFENDANTS' SUBMISSION OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At yesterday's hearing, the Court raised questions regarding the supplemental authority submitted by Defendants, in which the Missouri Court of Appeals rejected *Torch's own effort* to enjoin criminal enforcement of Missouri's gambling laws against it. *See Torch Electronics, LLC v. Mo. Dep't of Pub. Safety* (Doc. #204-1) (the "Western District Decision"). In the Western District Decision, the Missouri Court of Appeals held that *Missouri* courts lack the equitable authority under the *Missouri* Declaratory Judgment Act to issue declaratory judgments or injunctions that would "interfere with the enforcement of criminal statutes." *Id.* at 7.

Torch suggested at the hearing that the Western District Decision, which was decided under the *Missouri* Declaratory Judgment Act, counseled against entertaining TNT's claims under the *federal* Declaratory Judgment Act, the Lanham Act, and the RICO Act. The Court appeared to express concern that the Western District Decision might tie the Court's hands in entertaining TNT's *federal* causes of action. But nothing could be further from the truth. In fact, as explained below, the same Missouri Court of Appeals has expressly recognized the availability of relief in a federal RICO action as a ***reason*** to deny state declaratory relief to a plaintiff seeking a construction

1

of state gambling laws. And the Eighth Circuit itself has previously construed the very Missouri gambling statute at issue here in order to ascertain the extent of the federal prohibition on illegal gambling businesses. For this Court to abstain from deciding TNT's motion for summary judgment would therefore be a dramatic departure from precedent and would have the effect of denying TNT its rightful opportunity to have its federal rights adjudicated.

The Western District Decision simply has no bearing on this case. TNT is bringing an action at law for damages based on the federal RICO statute. The Western District Decision, however, concerns an equitable action under state law. The entire point of RICO's civil cause of action is to provide plaintiffs a remedy for violations of criminal law, including "offenses in violation of the laws of the State in which they are committed." 18 U.S.C. § 1952(b). The RICO statute therefore requires the interpretation of state criminal law by its very nature, and a state court decision interpreting a state declaratory judgment statute does not preempt federal law. And given the lack of dispute about the function of the Torch Devices, TNT is entitled to partial judgment against Torch as a matter of law.

## I. The Western District Decision Says Nothing About This Court's Authority to Construe Missouri's Gambling Laws, Which Has Been Expressly Recognized by the Very Same Missouri Court of Appeals

As a threshold matter, the Lanham Act and the RICO Act do not merely provide for "declaratory or injunctive relief," as the Western District Decision was concerned with. They are acts of Congress that provide for ***damages***, which is the only remedy the jury in this case would be tasked with providing. *See* 15 U.S.C. § 1117(a) (permitting a plaintiff to recover "any damages sustained"); 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 . . . shall recover threefold the damages he sustains . . . ."). The Western District decision, meanwhile, was, at bottom, a case about a private plaintiff's right (or lack thereof) to equitably enjoin the ***public enforcement*** of state criminal laws. Thus, even by its own

2

terms, the Western District Decision has nothing to say about TNT's non-equitable civil claims for damages.

But more to the point, the Western District Decision was limited to discussing the authority of *Missouri* state courts under the *Missouri* Declaratory Judgment Act. It did not reach any holding regarding the viability of injunctive relief under the *federal* Declaratory Judgment Act—nor, quite obviously, the Lanham Act or the RICO Act, all of which are *federal laws* by which Congress has expressly granted private remedies to aggrieved parties like TNT. And as TNT has explained in its prior briefing, no constraints like those described in the Western District Decision apply to the federal statutes at issue here. *See* Mem. in Opp. (Doc. #110) at 12–13.

In fact, the same Missouri Court of Appeals previously relied upon a ***federal court's*** construction of ***Missouri's state gambling laws*** as a reason to uphold a ***Missouri state court's*** dismissal of a declaratory judgment action brought under ***state*** law. *See People ex rel. Small v. Harrah's N. Kansas* City, 24 S.W.3d 60, 65 (Mo. Ct. App. 2000). In *Small*, the Missouri Court of Appeals held that a pending ***federal RICO*** suit that would decide the meaning of Missouri's ***state gambling laws*** provided a state court plaintiff with an adequate alternative remedy to relief under the ***Missouri*** Declaratory Judgment Act. *Id.* As a result, it upheld the dismissal of the plaintiff's state claim for declaratory relief because the plaintiff "already had a forum in which to present his argument"—which it found had been properly brought in a ***federal RICO*** suit in ***federal court***. *Id.* at 66. Thus, rather than discourage this Court from construing Missouri's gambling laws, the Missouri Court of Appeals in fact has expressly recognized the authority of federal courts to do so under RICO—even ***in preference*** to a state declaratory judgment remedy recently rejected in the Western District Decision.

3

Simply put, the Western District Decision has nothing to say about a federal court's authority to interpret a state law when a violation of state law serves as a predicate for a violation of *federal* law—and the same Court of Appeals has expressly deferred to a *federal* court's construction of Missouri's gambling laws to deny a state court plaintiff a state law declaratory judgment interpreting those same gambling laws. Under these circumstances, there is no impediment whatsoever to this Court's construing Missouri's state gambling laws.

## II. Copious Authority Requires Federal Courts to Construe State Laws That Are Predicates for Establishing Violations of Federal Law, Even Absent an Existing State Court Construction

Aside from its Missouri common law unfair competition claim, which Defendants have not seriously challenged this Court's power to adjudicate, the claims asserted by TNT in this case are all *federal* causes of action. True, this Court will have to adopt a faithful construction of Missouri state law—as the *Small* court expressly recognized its authority to do—in order to grant summary judgment on some of TNT's claims. But that is a feature (not a bug) of Congress's decision to make the violation of state law a predicate for establishing some (but not all) of TNT's theories of liability. *See, e.g.*, 18 U.S.C. § 1955(b)(1) (defining an "illegal gambling business" as a business which "is a violation of a State or political subdivision in which it is conducted"); *id.* § 1952(b) (defining "unlawful activity" to include "any business enterprise involving gambling . . . offenses in violation of the laws of the State in which they are committed"). Indeed, RICO itself makes certain ***purely*** state crimes predicate acts. *See id.* § 1961 (defining "racketeering activity" to include "any act or threat involving murder, kidnapping, gambling [etc.] . . . which is chargeable under ***State*** law" (emphasis added)).

It is therefore commonplace that courts applying RICO—both in civil cases and criminal prosecutions—are not only permitted but ***required*** to construe the meaning of state laws in order to adjudicate cases brought under the act. *See, e.g.*, *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354,

4

1361 (11th Cir. 2004) (construing Georgia gambling laws); *United States v. Mokol*, 957 F.2d 1410, 1415 (7th Cir. 1992) (construing Indiana gambling laws); *United States v. Tripp*, 782 F.2d 38, 43 (6th Cir. 1986) (construing Ohio and Michigan gambling laws); *United States v. Tunnell*, 667 F.2d 1182, 1185 (5th Cir. 1982) (construing Texas bribery law); *United States v. Giovanelli*, 747 F. Supp. 897, 904 (S.D.N.Y. 1989) (construing New York gambling laws). Likewise, federal courts—including in the Eighth Circuit—have regularly construed state gambling laws in applying the prohibitions of § 1952 and § 1955. *See, e.g.*, *United States v. Trupiano,* 11 F.3d 769, 771 (8th Cir. 1993) (construing Missouri gambling laws); *United States v. DeLuna*, 763 F.3d 897, 907 (8th Cir. 1985) (construing Nevada gambling laws); *see also United States v. Masino*, 869 F.3d 1301, 1307 (11th Cir. 2017) (construing Florida gambling laws); *United States v. Atiyeh*, 402 F.3d 354, 369 (3d Cir. 2005) (construing Pennsylvania gambling laws); *United States v. Wall*, 92 F.3d 1444, 1453 (6th Cir. 1996) (construing Tennessee gambling laws). And those federal courts have had no difficulty, ***even in the absence of any state court interpretation***, in construing the relevant state law based on the plain language of the state statute. *See, e.g.*, *Atiyeh*, 402 F.3d at 369 (holding that, "[b]ecause we are interpreting a state statute, we must determine how the Pennsylvania Supreme Court would rule if presented with this case," even though the gambling law at issue "ha[d] never been authoritatively construed by the Pennsylvania Supreme Court nor any other Pennsylvania court").

**III.  This Court's Construction of Missouri Law Can Be Informed by Both Appellate Precedent and the Repeated Pronouncements of Missouri Circuit Courts Finding Devices Like the Torch Devices to Be Illegal Gambling Devices**

Unlike many of the foregoing cases, in formulating its view of how a Missouri court would likely construe Missouri's gambling laws, ***the Court is not writing on a blank slate***. Not only can the Court rely on longstanding Missouri appellate court precedent construing the state's gambling laws, but it can also look to the pronouncements of the Missouri Gaming Commission and

5

numerous state courts that have held the Torch Devices and similar devices to be illegal gambling devices.

The Court can begin its analysis by referring to the canonical precedent for interpreting § 572.010, *Thole v. Westfall*, 682 S.W.2d 33 (Mo. Ct. App. 1984). In *Thole*, the Missouri Court of Appeals considered the legality of a game that resembled the Torch Devices in a striking number of respects. The *Thole* court found that a device that was "programmed to produce, at random, images of various objects which 'rotate' on the screen" to "simulate[] slot machine play" was an illegal gambling device. *Id.* at 35. After reiterating that "[i]n Missouri, a machine may be deemed a gambling device even when there is no showing that it has been used for gambling" so long as the device was "usable" in gambling, the court construed § 572.010 to hold that gambling included (but was not limited to) "playing games wherein 1) players stake or risk ***something of value***, 2) chance is a ***material factor*** and 3) successful play is rewarded by '***something of value***.'" *Id.* at 36–37 (emphasis added). Applying that construction, the *Thole* court readily found the "simulated slot machine" games at issue were gambling devices:

> In the slot machine games, the objects that appear on the screen ***are determined by the devices' electronic circuitry*** and the player has ***no control over which combination of objects will appear.*** Thus, ***from the player's point of view***, winning is ***purely a matter of luck, a matter of chance.*** In the Black Jack and draw poker games, the player ***decides whether additional cards will be dealt*** but ***has no control over other factors materially affecting the composition of the final hand***: the cards initially displayed and the cards selected either as additions to the original hand (in the case of Black Jack) or as replacements for the discards (in the case of draw poker) ***are determined by the games' electronic circuitry***. Thus, for even the most exceptional player, chance plays a significant role in determining whether he wins or loses.

*Id.* at 36–37 (emphasis added). Based on those facts, the *Thole* court concluded that "it is also apparent that the outcome of the games depends, in a material way, upon the element of chance."

6

*Id.* at 36. So, to the extent that the Court seeks guidance on the meaning and application of Missouri law, the Missouri Court of Appeals has already provided substantial guidance in *Thole*,.

The Court also has guidance on not just the meaning but also the ***particular application*** of Missouri law to devices identical ***to the Torch Devices*** from the written opinion of the Missouri Gaming Commission. That opinion—which was based on examination of a device that has now been determined to be functionally identical to one of the Torch Devices produced in this case—expressly declared the device to be an illegal gambling device. *See* TNT's SUMF (Doc. #98) ¶¶ 195–96. That opinion was issued within the authority of the Missouri Gaming Commission to a bingo licensee who inquired as to the legality of placing such a device in his VFW hall, which even Defendants acknowledge the Missouri Gaming Commission has authority to regulate.

The Court can also rely upon the decisions of at least two state circuit courts finding similar "no chance" games to be illegal gambling devices—one as a part of a guilty plea, and another after a contested trial. *See* TNT's Mem. in Opp. to Consolidation (Doc. #34) at 8–10; *see also* State's Post-Trial Brief (Doc. #34-2) (discussing how the "no chance" devices in the Platte County case worked, including a pre-reveal button and a slot-machine-like appearance, but—unlike the Torch Devices—no random number generators). Thus, whether it looks at the plain language of the statute, appellate precedent, trial court precedents, or the Missouri Gaming Commission's own analysis of an identical device, all roads will lead the Court to same, ineluctable conclusion: the Torch Devices are illegal gambling devices.

**IV.   The Possibility That Yet Another State Circuit Court May Find the Torch Devices to Be Illegal in the Next Several Months Is Not a Reason to Deny TNT Summary Judgment**

At the hearing, Mr. Rosenblum, who evidently represents both James McNutt and Torch (but is not entered as an attorney into ***this*** case), suggested that the prosecution of Mr. McNutt by the Franklin County prosecutor will commence within the next three months (a prosecution that

7

was initiated in November 2020 and has had its ***trial date continued no fewer than four times***). The Court noted that if any conviction of that case were appealed, it might provide guidance to this Court on both the meaning of Missouri law and its application to the Torch Devices. While that is certainly possible, there are many other potential outcomes that will deny the Court such additional guidance.

If, for example, there is an acquittal by the jury, there will be no judicial construction of the statute for the Court to rely upon, and the Court will have no way of determining if the acquittal arose from the jury's view of legality of the Torch Devices, some other failure of proof by the state, or the mere effect of the heightened burden of proof. Even if there is a conviction after a trial, there may not be any written decision from the Franklin County Circuit Court construing Missouri's statutes, and there is no guarantee the defendant will appeal his conviction to the Court of Appeals. And even if the Franklin County Circuit Court were to grant a motion for judgment of acquittal after a conviction, that would simply mean that one circuit court disagreed with two other coequal circuit courts—and the Missouri Gaming Commission.

Perhaps most importantly, since neither Torch nor TNT is a party to the Franklin County prosecution, neither party has any way to ensure that the proceeding will be conducted in such a way to ensure that all of the relevant facts in ***this*** case are presented to the court applying Missouri law to the devices at issue in ***that*** case—nor would any decision of such a court be binding on either party under principles of *res judicata*.[1]

---

[1] Although, since Torch is admittedly paying for Mr. McNutt's criminal representation, it is likely they will have much greater influence over the course of that proceeding than TNT will have.

8

If that sounds familiar, it's because we've been down this road before. When TNT sought a preliminary injunction in this case more than a year ago, TNT predicted Defendants' precise strategy, in words that are even more true today than they were when written in May 2023:

> The Defendants' Memorandum in Opposition . . . plays a familiar tune: "just wait." It is the same theme that the Defendants have trumpeted to avoid an adjudication of the legality of its so-called "No Chance" gambling devices (the "Torch Devices") in prior litigation. But despite the Defendants' protestations, there is no basis for this Court to deny TNT a hearing on its claims, nor any basis to stay this case pending the outcome of other litigation to which TNT is not a party. Far from asking the Court to merely "trust us" as to the illegality of the Torch Devices, TNT has offered to put its proof on display . . . . It is the Defendants who ask this Court to trust that the issues in this case can be resolved in other litigation, without TNT's participation. But as explained below, the evidence . . . will straightforwardly and persuasively convince the Court that the Torch Devices are illegal gambling devices and illegal slot machines and that TNT is being irreparably harmed each day by the Defendants' false representations to the contrary.

Reply (Doc. #23) at 1. At that time, Defendants predicted that the Cole County Case would give the Court additional guidance on the application of Missouri law by the end of August 2023. Yet as TNT forecasted, Torch then moved for and obtained continuance of the trial in that case until October 2023. Ultimately, no trial occurred, and nothing came of Defendants' predictions.

Now, on the eve of trial, Defendants again ask this Court: "just wait." But justice delayed will be justice denied for TNT, which continues to suffer harm to its ongoing business as a result of Defendants' unlawful actions. Defendants, meanwhile, will be free to continue their delay tactics in order to reap millions in profits from their illegal enterprise. It would be especially unjust for this Court to deny TNT relief now, when there is no longer any genuine dispute as to the operation of the Torch Devices, and all that is left is for the Court to faithfully apply Missouri law in order to determine their legality, as the Missouri Court of Appeals and the Eighth Circuit have both recognized this Court's authority to do.

9

## CONCLUSION

Defendants have professed for years that the Torch Devices offer only legal "no chance" games, all while attempting to delay a judicial determination of whether those claims are true. Thanks to the discovery in this case, it is now beyond genuine dispute that those claims are false. Nor is there any remaining dispute as to the relevant facts of how the Torch Devices operate. It is therefore this Court's duty under the Federal Rules of Civil Procedure and the RICO Act itself to determine, at long last, whether the Torch Devices are illegal gambling devices as a matter of law.

TNT respectfully requests that the Court grant its motion for partial summary judgment on each count of its Complaint and permit the parties to proceed to trial on the issue of TNT's damages.

Dated: July 12, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON
PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
MARY GRACE WARREN, #73147MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*marygrace.warren@bryancave.com*
*zoe.brannon@bryancave.com*

*Attorneys for TNT Amusements, Inc.
d/b/a Play-Mor Coin-Op*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served via ECF on July 12, 2024, upon all counsel of record.

/s/ Richard E. Finneran