IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00330-JAR |
| TORCH ELECTRONICS, LLC, et al., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF TNT AMUSEMENTS, INC.'S
STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN
SUPPORT OF ITS RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and this Court's Local Rule 4.01(E), Plaintiff TNT Amusements, Inc. ("TNT") hereby submits the following Statement of Uncontroverted Material Facts in Support of Its Renewed Motion for Partial Summary Judgment.

For ease of reference, TNT has preserved the number of the paragraphs of its original Statement of Uncontroverted Material Facts (Doc. #98) and indicated any new paragraphs with letters (e.g. 4a, 4b, etc.) and indented them, except for those additional facts appended to the end of TNT's Statement. TNT has also noted wherever Defendants previously admitted a fact by including the bolded term "**Admitted**" and citing the relevant portion of Defendants' Response (Doc. #109) to TNT's original Statement of Uncontroverted Material Facts.

**THE TORCH DEVICES (GENERALLY)**

1.      Defendants Torch Electronics, LLC ("Torch"), Steven Miltenberger, and Sondra Miltenberger ("Defendants") operate at least five types of devices, called (1) No Chance Game Suite I Terminal version ████, (2) No Chance Game Suite II Terminal version ████,

(3) No Chance Game Suite 3 Terminal version ████, (4) NCG Suite 4 Terminal version ████████ and (5) NCG Deluxe Terminal version ██████ (together with any other similar devices, the "Torch Devices"). **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 1** (Ltr. from N. Farley dated Nov. 6, 2023) at 1; **Ex. 2** (Dep. of Steven Miltenberger) at 157:2–159:4.

2.    Nick Farley, Defendants' expert, has provided analyses conducted between 2018 and 2021 for each of these devices as exhibits to his letter dated November 6, 2023. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 3** (Exhibit A-A to Ltr. from N. Farley); **Ex. 4** (Exhibit A-B to Ltr. from N. Farley); **Ex. 5** (Exhibit A-C to Ltr. from N. Farley); **Ex. 6** (Exhibit A-D to Ltr. from N. Farley); **Ex. 7** (Exhibit A-E to Ltr. from N. Farley).

3.    Farley provided final reports for only these the five Torch Devices, though he was asked to analyze other machines. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 106:20–107:18; *See* **Ex. 63** (Apr. 18, 2024 Rebuttal Rep. of N. Farley); **Ex. 64** (Resp. to Dep. Topic 35, Dep. of S. Miltenberger, Corporate Representative of Torch) at 1.

4.    Additionally, Defendants distribute at least eight other Torch Devices, called "NCG 5," "NCG Deluxe 1," "NCG Deluxe 2," "NCG Deluxe 3," "NCG Deluxe 4," "NCG Dual," "NCG Skyriser," and "NCG Hot Locks." **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 9** (Ex. A to Defs.' Ans. & Obj. to Pl.'s 2d Interrogatories); **Ex. 2** (Dep. of Steven Miltenberger) at 158:6–10; **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 37:4–38:24.

4a.    "Nick Farley or his team has also conducted testing specific to" at least eight other Torch Devices: "NCG Deluxe 2, NCG Deluxe 3, NCG Deluxe 4, NCG Hot Locks, NCG Deluxe 5, NCG Dual 1, and NCG Skyriser." **Ex. 64** (Resp. to Dep. Topic 35, Dep. of S. Miltenberger, Corporate Representative of Torch) at 1.

4b.    Although testing of these eight additional Torch Devices was conducted, "no final reports have been issued." **Ex. 64** (Resp. to Dep. Topic 35, Dep. of S. Miltenberger, Corporate Representative of Torch) at 1.

5.    Prior to his first deposition, Mr. Farley was unaware that Torch had other devices in Missouri other than the five Torch Devices he examined. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 106:24–107:2.

6.    Each of the Torch Devices is purchased by Defendants from Banilla Games, Inc. ("Banilla"), a company headquartered in North Carolina. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 41:4–42:10.

7.    The Torch Devices for which Farley produced final reports feature at least five game themes ("Game Themes"). A "Game Theme" is a series of visual images used to entertain the player by revealing a combination of "winning" or "losing" symbols on each turn of gameplay. **Admitted in Defs.' Resp. at 1.** *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 19:7–15; 20:2–5; **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 17:19–18:2.

8.    Game Themes of the Torch Devices for which Farley produced final reports include Lucky's Loot, Lucky Lollipop, Lucky Striker, Lightning Strike, Bourbon Street Dice, Fabulous Las Vegas, Searing Sevens, Shammy 7's, Spooky's Loot, Wheel Deal, Arabian Riches, Bathtime Bucks, Party Crashers, Super Keno, Frozen Sevens, Kitty Kash, Major Ca$h, Oil Rush, St. Patty's Payday, Box Office, Double Shot, Mega Money Reel, Nut Shack, Piggy Bank Busy, Silver & Gold Spins, Kiss Me I'm Irish, Sparky's Firehouse, Ticket to Ride, and Dr. Jekyll & Mr. Hyde. **Admitted in Defs.' Resp. at 1.** *See* **Ex. 3** (Exhibit A-A to Ltr. from N. Farley) at 2; **Ex. 4** (Exhibit

A-B to Ltr. from N. Farley) at 2; **Ex. 5** (Exhibit A-C to Ltr. from N. Farley) at 2; **Ex. 6** (Exhibit

A-D to Ltr. from N. Farley) at 2; **Ex. 7** (Exhibit A-E to Ltr. from N. Farley) at 2.

9.      **Ex. 11**, shown below, is a picture of a Torch Device.



10. **Ex. 12**, shown below, is a picture of a Torch Device.



11. **Ex. 13**, shown below, is a picture of two Torch Devices.



12. **Ex. 14**, shown below, is a picture of a Torch Device.



13. **Ex. 15**, shown below, is a picture of a Torch Device.



14. **Ex. 16**, shown below, is a picture of a three Torch Devices.



15. **Ex. 17**, shown below, is a picture of eight Torch Devices.



16. **Ex. 18**, shown below, is a picture of six Torch Devices.



17. **Ex. 19**, shown below, is a picture of a Torch Device and Torch cash redemption kiosk.



18. **Ex. 20**, shown below, is a picture of a Torch Device.



19. **Ex. 21**, shown below, is a picture of a Torch Device.



20.     Each Torch Device includes at least one Game Theme that depicts a series of spinning reels. *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 168:24–169:1–6.

21.     The spinning reels have an appearance that is similar to a common electronic slot machine game. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 168:24–169:1–6; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56, 79; **Ex. 24** (Dep. of C. Hanavan) at 76:10–25.

22.     Although Torch Devices offer different Game Themes, the underlying software operates the same. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 224:17–21; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 22:22–23:6; **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 40:9–11, 41:13–20; **Ex. 24** (Dep. of C. Hanavan) at 125:17–126:6; **Ex. 2** (Dep. of Steven Miltenberger) at 157:2–161:21.

23.     Defendants do not issue tax forms to players who play games on Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 262:14–263:25.

24.     Defendants do not collect tax forms from players who play games on Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 262:14–263:25.

25.     Defendants share the proceeds from the operation of Torch Devices with the owners or managers of various locations where the Torch Devices may be found ("Amusement

Locations"), splitting the profits "50-50." **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 52:19–21, 123:13–15.

26.    For some Amusement Locations, Defendants share these proceeds under a written agreement, though typically the agreements are oral. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 53:12–54:15, 121:14–25.

27.    Defendants currently have at least ███ customers in just six of Missouri's 114 counties, on whose premises Defendants operates Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 25** (Ex. B to Defs.' Ans. & Objs. to TNT's 1st Set of Interrogatories).

28.    Defendants have not disclosed the total number of customers it has in Missouri's other 108 counties or how many Torch Devices it operates in those counties. (No evidence.) **Admitted in Defs.' Resp. (Doc. #109) at 1.**

29.    However, Defendants have purchased "███████ of Torch Devices from Banilla since 2017. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 101:24–102:4.

30.    Missouri Gaming Commission Electronic Gaming Specialist Cody Hanavan estimates that there have been more than 15,000 Torch Devices in Missouri at a single time. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 24** (Dep. of C. Hanavan) at 97:1–6.

31.    There are at least 20 Amusement Locations within the state of Missouri where Defendants have placed Torch Devices that were previous or are current customers of TNT (the "Overlapping Locations"). **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 86:1–18; **Ex. 2** (Dep. of Steven Miltenberger) at 98:6–99:10; Stipulation as to Agreed Locations (Doc. #55-1).

32.     Defendants have placed at least ▌ Torch Devices within those Overlapping Locations. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 91:22–92:10, 93:14–17, 95:21–96:15, 97:11–15, 134:12–16; Stipulation as to Agreed Locations (Doc. #55-1); **Ex. 26** (Collections Master List for Bottoms Up); **Ex. 27** (Collections Master List for Break Time Bar & Grill); **Ex. 28** (Collections Master List for Daugherty's Pub); **Ex. 29** (Collections Master List for East Office Bar & Grill); **Ex. 30** (Collections Master List for Joe Mamma's); **Ex. 31** (Collections Master List for Judy's Place); **Ex. 32** (Collections Master List for Leslie Depot); **Ex. 33** (Collections Master List for Locker Room); **Ex. 34** (Collections Master List for Meramec Valley); **Ex. 35** (Collections Master List for Midwest Petroleum #53); **Ex. 36** (Collections Master List for Rehab Bar & Grill); **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch); **Ex. 38** (Collections Master List for South 94 Bistro); **Ex. 39** (Collections Master List for The Hub); **Ex. 40** (Collections Master List for The Rose); **Ex. 41** (Collections Master List for The Sand Bar); **Ex. 42** (Collections Master List for The Sand Trap); **Ex. 43** (Collections Master List for The Tap on Route 66); **Ex. 44** (Collections Master List for VFW St. Robert Post 3176); **Ex. 45** (Collections Master List for Whoa Nellie's Gravel Bar).

33.     From the Overlapping Locations alone, Torch Devices have generated gross revenue of no less than $▌ between January 1, 2018 and December 28, 2023. *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 99:9–17, 134:12–16, 134:24–136:2; **Ex. 26** (Collections Master List for Bottoms Up); **Ex. 27** (Collections Master List for Break Time Bar & Grill); **Ex. 28** (Collections Master List for Daugherty's Pub); **Ex. 29** (Collections Master List for East Office Bar & Grill); **Ex. 30** (Collections Master List for Joe Mamma's); **Ex. 31** (Collections Master List for Judy's Place); **Ex. 32** (Collections Master List for

Leslie Depot); **Ex. 33** (Collections Master List for Locker Room); **Ex. 34** (Collections Master List for Meramec Valley); **Ex. 35** (Collections Master List for Midwest Petroleum #53); **Ex. 36** (Collections Master List for Rehab Bar & Grill); **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch); **Ex. 38** (Collections Master List for South 94 Bistro); **Ex. 39** (Collections Master List for The Hub); **Ex. 40** (Collections Master List for The Rose); **Ex. 41** (Collections Master List for The Sand Bar); **Ex. 42** (Collections Master List for The Sand Trap); **Ex. 43** (Collections Master List for The Tap on Route 66); **Ex. 44** (Collections Master List for VFW St. Robert Post 3176); **Ex. 45** (Collections Master List for Whoa Nellie's Gravel Bar).

34.    From the Overlapping Locations alone, Defendants have received no less than $█████ between January 1, 2018 and December 28, 2023 after deducting the costs of payouts to players and revenue splits with Amusement Location. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 131:6–16, 134:12–16, 134:24–136:2; **Ex. 26** (Collections Master List for Bottoms Up); **Ex. 27** (Collections Master List for Break Time Bar & Grill); **Ex. 28** (Collections Master List for Daugherty's Pub); **Ex. 29** (Collections Master List for East Office Bar & Grill); **Ex. 30** (Collections Master List for Joe Mamma's); **Ex. 31** (Collections Master List for Judy's Place); **Ex. 32** (Collections Master List for Leslie Depot); **Ex. 33** (Collections Master List for Locker Room); **Ex. 34** (Collections Master List for Meramec Valley); **Ex. 35** (Collections Master List for Midwest Petroleum #53); **Ex. 36** (Collections Master List for Rehab Bar & Grill); **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch); **Ex. 38** (Collections Master List for South 94 Bistro); **Ex. 39** (Collections Master List for The Hub); **Ex. 40** (Collections Master List for The Rose); **Ex. 41** (Collections Master List for The Sand Bar); **Ex. 42** (Collections Master List for The Sand Trap);

**Ex. 43** (Collections Master List for The Tap on Route 66); **Ex. 44** (Collections Master List for VFW St. Robert Post 3176); **Ex. 45** (Collections Master List for Whoa Nellie's Gravel Bar).

35.     From the Overlapping Locations alone, Torch has paid no less than $ ▮▮▮▮▮▮ January 1, 2018 and December 28, 2023 to the Amusement Locations. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 102:10–22, 134:12–16, 134:24–136:2; **Ex. 26** (Collections Master List for Bottoms Up); **Ex. 27** (Collections Master List for Break Time Bar & Grill); **Ex. 28** (Collections Master List for Daugherty's Pub); **Ex. 29** (Collections Master List for East Office Bar & Grill); **Ex. 30** (Collections Master List for Joe Mamma's); **Ex. 31** (Collections Master List for Judy's Place); **Ex. 32** (Collections Master List for Leslie Depot); **Ex. 33** (Collections Master List for Locker Room); **Ex. 34** (Collections Master List for Meramec Valley); **Ex. 35** (Collections Master List for Midwest Petroleum #53); **Ex. 36** (Collections Master List for Rehab Bar & Grill); **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch); **Ex. 38** (Collections Master List for South 94 Bistro); **Ex. 39** (Collections Master List for The Hub); **Ex. 40** (Collections Master List for The Rose); **Ex. 41** (Collections Master List for The Sand Bar); **Ex. 42** (Collections Master List for The Sand Trap); **Ex. 43** (Collections Master List for The Tap on Route 66); **Ex. 44** (Collections Master List for VFW St. Robert Post 3176); **Ex. 45** (Collections Master List for Whoa Nellie's Gravel Bar).

36.     Defendants also began placing "cash redemption kiosks" at Amusement Locations in 2021 and have since placed over ▮▮▮ kiosks at these Locations. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 96:15–25.

37.     Defendants purchase these kiosks from Banilla, which sources the kiosks from CountR Cash Systems, a company based in Brandenburg, Germany, that markets itself as "a worldwide leader for self-service kiosks for the casino and route gaming industry." **Admitted in**

**Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 136:2–25; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 164:16–165:2; *see also* **Ex. 46** (website of CountR Cash Systems).

38.    CountR "offers products for slot machines as well as for table games." **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 46** (website of CountR Cash Systems).

39.    Players can use the cash redemption kiosks to redeem the monetary value of vouchers dispensed by the Torch Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 95:7–16.

40.    The voucher includes a QR code, which the player scans at the cash redemption kiosk to verify the voucher is legitimate, and the kiosk dispenses the amount of money represented on the voucher. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 95:7–16.

41.    At Amusement Locations without cash redemption kiosks, a player redeems their voucher with the help of an employee of the Torch Location in one of two ways. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 92:24–95:25.

42.    If the Amusement Location has a computer tablet that assists with payouts, the player presents the Amusement Location employee with the voucher, the employee uses the tablet to scan the voucher's QR code, and the employee pays the player the value of the voucher using the location's cash register. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 92:24–95:25.

43.    If the Amusement Location does not have a computer tablet that assists with payouts, the Amusement Location employees print vouchers from a printer only accessible to the employees, and then pay the player the value of that voucher from that Amusement Location's

cash register. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 92:24–95:25.

44.     Defendants have not taken any actions to prevent children from playing games on Torch Devices beyond allegedly instructing owners of the locations with Torch Devices to disallow children from playing. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 227:17–228:1.

45.     When asked why children are not permitted to play Torch Devices, Sondra Miltenberger responded, "you go into a casino, can you play at ten years old?" **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 47** (Dep. of Sondra Miltenberger) at 130:5–14.

46.     Defendants take no action to prevent problem gamblers or gambling addicts from playing Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 231:15–232:17.

47.     Nothing prevents a person who is illiterate from playing a Torch Device. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 207:16–208:12.

48.     Nothing prevents a person who does not read the English language from playing a Torch Device. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 207:16–208:12.

49.     Sondra Miltenberger has testified that she has never played a Torch Device, saying "I just don't ***gamble*** or entertain myself with those kinds of things[.]" **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 47** (Dep. of Sondra Miltenberger) at 147:16–148:25 (emphasis added).

### THE OPERATION OF THE TORCH DEVICES

50.     The Torch Devices each feature a number of different Game Themes that a player may choose from, such as Lucky's Loot, Lucky Lollipop, Lucky Striker, Lightning Strike, Bourbon Street Dice, Fabulous Las Vegas (hereinafter, "Game Themes"), as well as a "play level"

that represents the amount that a player must pay in order to play the next turn (hereinafter, the "Play Amount"). *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 148:12; **Ex. 3** (Exhibit A-A to Ltr. from N. Farley) at 2; **Ex. 4** (Exhibit A-B to Ltr. from N. Farley) at 2; **Ex. 5** (Exhibit A-C to Ltr. from N. Farley) at 2; **Ex. 6** (Exhibit A-D to Ltr. from N. Farley) at 2; **Ex. 7** (Exhibit A-E to Ltr. from N. Farley) at 2.

51.    For each combination of Game Theme and Play Amount, the Torch Devices are programmed to pay out (or not) based upon payout amounted listed within one of several "pre-determined finite pools" of pre-programmed payout amounts (the "Payout Pools") that are sequentially arranged in an unpredictable order that has no discernible pattern. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 136:13–137:5, 151:17–20; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56, 64, 89.

52.    The Payout Pool for each specific Torch Device has its own unique, unpredictable sequence of payout amounts that are randomized by the manufacturer before being placed into use in any Amusement Location. *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 46:14–47:21; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56, 64, 89.

53.    The first time that a player plays any particular Game Theme and Play Amount on a Torch Device, the Torch Device randomly selects the first payout amount that will be displayed to the player from the Payout Pool corresponding to that combination of Game Theme and Play Amount. *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 72:10–23; **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 16–34; **Ex. 49** (Dep. of Banilla Games Rep. in *Torch Electronics, LLC et al. v. Mo. Dep't of Pub. Safety, et al.*, Case No. 21AC-CC00044) at 81:15–82:24; **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 19:5–19:25, 86:18–87:24; **Ex. 63** (Apr. 18, 2024 Rebuttal Rep. of N. Farley) at 3–4; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 19–33.

54. ███████████████████████████████████████████

█████████████████████████████████████████████████████████

*See* **Ex. 48** (Supp. Report of S. Friedman) at ¶ 28; **Ex. 63** (Apr. 18, 2024 Rebuttal Rep. of N. Farley) at 3–4; **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 86:18–87:24, 149:8–11; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–33, 51–53.

55. █████████████████████████████████████████████

██████████████████████████████████████████ *See* **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 16–34; **Ex. 63** (Apr. 18, 2024 Rebuttal Rep. of N. Farley) at 3–4; **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 19:5–19:25, 88:4–89:6, 93:5–93:20–95:5; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–33, 51–53.

55a. As Defendants now admit through the testimony of their expert Mr. Farley, Mr. Farley's previous testimony that the Torch Devices do not contain a random number generator was wrong, given the random number generators identified in Mr. Friedman's 3d Supplemental Report. *See* **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 235:15–237:9; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–33, 51–53.

55b. Despite these changes in opinion, Mr. Farley has yet to supplement his Original Report (or subsequent opinions). *See* **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 240:1–242:15.

55c. Mr. Farley also confirmed, as explicitly stated in his original report, that if Torch Devices were updated, upgraded, or "patched" since his staff's review, the conclusions reached in reports would need be re-tested in order to be valid. **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 327:25–328:7.

55d. Since the dates of Mr. Farley's various analyses, the Torch Devices have been updated. **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 44:3–6, 21:19–23:24; **Ex. 68** (Email from S. Miltenberger to J. Smith dated Feb. 19, 2022) at 1–3; **Ex. 53** (Torchelectronics.com, About No Chance Gaming (Sept. 13, 2022)) at 1; **Ex. 54** (Torchelectronics.com, *About No Chance Games* (Sept. 19, 2022)) at 1

55e. Defendants have produced no reports from Mr. Farley containing an analysis of any updated devices. (No evidence.)

55f. One such update included a change to Torch Device "Deluxe 3." *See* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 38:23–25; **Ex. 68** (Email from S. Miltenberger to J. Smith dated Feb. 19, 2022) at 1–3.

55g. The update to the Deluxe 3 was discussed in an email exchange between Defendant Steven Miltenberger and Jason Smith, employee of Grover Games, an entity associated with Torch Device manufacturer, Banilla. *See* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 38:23–25; **Ex. 68** (Email from S. Miltenberger to J. Smith dated Feb. 19, 2022) at 1–3.

55h. In an email dated February 19, 2022, Jason Smith referred to the update to the Deluxe 3 as a "pools shuffle update." *See* **Ex. 68** (Email from S. Miltenberger to J. Smith dated Feb. 19, 2022) at 1–3; **Ex. 66** (Apr. 30, 2024 Dep. of N. Farley) at 235:15–237:9.

55i. In and around the time of Mr. Smith's email, Torch had "discovered" that the "pool[] . . . shuffle" function was present within Torch Devices that Defendants placed in Missouri, and so Banilla and Torch updated the Torch Devices to "make sure that [Torch Devices] didn't have that." *See* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate

Representative of Torch) at 42:24–43:7; **Ex. 68** (Email from S. Miltenberger to J. Smith dated Feb. 19, 2022) at 1–3.

55j. As of March 2021, Defendants had placed no fewer than ▇ NCG Deluxe 3 devices and no fewer than ▇▇▇▇▇ Deluxe-style Torch Devices, including NCG Deluxe, NCG Deluxe 2, and NCG Deluxe 3 in the City of St. Louis. *See* **Ex. 69** (Steven Miltenberger emailing himself excel file attachment entitled "St. Louis City Wood Deluxes 5-12-21.pdf.").

55k.    In the course of discovery, Defendants, through their expert, Nick Farley, produced four hard drives that were originally represented by Defendants to be exact duplicates of the Torch Devices reviewed by Nick Farley prior to preparing his Original Report. *See* **Ex. 70** (2d Supp. Rep. of S. Friedman) at ¶¶ 10, 47.

55l.    Instead of making exact copies of the devices Mr. Farley had previously reviewed as he had been requested to do, Mr. Farley instead requested and received drives from Banilla corresponding to the Torch Devices he had reviewed. *See* **Ex. 63** (Apr. 18, 2024 Rebuttal Rep. of N. Farley) at 1 n.1.

55m. The drives produced by Banilla and later produced by Defendants in discovery contained a stored procedure in its database files called "▇▇▇▇▇▇▇▇▇" that, when activated, would cause the software to shuffle the table of payout amounts for each combination of play amount and game theme. *See* **Ex. 70** (2d Supp. Rep. of S. Friedman) at ¶¶ 35–41.

56.    The Torch Devices also randomly select which combination of "winning" and "losing" symbols to display to a player on each and every play of the devices. **Ex. 10** (Dep. of K.

Morse, Corporate Representative of Banilla) at 62:17–65:5; **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 35–41.

### The "Prize Viewer"

57.    The "Prize Viewer" mechanism that is available in each of the Torch Devices is an optional feature. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 223:2–5; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 93:21–94:1. Players need not use the "Prize Viewer" to select a button such as "play amount" or "play max" whereby they choose the amount of money to commit to a certain game, play any of the Game Themes, or win money. *Id. See* **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 51–53 (conclusions in initial report apply to the Torch Devices reviewed in his third Supplemental Report

58.    The "Prize Viewer" mechanism only displays the immediately next payout amount to be delivered by the Torch Device; it does not display any payout amounts after the immediately next turn, nor does it allow the player to preview the combination of symbols that will be displayed to the player on even the immediately next turn. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 184:14–20, 198:11–14; **Ex. 2** (Dep. of Steven Miltenberger) at 165:18–22; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 61:24–62:6; **Ex. 22** (Initial Report of S. Friedman) ¶ 58; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

59.    Not all players use the Prize Viewer mechanism every time they play a Torch Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 93:6–94:8; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58.

59a.    Mr. Miltenberger has personally observed players playing the Torch Devices without using the Prize Viewer. *See* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 17:19–18:2, 58:13–60:23.

60.    A player is not required to use the Prize Viewer in order to play any of the games on the Torch Devices or to receive payment from those devices in the event of a winning play. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 93:6–94:8; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

61.    A player who is unaware of or does not use the "Prize Viewer" mechanism has no other way of predicting what the payout amount of any of the games will be. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 197:12–198:1; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58, 64, 89; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

62.    A player who uses the "Prize Viewer" mechanism and sees that the next game will result in a $0 payout amount must expend the Play Amount and "claim" the $0 "prize" in order to view the subsequent payout amount and thereby have the chance to receive a positive return. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 191:14–16, 197:12–198:1; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58, 65–68; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

63.    A player who uses the "Prize Viewer" mechanism and sees that the next game will result in a $0 payout amount has no way of predicting whether the subsequent payout amount will be more than $0 without first expending the Play Amount to claim the $0 "prize" displayed by the "Prize Viewer" mechanism. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 191:14–16, 197:12–198:1; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58, 64–68, 89; **Ex. 24** (Dep. of C. Hanavan) at 80:13–21; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

64.    Even players who use the "Prize Viewer" mechanism that is available in each of the Torch Devices have no way of predicting which combination of winning and losing symbols will be shown on any play of the Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 165:18–22 (the Prize Viewer does not allow a player to "see the combination of symbols that will appear on the screen in the next play of the game"); **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 61:24–62:6; **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 35–41; **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) 198:5–6; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

65.    The "Prize Viewer" mechanism only displays a dollar amount; it does not display the combination of "winning" or "losing" symbols that will be displayed to the player on the next turn of the Torch Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 165:18–22 (the Prize Viewer does not allow a player to "see the combination of symbols that will appear on the screen in the next play of the game"); **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 61:24–62:6; **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 35–41; **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 198:5–6; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

66.    Players who continue playing after viewing a $0 payout by expending the Play Amount are purchasing the opportunity for future payouts that are potentially higher than $0. *See* **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58, 64–68, 89; **Ex. 24** (Dep. of C. Hanavan) at 83:19–86:16; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.]

67.    In a prosecution in Platte County (the "Platte County Case") against Integrity Vending, LLC that resulted in a guilty verdict for the felony of promotion of gambling for its so-called "no chance" games, "[p]rosecutors proved that players did not have to use the 'prize viewer'

feature" and "[a] representative of Integrity Vending also admitted that, if every player used the viewer, the company would not make a profit." **Ex. 50** (Platte County Citizen article).

68. The only difference identified by Defendant Steven Miltenberger between the so-called "no chance" games in the Platte County Case and the Torch Devices is that players in the Platte County Case were required to first insert money into the devices before selecting the prize viewer feature. *See* **Ex. 2** (Dep. of Steven Miltenberger) at 237:194–22, 323:4–10.

69. ████████████████████████████████████████████

████████████████████████████████████████ **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dec. 12, 2023 Dep. of Steven Miltenberger) at 310:11–24 (emphasis added); **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 141:1–12; **Ex. 24** (Dep. of C. Hanavan) 77:24–78:3; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

70. Beyond showing the amount of money to be won on the next turn, a player who presses the "Prize Viewer" mechanism does not have the ability to preview the amount of money to be won on any turn of the game beyond the immediately next turn; i.e., the Prize Viewer mechanism does not allow a player to view whether the player would collect some amount of money on the second, third, or any other future turn. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 165:7–22, 309:22–312:15; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 56–58, 64–68, 89; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

71. If a player wishes to ascertain whether the player would collect some amount of money on the second, third, or any future turn, the player must pay for and play through additional turns. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 165:7–22, 309:22–312:15; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 64–68; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

72.     Using the Prize View mechanism button does not assist the player in obtaining a more favorable payout amount. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 51** (Defs.' Ans. & Objs. to Pl.'s 1st Set of Interrogatories) at 6; **Ex. 24** (Dep. of Cody Hanavan) at 92:2–9; **Ex. 2** (Dep. of Steven Miltenberger) at 165:7–22.

73.     A player does not have the option to skip the next payout amount. If a player selects the Prize Viewer mechanism and sees the next game payout amount is $0, and that player wishes to obtain a result higher than $0 from the Torch Device, the player must first play through that $0 turn. Outside of situations in which a previous player left available funds on a Torch Device, a player must pay for the opportunity to move past the $0 payout amount. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 309:22–312:15; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 64–68; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

74.     Each of the Torch Devices contains an operator menu that provides certain features that are not ordinarily accessible to players of the Torch Devices. *See* **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 81:13–83:15; **Ex. 48** (Supp. Report of S. Freidman) ¶ 33; **Ex. 67 (3d Supp. Report of S. Friedman)** at ¶¶ 10–34, 51–54.

75.     One setting within that operator menu allows Defendants ███████████████ ███████████████████████████████████████████████████████████ ████████████████ **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

76.     Defendants have the access and ability to change the ████████████████ ████████ setting. *See* **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 141:25–142:12; **Ex. 2** (Dep. of Steven Miltenberger) at 39:8–40:10.

77. The operator menu within the Torch Devices also contains an option called "██████████." *See* **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 137:12–140:7; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

78. Defendants have the access and ability to activate the "██████████" option. *See* **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 137:12–140:7; **Ex. 2** (Dep. of Steven Miltenberger) at 39:8–40:10; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

79. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 137:12–140:7; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

80. ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ **Ex. 48** (Supp. Report of S. Friedman) ¶¶ 33; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 137:12–140:7; **Ex. 67** (3d Supp. Report of S. Friedman) at ¶¶ 10–34, 51–54.

***Play Amounts***

81. A player must pay for each for "turn" on a Torch Device by expending the Play Amount in order to play the game. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 132:10–22.

82. A Torch Device player's lowest Play Amount option is $0.25. *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 180:8–9.

83.     Although the lowest Play Amount on a Torch Device is configured to be $0.25, Torch Devices do not accept quarters. *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 180:8–9.

84.     The lowest bill denomination a player may insert into a Torch Device is $1.00. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 180:4–20.

85.     The highest Play Amount available on the Torch Devices is $5. *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 180:4–7.

86.     If there is a balance of $0.25 on the Torch Device when a player decides to stop playing, there is no way for them to get their $0.25 back without continuing to play. In other words, the money "stays on the game." **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 199:19, 200:10–15.

87.     If a player runs out of sufficient funds for the next turn, then they must insert additional money to continue playing. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 133:21–23; **Ex. 2** (Dep. of Steven Miltenberger) at 309:22–312:15.

*Payouts*

88.     The percentage at which a Torch Device pays out winnings to a player depends on the payout setting in the game. There are four payout settings: ███████████████ **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 307:5–9; **Ex. 3** (Exhibit A-A to Ltr. from N. Farley) at A-2; **Ex. 4** (Exhibit A-B to Ltr. from N. Farley) at A-2; **Ex. 5** (Exhibit A-C to Ltr. from N. Farley) at A-2; **Ex. 6** (Exhibit A-D to Ltr. from N. Farley) at A-2; **Ex. 7** (Exhibit A-E to Ltr. from N. Farley) at A-3; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 74–75.

89.     Defendants set the payout rate and may select different rates among different game themes. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 45:18–25; **Ex. 22** (Initial Report of S. Friedman) ¶¶ 74–75.

90.     The higher the payout rate, the less profitable a Torch Device is for the Defendants. *See* **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative of Torch) at 126:16–18.

91.     ███████████████████████████████████████████

**Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 164:1–12.

92.     ██████████████████████████

████████████████████████████████ **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 3** (Exhibit A-A to Ltr. from N. Farley) at A-2; **Ex. 4** (Exhibit A-B to Ltr. from N. Farley) at A-2; **Ex. 5** (Exhibit A-C to Ltr. from N. Farley) at A-2; **Ex. 6** (Exhibit A-D to Ltr. from N. Farley) at A-2; **Ex. 7** (Exhibit A-E to Ltr. from N. Farley) at A-3; **Ex. 2** (Dep. of Steven Miltenberger) at 164:1–12.

93.     Depending on the game and the amount of money inserted by the player, a player may collect between $1 and $20 from a turn on a Torch Device. *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 75:12.

94.     ███████████████████████████████████████████

████████████████████████████████ **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 37:23–39:3, 72:10–23.

95.     ███████████████████████████████████████████

████████████████████████████████████. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steve Miltenberger) at 159:24–161:1.

96. ██████████████████████████████████████████

██████████████████████████. *See* **Ex. 3** (Ex. A-A to Ltr. from Nick Farley) at 2; **Ex. 4** (Ex. A-B to Ltr. from Nick Farley) at 3; **Ex. 5** (Ex. A-C to Ltr. from Nick Farley) at 3; **Ex. 6** (Ex. A-A to Ltr. from Nick Farley) at 3; **Ex. 7** (Ex. A-A to Ltr. from Nick Farley) at 3.

97. The Play Amount determines the "quantity of funds that will be expended" by a player in each play of the game. *See* **Ex. 3** (Ex. A-A to Ltr. from Nick Farley) at 3; **Ex. 4** (Ex. A-B to Ltr. from Nick Farley) at 3; **Ex. 5** (Ex. A-C to Ltr. from Nick Farley) at 3; **Ex. 6** (Ex. A-D to Ltr. from Nick Farley) at 3; **Ex. 7** (Ex. A-E to Ltr. from Nick Farley) at 4.

98. There is nothing a player can do to alter the payout amount of a turn before or after the player inserts money into the Torch Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 139:16–19; **Ex. 2** (Dep. of Steven Miltenberger) at 161:3–167:11; **Ex. 51** (Defs.' Ans. & Objs. to Pl.'s 1st Set of Interrogatories) at 6.

99. ██████████████████████████████████████████

██████ **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 136:15–137:5.

100. There is no element of skill to playing a game on a Torch Device. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 8** (Dec. 12, 2023 Dep. of N. Farley) at 210:12–16, 285:9–11; **Ex. 2** (Dep. of Steven Miltenberger) at 166:3–5; **Ex. 10** (Dep. of K. Morse, Corporate Representative of Banilla) at 31:19–32:5; **Ex. 51** (Defs.' Ans. & Objs. to Pl.'s 1st Set of Interrogatories) at 6.

### DEFENDANTS' MISREPRESENTATIONS

101.    Defendants have placed a visible decal on each and every Torch Device since it began operating in Missouri. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 104:23–105:14.

102.    **Ex. 52** depicts a photograph of one such decal (**Admitted in Defs.' Resp. (Doc. #109) at 1**):



103.    The decal states:

The Amusement Device to which this disclaimer is attached provides each player of the device with information on the specific outcome of each electronic amusement game offered thereon. The information with respect to each such outcome is provided prior to such player's participation in any such game. Consequently, this amusement device is designed to provide no contest and no chance in the games offered to its players.

2.010(4) of the Missouri revised Statutes defines what constitutes "gambling" in the state of Missouri. Chapter 572 of the Missouri Revised Statute further has various restrictions on certain activities and equipment related to "gambling". Only those activities that meet the definition of gambling are restricted under Chapter 572.

In Missouri (as in most states), in order to be considered "gambling" an element of chance or a contest must be present in the activity as noted in the highlighted section in Missouri's gambling definition set forth below. Further, in order for the device to be considered as a "gambling device", the device must be designed for use in the playing phase of "gambling". As noted above, this amusement device is designed to offer no contest of chance as the outcome is known by players before any amusement game is initiated. Therefore, the activity offered by this device clearly does not meet the definition of "gambling". As a result, this amusement device does not fit any definition of "gambling device" in the state of Missouri and is not prohibited for use by you.

"Gambling", a person engages in gambling when he or she states or risks something of value upon the outcome of a contest of chance or a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome.

**Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 52** (image of placard).

104.    The text of the decal is the same on all Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 104:23–105:14.

105.    As recently as September 13, 2022, Defendants represented on their website that "[t]he 'Prize Viewer' option on NCGs eliminates chance." *See* **Ex. 53** (Torchelectronics.com, *About No Chance Gaming* (Sept. 13, 2022)) at 1; **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 21:19–23:24.

106.    On the same website, Defendants go on to represent:

No Chance games are the first of an entirely new entertainment concept; a game in which there is no element of chance. Torch's No Chance Games are unique in that both the outcome of the game and the prize are pre-determined. ***Those pre-determined outcomes are finite and in sequential order, thus eliminating the element of chance***. Each "play" by the user simply displays the pre-determined outcomes in an entertaining fashion.

Importantly***, you may view each and every outcome which may entitle you a prize before playing the game***.

To view the next game and prize outcomes for different games or different play levels, simply change to the desired game and/or play level and touch the "Prize Viewer" button. Also, at any time, you may simply touch the "Collect" button to print a voucher to redeem your balance. If, based on your "Prize Viewer", you do not want to continue to play, *you can redeem any balance you have in the machine*. Additionally, you can utilize the "Prize Viewer" to view the upcoming game and prize outcomes of the various play levels of each game without committing any money. To view the next sequential outcome, you do not have to commit any funds. Rather, you can view the outcome before inserting money into the machine or, if you have already inserted money, you can retrieve a voucher *for the same* by simply terminating the play. You are not required to commit funds to view the outcome of the game.

*Every No Chance Game is carefully designed to ensure that the element of chance has no role in the outcome*. The proprietary software behind Torch's No Chance games ensures that each game outcome is pre-determined and in sequence, *without any variation by* the user or *the operator of the site at which the machine is located*. Since you may view every game and prize prior to playing a game, the decision to play is yours, with no chance of an unexpected outcome.

Why are No Chance Game Machines different? Under Missouri law, a "gambling device" is defined as having three elements: consideration (money in), prize (money out), and *chance* "*unknown outcome*."

*Torch's No Chance Games obviously have the elements of "consideration" and "prize", but have been carefully designed to eliminate the element of "chance" (which Missouri law defines as the material component of a gambling device).* If the player does not like the predetermined outcome, they can choose not to play. If they have a balance on the machine, they can redeem their balance at any time.

The "Prize Viewer" option on NCGs *eliminates chance*.

*See* **Ex. 53** (Torchelectronics.com, *About No Chance Gaming* (Sept. 13, 2022)) at 1–2 (emphasis added); **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 21:19–23:24.

107.    On or around September 19, 2022, Defendants removed nearly all of the above language from their website. **Ex. 54** (Torchelectronics.com, *About No Chance Games* (Sept. 19, 2022)) at 1. The "About No Chance Games" page now read, simply:

> Torch's No Chance Games are the first of an entirely new entertainment concept; a game in which there is ***no element of chance***.

> Importantly, the player may view each and every outcome which may entitle them a prize before playing the game. They may simply touch the "Prize Viewer" button on the game console and view the result of the game before playing. As such, the player can decide if they want to play the game or not on the pre-determined outcome.

*See* **Ex. 54** (Torchelectronics.com, *About No Chance Games* (Sept. 19, 2022)) at 1; **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 21:19–23:24.

108.    Among other things, Defendants removed all representations that the Torch Device "Prize Viewer" feature eliminates the element of chance, as well as all representations related to Missouri law. *Compare* **Ex. 53** (Torchelectronics.com, *About No Chance Gaming* (Sept. 13, 2022)) at 1–2, *with* **Ex. 54** (Torchelectronics.com, *About No Chance Games* (Sept. 19, 2022)) at 1; *see* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 23:25–27:16.

109.    Defendants also shared advertisement flyers with actual or potential Torch Customers. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 55** (flyer advertising Torch NCG Devices); **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 195:19–22, 196:17–21; **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 25:12–25:19.

110.    Within these flyers, Defendants' representations include the following (**Admitted in Defs.' Resp. (Doc. #109) at 1**):





*See* **Ex. 55** (flyer advertising Torch NCG Devices).

111.    Defendants have also made innumerable oral representations to actual or potential customers, in which they represented that Torch Devices are legal and do not involve an element of chance. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 19:24–20:2.

## DEFENDANTS' ENTERPRISE

112.    Defendant Steven Miltenberger is the ▮% owner of Torch, and acts as President and Manager, receiving a salary of $▮▮▮▮ a month. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 60:6–9.

113.    Steven Miltenberger also receives monetary distributions from the company as its owner. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 60:19–61:4.

114. The remaining ██% ownership interest in Torch is held i███████████ ██████████████████████████████████████████████████████ **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 23** (Jan. 9, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 14:23–15:3; **Ex. 2** (Dep. of Steven Miltenberger) at 19:24–20:2.

115. Torch has only two employees, Defendants Steven and Sondra Miltenberger. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 28:19–29:8.

116. Sondra Miltenberger receives a salary of $█████ per month. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 47** (Dep. of Sondra Miltenberger) at 20:8–18.

117. During its time in operation in Missouri, Defendants have hired at least ██ individuals as independent contractors for Torch, and several limited liability companies or other business that employ an uncertain number of individuals who carry out the work each company or business has contracted to perform for Torch. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 56** (Ex. A to Defs.' Ans. and Objs. to Pl.'s 1st Interrogatories).

118. As of December 15, 2023, Defendants retain "██████ auditors" and "██████" technicians as independent contractors. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 42:20–22.

119. "Auditors" are responsible for servicing the Torch Device at Torch Customer locations. Auditors run reports and reconcile the profits of each Torch Device, splitting the profits evenly between the Torch Customer and Defendants. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 30:2–31:1.

120.    Auditors are also responsible for depositing their collections from the Torch Devices into one of several bank accounts controlled by Defendants. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 61:11–63:13.

121.    "Auditors" are paid according to their function, with some compensated a set, weekly amount based on the number of Torch Devices they audit. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 58:5–21.

122.    Auditors are also eligible for bonuses. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 58:22–24.

123.    "Technicians" are responsible for performing service calls, installations, and pickups of Torch Devices. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 31:13–18.

124.    Defendants do not have a license from the Missouri Gaming Commission. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* Answer (Doc. #44) ¶¶ 2, 224.

125.    Defendants' business of marketing and distributing the Torch Devices has been in continuous operation for more than 30 days, having begun its operations in or around 2017. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 15:15–17:17.

## PREDICATE ACTS

126.    Defendants order the Torch Devices from Banilla, a company incorporated in North Carolina. **Ex. 2** (Dep. of Steven Miltenberger) at 86:22–25.

127.    Each Device that Defendants purchase from Banilla costs between $███ to $███. **Ex. 2** (Dep. of Steven Miltenberger) at 154:8–14.

128.    Banilla delivers the Torch Devices from locations outside Missouri to locations inside Missouri. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 42:6–11.

129.    Most of the machines Defendants receive from Banilla "come from Wisconsin." **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 42:6–11.

130.    Defendants' customers place orders for Torch Devices directly from Defendants via email and phone. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 82:17–84:10.

131.    Defendants transport and install Torch Devices at its customers' locations. *See* **Ex. 2** (Dep. of Steven Miltenberger) at 40:11–42:10.

132.    Among other forms of communication, Steven Miltenberger carries out his role as President and Manager of Torch via phone calls, text messages, and emails in the regular course of Torch's business. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 82:17–86:10; **Ex. 47** (Dep. of Sondra Miltenberger) at 52:8–17.

133.    Among other forms of communication, Sondra Miltenberger carries out her role as an employee of Torch via emails in the regular course of Torch's business. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 47** (Dep. of Sondra Miltenberger) at 34:9–22.

134.    Defendants also send and receive communication through the U.S. mail and private interstate carriers such as FedEx and UPS. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 84:21–85:4; **Ex. 47** (Dep. of Sondra Miltenberger) at 36:14–17.

**IMPACT ON TNT'S BUSINESS**

135.    TNT competes and has competed against Defendants in the market for placing amusement devices at Amusement Locations in the state of Missouri. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 57** (M. Turntine Decl.) ¶ 2

136.    TNT competes and has competed against Defendants for the business of the customers at the Overlapping Locations. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 57** (M. Turntine Decl.) ¶ 3.

137.    The amusement device industry is highly competitive and there is finite space for such devices to be placed in existing retail locations. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* Ans. (Doc. #44) at ¶ 21.

138.    TNT and Defendants have customers in the same cities and zip codes within Missouri. **Admitted in Defs.' Resp. (Doc. #109) at 1.** *See* **Ex. 2** (Dep. of Steven Miltenberger) at 98:8–99:10.

139.    Defendants' customers operate Torch Devices at locations where the customer previously had, but no longer has, a TNT amusement device. **Ex. 57** (M. Turntine Decl.) ¶ 4; Stipulation as to Agreed Locations (Doc. #55-1); **Ex. 2** (Dep. of Steven Miltenberger) at 98:8–99:10.

140.    On at least 12 occasions, TNT's customers have requested that a TNT amusement device be removed from their location, one or more Torch Devices were subsequently installed at that location. *See* **Ex. 57** (M. Turntine Decl.) ¶ 4; *see also* Stipulation as to Agreed Locations (Doc. #55-1).

141.    TNT has removed at least 19 amusement devices from such locations at the requests of their customers in order to make way for the Torch Devices. *See* **Ex. 57** (M. Turntine Decl.) ¶ 4.

142.    Although the amount of TNT's damages is in dispute, TNT's damages experts and employee declarations establish that TNT has lost revenue and profits as a result of the removal of its devices from locations where Torch Devices have replaced TNT's devices. *See* **Ex. 57** (M. Turntine Decl.) ¶ 5; **Ex. 58** (Report of R. Kneuper).

143.    TNT has lost at least one pre-existing business relationship of many years due to the customer placing Torch Devices at its location to the exclusion of TNT Amusement Devices. *See* **Ex. 57** (M. Turntine Decl.) ¶ 6.

144.    In its regular course of business, TNT creates "move tickets" that record when TNT delivers, removes, moves, or services TNT amusement devices at TNT customer locations. **Ex. 57** (M. Turntine Decl.) ¶ 7.

145.    In its regular course of business, TNT also creates "call logs" to commemorate certain events. Those events include phone calls in which TNT customers have requested that TNT amusement devices be moved or removed from that customer's location to make room for Torch Devices. **Ex. 57** (M. Turntine Decl.) ¶ 9.

146.    TNT was requested to remove TNT amusement devices from Midwest Petroleum Truck Stop in Cuba, Missouri on August 17, 2018. *See* **Ex. 59** (move tickets) at 43–63.

147.    TNT removed five TNT amusement devices from Midwest Petroleum Truck Stop in Cuba, Missouri on August 21, 2018. *See* **Ex. 59** (move tickets) at 43–63.

148.    Defendants performed a collection of Torch Device profits at Midwest Petroleum Truck Stop in Cuba, Missouri on August 22, 2018. *See* **Ex. 35** (Collections Master List for Midwest Petroleum #53).

149.    Midwest asked TNT to remove its amusement devices to "mak[e] room for Torch [D]evices" because TNT's amusement devices "were not doing very well" and Midwest assumed it would make a higher profit by replacing TNT's amusement devices with Torch Devices. *See* **Ex. 60** (Dep. of Tracy Head) at 65:20–66:13.

150.    TNT was requested to remove an amusement device from Breaktime Bar & Grill in Hazelwood, Missouri, on July 10, 2018. *See* **Ex. 59** (move tickets) at 34–37.

151.    TNT removed an amusement device from Breaktime Bar & Grill in Hazelwood, Missouri, on August 17, 2018. **Ex. 59** (move tickets) at 34–37.

152.    Defendants performed a collection of Torch Device profits at Breaktime Bar & Grill in Hazelwood, Missouri, on September 9, 2018. *See* **Ex. 27** (Collections Master List for Break Time Bar & Grill.

153.    TNT was requested to remove TNT amusement devices from Daugherty's Pub in Richland, Missouri on December 10, 2018. **Ex. 59** (move tickets) at 64.

154.    TNT removed a TNT amusement device from Daugherty's Pub in Richland, Missouri on December 13, 2018. **Ex. 59** (move tickets) at 64.

155.    Defendants performed a collection of Torch Device profits at Daugherty's Pub in Richland, Missouri on December 19, 2018. *See* **Ex. 28** (Collections Master List for Daugherty's Pub).

156.    TNT was requested to remove a TNT amusement device from Tater Patch in Rolla, Missouri on April 12, 2019. **Ex. 59** (move tickets) at 17–24.

157.    TNT removed a TNT amusement device from Tater Patch in Rolla, Missouri on April 19, 2019. **Ex. 59** (move tickets) at 17–24.

158.    Defendants performed a collection of Torch Device profits at Tater Patch in Rolla, Missouri on April 26, 2019. *See* **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch).

159.    TNT was requested to remove a TNT amusement device from Tater Patch in Rolla, Missouri on June 17, 2019. **Ex. 59** (move tickets) at 17–24.

160.    TNT removed a TNT amusement device from Tater Patch in Rolla, Missouri on June 20, 2019. **Ex. 59** (move tickets) at 17–24.

161.    Defendants performed a collection of Torch Device profits at Tater Patch in Rolla, Missouri on June 21, 2019. *See* **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch).

162.    TNT was requested to remove a TNT amusement device from Tater Patch in Rolla, Missouri on June 17, 2019. *See* **Ex. 59** (move tickets) at 17–24.

163.    TNT removed a TNT amusement device from Tater Patch in Rolla, Missouri on June 20, 2019. *See* **Ex. 59** (move tickets) at 17–24.

164.    Defendants performed a collection of Torch Device profits at Tater Patch in Rolla, Missouri on June 21, 2019. *See* **Ex. 37** (Collections Master List for Rob & Kricket's Tater Patch).

165.    TNT was requested to remove a TNT amusement device from Midwest Petroleum Truck Stop in Cuba, Missouri on June 18, 2019. *See* **Ex. 59** (move tickets) at 2–10.

166.    TNT removed a TNT amusement device from Midwest Petroleum Truck Stop in Cuba, Missouri on June 20, 2019. *See* **Ex. 59** (move tickets) at 2–10.

167.    Defendants performed a collection of Torch Device profits at Midwest Petroleum Truck Stop in Cuba, Missouri on August 22, 2018. *See* **Ex. 35** (Collections Master List for Midwest Petroleum #53).

168.    TNT was requested to remove a TNT amusement device The Tap in St. Robert, Missouri on or around February 11, 2021. *See* **Ex. 59** (move tickets) at 27–32.

169.    TNT removed a TNT amusement device from The Tap in Rolla, Missouri on January 8, 2021. *See* **Ex. 59** (move tickets) at 27–32.

170.    Defendants performed a collection of Torch Device profits at The Tap in Rolla, Missouri on January 15, 2021. *See* **Ex. 43** (Collections Master List for The Tap on Route 66).

171.    TNT was requested to remove a TNT amusement device from The Tap in Rolla, Missouri on July 11, 2019. *See* **Ex. 59** (move tickets) at 27–32.

172.    TNT removed a TNT amusement device from the Tap in Rolla, Missouri on July 11, 2019. *See* **Ex. 59** (move tickets) at 27–32.

173.    Defendants performed a collection of Torch Device profits at The Tap in Rolla, Missouri on July 17, 2019. *See* **Ex. 43** (Collections Master List for The Tap on Route 66).

174.    TNT was requested to remove a TNT amusement device from The Tap in Rolla, Missouri on February 11, 2021. *See* **Ex. 59** (move tickets) at 27–32.

175.    TNT removed a TNT amusement device from The Tap in St. Robert, Missouri on February 24, 2021. *See* **Ex. 59** (move tickets) at 27–32.

176.    Defendants performed a collection of Torch Device profits at The Tap in St. Robert, Missouri on February 24, 2021, 2019. *See* **Ex. 43** (Collections Master List for The Tap on Route 66).

177.    TNT was requested to remove a TNT amusement device from Joe Mamma's Bar in Florissant, Missouri on January 3, 2022, with the owner stating they needed room for additional "poker machines." *See* **Ex. 59** (move tickets) at 37–40.

178.    TNT removed a TNT amusement device from Joe Mamma's Bar in Florissant, Missouri on January 14, 2022. TNT's account manager with Joe Mamma's and confirmed that the additional devices that were then added belonged to Defendants. *See* **Ex. 59** (move tickets) at 37–40.

179.    TNT was requested to remove a TNT amusement device from Sand Bar in Washington, Missouri on December 13, 2022. *See* **Ex. 59** (move tickets) at 14–17.

180.    TNT removed a TNT amusement device from Sand Bar in Washington, Missouri on January 9, 2023. *See* **Ex. 59** (move tickets) at 14–17.

181.    Defendants performed a collection of Torch Device profits at Sand Bar in Washington, Missouri on January 13, 2022. *See* **Ex. 41** (Collections Master List for The Sand Bar).

182.    TNT was requested to remove a TNT amusement device from Rehab Bar & Grill in St. Louis, Missouri on or around September 21, 2022. *See* **Ex. 59** (move tickets) at 11–14.

183.    TNT removed a TNT amusement device from Rehab Bar & Grill in St. Louis, Missouri on September 21, 2022. *See* **Ex. 59** (move tickets) at 11–14.

184.    Defendants performed a collection of Torch Device profits at Rehab Bar & Grill in St. Louis, Missouri on September 22, 2022. *See* **Ex. 36** (Collections Master List for Rehab Bar & Grill).

185.    TNT was requested to remove a TNT amusement device from Bottoms Up in St. Louis, Missouri on or around February 22, 2023. *See* **Ex. 59** (move tickets) at 32–34.

186.    TNT removed a TNT amusement device from Bottoms Up in St. Louis, Missouri on February 22, 2023. *See* **Ex. 59** (move tickets) at 32–34.

187.    Defendants performed a collection of Torch Device profits at Bottoms Up in St. Louis, Missouri on February 22, 2023. *See* **Ex. 26** (Collections Master List for Bottoms Up).

188.    TNT was requested to remove TNT amusement devices from Meramec Valley in Cuba, Missouri on February 23, 2023. *See* **Ex. 59** (move tickets) at 40–43.

189.    TNT removed five TNT amusement devices from Meramec Valley in Cuba, Missouri on March 31, 2023. *See* **Ex. 59** (move tickets) at 40–43.

190.    Defendants performed a collection of Torch Device profits at Meramec Valley in Cuba, Missouri on April 27, 2023. *See* **Ex. 34** (Collections Master List for Meramec Valley).

191.    TNT was requested to remove TNT amusement devices from The Rose in Cuba, Missouri on March 11, 2019. *See* **Ex. 59** (move tickets) at 24–27.

192.    TNT removed five TNT amusement devices from The Rose in Cuba, Missouri on March 12, 2019. *See* **Ex. 59** (move tickets) at 24–27.

193.    Defendants performed a collection of Torch Device profits at The Rose in Cuba, Missouri on March 25, 2019. *See* **Ex. 40** (Collections Master List for The Rose).

194.    Defendants typically collect from the Torch Devices on a weekly or biweekly basis after each Torch Device is installed. **Ex. 23** (Dep. of Steven Miltenberger, Corporative Representative) at 90:9–11, 104:21–105:19.

**DEFENDANTS' AWARENESS OF THE ILLEGALITY OF THE TORCH DEVICES**

195.    On July 3, 2019, the Missouri Gaming Commission issued an opinion letter to Nathan Howard stating that "no chance" gaming device reviewed by the Commission were illegal gambling devices. *See* **Ex. 61** (Missouri Gaming Commission Letter).

196.    The device that the Missouri Gaming Commission reviewed was a Banilla No Chance Game Suite II Terminal version ▮▮▮▮▮ that Mr. Turntine had purchased. **Ex. 62** (Dep. of Jim Turntine, Corporate Representative of TNT) at 145:5–146:12; **Ex. 48** (Supp. Report of S. Friedman) at 5.

197.    The Banilla No Chance Game Suite II Terminal version ████████ is the same version of NCG II about which Mr. Farley issued a report following analysis of the device. *See* **Ex. 3** (Exhibit A-A to Ltr. from N. Farley).

198.    The device reviewed by the Missouri Gaming Commission in 2019 is functionally identical to the NCG II Device marketed by Defendants. *See* **Ex. 67** (3d Supp. Report of S. Friedman) at ¶ 14; **Ex. 71** (excerpt of Dep. of Jim Turntine) at 147:22–148:22.

199.    In an email dated July 18, 2019, discussing a response to media inquiry into Torch Electronics, Torch Attorney Timothy Sigmund stated:

> I am not sure that I would refer to the Missouri Gaming Commission. I do not believe that they get to determine whether a game is a gambling device or not. Rather, the reference should simply be to Missouri law. *We know* that the *MGC is saying that generally these games are illegal.* I think Torch wants to *keep its position that the MGC has nothing to say about Torch's games.*

**Ex. 72** (Email chain including Steven Miltenberger, Tom Robbins, Timothy Sigmund, and Steven Tilley, and Gregg Keller) (emphasis added).

200.    In an email dated March 29, 2022, titled "First Bank of the Lake," Defendant Steven Miltenberger stated: "*Bank called the Missouri gaming commission and they told them the games were illegal*." **Ex. 73** (Email from Steven Miltenberger to Steven Tilley, Alixandra Cossette, Charles Hatfield, Thomas Robbins, and Timothy Sigmund) (emphasis added).

201.    In an email dated October 23, 2018, Detective Sergeant John Biser of the Union, Missouri Police Department informed Defendant Steven Miltenberger:

> Mr. Miltenberger, After speaking with you today, *I contacted Sgt. Finnegan of the MSHP. The MSHP Gaming Commission has not changed their opinion on the status of your games.* I also made contact with Franklin County Prosecutor, Bob Parks, who stated he would absolutely consider prosecution regardless of Phelps County opinion. I was also made aware that other counties are considering legal action regarding

> your games. I recommend you contact Sgt. Finnegan with the Gaming Commission and explain your situation. Speaking specifically about the games in Union; *If they are turned back on, we will seek to prosecute the game owner, store owner and store clerks for the promotion of gambling*.

**Ex. 74** (Email from Detective Sergeant John Biser to Steven Miltenberger) (emphasis added).

202.    In an email dated June 15, 2023, Lieutenant E. J. Jones of the Branson, Missouri Police Department informed Defendant Steven Miltenberger:

> Mr. Miltenberger, Concerning your request for discussion concerning a business license for your company. *The City of Branson has been advised by General Counsel of the Missouri Gaming Commission that the "No Chance Game Machines" are considered illegal gambling devices per Missouri Statute*. Branson Ordinance 6-166(k) prohibits any retail license to engage in or allow any **illegal gambling** to be conducted on the licensed premises. *Until the Missouri Gaming Commission changes their opinion of the "No Chance Game Machines" the Branson Police Department will be unable to approve a business license for these machines, as it is prohibited by ordinance.*

**Ex. 75** (Email from Lieutenant E. J. Jones of the Branson, Missouri Police Department to Steven Miltenberger) (emphasis added).

203.    Cody Hanavan, testifying in his capacity and based on his knowledge gained working as an Electronic Gaming Device Specialist II for the Missouri Gaming Commission, stated that if the starting point of a Torch Device's list of game outcomes is "selected by a random number generator," then that selection "*would be chance*." **Ex. 76** (Dep. of Cody Hanavan on July 10, 2023) at 150:23–151:6 ("Q. What if the entry point into the finite pool, the very first spot was randomly generated by a random number generator, would that be chance? A. It would be - - in a random - - yeah. Chance is essentially something outside of your control, so yeah." (emphasis added)).

204.    Torch Customers are told by Torch that, in the event that they incur legal fees as a result of having Torch Devices in their facilities, that Torch will pay for their legal expenses. *See* **Ex. 65** (Apr. 1, 2024 Dep. of S. Miltenberger, Corporate Representative of Torch) at 80:14–83:9.

205.    In a letter to Defendant Steven Miltenberger dated January 3, 2017, Attorney William Bogot stated:

> I have been informed that Rob Cantwell, a Missouri gaming attorney, reviewed whether the "No Chance Game" constituted a gambling device or gambling under Missouri law and concluded that it did not. However, I am informed that Mr. Cantwell did not provide a written legal opinion on the matter. . . . To analyze whether the "No Chance [G]ame" constitutes a prohibited gambling activity under Missouri law, the following definitions from Missouri's criminal code must be considered: A "gambling device" is a machine or device that is ***used or usable*** in playing phases of gambling activity. . . .
>
> At best, one could argue that with the "No Chance Game" while there is no chance, and the future outcomes and prizes are known to the player, they are contingent events not under the player's control or influence. I believe this argument would fail because the definition of "gambling" requires that a player "risk" something on a contest of chance or future contingent event not under his or her control or influence. "Risk," by definition has chance or uncertainly [sic] none of which exist in the "No Chace [sic] Game." . . .
>
> This opinion may only be relied upon by Steve Miltenberger and Accel Entertainment, and their principals, attorneys and agents.

**Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harmer) at 1–3 (emphasis added).

206.    In addition to Defendant Steven Miltenberger, the letter was also addressed to Derek Harmer of Accel Entertainment, an Illinois company operating the "[s]ame slot machines you would see in casinos," at which Defendant Steven Miltenberger worked as Chief Marketing Officer for at least four years. *See* **Ex. 2** (Dep. of Steven Miltenberger) at 15:7–17; **Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harmer) at 1.

207.    As the letter indicates, Mr. Bogot was not and has never been licensed in the state of Missouri. **Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harmer) at 1.

208.    The letter further indicated that Mr. Bogot's opinion was based on "the information made available to him as of that date." **Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harner) at 3.

209.    Mr. Bogot summarized the information provided to him as follows:

> A key part of the game description is that the machine has a clearly labelled button which allows players to view upcoming ***prizes, in order***, for any play level. Players deposit money, but are free to withdraw that money and any winnings at any time. When players touch the button labeled "View Prizes" on the front screen, they see ***each and every prize to be awarded*** at any particular play level, ***in the order that the prizes will be awarded.*** The game ***does not determine the prize outcome***. The outcome is ***always determined*** by the next prize in the finite prize pool. All prizes at each play level come from a separate, pre-determined finite list of prizes. What the machine displays as the next win, ***and all future wins***, is awarded on the next play of the game and all subsequent plays. No money needs to be wagered in order to view the prize ***pool***.

**Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harner) at 1.

210.    Mr. Bogot further concluded that "the player can see in advance of ***a wager*** the prizes that will for certain be awarded for the next and ***all future plays***. Thus, the outcome ***or*** prize is never dependent on chance." **Ex. 77** (Ltr. from William Bogot to Steven Miltenberger and Derek Harner) at 2.

211.    Defendants Torch and Steven Miltenberger were aware of the September 2020 Platte County case in which a gas station owner plead guilty to felony promotion of gambling as a result of placing 11 "no chance" devices in his business. *See* **Ex. 2** (Dep. of Steven Miltenberger) at 237:194–22, 323:4–10 (indicating that Miltenberger was aware of the Integrity Vending case, and that the only difference he was aware of between the Torch Devices and the "no chance"

devices in that case was whether the player had to insert money to use the "Prize Viewer" mechanism).

**ADDITIONAL FACTS PREVIOUSLY SUBMITTED IN
TNT'S RESPONSE TO DEFENDANTS' SUMF (DOC. #111)**

**D. The Missouri Gaming Commission and Multiple Missouri Courts Have Declared the Torch Devices or Devices Like Them to Be Illegal Gambling Devices**

212. Defendants Torch and Steven Miltenberger were aware of the September 2020 Platte County case in which a gas station owner plead guilty to felony promotion of gambling as a result of placing 11 "no chance" devices in his business. *See* **Ex. 50** (Platte County Citizen article); **Ex. 2** (Dep. of Steven Miltenberger) at 237:194–22, 323:4–10.

213. Defendants Torch and Steven Miltenberger were aware of the ongoing prosecution in Franklin County of James McNutt, President of Midwest Petroleum, for three misdemeanor counts of possession of a gambling device. *See* **Ex. 2** (Dep. of Steven Miltenberger) at 303:2–303:18; **Ex. 78** (summons to James McNutt).

Dated: August 8, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON
PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
MARY GRACE WARREN, #73147MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*marygrace.warren@bryancave.com*
*zoe.brannon@bryancave.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO