**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00330-JAR |
| TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER | ) ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORADUM IN SUPPORT OF THEIR**
**MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(c)(1)**

Yesterday afternoon, Defendants learned that TNT served a subpoena on Kathy Biles, Administrator for Moose Lodge 878 in Owensville, Missouri, "commanding [Ms. Biles's] personal appearance on September 26, 2024 at 10:00 a.m. in the case styled *TNT Amusements, Inc. v. Torch Electronics, LLC, et al.*, currently pending in the U.S. District Court for the Eastern District of Missouri." (*See* September 9, 2024 Letter from Richard Finneran and Attached Subpoena, a true and correct copy of which is attached as **Exhibit 1**). Discovery closed on January 11, 2024. **To this day, TNT has never identified Ms. Biles as a potential witness or person TNT believed had information relevant to TNT's claims.**

Ms. Biles was not identified in TNT's Rule 26 Disclosures, as a deponent during discovery, in either of TNT's *two* Opposition briefs responding to Torch's Motions for Summary Judgment, or even on TNT's Trial Witness List served less than two weeks before this case was supposed to go to trial. Torch only learned of this subpoena because Ms. Biles reached out to Torch independently. TNT never gave Torch notice of the subpoena. Yet, TNT appears to believe it would be proper to force Ms. Biles (and likely others) to appear during the Court's upcoming

1

September 26, 2024 hearing focused on determining, at the summary judgment stage, whether TNT can even satisfy causation, standing, and injury. As Torch explained in both Torch's first fully briefed and argued Motion for Summary Judgment and its second fully briefed Motion for Summary Judgment, TNT cannot satisfy even these threshold issues based on the available record. TNT's subpoena to Ms. Biles is an implicit admission that TNT cannot satisfy TNT's burden on summary judgment to point to evidence in the record (gathered during the discovery period) that satisfies those threshold issues. Rather, TNT wants to engage in new discovery during the September 26th hearing by calling at least one witness (but likely more) that TNT has *never* identified or disclosed.

At multiple points during this litigation, Torch has explained that TNT's conduct makes clear TNT wants to "engage in an unfair trial by ambush." (*See e.g.,* ECF ##41 at 1 (objecting to TNT expedited proposed scheduling order), 66 at 15-16 158 at 6 (objecting to TNT's untimely supplementation of both of TNT's experts)). It is difficult to imagine conduct that would highlight this more clearly. TNT's conduct indicates TNT plans to show up at the September 26th hearing and ambush Torch by calling entirely new, never-before-disclosed witnesses to elicit entirely new evidence eight months after discovery closed, 79 days after TNT served Torch with its Trial Witness List, 77 days after TNT and Torch argued Torch's initial Motion for Summary Judgment, 66 days after this case was supposed to be tried, and weeks after TNT filed an Opposition to Torch's second Motion for Summary Judgment that mentioned no location owner/representative witness aside from Tracy Head. TNT's plan is antithetical to the motion for summary judgment process and, more broadly, to due process. It also violates Fed. R. Civ. P. 37(c)(1). TNT's conduct is improper, unjustified, unfair, and harmful to Torch. The Court should sanction TNT for its conduct, prevent TNT from calling witnesses (certainly not undisclosed witnesses, but live witness

testimony at the summary judgment stage is improper more generally regardless) at the upcoming hearing, instruct TNT to identify the individuals it has subpoenaed to appear at the hearing and inform each such individual that their appearance is no longer required, and award Torch its reasonable attorneys' fees for having to brief and litigate this issue in the first instance.

## I.     RELEVANT FACTS

Discovery closed on January 11, 2024, though the Court subsequently allowed limited additional discovery to take place after the January 11th discovery deadline. Torch filed its initial Motion for Summary Judgment on January 12, 2024, which was fully briefed on February 12, 2024. (ECF ## 83, 131). In Torch's initial Motion for Summary Judgment, Torch argued, among other things, TNT lacked sufficient evidence to satisfy causation, standing/directness, and damages. (*Id.*). On February 2, 2024, TNT filed its Memorandum in Opposition to Defendants' Motion for Summary Judgment, which did not identify Ms. Biles or any location owner/representative aside from Tracy Head. (*See generally* ECF #110). On July 11, 2024, the Court heard oral arguments on both parties' respective motions to for summary judgment. TNT made no attempt during that hearing to call any live witness to offer testimony. Both in TNT's initial Opposition and during the July 11, 2024 hearing, TNT represented to the Court TNT had pointed to sufficient evidence in the record to demonstrate TNT could, in addition to other things, satisfy causation, standing/directness, injury/damages.

Following the July 11, 2024 hearing, the Court *sua sponte* denied all dispositive motions as moot, including Torch's Motion for Summary Judgment. (ECF #218). The Court ordered the parties to file new dispositive motions (*id.*), which both parties did. On August 5, 2024, Torch filed its second Motion for Summary Judgment and Memorandum in Support, which similarly argued TNT lacked record evidence sufficient to establish causation, standing/directness, injury/damages.

(ECF ##224, 225). On September 3, 2024, TNT filed TNT's Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opp."). (ECF #267). As TNT had done previously, TNT claimed in its Opp. "there is more than sufficient evidence to establish causation on TNT's RICO, Lanham Act, and unfair competition claims." (*Id.*, Opp. at 2 (pointing to evidence in the record gathered during the discovery period) and 17 (same)). The only location owner/representative witness that was deposed in this case was Tracy Head, the former manager of Midwest Petroleum, who was also the only owner/representative identified by TNT in in TNT's Opp. (*See generally id.*). Nowhere in TNT's Opp. does TNT claim TNT needs additional evidence from any witness not identified in TNT's Opp. to support TNT's claims. (*See generally id.*). Nowhere in TNT's Opp. does TNT cite Fed. R. Civ. P. 56(d), which allows a nonmovant to show by affidavit or declaration that for some specified reason the nonmovant cannot present facts essential to its opposition. (*See generally id.*).

On August 28, 2024, before TNT filed its Opp., counsel for Torch attempted to call and have a meet and confer with counsel for TNT regarding an incident where one of TNT's employees went to a retail location where Torch devices are located and started telling Torch's customers that TNT believed Torch had caused significant damages to TNT's business and Torch devices are illegal, then putting a written declaration or statement in front of them and asking the location owner/representative to sign the declaration attesting to, among other things, the fact TNT allegedly suffered damages. (*See* Email Chain Between Counsel, a true and correct copy of which is attached as **Exhibit 2**). This fact pattern reportedly played out at multiple locations. The call was sent to voicemail, and counsel for Torch sent an email on August 28, 2024, at 1:21 p.m., regarding the issue to TNT's counsel demanding TNT cease and desist from engaging in harassing discovery outside the Court's discovery period. (**Ex. 2**). TNT's counsel did not respond to this

email until August 29, 2024, at 11:21 p.m., admitting "TNT has [] contacted a few of its own customers to notify them that they may [be] called to testify at the upcoming standing/damages hearing next month and offer them the opportunity to provide a declaration in order to avoid the need for us to call them to testify in person." (**Ex. 2** (August 29, 2024, email from R. Finneran)). TNT's counsel asserted the conduct was not improper. (*Id.*).

Counsel for Torch quickly responded, noting TNT is not allowed go searching for new discovery from undisclosed witnesses or call undisclosed witnesses at a hearing at the summary judgment stage to save TNT's claims. (*Id.* (August 29, 2024, 11:59 p.m. Email from A. Craig)). It was also noted that Torch had been informed TNT's representative had refused to leave a copy of the declaration or written statement TNT was demanding the location owner/representative sign with the location own/representative, which Torch saw has indicative TNT understood its conduct was at least questionable and that TNT did not want Torch or anyone else to see what was included in it. (*Id.*). Counsel for Torch also noted TNT had admitted these interactions were being "undertaken specifically for the purpose of securing additional discovery in this case, despite discovery having been closed since January and the parties having briefed summary judgment issues twice now . . . there is no viable evidentiary purposes associated with these interaction that are adversely impacting the Torch customers." (*Id.*). Torch further explained, "TNT has every right to contact TNT's customers about TNT's normal day to day business, but TNT does not have a right to disparage Torch by claiming or even suggesting to any *Torch* customer that Torch has allegedly caused damages to TNT, which is my understanding of what has happened. That is textbook tortious interference. And should stop." (*Id.*).

The next day, counsel for TNT responded and stated, in part, "TNT is not limited, either in this hearing or at trial, from presenting whatever evidence it develops in support of its standing

and its claim for damages, and we are unaware of any authority or principle [sic] law that would impair our ability to do so." (*Id.* (August 30, 2024, 11:23 a.m. Email from R. Finneran)). Further communications between counsel for the parties demonstrates Torch maintained its position that TNT's conduct in attempting to get Torch/TNT customers to sign some type of declaration or statement TNT believed it could use to support its Opp. to Defendants' Motion for Summary Judgment was proper. (*Id.*). When TNT filed its Opp. a few days later, Torch was happy to see TNT did not include any new declarations from undisclosed location owners/representatives. Torch assumed either TNT decided against such an attempt or TNT was not able to find anyone willing to sign TNT's drafted declaration. Either way, Torch assumed this was a moot issue because there was no mention of the need for any additional discovery or testimony by third parties outside of the record the parties submitted on their briefs. On September 10th, just a few days ago, Torch filed its Reply in support of Defendants' Motion for Summary Judgment and addressed the evidence TNT cited in support of TNT's Opp. (ECF #276). Torch obviously could not respond to evidence TNT failed to include in TNT's Opp.

Yesterday, a day after Torch's Motion for Summary Judgment was fully briefed, Torch was notified that TNT served Ms. Biles with the aforementioned subpoena compelling her to travel an hour and a half to testify in person at the Court's September 26th hearing. (**Ex. 1**). Ms. Biles was willing to provide Torch with a Declaration that explains her relevant interactions with TNT's representatives. (Declaration of Kathy R. Biles ("Biles Dec."), a true and correct copy of which is attached as **Exhibit 3**). Ms. Biles is employed by the Moose Lodge, which has for a long time allowed TNT to place devices in the Moose Lodge. (**Ex. 3** at ¶¶ 1-2). The Moose Lodge currently still has multiple TNT devices in service at its location, including a claw machine, an electronic bag toss-type game, a juke box, an electronic dart board system, and an ATM machine. (*Id.* at ¶

3). TNT used to have a Pac-Man game at the Moose Lodge, but TNT removed that game earlier this year, which is the only TNT device Ms. Biles recalls being removed from the Moose Lodge in recent times. (*Id*. at ¶ 5). Ms. Biles does not recall even requesting TNT to remove this Pac-Man game, which she said was rarely ever played and was "never profitable." (*Id*. at ¶ 6). At some point in February, after TNT removed the Pac-Man game, the Moose Lodge, with approval from its national organization, placed four Torch devices at its location. (*Id.* at ¶ 7). Ms. Biles denied that the Moose Lodge needed to remove TNT's Pac-Man game to make room for the Torch devices, and says that if TNT's Pac-Man game was profitable and the Moose Lodge wanted to have it reinstalled, the Moose Lodge could make room for the Pac-Man game. (*Id.* at ¶ 8).

According to Ms. Biles, around August 28, 2024, TNT representative Donna Havey, along with another female TNT representative, came in person to the Moose Lodge to speak with her. (*Id*. at ¶ 9). During the conversation that ensued, Donna Havey voiced her opinion that she and TNT believed Torch's devices were illegal. (*Id*. at ¶ 14). Ms. Biles responded by telling Donna Havey she did not share TNT's opinion. (*Id*.). Donna Havey presented a written declaration or some other form of written statement TNT or TNT's attorney drafted to Ms. Biles. (*Id*. at ¶ 10). Ms. Biles could not recall many details regarding what this document said, but she did recall it would have had her, on behalf of the Moose Lodge, declare that TNT had suffered some type or amount of damages from the removal of TNT's device from the Moose Lodge and that the removal of TNT's device was for the purpose of making room for Torch's devices. (*Id*.). Ms. Biles also recalls not agreeing with statements TNT wanted her to make in the document, most specifically the statement wanting her to attest TNT lost money on the Pac-Man device TNT had removed. (*Id*.). According to Ms. Biles, she informed Donna Havey that as Administrator she would need approval of her members before she could sign anything, and she asked if she could keep the

document to present to the members. (*Id*. at ¶ 11). Ms. Biles reports that Donna Havey then told her that she was not allowed to leave the document with Ms. Biles, which Ms. Biles noted was a further "red flag" for her. (*Id*. at ¶¶ 10-11). Donna Havey did take the written document with her when she left, according to Ms. Biles. (*Id*. at ¶¶ 13). Ms. Biles assumed that would be the end of the matter, but yesterday she received TNT's subpoena to testify at the September 26, 2024 hearing in this case. (*Id*. at ¶¶ 16). Even in his letter accompanying TNT's subpoena to Ms. Biles, TNT's counsel suggests Ms. Biles may be able to avoid having to travel and testify in person if she will just cooperate with TNT in some other fashion. (*Id.* at ¶ 17; **Ex. 1**). Ms. Biles does not want to have to make the hour and half one-way trip to testify if her testimony is unnecessary. (**Ex. 3**, Biles Dec. at ¶ 19).

Ms. Biles was not listed on TNT's Rule 26(a) Disclosures as a person TNT believes has knowledge or information relevant to TNT's claims pursuant to TNT's obligations under Fed. R. Civ. P. 26(a)(1)(A)(i). (*See* TNT's October 16, 2023 Initial Disclosures, a true and correct copy of which is attached as **Exhibit 4** (listing only Jim Turntine, Marla Turntine, Donna Havey, and Stacy Friedman). TNT has never supplemented TNT's Initial Disclosures. TNT did not identify Ms. Biles in discovery responses. TNT did not depose Ms. Biles during the discovery period. TNT never sought leave of Court to depose Ms. Biles after the discovery period closed. On July 9, 2024, less than two weeks before trial was supposed to start, TNT sent Torch a copy of TNT's Trial Witness List, which did not list Ms. Biles or any other person associated with a retail location where TNT or Torch devices were located except for Tracy Head, who was deposed during the discovery period. (*See* Plaintiff TNT Amusements, Inc.'s Preliminary Witness List, Dated July 9, 2024 ("Witness List"), a true and correct copy of which is attached as **Exhibit 5**).

## II.     LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Further, at the summary judgment stage in a proceeding, the non-moving party "has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013).

## III.     ARGUMENT

"A key policy goal of requiring parties to keep their disclosures current is 'to avoid trial by ambush.'" *Jama v. City & Cnty. of Denver*, 280 F.R.D. 581, 584 (D. Colo. 2012), *aff'd,* 304 F.R.D. 289 (D. Colo. 2014). "The importance of lay . . . witness disclosures and the harms resulting from a failure to disclose need little elaboration. When one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed[.]" *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 134 (E.D. Wis. 2003). Because of the inherent unfairness in attempting to ambush another party through undisclosed witnesses, Rule 37(c)(1) provides a "self-executing" and "automatic sanction" preventing their introduction. *See Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 435, n. 3 (8th Cir. 2019). To avoid the automatic sanction, TNT must demonstrate that it had substantial justification for its failure or that the failure does not harm Torch. *See* Fed. R. Civ. P. 37(c)(1); *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 891 (8th Cir. 2015).

TNT, ***still improperly operating in secret and apparently subpoenaing undisclosed witnesses without any notification to Torch***, cannot coherently argue that TNT had substantial justification for failing to timely disclose these witnesses. Instead, TNT has opted not to disclose

these alleged witnesses at all, hoping to surprise Torch with them either at the last second or even at the hearing itself. September 26th is now less than two weeks away, and Torch has still not been notified by TNT about TNT's issuance of subpoenas to nondisclosed persons, about the identities of these supposed witnesses, nor about what the undisclosed persons are supposed to be testifying regarding. Since TNT is engaging in these improper tactics in secret, Torch also has not received any explanation for why TNT waited until well after discovery closed to start trying to gather this evidence. TNT is even withholding the copy of the declaration that it drafted and is asking unidentified persons to sign (and refusing to hand it over to anyone who asks for a copy).

TNT's failure to identify, depose, or otherwise gather admissible evidence from third party fact witnesses like Ms. Biles (a longtime/current TNT customer) during the discovery period is not a justification for calling them as surprise witnesses at the summary judgment stage. As Ms. Biles' Declaration makes clear, even if TNT had properly identified Ms. Biles as a person with knowledge per Fed. R. Civ. P. 26(a)(1)(A)(i) or deposed her previously, it does not appear her testimony would have been helpful to TNT. Regardless, the fact remains TNT did not disclose her. TNT did not even disclose to Torch that TNT had issued a subpoena to her. Torch assumes TNT attempted to subpoena additional new, undisclosed witnesses TNT wishes to put on the stand on September 26th hoping brand new discovery might save TNT's case.

Courts consistently hold that "bad faith" is not required to find that a party who fails to disclose witnesses lacked a substantial justification; innocent conduct must still be proven by the violating party to be "substantially justified" before the party can avoid the sanction. *See Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018). But, here, the timing, means, and deliberate secrecy of TNT's conduct raises the strong inference of bad faith by TNT. TNT's improper gamesmanship comes at Torch's expense, apparently brought about by

TNT's own failure to properly develop its case. This behavior is not justified just because TNT really wants to find evidence that might salvage its claims. As explained by the First Circuit, a party like TNT "who knowingly chooses to put all [its] eggs in one basket is hard-pressed to complain when the basket proves inadequate and the trial court refuses to allow [it] to substitute a new and previously undisclosed basket for it." *Gonzalez-Rivera v. Centro Medico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019). Here, too, TNT long ago chose its path in this case. It forewent any attempt to develop evidence of causation and damages TNT now hopes to manufacture until well after discovery was closed, two rounds of summary judgments were briefed, and the case was on the brink of trial. TNT cannot now, suddenly, decide to try to develop this evidence, particularly where TNT is not even being forthright about its efforts to do so (such as by, for example, requesting the Court reopen discovery and extend deadlines).

Further, it is "***obviously prejudicial***" to Torch for TNT to attempt to inject new, undisclosed fact witnesses into this case after summary judgment has (twice) been fully briefed, the parties were on the brink of trial (with none of these witnesses identified in TNT's witness list), and discovery has, of course, long since closed. *See Gonzalez-Rivera*, 931 F.3d at 28 (it is "***obviously prejudicial***" to permit disclosure of new witnesses material to summary judgment after the defendants "have already expended time and resources briefing a motion for summary judgment") (emphasis added). *See also Advance Tr. & Life Escrow Servs., LTA v. N. Am. Co. for Life & Health Ins.*, 592 F. Supp. 3d 790, 798–99 (S.D. Iowa 2022) (disclosure of fact witnesses "after the close of discovery and after . . . class certification motion was ***clearly prejudicial***") (emphasis added). *Accord Consumer Fin. Prot. Bureau v. Nexus Servs., Inc.*, No. 5:21-CV-00016, 2023 WL 5103247, at *6 (W.D. Va. Aug. 8, 2023) (party's "failure to timely disclose the identity of . . . witnesses" prevented other party's proper preparation for hearing on damages and there was "was no realistic

way . . . to entirely cure the surprise . . . that would result from calling undisclosed, un-deposed witnesses at the hearing" where hearing was scheduled for two months after disclosure). Here, the scheduled hearing is in ***less than two weeks***. Torch, who does not even know the identity of all the people TNT has subpoenaed (assuming TNT issued more than one subpoena), has never had an opportunity to depose these new witnesses, which clearly prejudices Torch and harms the witnesses TNT has subpoenaed and wants to force to participate in the September 26th hearing. Additionally, Torch has already filed its Reply in support of TNT's Opp., and Torch's arguments were all aimed at the evidence TNT cited in its Opp. Forcing Torch to cross new undisclosed witnesses live in front of the Court for the first time is not remotely the same thing as a fair opportunity to have days to brief and respond to *record* evidence TNT cited in its Opp. The process TNT seeks to employ is, by design, meant to prejudice and disadvantage Torch. The Court should order TNT to identify each person it has subpoenaed to appear and further order TNT to inform those persons they are not witnesses in this litigation, should disregard the subpoena, and should not attend the hearing.

Finally, in addition to the "automatic sanction" of exclusion, Torch respectfully requests the Court apply the further sanction of awarding Torch its reasonable costs and attorney fees incurred in responding to TNT's improper efforts to ambush Torch with undisclosed witnesses. *See* Fed. R. Civ. P. 37(c)(1)(A) (as an "addition[al]" sanction, the Court "may order payment of [Torch's] reasonable expenses, including attorney's fees, cause by the failure [to disclose]"). While the failure to identify the witness(es) results in automatic exclusion unless TNT proves harmlessness or justification (which it cannot), the Court under the same Rule may impose an additional sanction. *See Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, No. 4:18-CV-0236-DGK, 2019 WL 302514, at *3 (W.D. Mo. Jan. 23, 2019) (citing *Vanderberg v. Petco Animal*

*Supplies Stores, Inc.*, 906 F.3d 698, 703-05 (8th Cir. 2018)). "When fashioning [such] a remedy, the district court should consider, *inter alia,* the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Id*. (citing *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008)).

Here, TNT's unapologetic efforts to ambush Torch at an imminent hearing with entirely new evidence at this stage of the proceedings is both surprising (indeed, it seems to be "surprise" by intent) and "obviously prejudicial" to Torch. *Gonzalez-Rivera*, 931 F.3d at 28. Further, introducing entirely new undisclosed witnesses and alleged evidence this far outside of the discovery period (roughly two months on the other side of a previously scheduled trial) would reopen discovery, require new summary judgment briefing, and essentially unsettle everything currently pending in this case – thus obviously "disrupt[ing] the order and efficiency of trial." As for TNT's reasons for noncompliance, its own counsel did not offer anything other than defiantly stating that TNT does not know of any authorities or principles of law that prohibit its efforts (and further threatened that any efforts of Torch to "impede" such efforts may be criminal obstruction of justice; *see* **Ex. 2**). Ignorance of the Rules is not a defense to their application. Such a brazen disregard for the Court's scheduling orders, the federal rules, and Torch's rights as a litigant are invalid reasons for failing to disclose witnesses. Accordingly, Torch respectfully requests the Court order an appropriate additional sanction, requiring TNT to reimburse Torch for its fees incurred in responding to TNT's improper efforts.

IV.     CONCLUSION

For the foregoing reasons, Torch respectfully requests the Court grant its Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 37(c)(1). Torch further requests the Court

grant additional relief the Court deems just and proper.

Dated:  September 13, 2024          Respectfully submitted,


GRAVES GARRETT GREIM LLC,


By: _/s/ J. Aaron Craig_____
    Todd P. Graves #41319 (MO)
    J. Aaron Craig #62041 (MO)
    Chandler E. Carr #68836 (MO)
    1100 Main Street, Suite 2700
    Kansas City, MO 64105
    Phone: (816) 256-3181
    Fax: (816) 256-5958
    tgraves@gravesgarrett.com
    acraig@gravesgarrett.com
    ccarr@gravesgarrett.com

    **Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2024, I caused the foregoing was filed with the Court's electronic CM/ECF filing system, which automatically served counsel for Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-Op with a notice of filing the same.

 */s/ J. Aaron Craig*
Attorney for Defendants Torch
Electronics, LLC, Steven Miltenberger, and
Sondra Miltenberger