# EXHIBIT 2

**From:** Craig, Aaron
**To:** Richard Finneran
**Cc:** Carr, Chandler; Zoe Wolkowitz Brannon
**Subject:** RE: TNT - Notice to Cease and Desist

Rich,

I personally investigated TNT's issues below. In the spirit of transparency, I'll summarize what I learned, though I have no obligation to do so. A Torch auditor contacted Chad merely to give him a heads up that Torch had learned TNT was attempting to contact certain Torch customers that might also have or had TNT devices at their locations and let him know that Rehab might be contacted (Torch has no desire to tell retail locations how they interact with TNT and has no intention of telling anybody not to speak or cooperate with TNT). Chad reportedly then volunteered that a female from TNT had already contacted him and that he had informed TNT's representative, using what sounded like not so nice language, that he had no interest in helping TNT, he was upset that Rehab had been dragged into this litigation, that he only had one video golf game from TNT that made him $3 a month and was removed from Rehab months before any Torch device was placed, and that he didn't like Turntine very much and thought everyone was having TNT remove his devices because they are outdated. Chad also reportedly said that he had told TNT's representative that he wanted Rehab to have nothing to do with TNT's lawsuit and wanted Rehab's name removed. This was information Chad volunteered, not information the auditor provided to Chad. Based on your email, it sounds like Chad may have subsequently called someone at TNT regarding the call with the Torch auditor. Suffice it to say, it sounds like Chad wasn't happy at TNT dragging his location into this case, and I believe he voiced that opinion to TNT, likely Donna. It's possible he was confused by how Rehab related to this case, but it is true that Rehab is listed specifically in the parties' public filings (unless I'm mistaken, Rehab is on the shared location list filed with the Court). Did Donna or someone else with TNT reach out to Chad before receiving this recent call?

To answer your second question: no, Torch continues to contend it is improper for TNT to contact new potential witnesses to develop new facts that TNT could have tried to develop during the discovery period to support *TNT's burden* to demonstrate causation and damages (but chose not to) and ask them to sign a declaration (that I'm fairly confident contains disparaging statements with respect to Torch) under threat of being hauled into a court hearing to give surprise testimony. Discovery is over, Rich. There is no proper purpose for TNT's conduct in engaging in this behavior for the admitted purpose of creating new facts/evidence in this case that TNT seems to agree it needed to and should have secured during the discovery process. I understand you think TNT can just do whatever whenever it pleases, but I'm confident the Rules and the law do not support your belief. But I suppose we will just have to find that one out for ourselves.

There appears to be a glaring distinction between TNT's conduct and Torch's reaction to that conduct that you are overlooking . . . Torch didn't start this ball rolling, and Torch doesn't need to manufacture any new facts or discovery from anyone (including any of its customers or TNT's) to defend against TNT's claims. Torch's position has always been and remains that TNT suffered no damage proximately caused by Torch. Torch had no burden or obligation to disprove TNT's claims otherwise by attempting to contact, depose, or get statements from every retail location that once did business with TNT to prove a negative. TNT, on the other hand, had the burden to gather the evidence needed to prove those claims of alleged damages supposedly proximately caused by Torch *during the discovery period*. TNT chose not to seek that discovery from any current or former retail location except Midwest, which didn't go so hot for TNT.

Torch does, however, have legitimate reasons for contacting Torch's retail locations regarding TNT's actions. Torch does have a right to gather information from its clients that might support separate and independent potential tortious interference or defamation claims against TNT and others who participated in what looks like improper, tortious, and defamatory conduct by TNT. Torch also has a legal obligation to mitigate any damages TNT's actions may have caused to Torch's business or reputation with its retail location owners. And I have a right to understand what it was that you/TNT have been up to so that I can correctly explain to the Court what occurred and why I believe it amounts to an improper and sanctionable attempt to manufacture new and improper evidence long after the discovery period ended (heck, long after this case was supposed to have been tried). To that end, if you/TNT have convinced anyone to sign new declarations, affidavits, or statements from any new source, I would ask that you immediately produce it to me. The irony in that request is that because discovery closed in this case more than seven months ago, I technically don't

have any legal right to force you to comply with that request for new discovery. But given your position, I'm hopeful that you'll indulge me.

Finally, I relayed TNT's threats of potentially suing Torch based on Torch's investigations into TNT's seemingly tortious conduct. Pretty sure I heard Steven's eyes roll through the phone. That TNT wants to sue Torch for meritless reasons no longer comes as a big surprise. So, you and TNT do as you must, and Torch will do the same. Have a nice weekend.

Take care,

Aaron

---

**From:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Sent:** Friday, August 30, 2024 3:56 PM
**To:** Craig, Aaron <ACraig@gravesgarrett.com>
**Cc:** Carr, Chandler <CCarr@gravesgarrett.com>; Zoe Wolkowitz Brannon <Zoe.Brannon@bclplaw.com>
**Subject:** RE: TNT - Notice to Cease and Desist

Aaron,

Sorry to write again, but I understand that TNT has received a call from Rehab, one of the overlapping locations, concerning a phone call that Rehab received from a Torch representative. I understand that that Torch representative may have falsely indicated to Rehab that TNT had named Rehab as a party to our lawsuit. As you know, that is not the case. I further understand that Rehab indicated to TNT that, if Rehab was not dropped from the lawsuit, Rehab would terminate its relationship with TNT. Obviously, since Rehab has not been named as a party to the suit, it is not possible to drop Rehab from the lawsuit.

Given Torch's outreach to Rehab, I assume you no longer contend, as you indicated below, that it is improper for either party to contact any potential witnesses to obtain information relating to the parties' claims and defenses. That said, we are concerned that the provision of false information to any of TNT's and Torch's shared customers may have the effect of improperly persuading potential witnesses not to provide information to TNT, as well as potentially damaging TNT's business relationship with those customers. And, as I indicated before, any instruction or encouragement not to cooperate with TNT's investigation would likely run afoul of the criminal prohibition on obstruction of justice and potentially subject Torch to sanctions in the lawsuit.

I ask that you please advise your client accordingly.



Richard E. Finneran
Partner
Bryan Cave Leighton Paisner LLP - St. Louis, MO USA
richard.finneran@bclplaw.com
T: +1 314 259 2080

---

**From:** Richard Finneran
**Sent:** Friday, August 30, 2024 11:23 AM
**To:** 'Craig, Aaron' <ACraig@gravesgarrett.com>
**Cc:** Carr, Chandler <CCarr@gravesgarrett.com>; Zoe Wolkowitz Brannon <Zoe.Brannon@bclplaw.com>
**Subject:** RE: TNT - Notice to Cease and Desist

Aaron, thanks for your email. I am sorry to say we do not agree with your analysis.

As you acknowledge, TNT is permitted to communicate with its own customers. TNT is not limited, either in this hearing or at trial, from presenting whatever evidence it develops in support of its standing and its claim for damages, and we are unaware of any authority or principle law that would impair our ability to do so.

Nor is TNT prohibited from developing evidence through its own independent investigation. Torch was equally aware of the existence of these witnesses as TNT has been; indeed, as you indicate, they are also Torch's customers. Torch was as free

as TNT was to depose any of them during the discovery period, is as free as TNT is to call any of the customers to testify at the hearing/trial, and is as free as TNT is to obtain declarations to support its arguments (although we doubt any such testimony or declarations would support Torch's views). With respect to the upcoming hearing, Torch has challenged TNT's standing to bring its claim; the Court has indicated it will hear evidence on that question; and there is no limitation on our ability to marshal any and all evidence at our disposal to support TNT's standing to seek the relief it has requested.

Moreover, I am worried that you may be misinformed as to the facts of the interaction in question. We will investigate your claims further to confirm our separate understanding, but we understand that, at most, the customer was told that there was a hearing next month to determine whether TNT had standing to claim damages as a result of Torch's conduct, and that the customer was a potential witness in that hearing. I am not aware of any suggestion made by TNT that the customer's decision to sign (or not to sign) a declaration in lieu of appearing at the hearing would result in the removal of TNT's devices from their premises. Nor do I have any reason to believe that TNT's interactions have "adversely impacted" its customer as you suggest.

I understand that you may have a different understanding of the facts, and I appreciate that you have honest grounds for disagreement with the above. But we do not believe that your complaints have merit.

I would, however, appreciate it if you would please confirm, as I asked before, that neither you firm nor your client have attempted to dissuade any of TNT's customers from further communication with TNT about their potential testimony in this case. If you are unable to confirm that, your inability to do so could suggest that Defendants have improperly obstructed TNT's communications with potential witnesses, for which we reserve our right to seek appropriate relief.



Richard E. Finneran
Partner
Bryan Cave Leighton Paisner LLP - St. Louis, MO USA
richard.finneran@bclplaw.com
T: +1 314 259 2080

---

**From:** Craig, Aaron <ACraig@gravesgarrett.com>
**Sent:** Thursday, August 29, 2024 11:59 PM
**To:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Cc:** Carr, Chandler <CCarr@gravesgarrett.com>; Zoe Wolkowitz Brannon <Zoe.Brannon@bclplaw.com>
**Subject:** RE: TNT - Notice to Cease and Desist

Rich,

I trust that you are aware TNT cannot just show up with a roster of new witnesses it hopes to call at hearings next month considering (a) discovery closed in January, (b) TNT never identified such persons as additional witnesses prior to the close of discovery, (c) they were not listed on TNT trial witness list, (d) Defendants have never had an opportunity to depose or test anything they might say, and (e) the Federal Rules and Due Process require fairness, not trial by ambush. I also trust that you are aware any declaration or affidavit that TNT has or might hope to secure for one of these out of court declarants would be textbook hearsay for which no exception applies and, thus, would be pointless. *See* Fed. R. Evid. 801 & 802. As a consequence there is zero reason these conversations should be occurring with Torch customers at this point in our litigation.

At least one Torch customer indicated TNT's tactic was not well received and TNT made this person feel as though by not complying with TNT's strong "request" to sign the declaration on the spot (because Donna refused to give the customer a copy and provide time for the customer to consider the request after Donna left) they were at risk of losing certain TNT devices that they did not want removed. The fact Donna refused to leave the declaration with the customer to allow the customer time to fully consider TNT's request is problematic in and of itself.

You have also now admitted these interactions are being undertaken specifically for the purpose of securing additional discovery in this case, despite discovery having been closed since January and the parties having briefed summary judgment issues twice now. As explained above, there is no viable evidentiary purposes associated with these interactions that are adversely impacting the Torch customers. TNT has every right to contact TNT's customers about TNT's normal day to day business, but TNT does not have a right to disparage Torch by claiming or even suggesting to any *Torch* customer that Torch has allegedly caused damages to TNT, which is my understanding of what has

happened. That is textbook tortious interference. And should stop. But your response makes clear neither you nor your client has any intention of stopping this practice. Torch will proceed accordingly.

Take care,

Aaron

**From:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Sent:** Thursday, August 29, 2024 11:21 PM
**To:** Craig, Aaron <ACraig@gravesgarrett.com>
**Cc:** Carr, Chandler <CCarr@gravesgarrett.com>; Zoe Wolkowitz Brannon <Zoe.Brannon@bclplaw.com>
**Subject:** RE: TNT - Notice to Cease and Desist

Aaron, I've conferred with my client regarding your email below. Contrary to what it sounds like you have been told, TNT has not "harassed" any of Torch's customers; as I understand it, TNT has merely contacted a few of its own customers to notify them that they may called to testify at the upcoming standing/damages hearing next month and offer them the opportunity to provide a declaration in order to avoid the need for us to call them to testify in person. While I was not party to any such conversation, based upon my understanding of the facts, I have no reason to believe that any "harassment" occurred whatsoever.

TNT's conduct is not tortious or improper. TNT is entitled to communicate with its own customers (as is Torch), and both parties are entitled to contact potential witnesses for the hearings, regardless of whether discovery has closed. Any legal or other action to impede TNT's ability to contact potential witnesses would not only be frivolous, but it could very well implicate the obstruction of justice statutes. *See* 18 U.S.C. § 1512(b) (making it unlawful to "intimidate[e], threaten[], or corruptly persuade[]" a witness in any official proceeding with the intent to "influence, delay, or prevent the testimony of any person in an official proceeding" or to "cause or induce the person to withhold testimony, or withhold a record, document, or other object, from an official proceeding").

TNT will continue to comport its conduct to the law. Please confirm that neither you nor your client has instructed, threatened, or persuaded any of TNT's customers not to cooperate with TNT's legitimate efforts to communicate with potential witnesses in advance of the hearing or encouraged them not to sign any such declaration. If any such directions have been previously provided to potential witnesses, we request that they be withdrawn and corrected immediately.

I look forward to your response. And again, my apologies for my not responding while I was out of the office yesterday.



Richard E. Finneran
Partner
Bryan Cave Leighton Paisner LLP - St. Louis, MO USA
richard.finneran@bclplaw.com
T: +1 314 259 2080

**From:** Craig, Aaron <ACraig@gravesgarrett.com>
**Sent:** Thursday, August 29, 2024 10:36 AM
**To:** Richard Finneran <Richard.Finneran@bclplaw.com>
**Subject:** RE: TNT - Notice to Cease and Desist

Rich,

I need a response to the email below. Again, feel free to call my cell number to discuss if you would rather discuss the issue that way.

Take care,

Aaron

Aaron Craig
**Office:** (816) 256-3181 | **Direct:** (816) 285-3883



[www.gravesgarrett.com](www.gravesgarrett.com)

1100 Main Street, Suite 2700
Kansas City, MO 64105

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---

**From:** Craig, Aaron
**Sent:** Wednesday, August 28, 2024 1:21 PM
**To:** Richard Finneran <Richard.Finneran@bclplaw.com>; Mary Grace Warren <MaryGrace.Warren@bclplaw.com>; Zoe Wolkowitz Brannon <Zoe.Brannon@bclplaw.com>
**Cc:** Graves, Todd P. <TGraves@gravesgarrett.com>; Carr, Chandler <CCarr@gravesgarrett.com>
**Subject:** TNT - Notice to Cease and Desist
**Importance:** High

Hi Rich,

I've been informed that representatives of your client TNT are harassing Torch's customers by showing up at retail locations (including locations that are not on the Shared Location list), telling them TNT has allegedly been damaged by Torch, asking that a representative for the customer sign some sort of written statement to the effect that they believe TNT has been damaged by Torch, and refusing to leave a copy of the written statement when customers ask for a copy after refusing to sign. Not only is this super desperate, but it is also wildly improper and tortious conduct.

I've been authorized by our clients to demand that TNT immediately cease and desist in this course of inappropriate conduct. Discovery has long since closed in our case, and TNT is simply harassing clients with whom Torch currently conducts business. Torch is currently considering its available legal options, which include filing suit against TNT (and potentially your law firm if this was done at your firm's direction) for tortious interference, slander, and other claims. Unless I hear back from you very shortly saying that you have informed your client to cease and desist and TNT has agreed to do so, I am also considering alerting the Court to these improper and harassing encounters taking place outside the discovery period and seeking an order of protection.

I attempted to call you before sending this letter. Unfortunately, I was sent directly to your voicemail. Feel free to call me on my cell at your earliest convenience to discuss, but I'm going to need to hear from you soon regarding whether this is conduct you support or condone.

Take care,

Aaron

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at [www.bclplaw.com](www.bclplaw.com)

This electronic message is from a law firm. It may contain confidential or privileged information. If you received this transmission in error, please reply to the sender to advise of the error and delete this transmission and any attachments.

We may monitor and record electronic communications in accordance with applicable laws and regulations. Where appropriate we may also share certain information you give us with our other offices (including in other countries) and select third parties. For further information (including details of your privacy rights and how to exercise them), see our updated Privacy Notice at [www.bclplaw.com](www.bclplaw.com)