**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-330-JAR |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al.*, | ) | **EVIDENTIARY HEARING AND** |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) | |

**PLAINTIFF TNT AMUSEMENTS, INC.'S
MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

The instant motion is yet another attempt to distract from Defendants' own wrongdoing by blowing smoke where there is no fire. Despite not making any effort to confer with counsel for TNT before filing their motion as required by both the Federal Rules and this Court's Local Rules, Defendants seeks sanctions against TNT for the mere act of subpoenaing a witness to testify at an evidentiary hearing. Defendants' motion should be denied both because Defendants failed to confer with counsel for TNT before filing it and because there is no basis for sanctions against TNT.

Although Defendants claim that the subpoena to Ms. Biles is a surprise to Defendants, Ms. Biles was identified by TNT in ***October 2023*** as the manager of the Moose Lodge, which TNT disclosed to Defendants as a location in which TNT had its own amusement devices. *See* **Ex. 1** (excerpt from list of TNT customers disclosed Defendants on October 19, 2023) at 2. Prior to the close of discovery, the Moose Lodge evidently did not have any Torch Devices. But in February 2024, shortly after the close of discovery, the Moose Lodge requested one of TNT's devices be removed, and immediately thereafter Defendants placed several Torch Devices in the ***very same*** location. Defendants, meanwhile, only disclosed that location as a Torch location on ***April 1, 2024***,

several months after the close of discovery. Thus, the relevance of the particular location that Defendants complain about was not even evident to TNT until after discovery had already closed. It is therefore especially rich for Defendants to complain that Ms. Biles should have been disclosed to Defendants prior to the close of discovery, when TNT **did** disclose Ms. Biles at the outset of this case as the contact for the Moose Lodge, and **_Defendants_** evidently approached the Moose Lodge to replace TNT's devices with their own **_after_** the close of discovery. Nor did Defendants take any action to oppose TNT's efforts to obtain Ms. Biles's sworn statements when they were alerted to them more than three weeks ago.

Notwithstanding Defendants' distortion of the underlying facts, TNT has not engaged in any sanctionable conduct. It has done what parties typically do for a hearing: subpoena a witness to testify. Contrary to Defendants' unsupported claims, the close of discovery does not preclude TNT from continuing to investigate the basis for its claims and the extent of its damages, including the **_new and continuing_** injuries that have resulted from Defendants' continued false marketing of the Torch Devices, such as occurred at the Moose Lodge. Defendants, meanwhile, evidently solicited false testimony from Ms. Biles in the form of a declaration attached to their motion, which may itself call for sanctions once the circumstances surrounding the drafting of that declaration can be ascertained.[1] At this time, however, it is sufficient for the Court to simply deny Defendants' motion for their failure to comply with both the Federal and Local Rules requiring a movant to meet-and-confer with their adversary before seeking sanctions, and because their motion fails to state any meritorious basis for imposing sanctions against TNT. This Court should not become

---

[1]    On that basis, TNT also requests a hearing on this Defendants' motion at the September 26, 2024 hearing, at which Mr. Biles can be examined regarding the circumstances leading to her execution of the inaccurate declaration.

party to Defendants' apparent efforts to frustrate TNT's legitimate efforts to prepare for the hearing by giving credence to their unsubstantiated request for sanctions.

**DISCUSSION**

**I.    Defendants Did Not Meet and Confer with TNT as Required by the Federal Rules and Local Rules of this District Prior to Filing the Instant Motion**

This Court should not even reach the merits of Defendants' motion, because the Defendants did not comply with the meet-and-confer requirements of Federal Rule of Civil Procedure 37 and Local Rule 3.04 (together, the "Rules") before filing the instant motion. *See* Fed. R. Civ. P. 37(a)(1) ("The motion must include a certification that the movant has in good faith ***conferred*** or ***attempted to confer*** with the ***person*** or ***party failing to make disclosure*** or discovery in an effort to obtain it without court action.") (emphasis added); L.R. 3.04(A) ("The Court ***will not consider*** any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred ***in person*** or ***by telephone*** with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel are unable to reach an accord.") (emphasis added). Defendants cannot plead ignorance of that requirement, seeing as they have previously asserted it in this ***exact*** context in this ***exact*** case. Defs.' Opp. to Mot. to Compel N. Farley (Doc. #140) at 10 (arguing meet-and-confer required prior to filing a Rule 37(a)(1) motion); Defs.' Surreply to Mot. to Compel N. Farley (Doc. #151-1) at 3 (same).

Defendants' motion provided no certification as required by the Rules, nor did they attempt any such conference. Although Defendants attach a string of email correspondence with counsel for TNT regarding TNT's previous attempts to solicit Ms. Biles's voluntary testimony, counsel for Defendants did not, as far as counsel for TNT is aware, make any effort to contact counsel for TNT between the time that TNT served the subpoena to which Defendants object and their filing of the motion. Nor did counsel confer "in person" or "by telephone" with counsel for TNT before filing

3

the instant motion as required by the Local Rule. Instead, without so much as an email, Defendants filed the motion late Friday evening on September 13, 2024, which counsel for Defendants had been previously informed was the night before the wedding of lead counsel for TNT.

The Rules exist for a reason. Had counsel for Defendants contacted counsel for TNT, TNT could have explained its purpose in subpoenaing Ms. Biles, reminded counsel for Defendants that Ms. Biles had been disclosed to them by TNT 11 months earlier, conferred as to other witnesses TNT intends to call at the hearing, and perhaps avoided altogether the expense of which Defendants now complain about. Instead, Defendants have consumed the Court's resources and wasted both parties' time and money by requiring TNT to set the record straight both as to its conduct and Torch's conduct in anticipation of the hearing. To the extent that any party is entitled to its fees and costs for having to litigate these issues, it is TNT, not Defendants, as a result of their failure to comply with the requirements of the Rules.

## II.    TNT Did Not Engage in Any Improper Conduct with Respect to Its Subpoena to Ms. Biles

TNT did not do any of the actions Defendants allege are improper in their motion. By subpoenaing a witness to an evidentiary hearing, TNT did not propound or otherwise engage in "discovery." Mem. (Doc. #283) at 1–2, 9. TNT did not "depose" Ms. Biles outside the discovery period. *Id.* at 8, 11–12. TNT did not call any witnesses to a ***trial*** (as this is a hearing), much less engage in any "trial by ambush." *Id.* at 1, 2, 9, 11, 13. It is even more perplexing for Defendants to claim that TNT is constrained in what witnesses it may call at a newly scheduled evidentiary hearing by a preliminary ***trial*** witness list, which TNT provided before a trial setting that has long since been vacated. In short, TNT has not run afoul of any limitations imposed by this Court's orders or by the Federal Rules of Civil Procedure in subpoenaing a witness to testify at the upcoming evidentiary hearing.

Defendants are also wrong to portray TNT's legitimate use of a Rule 45 subpoena as a failed Rule 26 disclosure (which is the only way Rule 37 would even apply here). Mem. (Doc. #283) at 1–2, 8–12. TNT disclosed the Moose Lodge as one of TNT's amusement locations ***nearly 11 months ago*** as part of its pre-deposition disclosure for TNT's corporate representative Jim Turntine, and further ***disclosed Ms. Biles*** as the point of contact for that location at that same time, along with her phone number. *See* **Ex. 1** (excerpt from chart listing TNT's customer locations, disclosed to Defendants on October 19, 2023).[2] It was not until April 1, 2024, however, several months ***after*** the close of discovery, that ***Defendants*** disclosed the Moose Lodge as a location in which Torch had placed its devices.[3] Thus, if anyone, it is TNT, not Defendants, who might be able to claim unfair surprise from the results of its investigation of the facts surrounding the events at the Moose Lodge. TNT was not required to supplement its Rule 26 disclosures to identify a potential witness who TNT otherwise disclosed in the course of discovery and whose importance Defendants themselves concealed from TNT for months after discovery had closed.

Defendants also cry foul over TNT's alleged failure to notify Defendants of the subpoena in advance. Mem. (Doc. #283) at 1, 9. TNT had no obligation to do so.[4] Nonetheless, TNT ***did*** explain to Defendants weeks ago—in the very correspondence that Defendant attached to their motion—that it was investigating what witnesses it might call at the September 26 hearing to

---

[2]    Given the confidential nature of TNT's customer list, TNT has redacted portions of the list not relevant to the instant motion, but the copy provided to Defendants contained no redactions.

[3]    According to Defendants, Torch had not even placed their devices in the Moose Lodge until February 2024. *See* Mem. (Doc. #283) at 7. It was thus quite impossible for TNT to identify Ms. Biles as a person with relevant information prior to the close of discovery in January 2024, let alone take her deposition with respect to the replacement TNT's device at the Moose Lodge.

[4]    Instead, Rule 45 requires notice to parties only if the subpoena commands production or inspection. *See* Fed. R. Civ. P. 45(a)(4) (requiring notice to other parties if "the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial").

support its standing and that it was contacting certain of its customers to let them know they might potentially be called to testify. *See* Defs.' Mot. Ex. 3 (Doc. #283-3) at 5. If Defendants genuinely believed that TNT should, as they now claim, be precluded from offering any evidence at the September 26 evidentiary hearing, they had several weeks to raise the issue. Instead, they waited to raise any such issue until the night before TNT's lead counsel's wedding and seek an expedited hearing schedule that overlapped with his honeymoon.

Finally, Defendants complain that TNT has not provided them with a copy of a proposed acknowledgment that TNT had previously presented to Ms. Biles for her consideration. *E.g.*, Mem. (Doc. #283) at 10. Again, TNT is under no obligation to share the proposed and unexecuted acknowledgment with Defendants. But in order to rebut Defendants' unsupported claims of foul play, TNT herewith provides a copy of the proposed acknowledgment, which was based on information that TNT had received through prior discussions with the Moose Lodge. *See* **Ex. 2** (proposed acknowledgment for K. Biles, with addition of "not executed" watermark). Far from demonstrating the sort of bad faith that Defendants allege in their motion, the ***unsigned*** acknowledgement demonstrates that the declaration that Ms. Biles ***signed*** in connection with Defendants' motion contains demonstrably false statements of fact. *See* Decl. (Doc. #283-3) at ¶ 10 (claiming that the proposed acknowledgment "would have had [Ms. Biles], on behalf of the Moose Lodge, declare that had suffered some type or amount of damages from the removal of TNT's device from the Moose Lodge" and that "TNT lost money on the Pac-Man device," neither of which is a statement contained in the proposed acknowledgment). Moreover, Ms. Biles's now-sworn statements that the "Moose Lodge did not need to have TNT remove the TNT's Pac-Man device to make room for the Torch Devices" contradicts other evidence that TNT will present at the hearing. Regrettably, by soliciting such incorrect statements from Ms. Biles in a sworn

6

declaration, Defendants have made it all the more necessary that she be called as a witness to ascertain how such statements came to be contained in her declaration.

### III. The "Close of Discovery" Does Not Preclude the Parties from Continuing to Investigate Their Claims and Defenses, Nor Does It Limit What Evidence TNT Can Marshal at the Evidentiary Hearing

At the heart of Defendants' objection is their apparent misimpression that this Court's upcoming evidentiary hearing is a "summary judgment" hearing. Mem. (Doc. #283) at 2 (claiming that the hearing is "focused" on "summary judgment"); *see also id.* 9–11. This Court has set a hearing **on summary judgment** for October 1, 2024, but this Court has separately required TNT to present evidence to support its standing and the existence of damages at an evidentiary hearing on September 26, 2024. *See* Order (Doc. #223) at 2 (setting (1) a "hearing on the issue of **standing and/or damages** . . . for September 26, 2024" and (2) a "hearing on the **summary judgment and Daubert motions** . . . for October 1, 2024" (emphasis added)). Though neither party sought such a hearing, the Court *sua sponte* decided to inquire into its own jurisdiction by soliciting evidence to support TNT's claimed injuries, and TNT intends to meet the Court's request by presenting documentary and testamentary evidence to support its standing. The subpoena in question is but one of the many methods by which TNT intends to establish its standing at the hearing.

Among other things, TNT will present evidence at the evidentiary hearing to establish that at several locations, including the Moose Lodge, TNT's devices were removed and replaced with Torch Devices. It will present evidence in the form of testimony from TNT employees who received such requests, as well as evidence of the removal and replacement of the devices in question. It will present business records from both TNT and Torch that demonstrate the dates that Defendants performed their first collection from such locations, many of which occurred very near in time to the removal of TNT's devices from those same locations. In addition to Ms. Biles, TNT

will call Rick Roley, the manager of Joe Momma's, to testify as to the removal of TNT's devices from that establishment and the replacement TNT's games with the Torch's Devices.

TNT respectfully submits that such evidence is more than sufficient to clear the low hurdle of establishing standing under Article III, thereby entitling TNT to have its case considered on the merits. *See Magdy v. I.C. Sys., Inc.*, 47 F.4th 884, 890 (8th Cir. 2022) (noting party's "confusion" between Article III standing and statutory standing, characterizing the latter as a "ruling on the merits"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (holding "**allegations** of lost sales and damage to its business reputation give [a plaintiff] **standing under Article III** to press [a] false-advertising claim," which is distinct inquiry from statutory standing, which asks "whether [the party] has a cause of action under the statute" (emphasis added)); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 611 (E.D. Pa. 2018) (explaining "[w]hether Plaintiff has a right to sue under the Lanham Act is an entirely different question" than whether the plaintiff has Article III standing).

While Defendants continue to conflate distinct legal concepts like standing under Article III (constitutional standing), the "zone of interest" framework in a Lanham Act claim as discussed in *Lexmark* (statutory standing), and directness in the context of a RICO action, these concepts are distinct, regardless of whether they rely on overlapping facts. The Court should reject Defendants' repeated attempts to muddy the waters (here, between constitutional and the statutory elements under RICO and the Lanham Act) and thereby hold TNT to a higher standard than what is required for Article III standing, the only constitutional minimum that TNT must surpass in order for this Court to have jurisdiction to hear TNT's claims. *Lexmark*, 572 U.S. at 134 n.6 ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct. Like the zone-of-interests test, [] it is an element of

8

the cause of action **under the statute**, and so is subject to the rule that 'the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction'") (emphasis added).[5]

It is true, of course, that some of the evidence that will be presented at the evidentiary hearing was also presented by TNT on the parties' cross-motions for summary judgment. Nonetheless, and despite the evidence that TNT has already presented, the Court has decided to inquire further into its jurisdiction by, *sua sponte*, holding a pretrial evidentiary hearing on TNT's standing. Defendants' protestation that discovery is closed does not provide the answer as to what the parties can present at such a *sua sponte* evidentiary hearing, nor has the Court imposed any such limitations on TNT. It is ludicrous to suggest that a party could be denied the opportunity, as Defendants suggest, to put on **evidence** at an **evidentiary** hearing. Instead, that is exactly what this Court's order calls for, and exactly what TNT is prepared to do.

---

[5]    While the cases distinguishing standing from the elements of a cause of action are clear, none of the cases cited by Defendants support their arguments here. All of Defendants' cases regarding summary judgment, *e.g.*, Mot. (Doc. #283) at 9, are inapplicable, because the September 26 hearing is an evidentiary hearing on standing/damages, not a hearing on the summary judgment motions, which is set for October 1. The same is true for Defendants' cases regarding trials. *Id.* Likewise, because there was no Rule 26 disclosure issue, *supra* § II, the law on Rule 37 sanctions, Mot. (Doc. #283) at 2, 9, 12–13, is inapplicable.

Defendants also rely on *Gonzalez-Rivera v. Centro Medico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019), Mot. (Doc. #283) at 11, 13, but that case deals with "choosing to disclose only a single expert report by the court-ordered deadline." *Gonzalez-Rivera*, 931 F.3d at 28. It is disingenuous for Defendants to have cited that case with this parenthetical: "*See Gonzalez-Rivera*, 931 F.3d at 28 (it is "obviously prejudicial" **to permit disclosure of new witnesses** material to summary judgment after the defendants "have already expended time and resources briefing a motion for summary judgment")." Mot. (Doc. #283) at 11 (emphasis added). *Gonzales-Rivera* did not deal with a situation at all analogous to the instant case, which arises outside the context of summary judgment and is not related to any court-imposed expert deadline.

## CONCLUSION

It certainly is not typical for a party to be required to put on evidence pretrial in order to establish its standing to proceed in a case. But with the Court having ordered such a hearing, TNT is entitled to use all of the tools at its disposal, including Rule 45 subpoenas, the voluntary appearance of witnesses, and its own independent investigation, in order to demonstrate its standing to the Court's satisfaction. Far from being sanctionable, TNT's proper use of the Federal Rules of Civil Procedure to procure the testimony of a witness who can help to establish TNT's standing is entirely proper. Defendants' motion should be denied, and fees and costs awarded to TNT for Defendants' failure to meet-and-confer prior to filing such a meritless motion.

Dated: September 20, 2024

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*zoe.brannon@bryancave.com*

***Attorneys for TNT Amusements, Inc.***
***d/b/a Play-Mor Coin-Op***

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO

10