IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:23-cv-00330-JAR |
| TORCH ELECTRONICS, LLC, STEVEN MILTENBERGER, and SONDRA MILTENBERGER | ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

There are two questions that require the Court's immediate attention and response:

> Question 1 -   Is the Court, at the summary judgment stage, going to let TNT put on a mini-trial and call *five* fact witnesses to take the stand and offer new or cumulative evidence during the hearing on Thursday, September 26, 2024?
>
> Question 2 -   If the Court is going to let TNT put on a mini-trial and call live witnesses at the summary judgment stage, is the Court going to allow TNT to call two witnesses that TNT admittedly never identified in TNT's Rule 26 Disclosures, were not identified by TNT as potential trial witnesses in TNT's pretrial witness list, and were never identified by TNT as potential witnesses with specific knowledge TNT believed was necessary to support TNT's claims?

TNT's first argument claims Defendants were obligated to certify they complied with meet and confer requirements. (TNT's Opp. at 3 (ECF #289)). Defendants cited *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 704 (8th Cir. 2018), multiple times in Defendants' moving brief. (*See, e.g.*, Memo. in Support at 10 (ECF #283)). The Eighth Circuit explained very clearly in *Vanderberg* that, "**[s]eeking to enforce the automatic exclusion of evidence pursuant to Rule 37(c)(1) does not require a party to first confer with the other party about whether the other party's evidence should be excluded.**" 906 F.3d at 707 (citing *Fulmore v. Home Depot, U.S.A., Inc.*,

1

423 F. Supp. 2d 861, 872 (S.D. Ind. 2006) ("**Rule 37(c) simply does not require conferral**.")) (emphasis added). Regardless, TNT previously made TNT's position clear (after Defendants issued a cease and desist demand) and then kept pushing TNT's improper conduct forward despite Defendants' clear objections. The parties are not resolving this dispute without Court intervention. Furthermore, Defendants just learned this past Thursday the identities of the *five* fact witnesses TNT says TNT plans to call live at the hearing this Thursday (in response to Defendants' demands for that information). Unless the Court wants to move the upcoming hearing, these issues need to be addressed immediately.

Without demonstrating how TNT's conduct complies with the Rules, TNT states, "The rules exist for a reason." (TNT's Opp. at 4 (ECF #289)). Yes; Rule 26(a)(1)(A)(i) exists to impose upon TNT a "Duty to Disclose" information "without awaiting a discovery request" that includes disclosing "the names and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims . . . unless the use would be solely for impeachment." Rule 26(e) exists to impose upon TNT a duty to supplement TNT Rule 26(a) disclosures in a timely manner. And Rule 37(c)(1) exists to ensure that when TNT "fails to . . . identify a witness as required by Rule 26(a) or (e), [TNT] is not allowed to use that . . . witness to supply evidence on a motion, *at a hearing*, or at trial, unless the failure was substantially justified or harmless." TNT's conduct violates those Rules (and more).

The parties have now fully briefed cross-motions for summary judgment twice. The parties had oral argument on their first motions for summary judgment (and TNT called no live witnesses). The parties were days away from trying this case when TNT asked for a continuance. To say this case is ripe for a decision on summary judgment is an understatement. Yet, consistent with TNT's prior attempts to secure a pre-trial preliminary injunction mini-trial, TNT seems dead set on putting five live witnesses (two of whom were never identified by TNT as potential witnesses) on the stand at the

summary judgment stage. Even if TNT had properly disclosed all five of these witnesses to Torch, this would be improper.

TNT had an obligation on summary judgment to cite admissible evidence to support or oppose summary judgment. If TNT wanted to, as TNT did with Marla Turntine, TNT was free to submit affidavits or declarations of *properly identified* witnesses in support of or in opposition to motions for summary judgment to supplement the record. More often than not in federal district courts, summary judgment is decided on the briefs. But where there is oral argument at the summary judgment stage, it is limited to the facts, issues, and record discussed in the parties' respective briefs.

Causation and damages (i.e., focal points of the hearing on Thursday) are issues Defendants focused heavily on in Defendants' Motion for Summary Judgment. To the extent the Court still believes oral arguments are necessary, nothing prevents TNT from directing the Court to the record evidence TNT cited in TNT's Opposition to Defendants' Motion for Summary Judgment that TNT believes satisfies TNT's burden to prove causation and damages. It would be improper to allow TNT to call live witnesses to parrot that evidence. As discussed below, the evidence TNT claims these witnesses will offer (a) is cumulative of record evidence TNT cited and (b) fails to demonstrate any *wrongful* conduct by Torch was the "but for" or proximate cause of TNT's alleged and entirely speculative damages (for the reasons Defendants explained in their Reply in Support of Their Motion for Summary Judgment). Further, to the extent TNT hopes live witnesses will offer *new evidence* on Thursday that TNT chose not to include in TNT's Opposition, that would be improper. Springing *new evidence* on Defendants is as much of an improper ambush tactic as attempting to spring two new previously undisclosed witnesses on Defendants. And allowing witnesses to take the stand and offer evidence at this stage runs the risk of creating unnecessary error associated with weighing issues of witness credibility at the summary judgment stage (which is obviously improper). Defendants' first Motion for Summary Judgment similarly asserted TNT could not demonstrate causation or damages. TNT made no attempt

to put any witness on the stand during oral arguments on July 11, 2024, regarding those issues. This time should be no different.

TNT's conduct and positions are extraordinary. TNT cites zero caselaw that purports to allow TNT to call *any* live witnesses at a hearing at the summary judgment stage. TNT also fails to cite a single case that would purport to condone TNT's actions of issuing subpoenas to new witnesses, that were not properly disclosed, to offer new evidence at a hearing at the summary judgment stage that was not cited in TNT's Opposition. That is a flagrant violation of multiple rules, not the least of which is Fed. R. Civ. P. 37(c)(1). Defendants' Motion should be granted.

A.     **Recent Developments**

On Thursday afternoon (September 19, 2024), Defendants learned from counsel for TNT that TNT is anticipating calling five fact witnesses at the hearing on the 26th. These witnesses include Jim Turntine, Marla Turntine, Donna Havey, Kathy Biles, and Rick Roley. (*See* September 19, 2024 Email Chain Between Richard Finneran and Aaron Craig and Accompanying Attachments From the Chain, a true and correct copy of which is attached as **Exhibit 6**).

B.     **Per the Eighth Circuit, There Is No Requirement to Meet and Confer Prior to Filing a Motion Pursuant to Fed. R. Civ. P. 37(c).**

As discussed above, TNT's first argument (i.e., Defendants' Motion allegedly fails because Defendants did not certify the parties had a meet and confer) is meritless per binding Eighth Circuit precedent. *See Vanderberg*, 906 F.3d at 707. Defendants cited *Vanderberg* multiple times in their moving brief. If TNT had read that opinion, TNT would have seen that the Eighth Circuit specifically rejected TNT's argument. As the Eighth Circuit explained, "**Seeking to enforce the automatic exclusion of evidence pursuant to Rule 37(c)(1) does not require a party to first confer with the other party about whether the other party's evidence should be excluded.**" *Id.* (citing *Fulmore*, 423 F. Supp. 2d at 872 ("**Rule 27(c) simply does not require conferral.**")) (emphasis added).

4

The Local Rules do not require any certification of a meet and confer for a Rule 37(c)(1) motion, and the Local Rules cannot trump the Federal Rules or binding Eighth Circuit precedent specifically applicable to motions pursuant to Rule 37(c)(1). Regardless, Defendants described the lengths to which Defendants went to meet and confer with TNT's counsel regarding these issues to try and dissuade TNT from continuing down this path. Defendants went so far as to provide the Court with the full multi-day email exchange that ensued between counsel after Defendants' counsel was unable to reach TNT's counsel by phone to discuss the events leading up to Defendants' Motion for Sanctions under Rule 37(c)(1). (*See* **Ex. 2** (ECF #283-2)). Those communications, like TNT's statements in TNT's Opposition, make very clear the parties are not going to find mutually agreeable grounds on this issue. (*See id*. at 3-4, Aug. 30, 2024, 11:23 a.m. Email from Richard Finneran (paraphrased as "TNT can do whatever it pleases"); *see also* TNT's Opp. at 4 (ECF #289) (claiming a meet a confer would have allowed TNT another opportunity to convince Defendants (which obviously was *never* going to happen based on even a cursory look at **Ex. 2**) that it is fine for TNT to put on a mini-trial with five live witnesses, including two witnesses TNT never previously disclosed as possible TNT witnesses, at a hearing at the summary judgment stage)).

TNT's Opposition to Defendants' Motion for Summary Judgment, which was filed a few days after the parties' multi-day meet and confer conversations shown in **Ex. 2**,[1] did not cite to any new, previously undisclosed witnesses (not Kathy Biles, not Chad from Rehab, and not Rick Roley). Defendants, therefore, assumed this was a moot issue . . . until Defendants independently learned on September 12, 2024, TNT was now issuing subpoenas to Ms. Biles and, presumably, other people TNT

---

[1] As **Ex. 2** demonstrates, Defendants independently discovered TNT had attempted to get statements from Kathy Biles and a guy named "Chad" at a location called Rehab. TNT never disclosed to Defendants that it had also targeted Rick Roley, a person Defendants had never heard of until the past Thursday afternoon when TNT responded to Defendants' demand to disclose the names of all the individuals TNT is planning to call at the hearing on Thursday.

had never previously identified as potential TNT witnesses. Defendants filed the present Motion the next day. These issues were clearly not getting resolved by agreement, and the hearing TNT was subpoenaing new witnesses to attend was (at that point) happening in less than two weeks. And now here we are a few days away from the hearing and Defendants are still fighting the same fight, TNT still claims its conduct is proper and TNT's plan to call five fact witnesses (including new undisclosed witnesses) is perfectly fine, and Defendants are left to guess at whether they have to prepare for oral arguments on Thursday (which is what should happen) or prepare for a multi-day mini-trial with as many fact witnesses as TNT disclosed in its previously served pre-trial witness list (**Ex. 5** (ECF #283-5)) – *just not the same* previously disclosed fact witnesses. These issues are properly before the Court, and they require immediate attention.

> **C. Allowing Jim Turntine, Marla Turntine, and Donna Havey to Take the Stand and Offer Live Testimony at Thursday's Hearing Would Be Both Improper and Cumulative of TNT's Evidence Cited in Motion for Summary Judgment Briefing.**

TNT disclosed Jim Turntine, Marla Turntine, and Donna Havey in TNT's Rule 26 Disclosures. (**Ex. 4** (ECF #283-4)). TNT cited extensively to Jim Turntine's deposition testimony in TNT's motion for summary judgment briefing. TNT also cited a declaration by Marla Turntine in support of TNT's Partial Motion for Summary Judgment (ECF #245-20). TNT chose not to have Donna Havey sign any declarations or affidavits to support TNT's Partial Motion for Summary Judgment or oppose Defendants' Motion for Summary Judgment, but TNT's use of Marla Turntine's declaration at the summary judgment stage demonstrates TNT was aware that was the proper way to present evidence from Donna Havey if TNT believed doing so was necessary to support or oppose summary judgment at the summary judgment stage.

In its Opposition, TNT attempts to call the hearing on Thursday an "evidentiary hearing." (Opp. at 1 (ECF #289)). Discovery ended in January (with some very limited and specific additional discovery allowed following cross-motions to compel). The parties have now fully briefed cross-

6

motions for summary judgment twice. The parties have already had one round of oral arguments on motions for summary judgment where the parties focused on issues of causation and damages, as well as other issues. TNT's repeated requests to have a pre-trial evidentiary injunctive relief hearing have all been rejected. Defendants were not under the impression the Court was anticipating either party calling any live fact witnesses at either of the two scheduled hearings.[2] There is no reason TNT should need to put those three witnesses on the stand to talk about issues of causation and damages because those were very clearly issues at the heart of *both* TNT's Partial Motion for Summary Judgment and (obviously) Defendants' Motion for Summary Judgment. Oral arguments will more than suffice. In fact, TNT unwittingly admits the testimony TNT hopes to elicit from these witnesses is cumulative and unnecessary.

Per TNT's own admission, allowing TNT to call multiple live witnesses on Thursday will not materially add to the record evidence TNT already cited to and relied on in TNT's motion for summary judgment briefing. Per TNT: (1) "TNT will present evidence at the evidentiary hearing to establish that at several locations . . . TNT's devices were removed and replaced with Torch Devices"; (2) TNT "will present evidence in the form of testimony from TNT employees who received such requests, as well as evidence of the removal and replacement of the devices in question"; and (3) TNT will "present business records . . . that demonstrate the dates that Defendants performed their first collection from such locations, many of which occurred very near in time to the removal of TNT's devices." (TNT's

---

[2] Obviously, to the extent the Court deems it necessary to have a hearing on *Daubert* motions, Defendants would anticipate having the experts at issue testify (not in an "evidentiary" hearing, but simply to test their qualifications and the reliability of their opinions pursuant to the *Daubert* factors), which is a typical practice for such motions. Defendants would note, however, that the only issues the parties' technical experts address *relate to questions of legality*, which Torch, the Missouri Court of Appeals, Western District (and impliedly the Missouri Supreme Court now that Torch's request for transfer has been denied), and applicable federal caselaw all seem to agree would be an inappropriate issue to litigate in this civil case. Consequently, if the Court agrees TNT does not get to try TNT's opinions regarding the legality of Torch devices under Missouri's criminal gambling statutes in this civil case, both parties' technical experts become moot.

Opp. at 7 (ECF #289)).  TNT does not need to put live witnesses on the stand to testify to these issues because TNT cited to record evidence in TNT's motion for summary judgment briefing regarding those same issues. In fact, these three points are the *same three points* TNT made, citing record evidence, in TNT's Opposition to Defendants' Motion for Summary Judgment three weeks ago. (*See* TNT's Opp. to Defs.' MSJ at 17 (ECF #267)). TNT does not need to put on a mini-trial with live witnesses to establish these irrelevant points; TNT can simply point to the same evidence TNT cited and attached as exhibits in TNT's Opposition to Defendants' Motion for Summary Judgment and present oral arguments. As explained in Defendants' Reply in Support of Their Motion for Summary Judgment, "none of those facts demonstrate Torch engaged in any '*illegal activities*' . . . the only thing [TNT's] points 1, 2, and 3 'prove' is that some location owners decided to replace some of TNT's devices with Torch devices." (Defs.' Reply at 9 (ECF #276)).

      Torch does not deny some location owners made independent decisions to have TNT remove some of TNT's devices from their locations. Torch does not deny some of those same location owners thereafter made independent decisions to install Torch devices at their locations. And Torch does not deny that as part of its business practice, Torch had auditors regularly collect funds from Torch devices at those locations. TNT does not need to put witnesses on the stand to establish those facts – *they are not disputed facts*. But, as Defendants have *repeatedly* said, while those facts might demonstrate TNT lost business to Torch, **those facts fail completely to demonstrate TNT lost business or profits because of some specific and actionable <u>tortious</u> conduct on Torch's part**. Proving TNT lost business to a competitor does not, in and of itself, give TNT a right to sue that competitor for *unfair* or *tortious* competition.

      In briefing (including TNT's present Opposition), TNT pretends not to understand this concept and keeps claiming the three facts above (plus an argument based on Tracy Head's testimony that some location owners may have replaced TNT's devices with Torch devices because Torch devices are more

profitable) are sufficient to save TNT's claims from dismissal on summary judgment. But TNT does understand this distinction. TNT is aware TNT lacks evidence sufficient to make that causal connection be alleged specific *tortious* conduct and alleged injury. **Any doubt to the contrary is extinguished by simply looking at TNT's Exhibit 2 attached to TNT's Opposition (ECF #289-2)**, which is the Acknowledgement TNT drafted and wanted Kathy Biles to sign. Specifically, TNT wanted Ms. Biles to be the *first person* associated with any retail location to attest, "Prior to Torch's placement of the Torch Games, a Torch representative told me that the Torch Games were legal games, not illegal gambling devices," and that Ms. Biles "relied upon those statements in my decision to allow the Torch Games to be placed in the Moose Lodge." (ECF #298-2 at 2). Tellingly, TNT omitted telling the Court this was *also* evidence TNT hoped to elicit from Ms. Biles on Thursday. Asking Ms. Biles to sign TNT's acknowledgment and attest to those statements was very clearly an effort by TNT to gather *new* discovery – no matter how TNT might want to try and spin it. And if Ms. Biles were to take the stand on Thursday, literally every word she uttered would amount to new and improper discovery. Further, such evidence is also pointless because, as Defendants have repeatedly pointed out and TNT cannot refute, Torch's statements regarding Torch's opinions related to the legality of Torch devices based on Torch's interpretation and understanding of Missouri's criminal statutes cannot be, as a matter of law, deemed literally false statements of *fact* that are actionable under the Lanham Act. Nor does such evidence help TNT get around civil RICO's heightened directness statutory standing element. And it ignores the recent opinion by the Missouri Court of Appeals (which was specific to Torch devices, addressed nearly identical issues, and made very clear TNT should not be allowed to litigated TNT's opinions of criminal legality in this civil case) and a plethora of related federal cases in the Lanham Act context holding essentially the same thing.

      Regardless, TNT has admitted Tracy Head was the only location owner representative TNT deposed in this case. TNT cited to large portions of Tracy Head's deposition testimony both in support

9

of TNT's Partial Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment. But TNT failed to cite to any testimony from Tracy Head that goes as far as TNT hoped Ms. Biles would attest to by signing TNT's proposed Acknowledgement – because Tracy Head never gave TNT such testimony. Before discovery closed, TNT could have deposed any number of additional location owner representatives to ask them similar questions . . . TNT never did. TNT claims Ms. Biles only became relevant in April 2024 when Defendants disclosed Torch had three devices at the Moose Lodge. TNT could have timely supplemented TNT's Rule 26(a) disclosures pursuant to Rule 26(e) to properly identify Ms. Biles in April. TNT did not. It is far too late at this point to allow TNT to engage in new discovery aimed at securing new testimony or evidence TNT could have secured, but failed to secure, previously.

At Thursday's hearing, TNT can cite to Jim Turntine's deposition testimony, Marla Turntine's Declaration, Tracy Head's deposition testimony, and documents produced in discovery – all of which are cited in TNT's motion for summary judgment briefing – and make oral arguments based upon that evidence specific to causation and injury. TNT conduct demonstrates TNT knows that will not be sufficient to save TNT's claims from dismissal. Frankly, at this point it seems entirely unnecessary to even have oral arguments. But Defendants are not opposed to participating in *fair* oral arguments if the Court continues to believe they are necessary and helpful. Defendants do, however, strenuously object to any suggestion by TNT that TNT can call *any* live witnesses on Thursday (let alone five).

        **D.**    **TNT Cannot Be Allowed to Drag Two New, Previously Undisclosed Fact Witnesses to Thursday's Hearing**.

TNT spends almost all its energy focused on Ms. Biles and trying to convince the Court that TNT disclosed Ms. Biles consistent with Rule 26(a) by the mere act of giving Defendants a list identifying ***all 93*** locations where TNT operates, irrespective of whether Torch allegedly displaced any TNT device in any of those 93 locations. It does not. That list mentioned Kathy Biles *on line 51 of 93*.

10

TNT deceptively only showed the Court *one* line from *one* page of TNT's **seven-page list** of TNT's customers disclosed to Torch on October 19, 2023. Defendants will provide the Court with TNT's full seven-page list. ("TNT Amusement Device Locations" List Given to Defendants' Counsel on Oct. 19, 2023 at the Start of TNT's First 30(b)(6) Deposition, a true and correct copy of which is attached as **Exhibit 7**).[3] Torch suspects TNT's redactions to TNT's Exhibit 1 (ECF #289-1), combined with TNT's decision to only provide the Court with two out of seven pages of that document, was intentional and aimed to obfuscate the fact this list is meaningless and clearly was not sufficient to discharge TNT's duty to supplement TNT's Rule 26(a) disclosures in a timely fashion. On October 19, 2023, TNT did not even allege TNT's devices at the Moose Lodge had been tortiously replaced by Torch devices. As TNT notes in TNT's Opposition, Torch did not have any devices at the Moose Lodge until February 2024. (TNT's Opp. at 5, fn. 5 (ECF #289)). Thus, listing Ms. Biles as one of the **93** contacts for all TNT's locations without any claim Torch was illegally competing with TNT at the Moose Lodge on October 19, 2023, did not put Torch on notice Ms. Biles had relevant information to support TNT's claims or Torch's defenses.

But what is damning for TNT's post hoc excuse for TNT's failure to disclose is **TNT's admission in TNT Opposition that, "It was not until April 1, 2024, however, several months *after* the close of discovery, that *Defendants* disclosed the Moose Lodge as a location in which Torch had placed its devices**." (*Id.* at 5 (additional emphasis added)). TNT fails to explain why, if April 1, 2024, was the date TNT knew or should have known the Moose Lodge, and Kathy Biles specifically, allegedly suddenly became a key witness, TNT *never* (to this day) supplemented its Rule 26(a)

---

[3] TNT redacted every line but one from the two pages (out of 7 pages total) of TNT's customer list TNT gave to the Court. TNT claimed TNT did so because of "confidentiality." But TNT did not designate that customer list as confidential when it was provided to Defendants. TNT never designated TNT's corporate representative's testimony about that list, which was made Exhibit 2 to TNT's October 19, 2023 30(b)(6) deposition, as confidential.

11

disclosures or put Defendants on notice of that belief. **April 1, 2024, was 175 days ago**. Never mind that the one line TNT allowed the Court to see fails on its face to comply with Rule 26(a)(1)(A)(i)'s requirement to disclose the subject of the information Kathy Biles had (i.e., "along with the subjects of that information—that the disclosing party may use to support its claims") that TNT believed supported TNT's claims.

The fact TNT informed Defendants TNT had 93 customer contacts did not put Defendants on notice TNT might call all 93 contacts at trial after choosing not to more specifically identify or depose them at any point during the litigation. It certainly did not obligate Torch to depose all 93 of TNT's customers to *disprove* TNT's claims. TNT has the burden of proof. Defendants do not have a burden of dis-proof.

TNT attempts to manufacture an excuse for its failure to properly disclose Ms. Biles. If there is any doubt TNT's excuse is a manufactured post hoc rationalization for improper conduct, all the Court has to do is look at TNT's failure to point to a single prior instance where TNT so much as mentioned TNT's *second* new hopeful surprise witness, Rick Roley, before last Thursday (in response to Defendants' demand for a list of people TNT wanted to call live at Thursday's hearing). **Rick Roley is mentioned *one time* in TNT's Opposition, and TNT makes *no attempt* to claim Rick Roley's name was ever identified *in any way shape or form* to Defendants before TNT issued a subpoena commanding Mr. Roley to appear for Thursday's hearing**. (*See* TNT's Opp. at 8 (ECF #289)).

Defendants still have no idea when TNT decided Rick Roley allegedly had information TNT needed to support TNT's claims. Ironically, Joe Momma's is listed on line 37 of the same generic October 19, 2024 TNT customer list that TNT claims demonstrates TNT identified Ms. Biles as a key fact witness . . . but the contact TNT identified for Joe Momma's was not Rick Roley; it was "Mark Caulley." (*See* Defs.' **Ex. 7** at 3, line 37). TNT's excuses are a farse. The same manufactured post hoc excuse TNT offers with respect to Ms. Biles does not work for Mr. Roley. So, TNT simply offered no

12

excuse vis-à-vis Mr. Roley. TNT does not claim TNT ever properly disclosed Mr. Roley. TNT apparently just wants the Court to ignore that fact, ignore the Rules, and allow TNT to ambush Defendants with new testimony and evidence from Mr. Roley (and Ms. Biles) on Thursday. That is not fair to Defendants. It is not fair to Mr. Roley or Ms. Biles either.

Defendants agree with TNT that "[r]ules exist for a reason." (TNT's Opp. at 4 (ECF #289)). Here, they exist to prevent TNT from sandbagging and engaging in improper conduct meant to ambush Defendants. TNT attempted to be sneaky with TNT's plans to ambush Defendants with five live witnesses – two of which were never previously properly identified by TNT as potential witnesses in this litigation – on Thursday. And if a couple of Torch's contacts who were confused and upset by TNT's tactics had not independently and fortuitously contacted Torch to alert Torch of TNT's conduct, Defendants would have walked unwittingly into TNT's planned trap and the parties and the Court would have had to address and resolve these issues on the fly on Thursday.

TNT has no excuse for TNT's conduct, which is not compatible with an innocent failure to understand the Rules or the posture of the case. TNT's conduct demonstrates TNT *knows* this conduct is improper, but simultaneously knows TNT cannot point to evidence in the current record before the Court on round two of the parties' cross-motions for summary judgment that will save TNT's claims. Desperation is not a good faith basis to ignore the Rules or unfairly prejudice Defendants.

## CONCLUSION

For the reasons set forth above, as well as those set forth in Defendants' Memorandum in Support of Their Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c)(1) (ECF #283), Defendants' Motion should be granted and an order issued holding TNT may not call five (or any) live witnesses to the stand during the hearing on September 26th, TNT must immediately contact the two new witnesses (Ms. Biles and Mr. Roley) to tell them they are no longer required to appear on September

13

26th, and TNT must pay Defendants their reasonable attorneys' fees incurred in bringing this Motion, along with any other relief the Court deems necessary, just, and proper.

Dated: September 23, 2024                                  Respectfully submitted,

                                            GRAVES GARRETT GREIM LLC,

                                            By:  */s/ J. Aaron Craig*
                                            Todd P. Graves #41319 (MO)
                                            J. Aaron Craig #62041 (MO)
                                            Chandler E. Carr #68836 (MO)
                                            1100 Main Street, Suite 2700
                                            Kansas City, MO 64105
                                            Phone: (816) 256-3181
                                            Fax: (816) 256-5958
                                            tgraves@gravesgarrett.com
                                            acraig@gravesgarrett.com
                                            ccarr@gravesgarrett.com

                                            **Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 23, 2024, I caused the foregoing was filed with the Court's electronic ECMF filing system, which automatically served counsel for Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-Op with a notice of filing the same.

                                                                         */s/ J. Aaron Craig*
                                                                        Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger