IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a PLAY-MOR COIN-OP, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:23-cv-00330-JAR |
| TORCH ELECTRONICS, LLC, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORADUM IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION**

Pursuant to Federal Rule of Civil Procedure 59(e), Defendants respectfully address a few issues that the Court may have overlooked vis-à-vis TNT's Lanham Act claims and Defendants' Motion for Summary Judgment. Defendants will limit this Motion to only three issues. First, the Court's March 28, 2025 Memorandum and Order (Doc. 312) ("Order") failed to properly address and correctly apply the Eighth Circuit's definition of an actionable "factual claim" under the Lanham Act. Second, the Court's decision with respect to TNT's Lanham Act claims cannot be squared with the Court's subsequent (and correct) holding that this case is not the proper avenue for determining the legality of Torch's devices under Missouri's criminal laws. And third, to the extent the Court allows any false advertising claims to survive summary judgment, the Order should be amended to dismiss TNT's claims against Steven and Sondra Miltenberger personally because TNT's Lanham Act claims were pled only against Torch Electronics, LLC, and Torch Electronics, LLC, not Steven or Sondra Miltenberger personally, is alleged to be TNT's competitor.

1

## I. ANALYSIS

### A. The Court's Standard for Determining When a Statement Qualifies as a "Fact" Actionable Under the Lanham Act is Not Compatible with the Standard Set by the Eighth Circuit.

While the Court did cite *American Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387 (8th Cir. 2004), in the Court's March 28, 2025 Memorandum and Order (Doc. 312) ("Order"), the Court failed to properly address and correctly apply the Eighth Circuit's definition of an actionable "factual claim" under the Lanham Act from that very case. On page 29 of the Order, while discussing the framework of *Coastal Abstract Serv. Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999), the Court noted that "[w]hile the Eighth Circuit has not directly opined on the issue [raised in *Costal Abstract*], it has quoted *Coastal Abstract* for the general proposition that, to be actionable, the statement must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact' and not merely opinion." (Order, Doc. 312 at 30 (citing and quoting *Am. Italian Pasta*, 371 F.3d at 391 (quoting *Coastal Abstract*, 173 F.3d 731)). On the following page, the Court applies only part of the quoted language (i.e., "or [capable] of being reasonably interpreted as a statement of objective fact") to find the "representations on Torch's website and devices are clearly intended to be 'reasonably interpreted as a statement of objective fact' and not merely opinion." (Order, Doc. 312 at 30 (quoting *Am. Italian Pasta*, 371 F.3d at 391 (quoting *Coastal Abstract*, 173 F.3d 731)).

The problem with the Court's application is that it ignores the Eighth Circuit's discussion of an actionable "factual claim"[1] in the sentence directly before the *Costal Abstract* quote the Court relies on, as well as the Eighth Circuit's discussion of the proper standard thereafter. The proper standard is much narrower than the one applied by the Court. The Eighth Circuit makes clear that

---

[1] The Lanham Act's prohibition of false advertising only applies to false factual claims. *See* 15 U.S.C. § 1125(a)(1) (only "facts" are potentially actionable under the Lanham Act).

2

"[a] factual claim is a statement that '(1) admits of being adjudged true or false in a way that (2) admits of empirical verification.'" *Am. Italian Pasta*, 371 F.3d at 391 (citing and quoting *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227 F.3d 489, 496 (5th Cir. 2000)). This standard is incompatible with the broad standard the Court applied in the Order. The second portion of the *Costal Abstract* quote the Court relied upon must be limited and viewed through the lens of the Eighth Circuit's statement of the standard directly before it. Failure to do so, which the Court did here, creates a situation where the exception swallows the rule. The phrase "a statement of objective fact," as that phrase from *Coastal Abstract* is quoted by the Eighth Circuit, must be defined according to the Eighth Circuit's definition – one sentence before – of an actionable "factual claim."

The Eighth Circuit makes this crystal clear just a few lines after quoting *Coastal Abstract*. Two sentences after quoting *Coastal Abstract* as saying, in relevant part, that to be actionable a statement must be capable of "being reasonably interpreted as a statement of objective fact," the Eighth Circuit in *Am. Pasta* clarifies this standard by explaining, "If a statement is a specific, measurable claim or can be reasonably interpreted as being a factual claim, ***i.e., one capable of verification***, the statement is one of fact." 371 F.3d at 391 (emphasis added). It is undeniable the Eighth Circuit is specifically qualifying that the "or can be reasonably interpreted as being a factual claim" standard still requires a "*factual claim*," defined in line as "one capable of verification." *Id*. The Court applied the "reasonably interpreted" standard incorrectly, because the Court did not require the subject statements be "capable of [empirical] verification."

Torch's statements based on Torch's interpretations of Missouri's criminal gambling statutes are not "capable of [empirical] verification." As the Missouri Court of Appeals explained in the context of Torch's Cole County appeal, the burden of proof is different in the criminal context

3

in which these statutes are applicable and in the civil context at issue in that case (and in this one). The Court stated in the Order it believes evidence "reveals a material degree of chance [exists in the Torch devices] such that a jury could find literally false Defendants' unambiguous representation that 'chance has absolutely no role.'" (Order, Doc. 312 at 30). But without a finding that Torch's devices violate gambling laws, based on the *criminal* standard of "beyond a reasonable doubt," Torch's statements bearing on legality and chance are not "capable of verification" in this *civil* action. No jury in this case will be asked to find TNT has proven, beyond a reasonable doubt, Torch devices are illegal gambling devices.

While it remains unclear what the Court expects to put in front of a jury here, if the Court's intention is to have a jury in this civil case make determinations of *criminal* legality in a civil Lanham Act case, the Court will be heading into uncharted territory. The *Coastal Abstract* line of cases relate to *civil* regulations – not criminal laws. Defendants know of no case in the Lanham Act context where a court has attempted to impose liability for statements that relate to interpretations and opinions of a *criminal* statute. The Court failed to cite any such cases, and TNT has never presented any. Determining whether Torch devices are legal, and therefore whether Torch's interpretations of Missouri's criminal law applicable to Torch's devices are true or false, can only be accomplished in a criminal court of law applying the correct criminal evidentiary standard.

Torch has been operating openly in the State of Missouri for a decade, and no court has ever made such a finding. Until such time as that occurs, Torch's statements bearing on its interpretations of criminal law and the legality of Torch devices are not "capable of verification" and clearly cannot be "adjudged true or false in a way that [] admits of empirical verification,'"

4

which is the correct legal standard as explained by the Eighth Circuit. *Am. Italian Pasta*, 371 F.3d at 391.

> B. **The Court's Decision with Respect to TNT's Lanham Act Claims Cannot be Squared with the Court's Subsequent (and Correct) Holding that a Determination as to the Legality of Torch Devices Under Missouri Law is Unnecessary to Resolve TNT's Federal Claims.**

The Court's holding and rationale for dismissing TNT's Declaratory Relief claim cannot be squared with the Court's holding and rationale denying Defendants' Motion for Summary Judgment on TNT's Lanhanm Act claim. In relation to TNT's Count VII seeking declaratory relief, the Court correctly stated that "TNT [was] ask[ing] the Court to declare as a matter of law that Torch devices are illegal gambling devices and slot machines." (Order, Doc. 312 at 38). The Court went on to explain, "After careful consideration, the Court concludes that a federal declaratory judgment would offend principles of comity, particularly insofar as a declaration of state law is unnecessary to resolve TNT's federal claims here." (*Id.*). One page later, the Court again states the Court believes it is unnecessary in this case to make a determination of the legality of Torch devices under Missouri law. (*Id.* at 39). Specifically, the Court stated, "[W]hile the Court acknowledges the parties' desire for a specific declaration as to the legality of Torch devices under Missouri law, such a declaration is unnecessary to resolve TNT's federal claims, and the Court firmly believes that any such holding should issue from a Missouri appellate court given the importance of the state interest at issue." (*Id.*). The Court then goes on to further explain why it believes this case is not the proper vehicle for determining the legality of Torch's devices, specifically noting the "statewide political and procedural history of the parties' dispute is entirely different and far more complex [than cases TNT cited for the proposition the Court need not be constrained by principles of comity], and it originated and continues in various state offices and courts in Missouri." (*Id.* at 40). The Court goes so far as to say cases TNT cites "do not supply authority for this Court to

insert itself into a politically fraught state regulatory matter currently pending in multiple state trial courts." (*Id*. at 40-41).

The Court's reasoning, application, and conclusion here are absolutely correct. They are, however, incompatible with the Court's reasoning, application, and conclusion with respect to keeping TNT's Lanham Act claim alive. Specifically, in discussing TNT's ability to demonstrate causation, the Court finds that TNT can leap the hurdle of causation at the motion for summary judgment stage because "TNT's central premise [is] that Torch's competition is *unfair* because its *illegal* machines entice consumer dollars away from TNT's traditional games." (Order, Doc. 312 at 26-27 (emphasis in original)). The Court further explained, "TNT claims that it no longer generates enough revenue in overlapping locations precisely *because of* Torch's misrepresentations about the legality of its devices." (*Id*. at 27). The Court specifically rejected Torch's argument that "it simply bests TNT in fair competition by providing a superior product,"[2] because the Court specifically said TNT's theory was that Torch's devices were "*illegal*" under Missouri's criminal gambling statutes and, thus, were inherently unfair. (*Id*. at 26). Torch's question to the Court is this: **if TNT's underlying "central premise" supporting causation leading to direct alleged losses is that "Torch's competition is *unfair* because its *illegal* machines entice consumer dollars away from TNT's traditional games," then how is TNT supposed to *prove* and establish this causation theory premised entirely on a *claim* that Torch devices are, *in fact*, illegal under Missouri's criminal gambling statutes and thus unfair?** If the Court's position that there is no "authority for this Court to insert itself into a politically fraught state regulatory matter currently pending in multiple state trial courts" and any "declaration as to

---

[2] That is not exactly Torch's argument, but it is close enough to make the point that needs made here.

6

the legality of Torch devices under Missouri law . . . should issue from a Missouri appellate court given the importance of the state interest at issue" is to be taken seriously, then there is no pathway in this case for TNT to *prove* its "central premise" allegedly supporting causation. (*Compare* Order, Doc. 312 at 26-27 *to id*. at 39-41).

Those two positions, found in the same Order, seem impossible to square. Logically, for TNT to have any hope of establishing causation on its Lanham Act claim, TNT would have to prove TNT's "central premise," which the Court correctly noted necessarily *demands* that TNT conclusively prove Torch devices are, in fact, illegal under Missouri criminal gambling law. But the Court's discussion at the end of the Order specifically denying TNT's demand for a legality finding precludes TNT from satisfying that burden. If TNT cannot *prove* in this case Torch devices are, in fact, illegal under Missouri's criminal law (which TNT cannot do because TNT is not a criminal prosecutor and the standard of proof applicable to civil Lanham Act claims is a far cry from proof "beyond a reasonable doubt"), then TNT cannot prove the causation theory the Court correctly identifies as TNT's *only* causation theory. For the reasons explained in the section above, as well as those reasons correctly identified by the Court in pages 39-41 of the Order, this case is not the proper place for settling the parties' dispute regarding the legality of Torch devices under Missouri's criminal law.

### C. If the Court Does Not Dismiss TNT's Lanham Act Claims, the Court Should Clarify that Claims Against Steven and Sondra Miltenberger are Dismissed.

To the extent the Court allows any Lanham Act (or corollary state-based equivalent) claims to survive summary judgment, the Order should be amended to dismiss TNT's claims against Steven and Sondra Miltenberger personally. TNT's Lanham Act claims were pled only against Torch Electronics, LLC. (*See* Doc. 1 at 34 (Count I, Lanham Act, pled "**Against Defendant Torch**" (emphasis in original)). Sondra is merely an employee of Torch Electronics. Steven Miltenberger

7

is an owner and executive of Torch Electronics, LLC. TNT claims Torch Electronics, LLC, not Steven or Sondra Miltenberger personally, allegedly unfairly competes with TNT. TNT's Lanham Act/unfair competition claims should, if they are allowed to survive, be limited to claims exclusively against Torch Electronics, LLC.

## II. CONCLUSION

For the reasons stated above, as well as those in Defendants' Motion, Defendants ask the Court to reconsider certain aspects of the Order and dismiss TNT's unfair competition claims or, alternatively, dismiss Steven and Sondra Miltenberger personally.

Dated: April 4, 2025

Respectfully submitted,

**GRAVES GARRETT GREIM LLC**

By: _/s/ J. Aaron Craig_
Todd P. Graves #41319 (MO)
J. Aaron Craig #62041 (MO)
Chandler E. Carr #68836 (MO)
1100 Main Street, Suite 2700
Kansas City, MO 64105
Phone: (816) 256-3181
Fax: (816) 256-5958
tgraves@gravesgarrett.com
acraig@gravesgarrett.com
ccarr@gravesgarrett.com

**Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2025, I caused the foregoing was filed with the Court's electronic CM/ECF filing system, which automatically served counsel for Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-Op with a notice of filing the same.

                                                */s/ J. Aaron Craig*
                                                Attorney for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger