UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., ) | |
| d/b/a PLAY-MOR COIN-OP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-CV-330-JAR |
| ) | |
| TORCH ELECTRONICS, LLC, *et al.,* ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants' motion for reconsideration after the Court denied summary judgment on two of Plaintiff's claims and abstained from a third in this dispute between competitors in the retail amusement device industry. Upon review of the parties' arguments and for the reasons set forth below, Defendant's motion for reconsideration will denied with respect to Plaintiff's unfair competition claims (Counts I and II) and the individual Defendants. The motion will be granted with respect to Plaintiff's request for declaratory judgment (Count VII), but the Court will reserve ruling until after trial.

### BACKGROUND

The facts and procedural history of this case are set forth at length in the Court's Memorandum and Order on summary judgment. (Doc. 312). To summarize, Plaintiff TNT Amusements leases traditional arcade games in retail locations throughout Missouri. Defendant Torch Electronics leases "no-chance" gaming devices in the same market. A central issue in this case is whether Torch's games are illegal slot machines being operated in violation of Missouri gambling laws. That question turns on whether the devices have an element of chance, as

contemplated by Missouri law. Mo. Rev. Stat. § 572.010. Torch maintains that chance is not a factor because (1) the outcome of each turn of play is pre-determined in finite sequential pools in each theme and at each level and (2) players can use the "prize viewer" to ascertain the outcome of the next turn before electing to play. Accordingly, Torch advertises and represents to its customers and the playing public that its machines aren't gambling devices under Missouri law. TNT, on the other hand, contends that (1) the devices do contain an element of chance in that the entry point into each pool of outcomes is random and (2) multiple sources of legal and regulatory authority have deemed Torch devices illegal such that Torch's representations to the contrary are false or at least misleading.

In March 2023, TNT filed the instant complaint against Torch asserting two claims of unfair competition under the Lanham Act and Missouri common law (Counts I and II) and four counts alleging the conduct of a criminal enterprise, premised on the illegality of the machines, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts III-VI). TNT also sought a declaratory judgment, asking the Court to decide as a matter of law that Torch devices are slot machines and thus illegal gambling devices under Missouri law (Count VII).

Upon review of a voluminous record, the Court found the evidence sufficient to give rise to triable issues of fact on TNT's unfair competition claims. Specifically, Torch represented that its machines didn't involve chance and thus didn't meet the definition of gambling under Missouri law. Contrary to this representation, the undisputed expert evidence shows that Torch machines contain random entry points at each play level in each game theme, starting sequences of up to 100,000 outcomes in each pool, ultimately yielding as many as three million potential outcomes. Seeing no practical distinction between this technology and a random shuffle, a jury could reasonably find that Torch's machines involve an element of chance such that Torch's "no-

2

chance" representation is false. Additionally, the Missouri Court of Appeals,[1] the Missouri Gaming Commission, and appellate courts in other states have rejected the theory that a slot machine isn't a gambling device if it offers a prize viewer. Further, local law enforcement and prosecutors in several Missouri counties have expressed their view that no-chance prize-viewer devices are illegal and have pursued criminal charges against retail operators, at least one resulting in a conviction. Torch has offered to pay its customer's legal fees in the event of prosecution, demonstrating its awareness of legal peril. Torch's owner, Defendant Steven Miltenberger, is named on the Gaming Commission's list of known suppliers of illegal gaming devices. Torch was denied a business license based on the Commission's position that Torch devices are illegal. A federal court in Missouri has characterized Torch devices as slot machines. *Romano v. Torch Electronics, LLC*, No. 2:23-CV-04043-BCW, 2023 WL 9064602 (W.D. Mo. Aug. 21, 2023).

Given Torch's knowledge of these legal authorities and realities, the Court reasoned, a jury could reasonably find false or at least misleading Torch's representation that its machines don't meet the definition of a slot machine and are legal in Missouri. Based on the foregoing, the Court found ample evidence in the record to create a jury question as to whether Torch's advertising and assurances of legality were false and/or misleading enough to constitute unfair competition under the Lanham Act and Missouri common law. As such, the Court denied summary judgment on Counts I and II.

However, noting that the RICO Act was adopted to address organized crime and not ordinary commercial disputes, the Court granted summary judgment in Torch's favor on TNT's RICO claims (Counts III-VI). On these claims, the Court found the evidence in the record

---

[1] *City of Moberly v. Deskin*, 155 S.W. 842, 844-45 (Mo. App. 1913).

insufficient to demonstrate the criminal intent required to support RICO liability.[2] This is so given the higher burden of proof required for the underlying predicate acts.

Finally, on TNT's request for declaratory judgment (Count VII), the Court believed that it was appropriate to abstain from adjudicating as a matter of law that Torch devices are illegal because such a determination is unnecessary to the disposition of the case, and the ultimate issue was better left to Missouri state courts in the interest of comity.

Torch now asks the Court to reconsider its denial of summary judgment on TNT's unfair competition claims, asserting that the Court (1) misapplied Eighth Circuit precedent in finding Torch's representations actionable and (2) rendered inconsistent rulings by declining to declare Torch devices illegal yet allowing TNT's false advertising claims to proceed on that premise. Torch also asks the Court to dismiss the individual Defendants who own and operate Torch, Steven and Sondra Miltenberger.

## DISCUSSION

Legal Standard

A motion for reconsideration serves a limited function to correct manifest errors of law or fact or to present newly discovered evidence. *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1058 (8th Cir. 2025). It is not an appropriate vehicle for new legal theories. *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010). Whether to grant a motion for reconsideration lies within the Court's discretion. *Id*.

---

[2]   In its response to the present motion, TNT asks the Court to reconsider the grant of summary judgment on its RICO claims, asserting that the record contains enough evidence of intent to submit the question to the jury, and good faith is no defense against a violation of 18 U.S.C. § 1955 (conducting an illegal gambling business). The Court continues to believe that this is not a RICO case and declines to revisit the matter on Torch's motion here.

Actionability (Counts I and II)

In support of its motion for summary judgment on TNT's unfair competition claims, Torch argued that its representations concerning the legality of its devices are merely statements of opinion and thus not actionable. Absent Eighth Circuit precedent examining representations specifically involving legal status, the parties and the Court applied out-of-circuit precedent instructing that, when there is no clear and unambiguous authority on the legal issue in question, statements of the law by laypersons are considered opinions, not actionable statements of fact. *Coastal Abstract Service, Inc. v. First American Title Insurance. Co*., 173 F.3d 725, 731 (9th Cir. 1999); *Dial A Car, Inc. v. Transportation, Inc*., 82 F.3d 484, 489 (D.C. Cir. 1996). This precedent necessarily implies that a statement of law *can* be an actionable statement of fact when there *is* legal authority on the question. Such is the case here in that multiple sources of unambiguous legal and regulatory guidance squarely belie Torch's representations.

In a case *not* involving a statement of law, the Eighth Circuit quoted *Coastal Abstract* for the general proposition that, to be actionable, a statement must be specific and measurable and "capable of being proved false or of being reasonably interpreted as a statement of objective fact" as opposed to mere opinion. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004). Guided by this instruction, the Court found that Torch's representations are actionable insofar as they could be reasonably interpreted as statements of objective fact. For example, a decal on each Torch machine unequivocally claims that it "clearly does not meet the definition of gambling" and "does not fit any definition of 'gambling device' in the state of Missouri and is not prohibited for use by you." Other evidence shows that Torch assured customers and lobbied elected officials to accept the legality of its devices as an established fact confirmed by its legal and technical experts.

5

Given the unambiguous sources of law in the present record that were missing in *Coastal Abstract* and *Dial A Car*, combined with the confident factual tenor of Torch's representations of legality, the Court concluded that TNT's false advertising claims survived summary judgment.

In its motion for reconsideration, Torch contends that the Court failed to follow the Eighth Circuit's adjacent instruction in *Italian Pasta* stating that a factual statement must be capable of "empirical verification." *Id*. From here, Torch posits that the falsity of its representations can only be proven by such verification in the form of a criminal conviction. This is a curious assertion in light of the conviction of a Missouri retailer who operated no-chance prize-viewer devices manufactured by the same company who sources Torch.[3] Moreover, under *Coastal Abstract* and *Dial A Car*, the standard is whether there exists clear and unambiguous legal guidance by the relevant authorities. Here, there is at least enough such guidance to withstand summary judgment in the form of longstanding Missouri appellate precedent rejecting prize viewers as a loophole to evade gambling laws, the Missouri Gaming Commission's regulatory opinion deeming Torch devices illegal, *and* said criminal conviction.

Torch now ignores the important factual relevance of *Coastal Abstract* and *Dial A Car* and instead relies solely on inapposite *Italian Pasta* to assert that further empirical verification is required. But that case didn't examine representations of law; it simply distinguished factual claims (e.g., "made with semolina") from commercial puffery (e.g., "America's favorite"). *Id*. *Italian Pasta* only informs the Court here to the extent it adopts *Coastal Abstract*'s instruction that an actionable statement must be specific and capable of being proved false or *reasonably interpreted* as a statement of objective fact. *Id*. (citing *Coastal Abstract*, 173 F.3d at 731). Torch's representations meet that standard to create a triable issue for the jury.

---

[3]   *State v. Integrity Vending*, Case No. 19AE-CR00948-01, filed April 30, 2019, 6th Judicial Circuit of Missouri (Platte County).

The Court will deny Torch's motion for reconsideration on Counts I and II.[4]

Individual Defendants

Torch is wholly owned by Steven Miltenberger. His wife, Sondra, is Torch's only employee and helps run the business. (Doc. 242-7). For the first time, Torch asserts here that the Miltenbergers should be dismissed as individual defendants in this case because TNT's Lanham Act claim (Count I) names only Torch and, even though the Miltenbergers are named in the parallel Missouri claim (Count II), there is no evidence that they personally engaged in unfair competition. This argument is unpersuasive. Steven's own deposition and correspondence establish that he personally made the representations in question on behalf of Torch. Though the evidence suggests that Sondra's role in the company is more limited, both Miltenbergers are named in Count II of the complaint, and the Court need not decide the propriety of her joinder at this late stage, in this posture.  Again, a motion for reconsideration serves only to correct manifest errors of law or fact, not to take up new arguments. *Woodward* 132 F.4th at 1058; *Arnold*, 627 F.3d at 721. At this point in the case, any allocation of liability as among the Defendants will be left for the jury to decide.

Declaratory Relief (Count VII)

Lastly, Torch asks the Court to reconsider its decision to abstain from ruling on Count VII, in which TNT seeks a declaration that Torch devices are slot machines and illegal gambling devices. Torch argues that TNT's unfair competition claims are entirely dependent on that determination, so the Court's abstention on the issue is inconsistent with its denial of summary

---

[4]     In its reply brief, Torch asserts that the Court addressed causation only for purposes of standing but not on the merits. This is inaccurate. The Court simply abbreviated the issue the second time around after a full discussion in the previous section. See Doc. 312 at 33. The same facts support both steps and are sufficient to withstand summary judgment.

7

judgment on Counts I and II. The Court has studied this riddle throughout the case and ultimately concluded that a jury could assess whether specific factual representations are false or misleading (e.g., no element of chance by virtue of sequential outcome pools or the prize viewer) without dispositive instruction from the Court on the broader question of legality. The Court continues to believe that a jury can reach a verdict in this posture, given proper instructions. There is nothing inconsistent or incongruent in the Court's summary judgment order.

As expressed in its summary judgment order, the Court has been reluctant to insert itself into this politically fraught issue, in the interest of comity. However, the consequences of deference continue to accrue, not only for the parties but also for the industry, the state, and the gaming public. The record reflects that TNT has been lobbying against no-chance devices for over a decade. Criminal charges and civil suits have been languishing in state court for five years now.[5] In principle, abstention is appropriate when important state interests are implicated and the parties have an adequate remedy in state court. *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018). But an illusory remedy is not an adequate remedy.

Both parties have asked the Court to reach the ultimate issue in this case as to whether Torch devices meet the definition of gambling devices under Missouri law. The Court recognizes that the parties desire certainty and finality. Therefore, after much consideration, the Court will vacate its dismissal of Count VII but will reserve its ruling on this count until after trial, with the benefit of factual determinations by the jury.

---

[5] *State v. McNutt*, Case No. 20AB-CR03465, 20th Judicial Circuit of Missouri (Franklin County), filed Nov. 16, 2020; *Turntine v. Torch Elecs., LLC*, Case No. 20SL-CC03000, 21st Judicial Circuit of Missouri (St. Louis County), filed June 2, 2020.

8

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for reconsideration (Doc. 313) is **GRANTED in part** and **DENIED in part** as follows:

1. The motion is denied as to Counts I and II, which will proceed.

2. The motion is denied as to individual Defendants Steven and Sondra Miltenberger, who will remain named defendants.

3. The motion is granted as to the Court's dismissal of Count VII, which is vacated. The Court will rule on Count VII after trial.

Dated this 13th day of August, 2025.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE