**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a | ) | |
| PLAY-MOR COIN-OP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00330-JAR |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' OBJECTIONS TO PLAINTIFF TNT'S DEPOSITION DESIGNATIONS</u>**

Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger (collectively "Defendants" or "Torch") hereby assert the following objections to Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-op's ("TNT") Deposition Designations:

**TRACY HEAD**

With respect to TNT's deposition designations for Tracy Head, Defendants assert the following objections:

- Defendants object to the use of Tracy Head's deposition testimony for any use other than for proper impeachment at trial unless and until Tracy Head is demonstrated to be an unavailable witness pursuant to the Federal Rules of Civil Procedure. Tracy Head is not a party and, thus, his deposition represents hearsay unless and until an exception is proven to apply. *See* Fed. R. Evid. 801-03.

- Defendants reserve their rights to amend their objections to Mr. Head's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's

1

ruling on specific Motions in Limine that might apply to Mr. Head's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Head's designated testimony (indirectly or directly).

- 63:2-66:21 – Defendants object to these designations because the cited testimony consists of TNT asking the witness to confirm information stated in a document; TNT's designated testimony does not include testimony that lays proper foundation for the introduction of the documents that are being discussed in the designated testimony at issue here. *See* Fed. R. Evid. 901. Moreover, as was demonstrated during the parties' standing hearing, TNT's "move tickets" (which are being discussed in these particular lines of designated testimony) contain hearsay statements for which no hearsay exception applies. *See* Fed. R. Evid. 801-03. Accordingly, Defendants object to the cited testimony on grounds of a lack of proper foundation (Fed. R. Evid. 901) and hearsay (*id.* at 801-03).

- 76:24-77:4 – Defendants similarly object to these designations because the cited testimony alludes to multiple "work orders" that are not specifically identified in designated testimony. Moreover, this testimony fails to lay proper foundation for whatever specific work orders are allegedly being addressed. *See* Fed. R. Evid. 901. Accordingly, Defendants object to the cited testimony on grounds of a lack of proper foundation and hearsay. *See* Fed. R. Evid. 901 and 801-03.

- 117:12-118:12 – Defendants object to these designations pursuant to Fed. R. Evid. 401, 402, and 403. Tracy Head no longer works as a manager for any retail location where TNT alleges it directly competes with Torch. The fact that Tracy Head currently works at a different gas station that has Torch devices in the store is irrelevant and does not have any tendency to make a fact material to the outcome of the case more or less probable. The testimony should, thus, be

excluded under Fed. R. Evid. 401 and 402. The same is true regarding the alleged amount of money that Tracy Head's current retail location might make from placing Torch devices; that location is, again, not a location where TNT alleges it competes/has competed with Torch. Rule 403 would also prohibit TNT from using Mr. Head's refusal to disclose a specific amount that his current location allegedly makes from placing Torch devices. That is precisely the type of information the parties agreed TNT would not be allowed to seek or receive in discovery unless and until TNT had success on the merits on some claim would potentially expose Torch to an award for punitive damages or disgorgement, which has not yet occurred. (*See* Doc. 58). Such testimony has no probative value but has substantial potential to unfairly prejudice Defendants, confuse the issues, and mislead the jury. *See* Fed. R. Evid. 403.

### Kevin Morse

With respect to TNT's deposition designations for Kevin Morse, Defendants assert the following objections:

- Defendants object to the use of Kevin Morse's deposition testimony for any use other than for proper impeachment at trial unless and until Kevin Morse is demonstrated to be an unavailable witness pursuant to the Federal Rules of Civil Procedure. Kevin Morse is not a party and, thus, his deposition represents hearsay unless and until an exception is proven to apply. *See* Fed. R. Evid. 801-03.

- Defendants reserve their rights to amend their objections to Mr. Morse's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Morse's designated testimony

(indirectly or directly), or (c) any other issue that applies to Mr. Morse's designated testimony (indirectly or directly).

• As an overarching objection that applies to numerous TNT designations, Keven Morse, who was designated as Banilla's corporate representative, has never been designated by TNT as a potential expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C) (i.e., not as a retained expert and not as a non-retained expert. However, much of the testimony that TNT solicited from Mr. Morse that TNT now attempts to designate represents expert opinion testimony pursuant to Fed. R. Evid. 702 and that extends beyond the permissible scope of fact witness opinion testimony allowable pursuant to Fed. R. Evid. 701. Defendants' counsel repeatedly objected to various questions during Mr. Morse's deposition on the basis that the question called for expert opinion testimony. (*See, e.g.,* Morse Dep., 20:22-21:3). Despite asserting this objection throughout Mr. Morse's deposition, TNT never attempted to lay any sort of foundation or qualifications for believing that Mr. Morse was qualified to provide reliable and admissible opinion testimony that would fall within Rule 702's purview and pass the reliability test set forth in *Daubert v. Merrel Dow Pharmaceuticals*, 509 U.S. 579 (1993). Again, to date, TNT has never disclosed Mr. Morse as a retained or non-retained expert. It is also clear that the time for such disclosures has long since passed (initial expert disclosures were due November 6, 2023; Mr. Morse was deposed on January 10, 2024; *Daubert* briefing was due early last year). Accordingly, Defendants had no obligation to file a *Daubert* motion seeing to exclude Mr. Morse's expert opinion testimony because Fed. R. Civ. P. 37(c)(1) makes clear that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." TNT cannot demonstrate that TNT's failure to previously designate Mr. Morse as, at

4

least, a non-retained expert witness that may give opinion testimony under Fed. R. Civ. P. 26(a)(2)(C) was either (a) "substantially justified" (Mr. Morse was deposed more than a year before TNT's deposition designations) or (b) harmless (*Daubert* deadlines have passed, meaning unless the Court wants to reopen *Daubert* briefing on the eve of trial, TNT's failure to timely disclose has prevented Defendants from having a meaningful opportunity to challenge either Mr. Morse's qualifications or the reliability of his specific expert opinions at the *Daubert* challenge stage). Consequently, all of Defense counsel's objections regarding improper expert opinion testimony should be sustained and related testimony that TNT desired to designate should be stricken.

Defendants raised this exact issues in response to TNT's citations to Mr. Morse's Deposition testimony in support of TNT's Statements of Fact in support of TNT's Motion for Summary Judgment. Defendants' same objections then apply equally now. Accordingly, Defendants will repeat those objections in full here:

> Defendants dispute that Kevin Morse, as Banilla Games' representative, is qualified to offer expert opinion testimony regarding the technical nature of the manner in which Banilla's electronic devices operate. Fed. R. Evid. 702; Fed. R. Civ. P. 56(c)(2). Kevin Morse lives in Greenville, North Carolina, and is presumably not going to testify live at trial (Morse is certainly outside the Court's subpoena power and TNT has no means by which to compel Morse to appear at trial). (*See* Cover Page of Kevin Morse's Deposition). Despite these facts, TNT failed to lay any foundation during Morse's deposition that would allow TNT to qualify Morse as an expert witness pursuant to Fed. R. Evid. 702 to offer expert opinion testimony regarding his opinions about how Torch's Banilla devices operate. It is also entirely unclear from Morse's testimony what opinions he might hold based on his own personal knowledge versus hearsay statements and opinions by others within Banilla regarding expert opinions about the technical manner in which Banilla's devices operate. *See, e.g., Erickson v. Pope County, Minn.*, Case No. 19-cv-3061, 2021 WL 9772304, at *6 (D. Minn. June 14, 2021) ("[A] party is not permitted to seek Rule 30(b)(6) deposition testimony in the form of expert opinions or legal conclusions."); *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907-08 (5th Cir. 2010) (holding a corporate representative may not testify to matters outside his own personal knowledge "to the extent that information [is] hearsay not falling within one of the authorized exceptions") (quoting *Brazos River Auth. v. GE*

5

> *Ionics, Inc.*, 469 F.3d 416, 434-35 (5th Cir. 2006) ("Of course, in testifying as to matters within [the company's] corporate knowledge or subjective belief, [an expert] cannot make comments that would otherwise require expert qualifications.")); *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) ("What is essentially expert testimony, however, may not be admitted under the guise of lay opinions . . . . Such a substitution subverts the disclosure and discovery requirements . . . and the reliability requirements for expert testimony as set forth in *Daubert* . . .") (internal citations omitted).

(*See* Doc. 266 at 5 (Defendants' Response and Objections to TNT's SOF 20)). The Court did not issue a ruling specific to this objection. Defendants also note that TNT has its own technical expert who was disclosed to offer opinions regarding how Torch devices operate, and Defendants have their own technical expert who was disclosed to offer similar opinions. As the Court has noted multiple times, the parties' respective experts generally agree regarding how Torch devices function and operate. Thus, to the extent TNT had properly disclosed Mr. Morse as an expert or laid proper foundation for either Mr. Morse's general qualifications or the reliability of any of his technical or expert opinions (which TNT did not do), Mr. Morse's expert opinion testimony should nonetheless be excluded pursuant to Fed. R. Civ. P. 403 as cumulative and a waste of time.

Because this problem was ubiquitous throughout Mr. Morse's deposition and portions of the deposition transcript TNT has designated, Defendants will list below all portions of TNT's designations to which the above objections would apply. To the extent specific questions or testimony are objectionable on additional grounds, Defendants will note such additional objection in a parenthetical:

- o 20:22-21:14

- o 22:19-23:6

- o 31:19-32:5 (Defendants note that TNT only designated 31:19-25, which is only TNT's counsel's question – Mr. Morse's answer, which follows Defendants'

counsel's objection, is found at 32:5, which was not designated but would nonetheless be objectionable if TNT had designated it).[1]

- o 39:23-43:16 (defense counsel objected to every question here)

- o 44:10-45:18 (same)

- o 46:15-49:18 (same)

- o 57:25-58:23 (same)

- o 60:1-62:6 (same)

- o 62:17-65:5 (same)

- o 70:18-72:16 (This designation starts with Mr. Morse's answer to a question, which was objected to on the grounds discussed above; this designation ends with TNT's counsel's question and Mr. Morse's answer (which was also objected to) was not included in the designation. Nevertheless, the entirety of the designation is improper, objectionable, and should be excluded) Defendants, as they did during Mr. Morse's testimony, further object that the questions contained within this designation were ambiguous and represent improper hypotheticals for a lay witness who has not been qualified as an expert who can offer opinion testimony that falls within the scope of Fed. R. Evid. 702.

- o 73:1-12 (Defendants, as they did during Mr. Morse's testimony, further object that the question contained within this designation was ambiguous and represent improper hypotheticals for a lay witness who has not been qualified as an expert).

---

[1] Defendants would point out that at 39:4-21 of Mr. Morse's deposition counsel for the parties agreed that defense counsel could have a running objection based on an understanding that if defense counsel said "objection, form" it would be understood as objecting that a question "Calls for improper opinion testimony."

- o  74:16-75:17 (defense counsel objected to every question here)

- o  81:2-12 (In addition to objecting to this question on grounds it called for improper expert testimony, Defendants objected to this question on grounds it called for speculation and was ambiguous. Those same objections currently apply).

- o  81:13-82:16

- o  90:25-91:7 (Defendants also object that TNT's question calls for speculation).

- o  91:8-15 (Defendants also object that TNT's question was vague and ambiguous in that "anything that a player can do" is too broad and, more generally, it is unclear precisely what is being asked of the witness).

- o  91:16-92:4

- o  93:6-94:1 (defense counsel objected to every question here)

- o  128:9-131:17 (this entire line of questioning called for both improper expert testimony and improper legal conclusions (which is another way of saying the same thing). Both Defendants' counsel and Banilla's counsel objected to this line of questioning, as is apparent in the lines TNT has designated).

- o  133:12-136:9 (same – just to make Defendants' point, TNT literally asked Mr. Morse "whether or not the No chance deices are legal devices under Missouri law," which obviously is not a proper question for a lay witness and calls for improper legal opinion testimony on an ultimate issue).

- o  137:10-138:3 (This designated testimony was objected to during the deposition and consists of Mr. Morse attempting to clarify his prior opinion testimony on a very specific technical question regarding functionality. Mr. Morse's designated testimony makes clear that Mr. Morse lacked personal knowledge of the

information he was describing and that his response was based entirely on inadmissible hearsay discussions with someone else within Banilla during the break. This testimony should be excluded because it is improper expert opinion testimony under Rule 702 by a witness that admittedly lacked personal knowledge and qualifications sufficient to support the opinion and a witness that TNT failed to qualify or disclose as an expert witness).

- o 139:3-140:7 (all questions were objected to, and those objections apply here).

- o 318:10-319:5

- o 320:10-17

- 101:24-102:4 – Defendants object to this designated testimony pursuant to Fed. R. Evid. 401, 402, and 403. The designated testimony directly prior to this designation is sufficient to establish Banilla sells its "No Chance Games" machines to Torch. Given the parties' agreement that discovery regarding evidence beyond the scope of the agreed locations or may be useful only for disgorgement (Doc. 58), the designated testimony is irrelevant to any issue that will be tried in the upcoming hearing. Furthermore, as Mr. Morse's answer makes clear, Mr. Morse was speculating based on "[a] vague understanding" when he offered his response, which should be sufficient grounds standing alone to exclude this question and answer. Defendants would also point out that during a subsequent discussion between counsel that followed directly after the cited testimony (*see* 102:5-24), defense counsel pointed out this same issue to TNT's counsel and TNT's counsel agreed to withdraw similar problematic questions).

- 145:21-147:25 – Defendants object to this entire line of designated questioning on grounds of relevancy (Fed. R. Evid. 401 and 402), lack of proper foundation vis-à-vis the document being discussed (Fed. R. Evid. 901), and Rule 403. This line of questioning is based on TNT's

counsel reading from a document that was not properly introduced such that foundation was laid for its introduction or use with this witness. *See* Fed. R. Evid. 901. That is made expressly clear in lines 147:4-10 when Mr. Morse admits he has no independent knowledge of this e-mail or its context.

- 148:11-150:6 – Defendants similarly object to this line of questioning, which is, again, based on questioning around an email for which no proper foundation for admission was laid with the witness and for which the witness disclaims having ever seen previously. *See* Fed. R. Evid. 901.

- 152:19-154:155:1 – Defendants similarly object to this line of question, which is based on questioning around an email for which no proper foundation for admission was laid with the witness. *See* Fed. R. Evid. 901. The cited testimony, specifically at 154:21-155:1, was also objected to as calling for (and eliciting) speculative testimony regarding what Mr. Miltenberger was allegedly meaning in the email (for which no foundation was laid, Fed. R. Evid. 901) being discussed; that objection is included here as well).

- 157:10-158:23 – Defendants similarly object to this line of question, which is based on questioning around an email for which no proper foundation for admission was laid with the witness. *See* Fed. R. Evid. 901. The cited testimony consists exclusively of opposing counsel reading from an exhibit for which no proper foundation was laid and the witness testified he knew nothing about. *See* Fed. R. Evid. 901.

- 163:7-164:1 – Defendants object to TNT's designation of this testimony based on Rules 401, 402, and 403. The cited testimony relates to Mr. Morse volunteering information regarding a prior discussion about possibly creating a new game called "Peek n Play," which Mr. Morse confirmed never happened. Thus, this testimony regarding a game Mr. Morse testified was

never developed is irrelevant to any fact or issue for trial and admitting this testimony would serve only to confuse or mislead the jury while unfairly prejudicing Torch.

### Sondra Miltenberger

With respect to TNT's deposition designations for Sondra Miltenberger, Defendants assert the following objections:

- Defendants reserve their rights to amend their objections to Mrs. Miltenberger's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mrs. Miltenberger's designated testimony (indirectly or directly), or (c) any other issue that applies to Mrs. Miltenberger's designated testimony (indirectly or directly).

- 20:11-12 - Defendants object to this question and answer pursuant to Fed. R. Evid. 403, 401, and 402. The question directly before this and the questions designated directly after this are more than sufficient to make the point the Mrs. Miltenberger receives a salary from Torch as an employee. The amount Mrs. Miltenberger makes as an employee is not relevant to any issue to be tried. Moreover, any arguable and minimal probative value to the dollar amount Mrs. Miltenberger makes per week as an employee is drastically outweighed by the prejudicial effects of allowing such testimony given the potential disparity between the average income of juror and the relatively large weekly salary that Mrs. Miltenberger makes as a Torch employee.

- 54:5-6 – Defendants object to the question, "Do you know what his [Mr. Miltenberger's] salary is," and the response, "Yes, It's 5,000 a week," on the same ground as stated directly above with respect to page 20:11-12. This testimony should be excluded pursuant to Rules 401, 402, and 403.

- 73:7-11 – Defendants object to this designated testimony because it represents only TNT's counsel's question. TNT did not designate Mrs. Miltenberger's response to the question. In any case, Defendants' counsel objected to the question during the objection and the question remains improper because the question was phrased in such a manner as to require expert legal opinion testimony to form a cogent response. In the same portion of designated testimony, Mrs. Miltenberger makes clear that she does not have an understanding of how Torch devices work. (*See* 72:3-6.) She also is not a lawyer and is not qualified to offer any opinions touching on legality, which TNT's counsel's question attempted to slyly sneak into the objected-to question. Mrs. Miltenberger is also not an employee with authority to bind Torch Electronics, LLC.

- 100:13-103:12 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403. This line of questioning all relates to irrelevant issues about where and how Torch does its banking. Defendants assume this testimony was designated when TNT still had live civil RICO claims. Regardless, this testimony is irrelevant to TNT's Lanham Act claims. Furthermore, any minimal probative value is substantially outweighed by the prejudice to Defendants caused by having potential jurors focus on how many bank accounts Torch has or where/how it banks.

- 107:8-24 – Defendants object to this line of question as being based on inadmissible hearsay (FRE 801-03) (i.e., alleged "news articles" by uncited sources and without reference to any exhibit) for which no hearsay exception applies and both the questions are improperly and impermissible pursuant to Fed. R. Evid. 403 because they improperly suggest that because there are uncited and non-specific hearsay news articles where someone expressed an opinion that Torch devices are illegal that Torch devices are, thus, actually illegal. This line of questioning has no probative value but his highly and unfairly prejudicial to Defendants.

- 124:10-125:10, 126:13-127:16, 127:24-25, 130:6-20 – Defendants object to this line of questioning because it is based entirely on TNT's counsel showing Mrs. Miltenberger photographs for which TNT has failed to lay proper foundation to establish those photographs admissibility (Defendants still have no idea who took those photographs, where they came from, what was actually occurring at the time the photographs were taken – Defendants do, however, has a good faith basis to believe that these photographs were staged by political actors). Regardless, TNT must lay proper foundation for the photographs that it is asking Mrs. Miltenberger about at 124:10-125:10 before such testimony may be admitted into evidence. *See* Fed. R. Evid. 901.

Further, Defendants object pursuant to Rules 401, 402, and 403 to the admission of testimony regarding children allegedly playing Torch devices. None of TNT's Lanham Act claims have anything to do with children playing Torch devices. TNT has not evidence that children do, in fact, play Torch devices (the objectionable photographs for which there is no proper foundation pursuant to Fed. R. Evid. 901 to establish admissibility are insufficient to establish this issue). There is no probative value to such lines of questioning, but there is a substantial risk that such questioning, regardless of the answers to such questions, would unfairly prejudice the Defendants.

- 130:21-132 – Defendants object to this line of questioning, which relates to preventing "problem gamblers" from using Torch devices, on the basis Fed. R. Evid. 401, 402, and 403. This line of questioning is not relevant to TNT's Lanham Act claims. This line of questioning is also, obviously, misleading in that it suggests via use of the phrase "problem gamblers" that Torch devices are, in fact, gambling devices, which is something TNT has admitted TNT would have to prove at trial to have a chance of succeeding on its Lanham Act claims. Furthermore, there is no probative value to such line of questioning, yet there is a substantial likelihood of unfair prejudice to Defendants from allowing this line of questioning.

13

- 133:24-135:2 – Defendants object to this line of question pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. Mrs. Miltenberger's opinions regarding the legality of Torch devices in this cited testimony is irrelevant to whether Torch devices are, in fact, legal under Missouri's criminal gambling laws. TNT did not disclose Mrs. Miltenberger as a potential witness who would provide expert opinion testimony regarding how Torch devices function, Missouri's criminal gambling laws, or whether Torch devices are legal under Missouri law and she is not qualified to answer any of those questions. Furthermore, allowing this line of questioning has no probative value but does have a high likelihood of confusing or misleading the jury and unfairly prejudicing Defendants.

- 142:1-10, 142:19-143:13 – Defendants object to this line of questioning regarding Mr. Miltenberger's prior work, which was sought just to get Mrs. Miltenberger to admit she believed Mr. Miltenberger's prior employer, Accel Entertainment, is an Illinois "gambling" company. The fact that Mr. Miltenberger previously worked for a company that operates completely different games in Illinois under Illinois gaming laws is not relevant to or probative of TNT's Lanham Act claims. There is, however, a high likelihood that such testimony and evidence improperly misleads the jury into believing Torch devices and Accel Entertainment's devices are similar or the same as Torch devices, which they are not, or that they are gambling devices because that was Accel's line of business. For the same reason, this line of questioning would be unfairly prejudicial to defendants. Such questioning and testimony should be excluded pursuant to Fed. R. Evid. 401, 402, and 403.

**Cody Hanavan**

With respect to TNT's deposition designations for Cody Hanavan, Defendants assert the following objections:

14

- Defendants object to the use of Cody Hanavan's deposition testimony for any use other than for proper impeachment at trial unless and until Cody Hanavan is demonstrated to be an unavailable witness pursuant to the Federal Rules of Civil Procedure. Cody Hanavan is not a party and, thus, his deposition represents hearsay unless and until an exception is proven to apply. *See* Fed. R. Evid. 801-03.

- Essentially all of Mr. Hanavan's deposition testimony relates to issues of the legality of Torch devices under Missouri law. Defendants continue to believe this Court is the correct venue for trying the legality of Torch devices under Missouri's criminal laws. As the Court previously found, and Defendants agree, the cases to which TNT cited previously in support of its request to determine the legality of Torch devices "do not supply authority for this Court to insert itself into a politically fraught state regulatory matter currently pending in multiple state trial courts." (Order, Doc. 312 at 50-41; *see also* Defendants' Memorandum in Support of Their Motion for Reconsideration, Doc. 314 at 6 ("The Court's reasoning, application, and conclusion here are absolutely correct.")).  Defendants reserve their rights to amend their objections to Mr. Hanavan's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Hanavan's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Hanavan's designated testimony (indirectly or directly). Defendants' designations and counter-designations specific to Mr. Hanavan are made subject to and without waiving Defendants' overarching objection to using this civil case to make declarations or determinations regarding whether Torch devices are legal under Missouri's criminal law.

- TNT designated 23:24-24:24 and 25:9-25:22. Line 24:24 is a partial question, "Well you were previously asked by," and line 25:9 is an answer by Mr. Hanavan, "No." Defendants assume this was a mistake in designation. In any event, lines 24:25-25:8 should be included in the designation for completeness.

- 76:20-25 – Defendants object to Mr. Hanavan's testimony saying Torch devices "kind of look and feel like a game that I would evaluate in a casino" and TNT's related follow up question and Mr. Hanavan's response to the same. This testimony should not be allowed pursuant to Fed. R. Evid. 403 because it is likely to confuse and mislead juror, has little to no probative value, and is likely to substantially prejudice Defendants because, as Mr. Hanavan also made clear, Torch devices operate very differently from electronic slot machines found in casino, the MCG lacks authority to regulate Torch devices (which TNT does not claim have ever been placed in a Missouri casino or Bingo hall where MCG has regulatory authority), and Mr. Hanavan's subjective perception of what Torch devices "kind of look and feel like" is speculative, irrelevant to TNT's Lanham Act claims, confusing, and potentially misleading.

- 85:12-86:7 – As defense counsel noted during the deposition, this designated testimony stems from questions that ask the witness to speculate based on incomplete and improper hypotheticals. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded.

- 90:7-15 – Defendants note lines 90:13-15 represent TNT's counsel's question to Mr. Hanavan and that TNT has failed to designate Mr. Hanavan's response. Accordingly,

Defendants object to lines 90:13-15. To the extent TNT intended to also designate lines 16-18, Defendants object to the designations of 90:13-18 because TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. Mr. Hanavan's personal belief or opinion regarding what his agency might do "[i]f there were a Torch device in a bingo hall in Missouri" is speculative, calls for Rule 702 opinion testimony, is not probative of TNT's Lanham Act claims, and is likely to mislead or confuse the jury while unfairly and substantially prejudicing Defendants (i.e., violates Fed. R. Evid. 403).

- 91:3-6 – Defendants object to this designation because Mr. Hanavan is not qualified to offer a definitive legal definition of "chance" – whatever his opinion might be on that issue, it is clear he is not a lawyer, there are numerous possible ways to define "element of chance," and it is the Court's job – not any witness's job – to say what the law is. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. This testimony should also be excluded pursuant to Rule 403 because it is confusing, likely to mislead the jury regarding the law, and likely to substantially prejudice Defendants while having little to no probative value.

- 92:2-9 – Defendants object to this designation pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 403 and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to

Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. This testimony should also be excluded pursuant to Rule 403 because it is confusing, likely to mislead the jury regarding the law, and likely to substantially prejudice Defendants while having little to no probative value.

- 97:1-10 – Defendants object to this designated testimony pursuant to Fed. R. Evid. 401, 402, and 403. Mr. Hanavan's speculative testimony regarding the number of "Torch" devices in Missouri is (a) factually inaccurate based on information Torch as provided to TNT, (b) seems to include devices owned by other companies or individuals that have no affiliation with Torch, yet those devices get improperly labeled as "Torch" devices in a misleading and confusion fashion because Torch was one of the first movers and has been the focus of numerous legislative initiative, news reports, and other media coverage, and (c) is completely irrelevant to any claim or issue to be addressed in a potential upcoming Lanham Act trial. The same is equally true of Mr. Hanavan's opinions regarding tax revenue. No Lanham Act claim depends on tax revenue or tax issues. This testimony should be excluded pursuant to Rules 401, 402, and 403 because it is confusing, likely to mislead the jury regarding the law, and likely to substantially prejudice Defendants while having no probative value.

- 98:5-99:23 – Defendants object to these designations pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely

within the scope of Fed. R. Evid. 702 and, thus, should be excluded. This testimony should also be excluded pursuant to Rule 403 because it is confusing, likely to mislead the jury regarding the law, and likely to substantially prejudice Defendants while having little to no probative value (Torch is not a casino, and Mr. Hanavan's opinions regarding regulations specific to casinos are irrelevant and unfairly prejudicial; none of TNT's claims related to "problem gamblers" or children allegedly playing Torch devices, and, as explained above, allowing any witness to discuss those issues would violate Rule 403).

- 102:20-103:7; 104:1-14 - Defendants object to these designations pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. This testimony should also be excluded pursuant to Rule 403 because it is confusing, likely to mislead the jury, and likely to substantially prejudice Defendants while having little to no probative value.

- 104:22-105:20 – Defendants object to the designated testimony pursuant to Fed. R. Evid. 401, 402, 403, 404, and 609. The fact that Mr. Hanavan is aware that some law enforcement officers, who are admittedly not lawyers and do not get to decide what the law is, hold the opinion Torch devices are illegal such that they have decided to confiscate Torch devices at various locations does not mean Torch devices are, in fact, illegal or that such confiscations were justified or legal. Such evidence is irrelevant, unfairly prejudicial, and represents improper character evidence.

- 106:21-108:18 - Defendants object to these designations pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. This testimony should also be excluded pursuant to Rule 403 because it is confusing, likely to mislead the jury, and likely to substantially prejudice Defendants while having little to no probative value. Further, Defendants specifically object to Mr. Hanavan's (or any other witnesses/counsels) use of the word "wagered" or "wager" in relation to Torch devices. Such language should be prohibited under Rule 403 because such language is likely to mislead and confuse the jury and unfairly prejudice Defendants because "wager" is inherently tied to the concept of gambling and suggest Torch devices are gambling devices, which is an issue TNT believes it can try and prove in the upcoming trial. There are other ways to describe allocating their money to play a Torch device without using "wager" or other improperly suggestive or misleading terms.

- 113:10-15 - Defendants object to these designations pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded.

- 118:8-120:2 – Defendants would begin by noting 118:8, which starts this designation, is Mr. Hanavan's answer and the question was not designated. Secondarily,

Defendants object to these designations pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702. TNT did not designate Mr. Hanavan as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Hanavan that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. The cited testimony is based upon prior testimony reading and reviewing documents/evidence that is not designated and would be needed to understand the designated testimony. The questions themselves are objectionable, as evidenced by defense counsel's objections, which are included by reference here and deserve a ruling. And Mr. Hanavan's testimony makes clear his answers are speculative opinion testimony (e.g., "my belief would be" . . . . "I think that's why they [unknown consumers] would do it") that would fall within Rule 702 (as well as being inadmissible solely for being admittedly speculative because Mr. Hanavan can only guess why any given person would chose to play one or more turns on a Torch device), yet TNT failed to ever designate Mr. Hanavan as a witness TNT might rely on to provide expert testimony (either under Rule 26(a)(2)(B) or (C)). Mr. Hanavan is clearly unqualified to speculate about why any given consumer or potential player of Torch device chooses to play a game on a Torch device or what they subjectively think, believe, or find motivating. Such testimony is not based on the witness' personal knowledge. Further, Defendants specifically object to Mr. Hanavan's (or any other witnesses/counsels) use of the word "wagered" or "wager" in relation to Torch devices. Such language should be prohibited under Rule 403 because such language is likely to mislead and confuse the jury and unfairly prejudice Defendants because "wager" is inherently tied to the concept of gambling and suggest Torch devices are gambling devices, which is an issue TNT believes it can try and prove in the upcoming trial. There are other

21

ways to describe allocating their money to play a Torch device without using "wager" or other improperly suggestive or misleading terms.

### Nick Farley

With respect to TNT's deposition designations for Nick Farley, Defendants assert the following objections:

- Defendants object to the use of Nick Farley's deposition testimony for any use other than for proper impeachment at trial. Nick Farley is expected to testify at trial. Nick Farley is not a party to this case. Nick Farley's deposition testimony is, thus, inadmissible hearsay for which no exception applies vis-à-vis any desire on TNT's part to use any portion of Nick Farley's deposition testimony affirmatively in a manner that is not tied to properly administered impeachment of testimony he gives live from the stand or used properly for the purposes of refreshing recollection. This objection covers and applies to all designations TNT has made to Nick Farley's testimony, making further and more specific objections pointless. *See* Fed. R. Evid. 801-03.

- Defendants reserve their rights to amend their objections to Mr. Farley's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Farley's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Farley's designated testimony (indirectly or directly).

- In the unlikely event Mr. Farley is subsequently declared to be an unavailable witness, Defendants reserve their right to make appropriate counter-designations to TNT's proposed designations.

- As Defendants have previously noted in *Daubert* briefing and elsewhere, and as the Court has already made clear in its ruling on the parties' cross-*Daubert* motions, neither party's technical expert will be allowed to offer opinions regarding the ultimate question of whether Torch devices are illegal under Missouri law. (Order, Doc. 311 at 6 and 9 ("As discussed during the *Daubert* hearing on October 1, 2024, and further confirmed in the parties' post-hearing briefs, the parties now agree that neither of their experts may opine on the ultimate question of whether Torch devices are illegal under Missouri law."; "The Court orders that the parties' respective experts shall not offer legal conclusions or opinions as to the legality of Torch devices under Missouri law. However, these witnesses may offer expert testimony explaining the technical mechanics of the devices"). Defendants note that much of the testimony TNT has designated within Nick Farley's deposition violates the Court's order because it constitutes opinion testimony regarding the legality of Torch devices. (e.g., 59:19-91:14 (all of TNT's designations in this range) discussing legal opinions and cases related to various gambling devices TNT alleges are similar to Torch devices, how various court of other jurisdictions rules on those cases (evidence Defendants object to pursuant to Fed. R. Evid. 403 as well), and Mr. Farley's opinions regarding those legal decisions and why he believes they should not be applied to Torch devices operating in Missouri – none of this testimony relates to technical expert opinions upon which both party's experts generally agree). Defendants obviously object to TNT's designation of any deposition testimony that violates the Court's prior Order (Doc. 311). But it is Defendants' understanding based on conversations with TNT's counsel during Motion in Limine meet and confer discussions that TNT intends to have the Court revisit its Order (Doc. 311). Defendants will raise these issues and objections more fully in that context.

**Steven Miltenberger (Dec. 15, 2023)**

With respect to TNT's deposition designations for Steven Miltenberger, Defendants assert the following objections:

- Defendants reserve their rights to amend their objections to Mr. Miltenberger's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Miltenberger's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Miltenberger's designated testimony (indirectly or directly).

- Defendants object to the designations set forth below pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702, because this testimony improperly seeks Mr. Miltenberger's legal conclusions and opinions on the law. Mr. Miltenberger is not a lawyer, and his views on Missouri law are not proper lay opinion testimony. TNT did not designate Mr. Miltenberger as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Miltenberger that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. Specifically:

  - 109:2-110:10

  - 110:14-111:10

  - 111:20-113:2

  - 274:22-276:7

  - 318:10-319:5

24

      o  320:10-32

- Defendants object to TNT's designations regarding seizures of machines and other law enforcement activity pursuant to Fed. R. Evid. 401, 402, 403, 404, and 609. Evidence of law enforcement activity, none of which even led to prosecution, much less a criminal conviction, against Torch, is irrelevant, highly and unfairly prejudicial, and violative of FRE 404 and 609. These objections specifically apply to the following designations:

      o  237:23-240:6

      o  295:6-296:19

      o  298:5-14

      o  302:2-303:18

- 23:5-11 – Defendants object to this question and answer pursuant to Fed. R. Evid. 401, 402, and 403. TNT's arguments and positions in this case have been based on TNT's opinions on Missouri law, Torch Electronics, LLC the Missouri entity, and various Missouri locations and Missouri issues. Torch Electronics, LLC, the Tennessee entity, is a separate and distinct company. The Tennessee business by the same name has nothing to do with the issues in this case nor the relief sought by TNT. Nor does TNT do business in TNT or compete with the Tennessee Torch Electronics, LLC. Nor are the Tennessee statutes and regulations that the Tennessee Torch Electronics, LLC business must be cognizant of identical to or even substantially similar to the Missouri statutes TNT has argued about here. In short, the Tennessee Torch Electronics, LLC business is not relevant to any issues in this case, and including these issues will confuse and mislead the jury.

- 23:23-24:3 – Defendants object to this question and answer pursuant to Fed. R. Evid. 401, 402, and 403. TNT's arguments and positions in this case have been based on TNT's

opinions on Missouri law, Torch Electronics, LLC the Missouri entity, and various Missouri locations and Missouri issues. The Tennessee business by the same name has nothing to do with the issues in this case nor the relief sought by TNT. Nor does TNT do business in TNT or compete with the Tennessee Torch Electronics, LLC. Nor are the Tennessee statutes and regulations that the Tennessee Torch Electronics, LLC business must be cognizant of identical to or even substantially similar to the Missouri statutes TNT has argued about here. In short, the Tennessee Torch Electronics, LLC business is not relevant to any issues in this case, and including these issues will confuse and mislead the jury.

- 24:12-22 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. TNT's arguments and positions in this case have been based on TNT's opinions on Missouri law, Torch Electronics, LLC the Missouri entity, and various Missouri locations and Missouri issues. The Tennessee business by the same name has nothing to do with the issues in this case nor the relief sought by TNT. Nor does TNT do business in TNT or compete with the Tennessee Torch Electronics, LLC. Nor are the Tennessee statutes and regulations that the Tennessee Torch Electronics, LLC business must be cognizant of identical to or even substantially similar to the Missouri statutes TNT has argued about here. In short, the Tennessee Torch Electronics, LLC business is not relevant to any issues in this case, and including these issues will confuse and mislead the jury.

- 25:7-26:2 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. TNT's arguments and positions in this case have been based on TNT's opinions on Missouri law, Torch Electronics, LLC the Missouri entity, and various Missouri locations and Missouri issues. The Tennessee business by the same name has nothing to do with the issues in this case nor the relief sought by TNT. Nor does TNT do business in TNT or compete

with the Tennessee Torch Electronics, LLC. Nor are the Tennessee statutes and regulations that the Tennessee Torch Electronics, LLC business must be cognizant of identical to or even substantially similar to the Missouri statutes TNT has argued about here. In short, the Tennessee Torch Electronics, LLC business is not relevant to any issues in this case, and including these issues will confuse and mislead the jury.

- 36:7-36:25 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. This section is essentially just the stated opinions of the examining attorney and Mr. Miltenberger's stated understanding of the qualifications of the examining attorney's own questions. The opinions of the examining attorney are not proper testimony, are not relevant to this case, and will confuse the issues and mislead the jury.

- 59:21-9 – Defendants object to this question and answer pursuant to Fed. R. Evid. 401, 402, and 403. The question directly before this and the questions designated directly after this are more than sufficient to make the point the Mrs. Miltenberger receives a salary from Torch as an employee. The amount Mrs. Miltenberger makes as an employee is not relevant to any issue to be tried. Moreover, any arguable and minimal probative value to the dollar amount Mrs. Miltenberger makes per week as an employee is drastically outweighed by the prejudicial effects of allowing such testimony given the potential disparity between the average income of juror and the relatively large weekly salary that Mrs. Miltenberger makes as a Torch employee.

- 60:19-61:4 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. The nature and amount of payment received by Steven (or Sondra) Miltenberger has no relevance to TNT's false advertising claims. This testimony would also confuse and mislead the jury on damages issues, because the jury should be considering alleged harm (or the absence thereof) to TNT, not distributions received by Torch owners.

- 61:20-63:9 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403. This line of questioning all relates to irrelevant issues about where and how Torch does its banking. Defendants assume this testimony was designated when TNT still had live civil RICO claims. Regardless, this testimony is irrelevant to TNT's false advertising claims. Furthermore, any minimal probative value is substantially outweighed by the prejudice to Defendants caused by having potential jurors focus on how many bank accounts Torch has or where/how it banks.

- 80:24-81:10 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. Companies besides Torch Electronics, LLC, Missouri, are not defendants in this case, and the fact of these other entities' existence has no relevance to any issues in this case. This testimony will confuse and mislead the jury, and any minimal probative value is substantially outweighed by the prejudice to Defendants caused by having jurors come to believe the Miltenbergers operate numerous businesses and hence may be capable of satisfying a large judgment even if the judgment is unmerited by TNT.

- 163:18-165:6 – Defendants object to these questions and answers pursuant to Fed. R. Evid. 401, 402, and 403. The payout percentage setting does not relate to any triable statement in any advertisement or any other issues in this case. To the extent there is any minimal probative value, that value is substantially outweighed by the danger of prejudice and confusing and misleading the jury.

- 165:18-22 – Defendants object to this question and answer pursuant to Fed. R. Evid. 401, 402, and 403. Torch did not make representations about the audio or visual presentation of symbols in its games. This issue has no relevance to TNT's claims as pleaded in the Complaint, and presenting this issue to the jury will confuse and mislead them and prejudice Torch.

28

- 171:6-172:5; 174:10-13 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403. The MGC letter is an opinion letter, not a binding ruling. It does not satisfy the exception recognized under *Coastal Abstract* for clear and unambiguous binding legal authorities on the subject, and, as such, it is not relevant. Presenting this letter and related testimony about it to the jury will prejudice Torch and confuse and mislead the jury, who will not be equipped to understand the difference between and legal significance of a binding ruling versus a nonbinding opinion letter.

- 225:17-227:5; 227:17-232:17 – Defendants object to this line of questioning because it is based entirely on TNT's counsel showing Mr. Miltenberger photographs for which TNT has failed to lay proper foundation to establish those photographs admissibility (Defendants still have no idea who took those photographs, where they came from, what was actually occurring at the time the photographs were taken – Defendants do, however, has a good faith basis to believe that these photographs were staged by political actors). Regardless, TNT must lay proper foundation for the photographs that it is asking Mr. Miltenberger about before such testimony may be admitted into evidence. *See* Fed. R. Evid. 901. Further, Defendants object pursuant to Rules 401, 402, and 403 to the admission of testimony regarding children allegedly playing Torch devices. None of TNT's false advertising claims have anything to do with children playing Torch devices. TNT has no evidence that children do, in fact, play Torch devices (the objectionable photographs for which there is no proper foundation to establish admissibility are insufficient to establish this issue*, see* Fed. R. Evid. 901). There is no probative value to such lines of questioning, but there is a substantial risk that such questioning, regardless of the answers to such questions, would unfairly prejudice the Defendants. *See* Fed. R. Evid. 403.

29

- 236:13-237:22, 274:10-21 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, and 901 (foundation). Torch is not affiliated with Integrity Vending, and TNT did not introduce any evidence from Integrity Vending nor from governmental actors related to the case against that third party. This unaffiliated prosecution is not relevant and there has not been any testimony or evidence in this case from persons actually involved in that case. Third-party speculation into that matter is not only not relevant, it will also mislead the jury, confuse the issues, and unfairly prejudice Torch.

- 262:14-265-17 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403. These issues regarding amounts potentially won by various players who are unnamed and unknowable and tax forms used by locations are not relevant to TNT's live claims in this case. This testimony will also confuse the issues, mislead the jury, and unfairly prejudice Torch.

- 273:5-21 – Defendants object to this question and answer pursuant to Fed. R. Evid. 401, 402, 403, and 801-03. This question purports to read an email at length which is itself hearsay, and this testimony becomes hearsay within hearsay, supposedly relaying the opinion of the Missouri Gaming Commission provided to the City of Branson. This is not relevant, is unfairly prejudicial, and is inadmissible hearsay.

- 285:3-21 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. PR statements by Mr. Keller are not advertisements at issue in this case. These statements are not relevant and will confuse the issues and mislead the jury. Further, Mr. Miltenberger has not been disclosed or qualified as an expert to opine on these matters.

- 286:23-287:12 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. Mr. Miltenberger has not been disclosed or qualified as an expert to opine on Torch's internal software functionality.

- 309:22-314:7 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. Mr. Miltenberger has not been disclosed or qualified as an expert in issues of consumer preferences or of the technical inner workings of the machines. This testimony is speculative, not proper lay opinion testimony, not relevant, and would mislead the jury.

- 315:6-316:1 – Defendants object to this line of questioning under Fed. R. Evid. 401, 402, and 403. The questions were ambiguously phrased and the transcript reflects a great deal of difficulty understanding what was even being asked. Where there are clear questions and answers, this testimony is cumulative of much prior testimony and unhelpful to the jury.

**Steven Miltenberger (30(b)(6)) (Jan. 9, 2024)**

With respect to TNT's deposition designations for Steven Miltenberger as corporate representative of Torch Electronics, LLC, Defendants assert the following objections:

- Defendants reserve their rights to amend their objections to Mr. Miltenberger's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Miltenberger's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Miltenberger's designated testimony (indirectly or directly).

- Defendants object to the designations set forth below pursuant to Fed. R. Civ. P. 37(c)(1), Fed. R. Evid. 401, 402, 403, and 702, because this testimony improperly seeks Mr.

Miltenberger's legal conclusions and opinions on the law. Mr. Miltenberger is not a lawyer, and his views on Missouri law are not proper lay opinion testimony. TNT did not designate Mr. Miltenberger as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B) or (C). Pursuant to Fed. R. Civ. P. 37(c)(1), TNT should be prohibited at trial or anywhere else from relying on opinion testimony from Mr. Miltenberger that would fall within the scope of Fed. R. Evid. 702. This designated testimony would fall squarely within the scope of Fed. R. Evid. 702 and, thus, should be excluded. Specifically:

- o   172:1-173:7

- o   190:25-192:21

- o   197:21-198:4

- o   221:16-223:6

- Defendants object to TNT's designations regarding Torch's payment of customer legal fees pursuant to Fed. R. Evid. 401, 402, 403, 404, and 609. Evidence related to adverse enforcement activity without conviction (or even prosecution against Torch) is irrelevant, highly and unfairly prejudicial, and violative of FRE 404 and 609. These objections specifically apply to the following designations:

- o   203:25-204:20

- o   236:17-237:9

- o   238:9-15

- 42:7-45:5 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. Mr. Miltenberger has not been disclosed or qualified as an expert on the function or operation of Torch devices or on consumer choice. This testimony is not proper lay opinion testimony, not relevant, and would mislead the jury.

- 53:23-55:11 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702.

- Defendants object to the testimony regarding Torch's profits and revenue under Fed. R. Evid. 401, 402, and 403. This evidence would be appropriate for the Court to consider were there to be a disgorgement award, but it is not relevant to TNT's claims or TNT's burden of proving it was damaged by Torch's commercial advertisements, and evidence of Torch's profits as such will improperly suggest to the jury that they should be considering Torch's profits in evaluating TNT's damages and will unfairly burden Torch. These objections specifically apply to:

  o 138:10-139:16

  o 140:3-17

  o 141:2-142:5

  o 142:17-143:10

  o 143:24-144:17

  o 145:1-12

  o 146:2-147:4

  o 147:15-148:7

  o 148:15-149:12

  o 149:24-150:2

  o 150:10-151:3

  o 151:15-152:7

  o 152:15-153:19

  o 153:25-154:22

  o 155:9-156:2

- o 156:8-157:7

- o 157:15-21

- o 157:25-158:13

- o 158:25-159:15

- o 160:3-18

- o 161:6-22

- Defendants object to the testimony regarding Torch's profits and revenue under Fed. R. Evid. 401, 402, and 403. This evidence would be appropriate for the Court to consider were there to be a disgorgement award, but it is not relevant to TNT's claims or TNT's burden of proving it was damaged by Torch's commercial advertisements, and evidence of Torch's profits as such will improperly suggest to the jury that they should be considering Torch's profits in evaluating TNT's damages and will unfairly burden Torch. These objections specifically apply to:

- Defendants object to the following lines of questioning pursuant to Fed. R. Evid. 401, 402, 403, 701, and 702. Mr. Miltenberger has not been disclosed or qualified as an expert on the function or operation of Torch devices or on consumer choice. This testimony is not proper lay opinion testimony, not relevant, and would mislead the jury:

- o 174:9-176:25

- o 182:23-183:10

- o 184:17-190:10

- 199:7-200:15 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403.

- 204:21-205:11 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403.

34

- 210:1-211:3 and 211:17-24 – Defendants object to this line of questioning pursuant to Fed. R. Evid. 401, 402, and 403.

### Steven Miltenberger (30(b)(6)) (Apr. 1, 2024)

With respect to TNT's deposition designations for Steven Miltenberger as corporate representative of Torch Electronics, LLC in the reconvened deposition on April 1, 2024, Defendants assert the following objections:

- Defendants reserve their rights to amend their objections to Mr. Miltenberger's designated deposition testimony depending on future potential rulings by the Court on (a) whether and to what extent TNT will be allowed to try the legality of Torch devices under Missouri law, (b) the Court's ruling on specific Motions in Limine that might apply to Mr. Miltenberger's designated testimony (indirectly or directly), or (c) any other issue that applies to Mr. Miltenberger's designated testimony (indirectly or directly).

- 67:20-69:25 – Defendants object pursuant to Fed. R. Evid. 401, 402, and 403. The cash back issue is irrelevant to TNT's claims, will confuse the issues, mislead the jury, and unfairly prejudice Torch.

- 77:8-14 – Defendants object pursuant to Fed. R. Evid. 401, 402, and 403. The payout rate of Torch's games is irrelevant, has nothing to do with TNT's claims, and this discussion will unfairly prejudice Torch.

- 93:16-94:1 and 94:14-96:1 – Defendants object pursuant to Fed. R. Evid. 401, 402, and 403. These issues tax forms are not relevant to TNT's live claims in this case. This testimony will also confuse the issues, mislead the jury, and unfairly prejudice Torch.

- 103:11-107:1 –Defendants object pursuant to Fed. R. Evid. 401, 402, 403, and 801-03. This line of questioning is about inadmissible hearsay to which no exception applies, is not relevant, and would confuse the issues and mislead the jury.

- 107:13-110:6 – Defendants object pursuant to Fed. R. Evid. 401, 402 and 403. These questions and answers are about deposition preparation for a discrete topic, not anything relevant to TNT's claims for trial. This testimony is irrelevant and duplicative.

Dated:  August 15, 2025                    Respectfully submitted,

                                           GRAVES GARRETT GREIM LLC,

                                           By:  _/s/ J. Aaron Craig_____
                                               Todd P. Graves #41319 (MO)
                                               J. Aaron Craig #62041 (MO)
                                               Chandler E. Carr #68836 (MO)
                                               1100 Main Street, Suite 2700
                                               Kansas City, MO 64105
                                               Phone: (816) 256-3181
                                               Fax: (816) 256-5958
                                               tgraves@gravesgarrett.com
                                               acraig@gravesgarrett.com
                                               ccarr@gravesgarrett.com

                                               **Attorneys for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on August 15, 2025, I caused the foregoing was emailed to the Court and counsel for Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-Op with a notice of filing the same.

       */s/ J. Aaron Craig*

      **Attorney for Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger**