**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., d/b/a | ) | |
| PLAY-MOR COIN-OP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00330-JAR |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**TNT'S PROPOSED JURY INSTRUCTIONS**

Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-Op ("TNT") hereby submit its proposed jury instructions for the close of trial. TNT reserves the right to propose alternative instructions in the event that any of Defendants' objections to the enclosed instructions are sustained, as well as its right to object and provide alternative instructions to any instructions separately proposed by Defendants.

Dated:  September 5, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTEN PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314)259-2020
*richard.finneran@bryancave.com*
*zoe.brannon@bclplaw.com*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 5, 2025, this document was served on all counsel of record by operation of the Court's electronic filing system.

 */s/ Richard E. Finneran*
RICHARD E. FINNERAN

1

## TNT'S PROPOSED JURY INSTRUCTION NO. 1

### Burden of Proof

You must decide whether certain facts have been proved by a preponderance of the evidence. A fact has been proved by a preponderance of the evidence if you find that it is more likely true than not true. You should decide that by considering all of the evidence and deciding what evidence is more believable.

To illustrate the preponderance of the evidence standard, think of a scale, like the scale of justice. If the scale tilts to one side just a little bit, that is enough to be considered more likely true than not true.

You have probably heard the phrase "proof beyond a reasonable doubt." That is a stricter standard than "more likely true than not true." It applies in criminal cases, but not in this civil case; so put it out of your mind.

*Eighth Cir. Model Jury Instr. (Civil)*, No. 3.04 (as modified).

## TNT'S PROPOSED JURY INSTRUCTION NO. 2

### Introduction

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on its contentions.

TNT alleges that the Defendants' advertisements are false. TNT claims that the Torch Devices are illegal gambling devices because they either are used or could be used in the playing phase of a gambling activity which if true, TNT alleges would make the Torch Devices illegal to operate. TNT further alleges that, contrary to the Defendants' advertisements, the Torch Devices involve elements of chance and future contingent events that are outside of the players' control. TNT alleges that it has lost customers to Torch because of Defendants' false advertisements and seeks damages for those losses exceeding $100,000.

The Defendants deny TNT's allegations. They claim that the Torch Devices are legal "no chance" amusement devices because they claim the outcomes are predetermined and because players have the option to view the game outcome before committing their money to a game. The Defendants claim that these features eliminate any material element of chance from the Torch Devices and that the Torch Devices are therefore not illegal gambling devices. The Defendants further claim that their advertisements accurately reflect Defendants' opinion of Missouri's criminal gambling laws as applied to Torch Devices. The Defendants deny that Defendants' advertisements caused TNT to suffer any damages.

In these instructions, you may hear references to "Plaintiff" and "Defendants." The Plaintiff in this case is TNT Amusement Inc, sometimes referred to as "TNT." The Defendants in this case are Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger.

Plaintiff TNT brings two claims against Defendants for unfair competition under Federal law (Count One) and Missouri law (Count Two) regarding false statements

3

about the Torch Devices.  You will be given instructions on each claim to determine whether Defendants are liable to TNT for unfair competition.

If you determine that Defendants are liable to TNT, you will then need to decide any money damages to be awarded to TNT to compensate it.

## TNT'S PROPOSED JURY INSTRUCTION NO. 3

### Elements of False Advertising Under Lanham Act

Your verdict must be for Plaintiff TNT on TNT's claim that Torch made false statements of fact in commercial advertising or promotions about their Torch Devices if you find that all of the following elements have been proved by a preponderance of the evidence.

*First*, Torch made a false or misleading statement of fact in a commercial advertisement or promotion about the nature or characteristics of its own product, the Torch Devices;

*Second*, the statement actually deceived or had the tendency to deceive a substantial segment of Torch's audience;

*Third*, the deception was material, in that it was likely to influence the decision of customers to place or play the Torch Devices;

*Fourth*, Torch caused the false statement to enter interstate commerce; and

*Fifth*, TNT has been or is likely to be injured as a result of the false statement, either by a direct diversion of business from itself to the Torch or by a loss of goodwill associated with its products.

If you believe the evidence establishes that it is more likely than not that each of the foregoing elements is true, then your verdict must be for Plaintiff TNT. If you find that any of the above elements has not been proved, then your verdict must be for Torch.

*Eighth Cir. Model Jury Instr. (Civil)*, No. 21.43 (as modified).

## TNT's PROPOSED JURY INSTRUCTION NO. 4

### False or Misleading Statement of Fact (Element 1)

The first element requires that Torch made a false or misleading statement in advertising or promotions about its Torch Devices.

The allegedly false or misleading statement must be capable of being proved false or of being reasonably interpreted as a statement of objective fact.[1]

For the purpose of this claim, a statement of fact may be false in one of two ways:

1. the statement may be literally false; or

2. the statement may be literally true or ambiguous, but may implicitly convey a false impression, may be misleading in context, or may be likely to deceive customers.[2]

You must consider an advertisement or promotion in its full context to determine the overall message understood by the audience.[3]

---

[1]   *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004); Opinion (Doc. # 332) at 5; Opinion (Doc. # 312) at 30.

[2]   *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

[3]   *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

6

## TNT's PROPOSED JURY INSTRUCTION NO. 5

### In Commercial Advertisement or Promotion (Element 1)

TNT has alleged that Torch made false or misleading statements in commercial advertising or promotions about the Torch Devices. In order to constitute commercial advertising or promotion, a message does not need to be widely disseminated.[4] Commercial advertising or promotion may also occur in targeted promotions and communications.[5] The statement in question need not be made in a classic advertising campaign but may consist of more informal types of promotion.[6]

Therefore, you may find that any of Torch's statements were made in "commercial advertising or promotion" if you find a statement on a product's name,[7]

---

[4]    *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) ("Where the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the [Lanham] Act."); *Handsome Brook Farm, LLC v. Human Farm Animal Care, Inc*., 700 F. App'x 251, 262 (4th Cir. 2017) (email to 36 out of "many national and countless regional and local retailers" sufficiently disseminated to constitute commercial advertising); *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 440 F. Supp. 3d 71, 76 (D. Mass. 2020); *Champion Lab'ys, Inc. v. Parker-Hannifin Corp.*, 616 F. Supp. 2d 684, 695 (E.D. Mich. 2009) (denying summary judgment for defendant that made presentation to a single automobile manufacturer and finding that the presentation "was a promotional presentation that triggered the protections of the Lanham Act." (citing *Seven-Up Co.*, 86 F.3d at 1385)); *Int'l Techs. Consultants, Inc. v. Stewart*, 554 F. Supp. 2d 750, 758 (E.D. Mich. 2008) (single letter from defendant to potential buyer which expressed "grave concerns" about plaintiff's manufacturing facility was sufficient to constitute "commercial advertising or promotion" under the Lanham Act); *The Hillman Grp., Inc. v. Minute Key Inc.*, 317 F. Supp. 3d 961, 979 (S.D. Ohio 2018) ("Statements to a single customer can trigger the protections of the Lanham Act 'if the market at issue is very small and discrete.'") citing *Champion Lab'ys, Inc.*, 616 F. Supp. 2d at 694–95); *Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.,* 880 F. Supp. 1005, 1019–21 (S.D.N.Y. 1994) (holding that a single letter from a computer software manufacturer to a potential customer could constitute "commercial advertising or promotion" within the meaning of the Lanham Act).

[5]    *Id.*

[6]    *Id.*; *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734–35 (9th Cir. 1999).

[7]    *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586–90 (3d Cir. 2002) (affirming preliminary injunction on Lanham Act false advertising claim for heartburn medication named "Mylanta Night Time Strength" because product did not actually provide heartburn relief all night long, thus District Court's finding that product name was literally false was not clearly erroneous); *Warner-Lambert Co. v. Breathassure, Inc.*, 204 F.3d 87, 96–97 (3d Cir. 2000) (reversing district court and enjoining defendant from using trade name "BreathAssure" for a product that purported to improve bad breath because of lack of scientific evidence that claims were

product or package labeling,[8] "fact" or "selling" sheets, presentations and presentation documents, [9] invoices, price lists, display cards, packages,[10] fliers, brochures, letters,[11] e-mails,[12] and other electronic communications, or any statement, whether written or

---

true); *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 13–14 (7th Cir. 1992) (reversing district court and enjoining defendant from using trade name "Ricelyte" for product advertised as "rice-based" because phrase "rice-based" and product name "Ricelyte" conveyed false message that the product contained rice or rice carbohydrates, when in fact, it did not); *Sirius Lab'ys, Inc. v. Rising Pharms., Inc.*, No. 03 C 6965, 2004 WL 51240, *4 (N.D. Ill. Jan. 7, 2004) ("Both the name of the product and representations made on the product box may influence a consumer in his or her choice to purchase a product.") (internal quotations omitted);

[8]   *Alpharma, Inc. v. Pennfield Oil Co*., 411 F.3d 934, 937–38 (8th Cir. 2005) (reinstating claims that defendants' advertisements and labels falsely promoted antibiotic as FDA approved); *Sandoz Pharms. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) ("[A]n advertising claim is not shielded from the Lanham Act merely by appearing only on a product's label."); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 523 (S.D.N.Y. 2013) (granting preliminary injunction against olive oil producer that labeled chemically processed olive oil as "100% Pure Olive Oil" and finding that statement on product's label was literally false); *Deston Therapeutics LLC v. Trigen Lab'ys Inc.*, 723 F.Supp.2d 665, 674–75 (D. Del. 2010) (plaintiff stated claim for false advertising under Lanham Act by alleging that defendant mislabeled generic version of plaintiff's ear drop product); *Warren Corp. v. Goldwert Textile Sales, Inc.*, 581 F. Supp. 897, 900 (S.D.N.Y. 1984) ("Misbranding is one species of false advertising, for most if not all labeling is advertising.") (internal quotations omitted); *Potato Chip Inst. v. Gen. Mills, Inc.*, 333 F. Supp. 173, 181 (D. Neb. 1971), *aff'd*, 461 F.2d 1088 (8th Cir. 1972) (granting injunction preventing defendant from selling or distributing "CHIPOS" (brand of chips made from dried and dehydrated potatoes) in packages or containers advertising the product as "potato chips" without an accompanying prominent declaration that CHIPOS were made from dried or dehydrated potatoes).

[9]   *Seven-Up Co.*, 86 F.3d at 1386 (soda company's presentation to bottling company representatives intended to attract business to defendant and away from defendant's competitor held to be "false advertising" under Lanham Act); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) ("Although advertising is generally understood to consist of widespread communication through print or broadcast media, 'promotion' may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers." (citing *Seven-Up Co.*, 86 F.3d at 1386)); *Champion Lab'ys, Inc.*, 616 F.Supp.2d at 695 (finding that defendant's presentation to potential customer "was a promotional presentation that triggered the protections of the Lanham Act.").

[10]   *Warren Corp.,* 581 F. Supp. at 900 (holding "[i]nvoices, price lists, display cards, and packages are part of the advertising realm").

[11]   *Int'l Techs. Consultants,* 554 F. Supp. 2d at 758; *Mobius Management Sys. Inc.,* 880 F. Supp. at 1019–21.

[12]   *Handsome Brook Farm, LLC*, 700 F. App'x at 262 (affirming that email was a form of commercial advertising or promotion subject to the Lanham Act).

oral, sufficiently disseminated that it may influence  customers' decisions to place or play Torch Devices.[13]

---

[13]    *Id.* (email to 36 out of "many national and countless regional and local retailers" sufficiently disseminated to constitute commercial advertising); *Allscripts Healthcare*, 440 F. Supp. 3d at 76 (speech covered by the Lanham Act must "target a class or category of purchasers or potential purchasers with intent of influencing customers or potential customers to purchase the goods or services of the declarant") (internal quotations omitted).

## TNT's PROPOSED JURY INSTRUCTION NO. 6

### False Statement Regarding Legality

TNT has alleged that one of the Defendants' false statements was that the Torch Devices were legal to operate under Missouri law. You may find that any of the Defendants' statements regarding the legality of the Torch Devices was a false statement of fact if you find any of the following to be true:

(1) the statement is contrary the plain and ordinary meaning of the statute,

(2) the statement was contrary to a clear and unambiguous ruling from a court or agency of competent jurisdiction, or

(3) the Defendant lacked a good faith belief in the truth of the statement.[14]

If you find that none of the foregoing conditions have been satisfied and that any statement by a Defendant was merely a statement of the Defendants' opinion as to the legality of the Torch Devices, then you should not consider such statement of opinion to be a false statement of fact.

---

[14] *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999); *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996); *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 614–15 (9th Cir. 2016).

## TNT's PROPOSED JURY INSTRUCTION NO. 7

### Deception (Element 2)

The second element requires that the statement actually deceived or had the tendency to deceive a substantial segment of its audience.

If you find that Torch made literally or deliberately false statements of fact in a commercial advertisement or promotion concerning the Torch Devices, then you may presume that the advertisement actually deceived its audience, without any additional proof.[15]

---

[15] *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir.1998) ("If a plaintiff proves that a challenged claim is literally false, a court may grant relief without considering whether the buying public was actually misled; actual consumer confusion need not be proved."); *see also Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011) (once a plaintiff has proved that a statement is literally false, "the court may presume that consumers were misled . . . without requiring consumer surveys or other evidence of the ad's impact on the buying public").

## TNT's PROPOSED JURY INSTRUCTION NO. 8

### Materiality (Element 3)

The third element requires TNT to prove that the false or misleading statement was material. A statement is material if it influences or is likely to influence a customer's decision regarding whether to place or play the Torch Devices.[16]

You may presume that a false or misleading statement was material if it related to an inherent quality or characteristic of the Torch Devices.[17]

---

[16]  *Select Comfort Corp. v. Baxter*, 996 F.3d 925, 938 (8th Cir. 2021).

[17]  *Id.* at 939 (noting defendants recognize "definitions for materiality that describe types of statements reasonable persons would recognize as likely to influence a purchasing decision" such as labeling a statement as material because it was related to an inherent quality or characteristic of the product).

## TNT's PROPOSED JURY INSTRUCTION NO 9

### Interstate Commerce (Element 4)

The fourth element requires that Torch caused its statements to enter into interstate commerce.

A false or misleading statement enters interstate commerce if Torch's statements regarding Torch Devices reached persons in interstate commerce, which includes any activity that substantially affected interstate commerce. Acts and transactions that are economic in nature and involve commerce state lines are "in" interstate commerce. This is true even if the statements were made within the State of Missouri.[18]

If you find that Torch's statements regarding Torch Devices were made in advertisements that reached persons in states other than Missouri, you must find that those specific statements have entered into interstate commerce.[19]

If you find that Torch's statements were made using the internet, including by email, you must find that those specific statements have entered into interstate commerce.[20]

---

[18]    *Council of Better Bus. Bureaus, Inc. v. Bailey & Assocs., Inc.*, 197 F. Supp. 2d 1197, 1212 (E.D. Mo. 2002) (stating, in trademark infringement context, that "[e]ven local, intrastate acts of infringement are 'in commerce' where the acts have a substantial effect on interstate commerce."); *cf. United States v. Koech*, 992 F.3d 686, 691 (8th Cir. 2021) (approving jury instruction stating that "[a]cts and transactions which are economic in nature and cross state lines are 'in' interstate commerce"); *id.* at 692 ("Congress may 'regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.' . . . '[T]he *de minimis* character of individual instances arising under that statute is of no consequence.'" (quoting *Gonzalez v. Raich*, 545 U.S. 1, 16–17 (2005)).

[19]    *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, n.1 (11th Cir. 1984) (holding that evidence defendant's "buyers which respond to the advertisements . . . occasionally are from across state lines" demonstrated that false statement was made "in commerce").

[20]    *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 803 (6th Cir. 2015) (holding that plaintiff stated a false advertising claim under the Lanham Act where complaint alleged a false statement contained in an email, even without alleging the email crossed state lines, as "the very act of sending an e-mail creates the interstate commerce nexus necessary for federal jurisdiction").

## TNT's PROPOSED JURY INSTRUCTION NO. 10

## Injury (Element 5)

The fifth element requires that TNT has been or is likely to be injured as a result of the false or misleading statement.[21]

You must find that TNT has been injured if Torch's false or misleading statements caused TNT:

(a) To lose existing or prospective business to Defendants;[22]

(b) To reduce prices in order to maintain existing customers or attract new customers;[23]

(c) To suffer a decrease in reputation or customer goodwill;[24] or

---

[21]  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) (plaintiff under "the false or deceptive advertising prong of the Lanham Act" may prevail by proving it "has been or is likely to be injured as a result of the false statement")

[22]  *United Indus. Corp.*, 140 F.3d at 1180 (injury in false advertising claim may consist of "direct diversion of sales from [the plaintiff] to [the] defendant").

[23]  *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 275 (6th Cir. 2015) (antitrust injury is shown where plaintiff is "pressure[d]" to "lower prices without actually lowering its own costs or otherwise creating a market efficiency"); 4 *McCarthy on Trademarks & Unfair Competition* § 27:44 (5th ed. May 2025 Update) ("An analogy can be drawn to the decisions relating to standing to sue for damages under the antitrust laws. Since the basic purposes of both the antitrust laws and § 43(a) are similar in protecting consumers and injured commercial interests, and problems of proof of damage are similar, the approach of the antitrust damage rulings could be applied to measure damage recoveries for false advertising under Lanham Act § 43(a)(1)(B)."); *id.* at § 27:43 (noting that "cheapening of plaintiff's reputation" is a measure of lost goodwill); *cf.* 8th Cir. Pattern Jury Instructions (Civil) § 21.70 cmte. cmt. ("The list of actual damages is not meant to be exhaustive, and this instruction may need to be modified to reflect other types of damages claimed in a particular case . . . .").

[24]  8th Cir. Pattern Jury Instructions (Civil) § 21.70 cmte. cmt.; *see also Porous Media Corp. v. Pall. Corp.*, 173 F.3d 1109, 1122 (8th Cir. 1999) (holding that Plaintiff "produced sufficient evidence of lost goodwill" to recover such damages in Lanham Act false-advertising claim); *United Indus. Corp. v. Clorox Co.*, 140 F.3d at 1180 ("To establish a claim under the false or deceptive advertising prong of the Lanham Act, a plaintiff must prove . . . the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant *or by a loss of goodwill associated with its products*." (emphasis added)).

(d) To incur costs in actually and reasonably responding to Defendants' false or misleading statements, so that TNT could maintain its business, reputation, or good will or in order to avoid the loss of prospective business to Defendants.[25]

As used in this instruction, the term "goodwill" means an intangible business value which reflects the basic human tendency to do business with a merchant who offers products of the type and quality which the customer desires and expects. The goodwill attached to a particular product or business may be symbolized in whole or in part by the consuming public's acceptance and recognition of the business. The goodwill attached to a product is a part of the overall business value which is the goodwill of the company. Whether this has occurred is a question of fact for you to determine.[26]

---

[25]   8th Cir. Pattern Jury Instructions (Civil) § 21.70 & n.3; *Lawn Managers, Inc. v. Progressive Lawn Managers, Inc.*, 959 F.3d 903, 914 (8th Cir. 2020) (affirming damages award under Lanhan Act for costs incurred in mailing corrective advertisements).

[26]   *Porous Media Corp*, 173 F.3d at 1122 (8th Cir. 1999); 4 *McCarthy on Trademarks & Unfair Competition* §§ 2:17, 2:18 (5th ed. May 2025 Update).

15

## TNT's PROPOSED JURY INSTRUCTION NO. 11

### Missouri Law on Device Characteristics

The legality of a device under Missouri law may be evident from its features, functions, and characteristics.[27]

The existence of the prize viewer does not make an otherwise illegal gambling device legal.[28]

---

[27]    *Thole v. Westfall*, 682 S.W.2d 33, 36–38 (Mo. Ct. App. 1984); *Chandler v. Hemeyer*, 49 S.W.3d 786, 792–93 (Mo. Ct. App. 2001); *Veterans of Foreign Wars Post 6477 v. Mo. Gaming Comm'n*, 260 S.W.3d 388, 391–92 (Mo. Ct. App. 2008).

[28]    *City of Moberly v. Deskin*, 155 S.W. 842 (Mo. App. 1913); Opinion (Doc. #312) at 13–14, 30 ("Century-old Missouri precedent holds that a slot machine with a prize preview feature is still a slot machine.").

## TNT's PROPOSED JURY INSTRUCTION NO. 12

### Missouri Gambling Law

Under Missouri law, it is illegal to gamble using a gambling device.[29]

Missouri law defines a "gambling device" to include any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine.[30]

Missouri law provides that a person engages in "gambling" when he or she stakes or risks something of value upon either (1) the outcome of a contest of chance or (2) a future contingent event not under his or her control or influence, upon an agreement or understanding that he or she will receive something of value in the event of a certain outcome, unless he or she does as part of a licensed activity, such as at a licensed casino.[31] "Something of value" may either be money or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.[32]

Under Missouri law, it is also illegal to gamble using a slot machine.[33]

Missouri law defines a "slot machine" to include a gambling device that, as a result of the insertion of a coin or other object operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value.[34]

---

[29] Mo. Rev. Stat. § 572.020.

[30] Mo. Rev. Stat. § 572.010(5).

[31] Mo. Rev. Stat. § 572.010(4).

[32] Mo. Rev. Stat. § 572.010(12).

[33] Mo. Rev. Stat. § 572.020.

[34] Mo. Rev. Stat. § 572.010(11).

Missouri law further provides that a device that is so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance.[35]

Missouri law makes several other activities relating to gambling illegal if not performed as part of a licensed activity.[36] For example, it is illegal to sell, transport, place, or possess a slot machine, with knowledge of the character thereof.[37] It is also illegal to sell, transport, place, or possess any other gambling device, with knowledge of the character thereof, if the person engaging in such an activity knows or has reason to believe that the device is to be used in the state of Missouri in the advancement of unlawful gambling activity.[38] Finally, it is illegal to knowingly advance or profit from unlawful gambling activity.[39]

---

[35] Mo. Rev. Stat. § 572.010(11).

[36] Mo. Rev. Stat. § 572.010(4) (excluding licensed activities from the definition of gambling).

[37] Mo. Rev. Stat. § 572.070(1); Mo. Rev. Stat. § 572.010(4) (excluding licensed activities from definition of gambling).

[38] Mo. Rev. Stat. § 572.070(2); Mo. Rev. Stat. § 572.010(4) (excluding licensed activities from definition of gambling)

[39] Mo. Rev. Stat. § 572.040; Mo. Rev. Stat. § 572.010(4) (excluding licensed activities from definition of gambling).

## TNT'S PROPOSED JURY INSTRUCTION NO. 13

### Missouri Unfair Competition

Your verdict must be for Plaintiff TNT on TNT's claim that Defendants engaged in and continue to engage in unfair competition by making false, misleading, and deceptive statements about the Torch Devices if all of the following elements have been proved by a preponderance of the evidence.

**First**, Defendants made a false, misleading, or deceptive statements about its own product, the Torch Devices;

**Second**, Defendants' misleading and deceptive statements have caused and continue to cause customers to place or play the Torch Devices over the games of competitors, including TNT;

**Third**, TNT has been or is likely to be injured as a result of the false statement.

If you believe the evidence establishes that it is more likely than not that each of the foregoing elements is true, then your verdict must be for Plaintiff TNT. If any of the above elements has not been proved, then your verdict must be for Defendants.[40]

---

[40]    All of these instructions are crafted from the Third Restatement of Unfair Competition. *Pipeline Prods., Inc. v. S&A Pizza, Inc.*, 2023 WL 11950652, at *27 (W.D. Mo. July 27, 2023) (applying third restatement to Missouri unfair competition claim); *Am. Equity Mortg., Inc. v. Vinson*, 371 S.W.3d 62, 64 (Mo. Ct. App. 2012) ("Missouri courts may look to the Restatement (Third) of Unfair Competition when analyzing unfair competition claims.").

## TNT'S PROPOSED JURY INSTRUCTION NO. 14

### Damages

If you find Defendants are liable to TNT under Count One or Count Two, you must award TNT such sum as you find will fairly and justly compensate the TNT for the injury caused by the Defendants' false advertising.[41]

In making this determination, you may consider any injury to TNT's reputation; any injury to TNT's goodwill; any loss of value to TNT's business; and any lost profits that TNT would have earned but for the Defendants' false advertising.[42]

Lost profits are those profits that TNT would have made if Defendants had not engaged in wrongful conduct. As to lost profits, if you find that, because of Defendants' false advertising, TNT was unable to earn profits that it would otherwise have earned, then you must find that TNT was damaged and is entitled to recover its lost profits. Profits are determined by subtracting the costs and expenses of a business or a particular portion of a business from the gross revenue of that business or portion. In arriving at the amount of any loss of profits sustained by TNT, you are entitled to consider any past earnings of TNT in the business in question, as well as any other evidence in the case bearing upon the issue.[43]

---

[41] *Eighth Cir. Model Jury Instr. (Civil)*, No. 21.70 (modified).

[42] *Id.*

[43] 3 Fed. Jury Prac. & Instr. § 129.30 (modified) (6th ed.).

## TNT'S PROPOSED GENERAL VERDICT FORM NO. 1

## Lanham Act

**NOTE**: Complete this form by writing in the name required by your verdict.

On Plaintiff TNT Amusement Inc.'s claim against Defendants Torch Electronics, LLC for Unfair Competition under Federal law, as submitted in Instruction Nos. ___, we find in favor of:

_____

(Plaintiff TNT Amusements, Inc.) or (Defendant Torch Electronics, LLC)

*Eighth Cir. Model Jury Instr. (Civil)*, No. 21.80 (modified).

**TNT'S PROPOSED GENERAL VERDICT FORM NO. 2**

**Missouri Unfair Competition**

**NOTE**: Complete this form by writing in the name required by your verdict.

On Plaintiff TNT Amusement Inc.'s claim against Defendants Torch Electronics, LLC, Steven Miltenberger, and Sondra Miltenberger for Unfair Competition under Missouri law, as submitted in Instruction Nos. ⬚, we find in favor of:

_____

(Plaintiff TNT Amusements, Inc.) or (Defendant Torch Electronics, LLC)

_____

(Plaintiff TNT Amusements, Inc.) or (Defendant Steven Miltenberger)

_____

(Plaintiff TNT Amusements, Inc.) or (Defendant Sondra Miltenberger)

*Eighth Cir. Model Jury Instr. (Civil)*, No. 21.80 (modified).

22

## TNT'S PROPOSED GENERAL VERDICT FORM NO. 3

### Damages

If you found in favor of Plaintiff TNT Amusement Inc. on one or more of the General Verdict Forms preceding this Instruction, then complete the following paragraphs:

We find TNT's actual damages to be: $ _____ (state the amount)

_____
Foreperson

Dated: _____

*Eighth Cir. Model Jury Instr. (Civil)*, No. 21.80 (modified).

23