IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TNT AMUSEMENTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-330-JAR |
| | ) |
| TORCH ELECTRONICS, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF TNT AMUSEMENTS, INC.'S**
**POST-TRIAL BRIEF IN SUPPORT OF RELIEF UNDER COUNTS ONE AND TWO**

After prevailing at trial on Counts One and Two, the Court requested TNT file a brief in support of any forms of relief it seeks on Counts One and Two. Order (Doc. #422). Thus, TNT now seeks disgorgement of Defendants' profits, attorneys fees, and the costs of this action. Compl. (Doc. #1) at 37–38 (pleading these forms of relief). As discussed below, TNT is entitled to each of these forms of relief.

## DISCUSSION

**I.  TNT Is Entitled Under the Lanham Act to Disgorgement of All of Torch's Revenues, Subject Only to Permitted Deductions and the Principles of Equity**

The plain text of the Lanham Act entitles a prevailing plaintiff to disgorgement of a defendant's profits. Importantly, disgorgement is a measure of what the defendant gained, rather than what the plaintiff lost. Unlike damages, which serve merely to offset a plaintiff's losses, disgorgement prevents a defendant's unjust enrichment and serves deterrent functions. Thus, in addition to the damages awarded by the jury, TNT is also entitled to disgorgement

1

**A. TNT's Only Burden Is to Demonstrate the Total Amount of Torch's Revenues; It Is Torch's Burden to Prove Its Entitlement to Any Deduction for Legitimate Business Expenses**

The law is clear: a prevailing plaintiff under the Lanham Act "shall be entitled" to recover not only the provable damages sustained as a result of the defendant's false advertising, but also the "defendant's profits." 15 U.S.C. § 1117(a). "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* Thus, TNT's only burden is to prove the total amount of Torch's revenues from the Torch Devices;[1] it is up to Torch—not TNT—to establish that TNT is entitled to anything less than total disgorgement of Torch's profits. *Id.*; *see e.g.*, *Watkins Inc. v. McCormick & Co., Inc.*, 574 F. Supp. 3d 644, 656 (D. Minn. 2021) ("For disgorgement of profits, a plaintiff need only show the defendant's 'sales of the allegedly falsely advertised products,' after which the burden shifts to the defendant to prove 'any costs or deductions.'" (citing *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 818 (D. Minn. 2011))); *Tonka Corp. v. Tonk-A-Phone, Inc.*, 805 F.2d 793, 794 (8th Cir. 1986) ("The defendant bears the burden in calculating profits of proving any operating costs to be deducted from sales revenue it realized during the period of [the violation].").

Moreover, in circumstances like this one, where the "entire profit" of the defendant's business "results from the wrongful activity" (i.e., Torch's falsely marketing its "no chance games"), a defendant is ***not entitled to any deduction*** for the costs incurred in obtaining its ill-gotten gains. *See Liu v. SEC*, 591 U.S. 71, 84 (2020) (noting an "exception" to the general rule permitting deductions from disgorgement for costs when "'entire profit of a business or undertaking' results from the wrongful activity"); *see also Truck Equipment Serv. Co. v. Fruehauf*

---

[1] Notably, as established at trial, every Torch Device contains false advertising statements, including on the decal affixed to every single Torch Device.

*Corp.*, 536 F.2d 1210, 1222 (8th Cir. 1976) (reversing award of only 20 percent of defendants' profits, finding that "equity require[d]" disgorgement of all of the defendant's profits where willfulness had been demonstrated).

Defendants are incorrect to assert that TNT's recovery is limited to the award of actual damages the jury found at trial.² To the contrary, the Lanham Act expressly provides the Court shall order, in addition to the actual damages found by the jury, disgorgement of the defendants' profits. *See* 15 U.S.C. § 1117(a) ("[A] plaintiff **shall be** entitled . . . to recover (1) **defendant's profits**, [and] (2) **any damages sustained by the plaintiff**. . . . The court shall assess such profits *and* damages or cause the same to be assessed under its direction. . . .") (emphasis added). Indeed, courts routinely hold that damages and profits under the Lanham Act are different forms of relief, and one does not preclude the other. *Wildlife Rsch. Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1135 (D. Minn. 2005) ("For violations of the Lanham Act based on false advertising, a plaintiff's recovery may include both actual damages and the defendant's profits" (citing 15 U.S.C. § 1117(a))); *see, e.g.*, *Curry v. Revolution Lab'ys, LLC*, 124 F.4th 441, 447 (7th Cir. 2024) (upholding $2,500 actual damages and $500,000 of defendants' profits under the Lanham Act); *Nutradose Labs, LLC v. Bio Dose Pharma, LLC*, 710 F. Supp. 3d 1200, 1232–34 (S.D. Fla. 2024), *aff'd sub nom. Nutradose Labs, LLC v. Santamarta*, 2025 WL 337971 (11th Cir. Jan. 30, 2025) (awarding $1.8 million in actual damages and an additional $1.3 million in profits).

---

² Defendants also incorrectly claim the jury's award of $500,000 is four times TNT's actual damages. Scheduling Plan (Doc. #420) at 1–2. The $125,000 figure testified to by Dr. Kneuper at trial was merely his assessment of TNT's direct lost profits from the displacement of a specified set of devices through the end of 2023; as Dr. Kneuper testified, there were many other categories of damages he did not consider, and which TNT presented other evidence of at trial. The jury was entitled to estimate the true actual damages based upon all the evidence presented, and that is what its verdict reflects.

3

Indeed, as the Eighth Circuit has expressly recognized, even in a case where the plaintiff was not able to prove *any* actual damages, the plaintiff was nonetheless entitled to an award equal to *all* of the profits the defendants had wrongfully obtained. *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 474–75 (8th Cir. 2011) (affirming order disgorging entirety of defendants' profits, despite finding of no actual damages: "The finding that [plaintiff] suffered no actual damages does not of itself preclude . . . disgorg[ing] $2.4 million in profits on the theory of preventing unjust enrichment."); *see also Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1244 (10th Cir. 2023) (noting it "is necessarily an abuse of discretion" to require a showing of actual damages for disgorgement of profits under the Lanham Act).

**B. The Principles of Equity Weigh in Favor of an Order Disgorging Torch's Profits**

In exercising its power to order the disgorgement of Torch's profits, the Court must consider principles of equity. 15 U.S.C. § 1117(a) (noting that power to enter an award of profits is "subject to the principles of equity"). In making such a determination, the Eighth Circuit instructs courts to consider the "interests of justice," which include both deterrent functions and unjust enrichment. *Masters*, 631 F.3d at 473 (explaining disgorgement "exists to deter would-be infringers and to safeguard against unjust enrichment"); *see Aviva Sports*, 829 F. Supp. 2d at 817–18 (applying *Masters*, which involved a service-mark-infringement claim, to a false-advertising claim); *Watkins*, 574 F. Supp. 3d at 656 ("Disgorgement, an equitable remedy, targets the wrongdoer and seeks to deter improper conduct and prevent unjust enrichment.").

Deterrence could not be more necessary here. Despite the jury's findings, Torch has continued to operate its devices and has not removed its false advertisements from the devices. Even before the jury's verdict, the evidence in this case and at trial have shown that, for close to a decade, even when the Missouri Gaming Commission, state and local law enforcement, numerous county prosecutors, and at least one state circuit court deemed Torch Devices illegal under

4

Missouri law, Torch was not deterred and continued to brazenly operate. A disgorgement award is necessary not only to deter future wrongdoing by Torch, but also Torch's imitators. And as to unjust enrichment, Torch's entire enterprise is illegal, and thus it would be unjust to allow Defendants to retain what are likely hundreds of millions of dollars in ill-gotten gains. *Liu*, 591 U.S. at 71 ("Equity practice has long authorized courts to strip wrongdoers of their ill-gotten gains."); *Watkins*, 574 F. Supp. 3d at 656 (explaining under the Lanham Act "any plaintiff with standing may seek to eliminate defendant's ill-gotten gains by pursuing disgorgement of its profits").

Notably, in the Lanham Act context, the Supreme Court recently ruled there is no requirement that a plaintiff demonstrate willfulness to be entitled to disgorgement. *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 213 (2020); *see also Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 38 (9th Cir. 2022) (applying *Romag* in false advertising context). Thus, while TNT need not demonstrate Defendants' willful violation of the law to be entitled to disgorgement, the existence of evidence of Defendants' knowing deception and willful and wanton illegal conduct, as overwhelmingly demonstrated throughout this case[3] and at trial, weighs heavily in favor of disgorgement. *See Romag*, 590 U.S. at 219 ("[A] defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate."); *Truck Equip. Serv. Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1222–23 (8th Cir. 1976) (considerations of willfulness and bad faith justify awarding all of defendant's profits). This

---

[3] For example, as the Court pointed out in its summary judgment order, Defendants' conduct "belies good faith" that their statements were made in good faith. Order (Doc. #312) at 33; *see also id.* at 32 ("Defendants have been well aware since 2018 that the Missouri Gaming Commission, state and local law enforcement, numerous county prosecutors, and at least one state circuit court have deemed Torch devices illegal under Missouri law."); *id.* ("Defendants cannot credibly claim that their unambiguous representations of legality – asserted as unequivocal fact on the website and on each device – were mere lay opinions lacking the benefit of clarity from a court or agency.").

Court should do what several courts have previously done, including those in this District, and award disgorgement of all of Defendants' ill-gotten gains based upon their false advertising, subject only to deductions for whatever costs Defendants can demonstrate were not incurred as part of their illegal operations. *Wildlife*, 409 F. Supp. 2d at 1135–37.

### C. Defendants Should Be Required to Promptly Produce Evidence of Their Total Revenues and Specify Any Deductions They Might Seek to Claim

Given the parties' stipulation deferring discovery of Defendants' financial information until after trial, TNT has not yet received evidence from Defendants as to their total revenues.[4] *See* Stipulation and Order (Doc. #58) (ordering that "[d]iscovery of Defendants' revenues, costs, profits, and related financial information . . . beyond the agreed-upon set of locations . . . shall be deferred until after trial on the merits"). After prevailing at trial, TNT served Defendants with requests for production and interrogatories designed to elicit that information, as well as to ascertain what if any deductions Defendants might seek to claim against any disgorgement award. *See* **Ex. A** (interrogatories); **Ex. B** (request for production). Those requests are straightforward and comport with the law: they seek to ascertain Defendants' sales and identify any deductions that Defendants may claim from its sales. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). TNT requests the Court promptly order Defendants to respond to TNT's

---

[4] Although the financial information TNT has received is limited, it does provide a basis for estimating Defendants' profits. As demonstrated at trial, the 101 devices that Torch placed at the overlapping locations took in more than $32 million in revenue over the course of only six years and returned a profit to Torch of more than $5.5 million (as well as an equal share for the amusement location owners). Mr. Miltenberger testified at trial that Torch has more than 6,000 Torch Devices across Missouri. Assuming that the devices at the overlapping locations are not exceptional in terms of their revenue and profitability, then Torch conservatively has made more than $450 million in revenue from the Torch Devices and profited more than $68 million in just the past year alone. Its revenues and profits across the state over the past decade are likely many times those amounts.

6

outstanding discovery requests, as judgment in this case has already been unnecessarily delayed for an extended period of time. Defendants are the only parties that stand to gain from continued delay in this case, as they profit substantially—at least of tens of thousands of dollars *daily*—while their devices remain operational. Each day without discovery and ultimate resolution enlarges the windfall Torch may obtain by profiting from illegal conduct.

## II.     TNT Is Entitled to Costs and Attorneys Fees as the Prevailing Party

A plaintiff, upon prevailing under Section 43(a) of the Lanham Act, shall recover "the costs of the action." 15 U.S.C. § 1117(a). TNT unequivocally prevailed at trial and thus, as the prevailing party, is entitled to its costs. Because the case is still ongoing, TNT will file a separate motion with a bill of costs after the Court enters its final judgment.

In addition to costs, the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). A case is "exceptional," among other things, where a defendant's unlawful conduct "was willful and deliberate," even if not in "bad faith." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011); *see also Souza v. Charmed LLC*, 745 F. Supp. 3d 758, 765 (N.D. Iowa 2024) (finding "exceptional" conduct and granting attorneys fees under the Lanham Act); *Home Builders Ass'n of Greater St. Louis v. L & L Exhibition Mgmt., Inc.*, 1999 WL 34803788, at *20 (E.D. Mo. Aug. 13, 1999), *aff'd* 226 F.3d 944 (8th Cir. 2000) (granting attorneys fees under the Lanham Act, including for unfair competition violations). As relevant in the false advertising context, a case is exceptional if the defendant disseminated the false advertisements in a "fraudulent, deliberate, or willful" manner or "acted with the deliberate intent to confuse consumers." *ITEX Corp. v. Glob. Links Corp.*, 90 F. Supp. 3d 1158, 1174 (D. Nev. 2015).

There is copious evidence in the record and adduced at trial of Defendants' willful and deliberate behavior related to their false advertising. *See, e.g., supra* p. 5 n.3. As just one example, the Missouri Gaming Commission letter—which explicitly stated that Banilla's "No Chance" Games were illegal gambling devices—dates back to July 2019. *See* Trial Ex. 102. At trial, Defendant Steve Miltenberger admitted that he read that letter just a few days after it was issued, and in an email, Defendants' own attorney warned Defendants that the Gaming Commision considered Banilla's "no chance" games to be illegal. *See* Trial Ex. 220 ("We know that the MGC is saying that generally these games are illegal . . . ."). Nonetheless, Defendants continued to flagrantly spew their false advertising, claiming that the Torch Devices were "legal" "no chance" games and that the "prize viewer" removed the element of chance.

In addition, Defendants have also engaged in conduct during the pendency of this case that further justifies awarding TNT its attorneys fees: Defendants (and their counsel) engaged in dilatory conduct; refused to admit at earlier stage in litigation what was true and obvious, e.g., the presence of several random number generators in the Torch Devices; failed to prepare for (or answer truthfully) during depositions (*e.g.*, Mr. Miltenberger's multiple 30(b)(6) depositions, *see* Order (Doc. #144), and Mr. Farley's multiple depositions, *see* Mot. (Doc. #118)); and engaged in conduct that forced TNT (and the Court) to spend countless hours and resources on needless motion practice (*e.g.*, delayed and supposedly incorrect hard drives, *see* Mot. (Doc. #165)). As just one example of the laundry list of transgressions, had Defendants (or their expert) been honest about the operation and functions of the devices from the outset, TNT could have avoided thousands of hours in attorneys and expert fees (and this case would have been finished years ago). If Defendants' expert Mr. Farley had been truthful from the start about how the Torch Devices work (which he ultimately admitted only after TNT's expert forced his hand), then TNT would not

have had to spend thousands of additional dollars on its own expert, Mr. Friedman. The behavior of Defendants and their counsel caused Bryan Cave to expend more than 4,000 hours on this case to date. The Court should grant the award of attorneys fees for several reasons, not least of all to deter vexatious litigation and tactical delay as a tool to drive up TNT's litigation costs, as Defendants and their attorneys have repeatedly done in the past, including in prior litigation against TNT.[5]

Therefore, the Court should find TNT is entitled to its attorneys fees. TNT will submit to the Court a timely and appropriately documented itemization of its fees after entry of final judgment.

Dated: November 11, 2025

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*zoe.brannon@bclplaw.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*

---

[5] If the Court desires further briefing, TNT will provide detailed briefing supporting all of Defendants' and their attorneys' and expert's conduct that support an award of attorneys fees.

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2025, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

>  */s/ Richard E. Finneran*
> RICHARD E. FINNERAN, #60768MO