**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) Case No. 4:23-cv-330-JAR | |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al.*, | ) | |
| | ) | |
|    Defendants. | ) | |

**PLAINTIFF TNT AMUSEMENTS, INC.'S MEMORANDUM IN**
**OPPOSITION TO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

Just eight days after agreeing to a joint schedule for resolving the sole remaining factual issue the parties had reserved for after trial—namely, the total amount of profits that Torch will be required to disgorge as a result of TNT's decisive victory at trial—Defendants seek once more to gum up the works. Rattled—but evidently not deterred, *see infra* § II—by this Court's memorializing in a declaratory judgment the foregone conclusion that the Torch Devices are illegal gambling devices, Defendants seek to appeal that order on an interlocutory basis, just as the parties are at the threshold of a final judgment.

Yet Defendants do not even seek to challenge the Court's determination that Torch Devices are illegal gambling devices, as overwhelmingly demonstrated by the evidence and exhaustively detailed in the Court's declaratory judgment order. *See* Order (Doc. #437) at 9–12. Instead, they once again seek to challenge this Court's **authority** to issue a declaratory judgment, not the underlying basis for finding the Torch Devices to be illegal. *See* Mem. (Doc. #442) at 2. There is simply no sense in which the resolution by the Court of Appeals of **that** question "control[s]" the disposition of the remaining issues of disgorgement and attorneys' fees (both of which are based on the jury's **separate** verdict under Count I), nor would its resolution "materially advance the

1

termination" of this case. *See* 28 U.S.C. § 1292(b). And far from establishing "substantial" grounds for disagreement on this Court's discretionary decision not to abstain from issuing a declaratory judgment, Defendants' motion simply repeats the same bad-faith arguments about their supposed "good faith" that this Court has already rejected. *Compare* Mem. (Doc. #442) at 1, 6–7, *with* Order (Doc. #438) at 7–8. Because Defendants have failed to establish any of the statutory prerequisites for certifying an interlocutory appeal, *see infra* § I—and have further failed to provide a compelling reason for this Court to exercise its discretion to certify the question even if those prerequisites ***had*** been met, *see infra* § II—this Court should reject Defendants' attempt to obtain a premature appeal and deny their Motion for Certification (Doc. #441).

**DISCUSSION**

Section 1292(b) vests courts with limited discretion to allow interlocutory appeals in extraordinary cases—discretion that should be exercised only "sparingly and with discrimination." *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994) (quoting *Control Data Corp. v. Int'l Bus. Machs. Corp.*, 421 F.2d 323, 325 (8th Cir. 1970)). Defendants have not provided a sufficient basis for the Court to exercise that discretion here. Not only have Defendants failed to establish any of the three elements required to permit this Court to certify an interlocutory appeal in the first place, *see infra* § I, but they have not even attempted to offer the Court a reason to exercise its discretion if the required elements had been satisfied (which they have not), *see infra* § II. This Court should therefore decline Defendants' invitation to produce piecemeal litigation of the parties' remaining disputes, just as TNT is finally on the precipice, after three years of litigation, of obtaining the complete relief it is entitled to.

**I.  Defendants Have Failed to Demonstrate That Any of the Mandatory Elements of § 1292(b) Have Been Satisfied**

    **A.  The Question That Defendants Seek to Certify Is Not "Controlling" on Any Issue Left to Be Decided in This Case**

There are only two issues left to be decided in this case: the amount of the attorneys' fees award, and the amount of the disgorgement award. Order (Doc. #438). Both of those outstanding items arise from TNT's Lanham Act claim—not its declaratory judgment claim, which is the only claim Defendants seek to appeal here. Curiously, Defendants do not seek to prematurely appeal the Court's ruling that TNT is entitled to those remedies—instead, they seek to challenge the Court's **separate** determination that TNT is entitled to a declaratory judgment. *See* Mem. (Doc. #442) at 2 (requesting only that the Court certify its declaratory judgment order (Doc. #437) for interlocutory appeal). Given that strange mismatch between the order being challenged and the issues remaining to be decided in this case, Defendants' motion simply fails to identify a "controlling question of law" as required by § 1292(b). *Fair Isaac Corp. v. Fed. Ins. Co.*, 729 F. Supp. 3d 884, 891 (D. Minn. 2024) ("A question of law is controlling if reversal of the district court's order would terminate the action, or even if its resolution is quite likely to affect the further course of litigation." (citation omitted)).

Put simply, even if the Defendants were somehow to persuade this Court and the Court of Appeals that one or more of its grab bag of abstention doctrines precluded this Court from issuing a declaratory judgment as to the legality of the Torch Devices, that would not call into question the jury's verdict against Torch under the Lanham Act, which is the basis for TNT's entitlement to both disgorgement and attorneys' fees. Order (Doc. #438). Even a victory for Defendants on interlocutory appeal would, ***at best***, simply result in a vacatur of the Court's declaratory judgment order. There is simply no world in which the question of this Court's authority to issue a declaratory

judgment is "controlling" on the determination of the amount of disgorgement and attorneys' fees to be ordered in this case. This Court should deny Defendants' motion on that basis alone.

**B. A Determination of the Question Submitted for Certification Would Not "Materially Advance the Termination" of This Case**

For similar reasons, Defendants have failed to explain how a vacatur of this Court's declaratory judgment order would materially advance the conclusion of this litigation. *See* 28 U.S.C. § 1292(b). As explained above, *supra* § I-A, the question Defendants seek to certify (authority to issue declaratory judgment) is distinct from the remaining issues in this case (amount of relief under Lanham Act). Far from "avoid[ing] protracted and expensive litigation," *see* Mem. (Doc. #442) at 7 (quoting *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (per curiam)), an interlocutory appeal of the Court's declaratory judgment order will only divide a single controversy into multiple appeals and cause duplicative and piecemeal appellate litigation. This is exactly why courts "sparingly" allow interlocutory appeals, as they tend to cause "piece-meal appeals." *White*, 43 F.3d at 376 (citation omitted) ("It has, of course, long been the policy of the courts to discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination.").

By asking this Court to allow Defendants to prematurely challenge the Court's declaratory judgment order, Defendants attempt to secure two bites at the apple. What Defendants ask this Court to certify for interlocutory appeal mirrors what Defendants are almost certain to ask the Court of Appeals to resolve on appeal from final judgment. That appeal is all but certain to involve the question of the legality of the Torch devices themselves, which—should the Eighth Circuit decide in Defendants' favor—would grant Defendants an alternative appellate avenue for reversal of the declaratory judgment order. The fact that certification here "would ensure multiple appeals"

4

is reason enough for this Court to deny Defendants' motion. *Fair Isaac Corp.*, 729 F. Supp. 3d at 898; *see id.* at 898–99 (citing cases denying certification where it would create the risk of multiple appeals).[1]

Allowing Defendants to circumvent the normal operation of the final judgment rule here would therefore do "little to advance the ultimate termination of the litigation and result[] only in delay." *White*, 43 F.3d at 378. Because appellate review of the Court's authority to issue a declaratory judgment will do nothing to accelerate the outstanding issues that remain to be resolved in this litigation—i.e., discovery and determination of disgorgement and attorneys' fees as the parties have planned—Defendants' "appeal cannot be said to materially advance the ultimate termination of the litigation." *Id.* at 378–79.

**C. There Are Not Good-Faith (Much Less "Substantial") Grounds for Disagreement with the Court's Declaratory Judgment Order**

Defendants cannot fairly claim that there are reasonable—much less "substantial"—grounds for disagreement. Substantial grounds "exist[] if the party asking for interlocutory appeal has identified a sufficient number of conflicting and contradictory opinions [that] provide substantial ground for disagreement," such as "if a difference of opinion exists *within the controlling circuit* or the circuits are split on the question." *Fair Isaac Corp.*, 729 F. Supp. 3d at 892 (cleaned up) (emphasis added) (finding no substantial disagreement because "[a] difference of opinion among a few courts outside the Eighth Circuit is irrelevant to this Court's inquiry, and the dearth of cases among the Courts of Appeals does not constitute substantial ground for difference of opinion"). None of those circumstances exist here.

---

[1]    Defendants cannot credibly argue appeal here would not produce multiple appeals. A spokesperson for Torch has publicly committed to appealing the legality of Torch devices after this Court enters final judgment. *See* J. Hancock, *Federal judge rules Missouri's gas station slot machines are illegal gambling devices*, St. Louis Bus. J. (Feb. 16, 2026).

First, the Court was right to reverse course on its initial abstention decision, which Defendants acknowledge is a discretionary determination that is "generally . . . not the type of question envisioned for certification of interlocutory appeal." Mem. (Doc. #442) at 4. As the Court rightfully explained when it decided to no longer invoke abstention as a reason to refrain from entering a declaratory judgment, "the consequences of deference continue to accrue, not only for the parties but also for the industry, the state, and the gaming public. The record reflects that TNT has been lobbying against no-chance devices for over a decade. Criminal charges and civil suits have been languishing in state court for five years now." Order (Doc. #332) at 8.

Most recently, the Court explained in its declaratory judgment order that "[o]n closer examination . . . abstention under *Younger* is not warranted" for several reasons. Order (Doc. #437) at 18–20. As one example, the Court recognized that there was no parallel state proceeding in which the federal plaintiff (TNT) is attempting to interfere, and the only known related state criminal case—*State v. McNutt*—does not involve TNT or Defendants as a party. *Id.* The Court further emphasized that merely having state cases touching the same subject matter is insufficient for abstention, and that the state system has not provided a timely or definitive resolution despite years of litigation. *Id.* Thus, the circumstances required by *Younger*—ongoing state prosecution of the federal plaintiff, important state interests being adjudicated there, and adequate opportunity to raise federal challenges—are absent, making abstention under *Younger* improper. *See Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 913 (8th Cir. 2022) (explaining *Younger* has "important limits" such as an ongoing state "parallel" prosecution and a proceeding implicating a state's interest in enforcing the orders and judgments of its courts).

Defendants' motion does not even endeavor to explain how any particular abstention doctrine might conceivably apply to the circumstances here. Instead, Defendants simply repeat

6

their arguments pertaining to the Missouri Court of Appeals' decision in *Torch Electronics, LLC v. Missouri Department of Public Safety*, 694 S.W.3d 548 (Mo. Ct. App. 2024), as a basis for "disagreement" here, but they continue to misunderstand that opinion.[2] Mem. (Doc. #442) at 6. As TNT has previously explained (and this Court agreed), the *Torch* decision, which concerned only the Missouri Declaratory Judgment Act, has no effect on this Court's authority under the ***federal*** Declaratory Judgment Act or federal abstention doctrines. *See* Resp. to Defs.' Suppl. Authority (Doc. #211) at 1–5; Order (Doc. #437) 19–20. Thus, that opinion does not serve as a "substantial" basis for any "disagreement" here.

Finally, Defendants claim that a paid legal opinion by one attorney and a few letters from state prosecutors[3] are evidence of their supposed good-faith disagreement with the Court's holding that the Torch Devices are illegal gambling devices. Mem. (Doc. #442) at 1, 6–7. But the Court has already rejected Torch's reliance on the 2017 opinion letter and a handful of prosecutor's determinations as a basis for finding good faith. Order (Doc. #438) at 7–8. As the Court explained, "the opinion letter was supplied by an Illinois lawyer prior to the Missouri Gaming Commission's unequivocal warning in 2019, and the county prosecutors who abstained from pursuing charges did so in direct reliance on Torch's false statements at issue here." *Id.* at 8.

Most notably, the record establishes that Defendants repeatedly misrepresented to attorneys and prosecutors that the Torch Devices did not involve any element of chance and were therefore

---

[2]   Defendants have attempted to use the Missouri case as a basis to halt this litigation on several prior occasions. *See* Defs.' Opp. to Decl. Judg. (Doc. #428) at 5–6; Defs.' Notice of Supp. Auth. (Doc. #204); Defs.' Reply in Supp. of Mot. for Summ. J. (Doc. #276) at 8–10.

[3]   Defendants falsely claim in their latest brief that the exhibits they attach were introduced at trial. Mem. (Doc. #442) at 1. Defendants' "trial exhibits" BB, BX, CV, and HX were never introduced at trial, *see* Trial Ex. List (Doc. #397), and in fact, the Court excluded evidence of that nature "at trial because it was irrelevant to the issues presented to the jury," Order (Doc. #438) at 8 n.1).

lawful. Those misrepresentations covered topics ranging from the operation of the game (e.g., falsely claiming players could recover all money wagered), to internal software functions of the game (e.g., falsely denying the existence of a random number generator),[4] to the legal mischaracterization of the devices (e.g., falsely describing them as "no-chance" devices outside "any" definition of "gambling" under Missouri law). *See, e.g.*, Ltr. from Torch to Crawford County Prosecutor (Doc. #433-1) (example of false statements to state prosecutor); Ltr. from Torch to Linn County Prosecutor (Doc. #433-2) (same). Any prosecutors who believed in the Devices' legality were "persuaded" only because Torch repeated the same misrepresentations that a federal jury unequivocally found were false. Accordingly, any "determinations" by prosecutors—or the lone attorney's opinion letter—cannot constitute evidence of a "substantial" good-faith disagreement, as each was premised on Defendants' false and deceptive statements.  Even then, Torch has failed to show that such disagreements from those parties (including an Illinois attorney) are the type of disagreements that justify interlocutory review. *See Fair Isaac Corp.*, 729 F. Supp. 3d at 892 (explaining "substantial" disagreements are those based on conflicting opinions within the controlling circuit).

Regardless, Defendants' argument about the legality of the Torch Devices is a non sequitur. Defendants are not seeking to appeal the substance of the declaratory judgment—namely, the determination that its devices are illegal—nor any question of their good faith, but rather the Court's ***authority*** to issue a declaratory judgment in the first place. Thus, even if there were a "substantial" basis for disagreement regarding the legality of the devices (and, as the Court's prior orders make clear, there is not), that would not create a substantial ground for disagreement on the

---

[4]    Notably, this conduct is not isolated. As recently as this past May, Mr. Miltenberger personally represented to a panel of three Tennessee judges that the Torch Devices contained no random number generator. *See* Order (Doc. #433) at 8.

discrete question Defendants seek to certify. *See* Order (Doc. #438) at 8; Order (Doc. #312) at 32–33.

## II. Even If the Elements of § 1292(b) Had Been Met, This Court Should Exercise Its Discretion to Deny Defendants' Motion

As explained above, Defendants have failed to meet the statutory prerequisites for this Court to certify a question for interlocutory appeal under 28 U.S.C. § 1292(b). But even if they had, that would not compel the Court to grant them the extraordinary relief they seek. The Court's determination of whether to certify an issue for interlocutory appeal is completely discretionary. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995) (explaining § 1292(b) "confer[s] on district courts first line discretion to allow interlocutory appeals"); *Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516, 519 n.2 (8th Cir. 2009) (noting that § 1292(b) "vests district courts with discretion in extraordinary circumstances to certify for interlocutory appeal orders that are not otherwise appealable"). As such, this Court may exercise its "unfettered discretion to deny certification of an order for interlocutory appeal even when a party has demonstrated that the criteria of 28 U.S.C. § 1292(b) are met." *Picard v. Katz*, 466 B.R. 208, 210 (S.D.N.Y. 2012) (citation modified); *see Kelchner v. CRST Expedited, Inc.*, No. 24-cv-82-CJW-KEM, 2025 WL 991095, at *4 (N.D. Iowa Apr. 2, 2025) (denying motion to certify even though all three criteria were satisfied because "it would be a long shot for the Eighth Circuit to accept this interlocutory appeal").

Here, even if Defendants had satisfied the "heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted," *White*, 43 F.3d at 376, the Court should nonetheless exercise its substantial discretion to deny Defendants' motion. As Defendants acknowledge, their motion comes after a trial at which they were found by a jury to have falsely advertised that the Torch Devices contain no element of chance. Mem. (Doc. #442) at 7.

9

Defendants have allowed that verdict to stand for more than five months without seeking a new trial or judgment as a matter of law. Only after this Court's declaratory judgment ruling do Defendants now seek a reversal of fortune.

In so doing, Defendants ignore the fact that, as this Court recalled extensively in the order they attack, the evidence of the Torch Devices' illegality is overwhelming. "Torch markets, distributes, and services 'no-chance' game machines throughout Missouri." Order (Doc. #437) at 5. Defendants (and their expert) also acknowledged that the Torch Devices contained random number generators, contrary to their repeated misrepresentations to both the public and public officials. *Id.* at 2, 5–7. And Defendants admitted at trial the Torch Devices are not games of skill— they acknowledge that "[t]here is nothing a player can do to alter the payout amount of a turn before or after the player inserts money." *Id.* at at 7. Instead, players risk the money they pay to play "upon the outcome of a contest of chance." *Id.* at 10 (quoting Mo. Rev. Stat. § 572.010). Indeed, the jury's verdict revealed as much. *See* Order (Doc. #437) at 9–10. That is why this Court concluded that the Torch Devices "***readily*** meet" the definitions of illegal gambling devices under Missouri law. *Id.* at 10 (emphasis added).

As discussed in § I-A and § I-B, *supra*, even a favorable appellate determination that this Court should have abstained from issuing a declaratory judgment would have no bearing on the jury's verdict and thus do nothing to stall resolution of the remaining issues in this case—unless, that is, Defendants' true agenda is to obtain a stay of the Court's declaratory judgment order once on appeal. After all, Defendants risk financial disaster if they were to obey the Court's order. Evidence at trial showed that Defendants made revenue of more than $75,000 annually on average from each Torch Device they place in Missouri. Mem. (Doc. #424) at 6 n.4. With more than 6,000 devices scattered across the state, Defendants would lose more than $1 million in revenue ***a day***

were they to cease operating the Torch Devices. *Id.* Perhaps that is why they have not stopped and instead continue to operate with flagrant disregard for the Court's order. Worst yet, ***since the Court's declaratory judgment order***, Defendants have even installed a new set of devices in a TNT location. *See* **Ex. A** (photograph of Torch Devices installed in The Gym Minor Arcade in Houston, Missouri on or about February 23, 2026).

Despite the damning findings of the jury, the declaratory judgment, and the Court's impending disgorgement order, Defendants continue to operate in bad faith. This latest tactic can only be explained as an attempt to drive up TNT's litigation costs, delay the inevitable accounting of Defendants' ill-gotten gains, and continue to evade the consequences of their unlawful actions. This Court should not countenance such obvious efforts at yet further obstruction.

## CONCLUSION

Defendants will have an opportunity to ask the Court of Appeals to review each of this Court's rulings once this Court enters final judgment. And judgment day is coming soon. Less than a month ago, this Court adopted the parties' joint scheduling order. Order (Doc. #440). Per that order, the latest date this Court will entertain briefing on the case's remaining issues is October 6, 2026. *Id.* at 2. After the Court has ruled in due course, the Court of Appeals may review, on a full record, any and all orders in this case. Letting this litigation run its course, rather than halting its forward progress by certifying a single issue for appeal now, will "materially advance[e]" the resolution of this case "to a far greater extent than would the piecemeal interlocutory appeal sought by the instant motion." *Picard*, 466 B.R. at 210. The Court should therefore deny Defendants' motion for certification.

Dated: March 11, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
ZOE WOLKOWITZ BRANNON, #74007MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*zoe.brannon@bryancave.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO