**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TNT AMUSEMENTS, INC., | ) | |
| d/b/a PLAY-MOR COIN-OP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-CV-330-JAR |
| | ) | |
| TORCH ELECTRONICS, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' motion for interlocutory appeal in this dispute between competitors in the retail amusement device industry. For the reasons stated below, the Court will deny the motion.

**BACKGROUND**

The facts and procedural history of this case are set forth at length in the Court's Memorandum and Order on summary judgment (Doc. 312) and subsequent Declaratory Judgment (Doc. 437). To summarize, Plaintiff TNT Amusements leases traditional arcade games in retail locations throughout Missouri. Defendant Torch Electronics leases "no-chance" gaming devices in the same market. TNT filed this lawsuit in March 2023 centrally alleging that Torch's devices are illegal slot machines that divert TNT's customers. In its complaint, TNT asserted claims of false advertising under the Lanham Act (Count I), unfair competition under Missouri common law (Count II), and four counts under the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts III-VI). TNT also sought a declaratory judgment that Torch devices are illegal gambling devices and slot machines under Missouri law (Count VII).

The Court granted summary judgment in Torch's favor on TNT's RICO claims, allowed Counts I and II to proceed to trial, and initially dismissed Count VII on principles of abstention. (Doc. 312). On Torch's subsequent motion for reconsideration, the Court vacated its dismissal of Count VII but reserved ruling on it pending factual determinations by the jury on Counts I and II. (Doc. 332). The parties proceeded to trial on those counts during a five-day jury trial in September 2025. To find liability, the jury had to find that one or more of the following commercial representations by Torch were false or misleading:

- In the No Chance Game, chance has absolutely no role in any possible outcome;

- The "Prize Viewer" option on NCGs eliminates chance;

- Every "No Chance" Game is carefully designed to ensure that the element of chance has no role in the outcome; or

- As a result, this amusement device does not fit any definition of a "gambling device" in the state of Missouri and is not prohibited for use by you.

(Doc. 400 at 7, 9, 12). After two hours of deliberation, the jury returned a verdict in favor of TNT on both counts, specifically finding falsity in one or more statements. (Doc. 401).

Based on the jury's factual findings and the totality of evidence in the record, including consistent expert testimony from both sides, on February 13, 2026, the Court issued a declaratory judgment on Count VII, finding that Torch devices are games of chance and meet the definition of "gambling device" under Missouri law.  (Doc. 437).  In a separate concurrent order, the Court determined that TNT, as the prevailing party on Count I, is entitled to attorney fees and a partial disgorgement of Torch's profits as permitted under the Lanham Act, 15 U.S.C. § 1117(a). (Doc. 438).

Ten days later, on February 23, 2026, the parties filed a schedule for additional financial discovery as relevant to disgorgement. (Doc. 439). Pursuant to that schedule, Torch was to provide its financial data by March 9, 2026, and expert discovery is to be completed by August

2

7, 2026. (Doc. 440). This is the last remaining issue to be resolved before the Court can enter a final judgment in this long-pending case. However, one week after the Court approved the discovery schedule and six days before Torch's financial data was due, on March 3, 2026, Torch filed the present motion asking the Court to certify for interlocutory appeal the question whether the Court should have abstained from entering declaratory judgment on Count VII finding that Torch devices are illegal gambling devices.

## LEGAL STANDARDS

The standards and procedure for interlocutory appeal are governed by 28 U.S.C. § 1292(b), which states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

In short, the statute "establishes three criteria for certification: the district court must be of the opinion that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation." *Union Cnty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 646 (8th Cir. 2008) (citation omitted). Certification under § 1292(b) is "far from the normal course of procedure." *Id*. It is to be used "only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases." *Id*. "It has long been the policy of the courts to

3

discourage piece-meal appeals because most often such appeals result in additional burdens on both the court and the litigants. Permission to allow interlocutory appeals should thus be granted sparingly and with discrimination." *Id*. The movant "bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *Id*.

## DISCUSSION

As summarized above, this case was filed in March 2023. Two years later, after two rounds of *Daubert* and summary judgment briefing, the Court allowed TNT's false advertising claims (Counts I and II) to proceed to trial and initially dismissed Count VII, abstaining from the question whether Torch's devices are illegal gambling devices. On reconsideration, the Court decided to reserve ruling on that question until after trial, informed by the jury's factual findings. The Court then entered declaratory judgment in TNT's favor after discussing at length why various principles of abstention didn't apply. Now three years into the case, with a final judgment on the near horizon, Torch asks the Court to certify the following question for interlocutory appeal:

> Whether principles of federal abstention, including those recognized by the Supreme Court of the United States' decisions in *Younger v. Harris*, 401 U.S. 37 (1971), *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Inc. Co. of America*, 316 U.S. 491 (1942), required the District Court to abstain from making a determination of legality based on unsettled Missouri criminal law pertaining to gambling.

In support of its motion, Torch concedes that discretionary rulings generally aren't "controlling questions of law" subject to interlocutory appeal, but it nonetheless asserts that this one should be treated as such because reversal by the Eighth Circuit would terminate the litigation and limit any remaining relief available. More specifically, Torch posits that, if the Eighth Circuit vacates the Court's declaratory judgment on Count VII deeming Torch devices illegal, then TNT wouldn't be entitled to attorney fees and disgorgement on Count I. Torch

4

further asserts that there are "substantial grounds for a difference of opinion," not only as to whether the Court should have abstained but also on the merits of whether Torch devices are illegal.

In response, TNT argues that the propriety of the Court's declaratory judgment on Count VII is wholly unrelated to TNT's entitlement to attorney fees and disgorgement on Count I, so there is no controlling question that would terminate this litigation. TNT notes that Torch is certain to appeal other issues in the case after final judgment, thus an interlocutory appeal on this discrete issue now would result in piecemeal litigation offending principles of judicial economy. TNT further contends that there are no reasonable grounds for differing opinions, either on the Court's non-abstention, which is discretionary, or on the merits of its declaratory judgment, given the facts in the record.

In the Court's view, though reasonable jurists may debate the Court's exercise of discretion, TNT's entitlement to attorney fees and disgorgement on Count I – the last hurdle to final judgment – doesn't depend on the fate of the Court's declaratory judgment on Count VII. As the Court explained in its recent order (Doc. 438), a jury flatly rejected Torch's commercial representations that its devices don't involve chance and therefore aren't gambling devices. The jury's swift and significant verdict reflects the strength of the evidence and the flagrance of Torch's conduct. Even were the Eighth Circuit to hold that the Court should have abstained from a formal declaration on Count VII, the Court would still find ample grounds to award attorney fees and disgorgement on Count I as permitted under 15 U.S.C. § 1117(a). Put simply, the question Torch poses for certification isn't controlling and wouldn't obviate the remaining phase of the case.

5

From here, in its reply, Torch argues that an appellate decision need not affect the *outstanding* issues but only the ultimate *outcome* of the case. Torch then proposes a second question for interlocutory certification on the merits of the Court's declaration that Torch devices are illegal gambling devices. But this is the very purpose of an ordinary appeal after final judgment. Again, certification is proper only "where decision of an interlocutory appeal might avoid protracted and expensive litigation. It was not intended merely to provide review of difficult rulings in hard cases." *Union Cnty.*, 525 F.3d at 646.

This litigation is already protracted, and the finish line is now in sight. At each stage of the case, Torch has carefully preserved a number of issues for potential appeal, including but certainly not limited to the two presented here. Also, TNT for its part might decide to appeal the Court's dismissal of its RICO claims. Certification would only engender piecemeal appeals.

The last matter standing between Torch and an appealable judgment is a post-trial award on Count I.  If Torch is impatient to commence the appellate phase, it could accelerate financial discovery so that a final judgment can be entered.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for certification of interlocutory appeal is **DENIED**. (Doc. 441).

Dated this 17th day of March, 2026.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

6