**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TNT AMUSEMENTS, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-330-JAR |
| | ) |
| TORCH ELECTRONICS, LLC, *et al.*, | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
|    Defendants. | ) |

**PLAINTIFF TNT AMUSEMENTS, INC.'S**
**MOTION TO COMPEL POST-TRIAL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff TNT Amusements, Inc., d/b/a Play-Mor Coin-op ("TNT") by and through its undersigned counsel, hereby moves the Court to compel Defendants Torch Electronics, Inc. and Steven Miltenberger ("Defendants") to provide complete responses to certain of TNT's First Post-Trial Interrogatories. Despite TNT counsel's having met and conferred on multiple occasions with Defendants' counsel in an effort to resolve the parties' disputes, Defendants remain stern in their resistance to TNT's efforts to obtain the discovery required to properly adjudicate TNT's entitlement to the disgorgement award it intends to request in this case. In support of its motion, TNT respectfully states as follows:

**BACKGROUND**

***Prior History***

1.      On December 13, 2023, this Court entered the parties' jointly proposed stipulation regarding discovery. *See* Stipulation (Doc. #58) (the "2023 Stipulation"). That stipulation provided, in pertinent part:

> Discovery of Defendants' revenues, costs, profits, and related financial information (together, "Financial Information") ***beyond the agreed-upon locations*** attached hereto as Exhibit A (the "Agreed Locations") shall ***be deferred*** until after trial on the merits if Plaintiff has succeeded on a claim

1

under which Plaintiff may pursue an award from Defendant's profits. . . . This Stipulation and Order is made ***without prejudice*** to Plaintiff's right to seek discovery of ***information relating to Defendants' Financial Information if, after trial on the merits, Plaintiff has succeeded on a claim under which Plaintiff may pursue an award from Defendants' profits***, including through requests for production, interrogatories, requests for admission, and depositions, subject to Defendants' right to raise any objections to such discovery as permitted by the Federal Rules of Civil Procedure.

*Id.* ¶ 2 (emphasis added).

2.     On October 6, 2025, TNT obtained a verdict after trial on the merits against Defendants on Count One of its Complaint under the Lanham Act, thereby satisfying the condition of the 2023 Stipulation that TNT "succeed[] on a claim under which [TNT] may pursue an award from Defendants' profits." *See* Verdict (Doc. #401); Stipulation (Doc. #58) ¶ 2.

3.     Upon order of the Court, on November 11, 2025, TNT filed its Post-Trial Brief in Support of Relief Under Counts One and Two (Doc. #424) in which it explained why TNT was entitled to an award of Defendants' profits under the Lanham Act.

4.     On February 13, 2026, this Court issued an order regarding TNT's request for disgorgement (Doc. #438) (the "February Order").

5.     In the February Order, the Court concluded that TNT was entitled to "***seek*** to eliminate [Defendants'] ill-gotten gains by ***pursuing*** disgorgement of profits." *Id.* at 6 (emphasis added) (quoting *Watkins v. McCormick & Co., Inc.*, 574 F. Supp. 3d 644, 656 (D. Minn. 2021)).

6.     The Court also concluded that "the most important considerations in this particular case are those aiming to ***deter defendant's conduct***, further the public interest of ***making that conduct unprofitable***, and serve the interests of justice," further finding that "[o]ne hundred percent of [Torch's] revenue is attributable to its misrepresentations." *Id.* at 10 (emphasis added).

7.     The Court, however, also indicated its belief that "[g]iven the scale of Torch's revenues, a disgorgement award ***sufficient to render Torch's advertising unprofitable*** would

2

inevitably result in a 'lottery-level windfall' to TNT." *Id.* at 10 (emphasis added) (citing *4 Pillar Dynasty LLC v. New York & Co, Inc.*, 933 F.3d 202, 2014 (2d Cir. 2019)). It noted that it was not yet persuaded "that an award of ***statewide*** profits is a reasonable and proportional remedy here," *id.* (emphasis added), and instead ordered that the parties "confer and submit a proposal for the scope and schedule of additional financial discovery as necessary for the Court to consider an award of disgorged profits from the overlapping locations," *id.* at 10–11. It further instructed that, "[i]f the parties cannot agree on specific issues, they may state their respective positions in the joint submission." *Id.* at 11.

### *The Parties' Initial Conference*

8.      The parties subsequently met and conferred as ordered to develop a discovery schedule and to identify any issues regarding the scope of discovery that might require the Court's resolution.

9.      In those discussions, both parties' counsel expressed uncertainty regarding the Court's preliminary ruling regarding the scope of disgorgement. In particular, TNT's counsel raised the concern that, regardless of whether the Court ultimately chose to order disgorgement beyond any overlapping locations, he believed TNT was entitled to discovery of statewide revenues and costs in order to ascertain whether the Defendants' methodology for allocating costs to the overlapping locations was reasonable, and that such discovery would therefore be material to the Court's determination of Defendants' profits.

10.      In response, Defendants' counsel indicated that he expected that TNT would receive Defendants' statewide revenue and cost information in connection with Defendants' expert disclosures, wherein he anticipated Defendants would present their total statewide revenues and costs in order to justify their proposed allocation of their overhead costs to the overlapping

locations. Based upon that discussion, the parties' counsel agreed that it was unnecessary to seek resolution of the issue of the discoverability of statewide revenue and cost information in the parties' joint submission.

11.     The parties proposed a joint scheduling order on February 23, 2026 (Doc. #439), which the Court entered the next day (Doc. #440). Among other things, the order required Defendants to disclose all non-rebuttal expert witnesses by May 18, 2026. Order (Doc. #440) ¶ b.

12.     The proposed scheduling order expressly stated:

> By agreeing to this proposed scheduling order, ***TNT does not intend to accede to the suggestion that its entitlement to disgorgement or the proper scope of discovery should be limited to the overlapping locations*** and reserves the right to challenge any such limitation in the future, whether before this Court or on appeal.

Proposed Order (Doc. #439) at 1 n.1 (emphasis added).

### *TNT's First Post-Trial Interrogatories*

13.     TNT served its First Post-Trial Interrogatories (the "Interrogatories") on Defendants on February 27, 2026. *See* **Ex. A** (Interrogatories). The Interrogatories requested, among other things, that Defendants disclose additional information regarding their revenues, costs, and profits, both for overlapping locations and more broadly, as provided for in the Stipulation and consistent with the parties' prior discussions relating to the scheduling order.

14.     Counsel for Defendants requested an extension to respond to the Interrogatories on March 26, 2026. In granting the request, TNT's counsel asked Defendants' counsel if, in the meantime, he could provide a non-exhaustive list of the categories of expenses he anticipated Defendants would claim as potential deductions, as called for by TNT's Interrogatory No. 8. In response, Defendants' counsel provided a list that included independent contractor and employee costs, capital costs, maintenance costs, and taxes, among other potential categories of potential deductions.

15.     After receiving the requested extension of time, Defendants' counsel served a response to the Interrogatories on April 9, 2026. *See* **Ex. B** (Defs.' Resp.). Defendants' responses raised numerous objections, three general categories of which are especially pertinent to the instant motion:

- Defendants objected to being asked to ***identify all overlapping locations and disclose revenue and cost information*** for any overlapping locations that had not been listed in the parties' 2023 Stipulation. *Id.* at 2–6, 13–14. That included at least three locations which, to TNT's understanding, had only begun doing business with Defendants after the 2023 Stipulation was entered. **Ex. A** at 3. In response to TNT's request for Defendants to identify any overlapping locations from a list of all of TNT's current and former locations, Defendants asserted that the Court's reference to "overlapping locations" in its Order was limited to the "agreed locations" in the 2023 Stipulation and on that basis objected to producing information for other overlapping but not previously "agreed" locations. **Ex. B** at 2–6, 13–14.

- Defendants objected to TNT's request for information about ***the bank accounts into which Defendants had deposited funds*** from the overlapping and/or agreed locations (and from Torch locations more generally), claiming that the mere identification of such bank accounts would be unduly burdensome. *See id.* at 9–13.

- Finally, Defendants objected, among other things, that ***TNT's request for statewide revenue and cost information was premature*** in that such matters related to "disclosure of potential expert opinions, which are not due under the current Scheduling Order until May 18, 2026." *Id.* at 6–8, 13–15. Defendants therefore "reserve[d] the right to supplement its response . . . at the appropriate time and in compliance with the Court's scheduling order." *Id.* at 13–15. Defendants also asserted that such request was overbroad in light of this Court's February Order, which they construed as precluding TNT from requesting disgorgement from any locations other than those specified in the 2023 Stipulation. *Id.* at 3–4, 8–9, 13–15.

16.     The parties met and conferred regarding Defendants' objections on multiple occasions, including, without limitation, April 15, 2026. In the course of those discussions, Defendants' counsel restated his expectation that statewide revenue and cost information would be produced as part of Defendants' expert disclosure.

5

17.     In light of Defendants' objections that TNT's requests for an identification of categories of claimed deductions was "premature," Defendants' voluntary disclosure of a nonexclusive list of anticipated categories of claimed deductions, and Defendants' counsel's suggestions that TNT would receive statewide revenue and cost information as a part of Defendants' expert disclosures, which were not due until May 18, 2026, TNT did not seek to compel the disclosure of statewide information at that time.

### *Defendants' About-Face*

18.     On May 19, 2026, the day after Defendants' expert disclosure deadline, counsel for Defendants informed TNT's counsel via email that Defendants no longer intended to seek deductions from any disgorgement award for anything other than two categories of costs: payments made to players, and payments made to locations. In an email response that same day, TNT's counsel inquired whether, in light of that decision, Defendants intended to supplement their interrogatory responses. Defendants' counsel indicated they would "review and supplement the responses accordingly to the extent necessary."

19.     On June 10, 2026, after a follow-up from counsel for TNT, Defendants' counsel responded to indicate that Defendants would indeed supplement their earlier interrogatory responses. Defendants served their supplemental response on June 15, 2026. *See* **Ex. C** (Defs.' Supp. Resp.).

20.     In their supplemental response, Defendants did not withdraw any of the objections described above and did not provide any of the three categories of additional information that are sought by the instant motion.

6

**GROUNDS FOR RELIEF**

21.     This Court should overrule the aforementioned objections to TNT's Interrogatories. The information sought by the Interrogatories is "relevant to [TNT's] claim" and "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), insofar as the requested information is necessary to permit TNT to substantiate its request for disgorgement and to validate (or dispute) the accuracy of the minimal information regarding Defendants' revenues and costs for the overlapping locations that Defendants have produced to date, which consists entirely of spreadsheets prepared by Defendants' attorneys.

22.     Defendants' objections are based, in part, on the assertion that this Court's February Order was not intended merely as an interlocutory order expressing the Court's tentative view as to the appropriate scope of disgorgement, but as precluding TNT from even *requesting* disgorgement of any of Defendants' profits beyond the preliminary list of overlapping locations specified in the parties' 2023 Stipulation.

23.     Defendants' self-serving and overly narrow construction of this Court's order is incorrect. But even if the Court had placed such a limitation on the scope of any disgorgement request that TNT might make, that would not be a basis to limit TNT's entitlement to discovery beyond the ordinary ken of Rule 26(b)(1).

24.     Each of the Rule 26(b)(1) factors weighs in favor of compelling the requested discovery:

- the information requested bears directly on an "important[t] issue," namely the "amount in controversy," and the discovery is "important[t] in resolving" the amount of disgorgement that will be ordered by the Court;

- Defendants have ready "access to [the requested] information," whereas TNT has none; and

7

- providing the requested information is not likely to impose any substantial burden or expense" on Defendants, who, in any event, have far greater "resources" than TNT to assemble the requested information.

26. Indeed, Defendants can answer the disputed interrogatories by providing just a few data points, all of which are readily accessible to Defendants: (1) the total amount of money deposited by patrons into Torch Devices at each Torch location, including at the three new "overlapping locations" for which Defendants resist producing information (and any others Defendants have refused to identify); (2) the total amount of money collected by Defendants from those same locations; and (3) the account number, bank, and account title for each bank account into which Defendants have deposited their collections.

26. Moreover, to the extent that Defendants wished to limit the scope of discovery available to TNT to the locations identified in the 2023 Stipulation, they were free to raise such issues in the parties' proposed scheduling order. They did not do so. Instead, Defendants led TNT's counsel to believe that information relating to statewide revenues and costs (and, any additional "overlapping locations") would largely be produced in connection with Defendants' expert disclosure (which never arrived).

27. Finally, to the extent that Defendants contend this Court's February Order limits TNT's entitlement to the discovery it seeks, TNT respectfully requests that the Court either clarify or reconsider that portion of its order to bring its rulings into alignment with the Supreme Court's recent decision in *Sripetch v. SEC*, 146 S. Ct. 1403 (2026), which held that, when a court considering disgorgement "must choose between two status quos"—either "restor[ing] the defendant to his prior position by stripping him of his unjust gains," or "allow[ing] the defendant to benefit from his misconduct"—"equity traditionally prefers the first outcome." *Id.* at 1412.

28. A memorandum of law in support of this motion is filed contemporaneously herewith.

29.     Prior to filing the instant motion, the undersigned conferred on multiple occasions with Aaron Craig, counsel for Defendants, who indicated that Defendants oppose TNT's being granted the relief requested herein.

WHEREFORE, TNT respectfully requests that the Court order Defendants to fully answer TNT's Interrogatories 1, 2, 3, 4, 5, 6, 7, and 9, and for such other and further relief as the Court deems just and proper.

Dated: July 8, 2026

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/   Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO
JONATHAN B. POTTS, #64091MO
HANNAH E. DEMAND, #74911MO
EMILY K.F. HEPPERMANN, #76614MO
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
*richard.finneran@bryancave.com*
*jonathan.potts@bryancave.com*
*hannah.demand@bryancave.com*
*emily.heppermann@bryancave.com*

*Attorneys for TNT Amusements, Inc.*
*d/b/a Play-Mor Coin-Op*

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, a copy of the foregoing was served on all counsel of record by operation of the Court's electronic filing system.

*/s/   Richard E. Finneran*
RICHARD E. FINNERAN, #60768MO

9