# Exhibit C

Defendants' Supplemental Response to Plaintiff's Post-Trial Interrogatories

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TNT AMUSEMENTS, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:23-cv-330 JAR |
| | ) |
| TORCH ELECTRONICS, LLC, et al., | ) |
| | ) |
|    Defendants. | ) |

**DEFENDANTS' FIRST SUPPLEMENTAL ANSWERS AND OBJECTIONS**
**TO PLAINTIFF'S POST-TRIAL INTERROGATORIES**

Defendants Torch Electronics, LLC and Steven Miltenberger (collectively, "Torch") submit the following First Supplemental Answers and Objections to Plaintiff TNT Amusements, Inc.'s Post-Trial Interrogatories.

**PRELIMINARY STATEMENT**

1. The following objections and answers are based on information currently available to Torch upon a diligent search.

2. These answers are given without prejudice to Torch's right to modify, update, or amend based on subsequently discovered information.

3. Nothing in these answers is intended to be or should be construed as a waiver of the attorney-client privilege, the work product doctrine, the common interest doctrine, the joint defense doctrine, or any other protection. Inadvertent production of such protected information is not intended to be and will not operate as a waiver of the applicable privilege.

4. Torch objects to the scope and breadth of the definition of "**Defendants**," "**you**," and "**your**," because these definitions (and their inclusion throughout the interrogatories) purport to impose an obligation on behalf of Torch to gather facts and information from persons that are

not parties and are not agents or employees of Torch. Torch will construe these terms to include the named defendants and Torch's employees and other agents when acting within the scope of their employments and agencies.

5.      Torch objects to the scope and breadth of the definition of "**Torch**," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch. Torch will construe the term "**Torch**" to refer to Torch and its employees and other agents when acting within the scope of their employments and agencies.

6.      Torch objects to the scope and breadth of the definition of "**Torch Device**" to the extent this definition includes devices owned by any entity other than Torch or the Miltenbergers in their capacities as employees or agents of Torch.

7.      Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). Torch incorporates its objection to Interrogatory 1 here by reference.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

1.      Identify, by name and address, any **Amusement Location** identified in **Interrogatory Exhibit A**, whether identified by name, address, or both, at which one or more **Torch Device** may currently be found or may have previously been found within the **relevant period.**

**ANSWER:**

Torch objects to this interrogatory on grounds that it is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding

2

proportionality and the balancing test set forth in Rule 403), and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. More specifically, the parties previously agreed to limit discovery during the prior discovery period to specific overlapping or "**Agreed Locations**" and further agreed any discovery regarding Torch's "revenues, costs, profits, and related financial information . . . beyond the agreed-upon set of locations . . . shall be deferred until after a trial on the merit if Plaintiff has succeeded on a claim under which Plaintiff may pursue an award from Defendants' profits." (*See* Doc. No. 58 (Stipulation and Order); *see also* Doc. No. 55-1 (List of Agreed Locations)). On February 13, 2026, the Court issued its Memorandum and Order regarding disgorgement ("Disgorgement Order"). (Doc. No. 438). The Court's Disgorgement Order made clear that disgorgement would be limited to only "some disgorgement from overlapping locations" (a/k/a the Agreed Locations). (*Id.* at 10). TNT was free to seek discovery regarding the overlapping/Agreed Locations prior to the close of discovery in early 2024. TNT was also free *prior to the close of discovery* to seek expansion of the overlapping/Agreed Locations if TNT became aware Torch added devices to new locations were TNT had devices. TNT never did so. This Interrogatory now seeks to extend the discovery period that closed in early 2024 to force Torch to identify potential additional locations where Torch may have placed devices in locations where TNT alleges it had devices *after* the initial discovery period closed in early 2024. This request is improper for a host of reasons. The early 2024 discovery cutoff was the demarcation line for the locations and issues to be tried at trial. The overlapping/Agreed Locations were the only locations at issue at trial. Those same overlapping/Agreed Locations remain, per the Court's Disgorgement Order, the only relevant locations for purposes of the arriving at a disgorgement award. Thus, TNT's attempt to expand the list of overlapping/Agreed Locations to locations that

3

were never at issue during the underlying discovery period, were never identified by TNT prior to the close of discovery in early 2024, were not at issue during trial, and are not implicated as being within the scope of the Court's Disgorgement Order represents an impermissible attempt to seek irrelevant and overbroad discovery.

Subject to and without waiving Torch's objections, Torch incorporates by reference Doc. No. 58 (Stipulation and Order), Doc. No. 55-1 (List of Agreed Locations), and Doc. No. 438 (Disgorgement Order), which Torch believes appropriately identify the scope of any future disgorgement award as being limited to the locations specifically listed in the List of Agreed Locations that TNT was free to inquire during the initial discovery period that ended in early 2024.

2.      What is the total amount of money that **Torch Patrons** inserted into **Torch Devices** at each of the **Overlapping Locations** during each month of the **relevant period**?

**ANSWER**:

Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). TNT's definition of "**Overlapping Locations**" is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. As explained in Torch's objection to TNT's Interrogatory 1, any disgorgement award must be limited to the locations that were identified in the List of Agreed Locations, were subject to prior discovery, and were at issue at trial. The Moose Lodge in Owensville, Marquet's Landing in Washington, the Gym Minor Arcade in Houston were never identified or at issue as overlapping/Agreed Locations

4

prior to the close of discovery in early 2024. None of these locations were at issue or relevant at trial, making them irrelevant now for purposes of disgorgement. If TNT wanted to expand the scope of the overlapping/Agreed Locations at issue at trial and now with respect to disgorgement, TNT should have done so prior to the close of the initial discovery period in 2024. TNT's attempt to expand the overlapping/Agreed Locations at this point serves no purpose, is contrary to the Court's Disgorgement Order, is overly broad, is unduly burdensome, is inconsistent with the claims and facts at issue during trial (i.e., irrelevant and not reasonably calculated), and it should be rejected. Torch incorporates its objection to Interrogatory 1 here by reference.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections.

3.      What is the total amount of money that **Torch** collected from **Torch Devices** at each of the **Overlapping Locations** during each month of **the relevant period**?

**ANSWER:**

Torch objects to the scope and breadth of TNT's definition of "Torch," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch.

Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). TNT's definition of "**Overlapping Locations**" is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant

to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. As explained in Torch's objection to TNT's Interrogatory 1, any disgorgement award must be limited to the locations that were identified in the List of Agreed Locations, were subject to prior discovery, and were at issue at trial. The Moose Lodge in Owensville, Marquet's Landing in Washington, the Gym Minor Arcade in Houston were never identified or at issue as overlapping/Agreed Locations prior to the close of discovery in early 2024. None of these locations were at issue or relevant at trial, making them irrelevant now for purposes of disgorgement. If TNT wanted to expand the scope of the overlapping/Agreed Locations at issue at trial and now with respect to disgorgement, TNT should have done so prior to the close of the initial discovery period in 2024. TNT's attempt to expand the overlapping/Agreed Locations at this point serves no purpose, is contrary to the Court's Disgorgement Order, is overly broad, is unduly burdensome, is inconsistent with the claims and facts at issue during trial (i.e., irrelevant and not reasonably calculated), and it should be rejected. Torch incorporates its objection to Interrogatory 1 here by reference.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections.

4.      What is the total amount of money that **Torch Patrons** inserted into **Torch Devices** at each of the **Amusement Locations** during each month of **the relevant period**?

**ANSWER:**

Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts

6

to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). TNT's definition of "**Overlapping Locations**" is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. As explained in Torch's objection to TNT's Interrogatory 1, any disgorgement award must be limited to the locations that were identified in the List of Agreed Locations, were subject to prior discovery, and were at issue at trial. The Moose Lodge in Owensville, Marquet's Landing in Washington, the Gym Minor Arcade in Houston were never identified or at issue as overlapping/Agreed Locations prior to the close of discovery in early 2024. None of these locations were at issue or relevant at trial, making them irrelevant now for purposes of disgorgement. If TNT wanted to expand the scope of the overlapping/Agreed Locations at issue at trial and now with respect to disgorgement, TNT should have done so prior to the close of the initial discovery period in 2024. TNT's attempt to expand the overlapping/Agreed Locations at this point serves no purpose, is contrary to the Court's Disgorgement Order, is overly broad, is unduly burdensome, is inconsistent with the claims and facts at issue during trial (i.e., irrelevant and not reasonably calculated), and it should be rejected. Torch incorporates its objection to Interrogatory 1 here by reference.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections.

5.      What is the total amount of money that **Torch** collected from **Torch Devices** at

each of the **Amusement Locations** during each month of **the relevant period**?

**ANSWER:**

Torch objects to the scope and breadth of the definition of "Torch," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch.

Torch objects to this Interrogatory on grounds that it is overly broad, not reasonably limited in scope, is unduly burdensome, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and is contrary to the Court's Disgorgement Order limiting disgorgement to "overlapping locations" that were at issue during the prior discovery period and at trial. More specifically, Torch objects to TNT's term "**Amusement Location**," which TNT defines to mean "any public or private place within the state of Missouri in which a **Torch Device** may currently be found or may have previously been found within the **relevant period**" – in other words, every location that Torch has ever placed anywhere in the State of Missouri since 2015 regardless of said location's proximity or relevance to TNT's operations or alleged competition with Torch. Consequently, TNT's Interrogatory 5 demands that Torch disclose the total amount of money that Torch collected from every Torch Device that Torch has ever operated in Missouri. As explained above, the Court's Disgorgement Order made clear that disgorgement would be limited to only "some disgorgement from overlapping locations" (a/k/a the Agreed Locations). (Doc. No. 438 at 10). Thus, Torch's profits at locations beyond the overlapping/Agreed Locations are irrelevant. Furthermore, the information requested is sensitive and should remain confidential, especially

8

where it is clearly not relevant to any pending issue before the Court, is contrary to the Court's Disgorgement Order, and should be prohibited pursuant to Fed. R. Civ. P. 26(b)(2)(C)(iii). Torch also incorporates its objection to Interrogatory 1 here by reference.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections.

6.      Please state the account number, bank, and account title of all bank accounts into which **Defendants** or **Torch Workers** deposited money collected from **Torch Devices** from any **Overlapping Location** during the **relevant period**.

**ANSWER:**

Torch objects to the scope and breadth of the definition of "**Torch**," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch. For example, considering that Defendants includes "Torch" and TNT has defined "**Torch**" so broadly as to include Torch's "current or former agents . . . [and] attorneys," complying with TNT's demand would necessitate the disclosure of sensitive bank account information for even Torch attorneys.

Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). TNT's definition of "**Overlapping Locations**" is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403),

9

and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. As explained in Torch's objection to TNT's Interrogatory 1, any disgorgement award must be limited to the locations that were identified in the List of Agreed Locations, were subject to prior discovery, and were at issue at trial. The Moose Lodge in Owensville, Marquet's Landing in Washington, the Gym Minor Arcade in Houston were never identified or at issue as overlapping/Agreed Locations prior to the close of discovery in early 2024. None of these locations were at issue or relevant at trial, making them irrelevant now for purposes of disgorgement. If TNT wanted to expand the scope of the overlapping/Agreed Locations at issue at trial and now with respect to disgorgement, TNT should have done so prior to the close of the initial discovery period in 2024. TNT's attempt to expand the overlapping/Agreed Locations at this point serves no purpose, is contrary to the Court's Disgorgement Order, is overly broad, is unduly burdensome, is inconsistent with the claims and facts at issue during trial (i.e., irrelevant and not reasonably calculated), and it should be rejected. Torch incorporates its objection to Interrogatory 1 here by reference.

Torch further objects to this Interrogatory on grounds that it is overly broad, not reasonably limited in scope, is unduly burdensome, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403),  and is contrary to the Court's Disgorgement Order limiting disgorgement. Further, TNT issued these Interrogatories not just to Torch but also to Steven Miltenberger directly, thereby demanding by way of this Interrogatory that Mr. Miltenberger also divulge sensitive personal bank account information to the extent any money collected from a Torch Device might have made its way into a personal bank account. Simply put, there is no rational,

10

relevant, or permissible basis for TNT to demand that Torch and Mr. Miltenberger divulge a list of every bank account, account title, and bank that Torch or Mr. Miltenberger might have in the State of Missouri that may have once received some portion of money that was once collected from a Torch Device in an overlapping/Agreed Location. Further, even if it were theoretically possible (which Defendants deny), the burden and associated prejudice to Torch of having to engage in the type of monetary tracing TNT demands would vastly outweigh any arguable alleged benefit to TNT. Torch further objects to this Interrogatory on grounds that the phrase "deposited money collected from" is vague and ambiguous to an extent that Torch is forced to guess at what TNT is requesting.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections and provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location to a degree that makes it possible for TNT to calculate total dollar amount that went into Torch Devices at the overlapping/Agreed Locations and Torch's gross profits at all overlapping/Agreed Locations.

**FIRST SUPPLEMENTAL ANSWER:**

Torch incorporates its prior objections and response here by reference. Further, while this Interrogatory attempts to impermissibly expand the scope of discovery for purposes of disgorgement beyond the Agreed Locations that were at issues through prior discovery and at trial, Torch objects that nothing prevented TNT from attempting to seek the same type of banking information specific to the Agreed Locations during the initial discovery period. TNT did not seek such information in any written discovery request made during the initial discovery period with

11

respect to the Agreed Locations. Torch would have objected to such request consistent with its objections above. But regardless, if TNT wanted to seek discovery into the Agreed Locations of this nature, TNT had an opportunity to do so but, for whatever reason, chose not to do so. Accordingly, this discovery is untimely and should be precluded. Further, as a practical matter and consistent with the relevancy objections above, this Interrogatory requests information that would not be helpful or relevant to the disgorgement issue. Disgorgement is limited to only a select few Agreed Locations while any responsive bank account would be used to deposit funds collected from numerous locations beyond the scope of the Agreed Locations and thus totally irrelevant for purposes of the only issue remaining in the case. Additionally, it would be very difficult, if not impossible, at this point to accurately trace specific deposits to specific locations to distinguish deposits made solely from collections at Agreed Locations as opposed to collections from locations outside the scope of the Agreed Locations. Torch has produced Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location) as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document, which provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location to a degree that makes it possible for TNT to calculate the total dollar amount Torch received from every collection of every Torch device at every at-issue overlapping/Agreed Location during the relevant period, including every net dollar amount of profit Torch made from each collection (i.e., the maximum available amount for eventual deposit into a Torch bank account traceable not just to each of the Agreed Locations, but to each individual Torch device that was ever placed at any Agreed Location during the relevant period).

7.     Please state the account number, bank, and account title of all bank accounts into which **Defendants** or **Torch Workers** deposited money collected from **Torch Devices** from any

12

**Amusement Location** during the relevant period.

**ANSWER:**

Torch objects to the scope and breadth of the definition of "**Torch**," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch. For example, considering that Defendants includes "Torch" and TNT has defined "**Torch**" so broadly as to include Torch's "current or former agents . . . [and] attorneys," complying with TNT's demand would necessitate the disclosure of sensitive bank account information for even Torch attorneys.

Torch further objects to this Interrogatory on grounds that it is overly broad, not reasonably limited in scope, is unduly burdensome, seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and is contrary to the Court's Disgorgement Order limiting disgorgement to "overlapping locations" that were at issue during the prior discovery period and at trial. More specifically, Torch objects to TNT's term "**Amusement Location**," which TNT defines to mean "any public or private place within the state of Missouri in which a **Torch Device** may currently be found or may have previously been found within the **relevant period**" – in other words, every location that Torch has ever placed anywhere in the State of Missouri since 2015 regardless of said location's proximity or relevance to TNT's operations or alleged competition with Torch. Thus, in the context of this Interrogatory, TNT demands that both Torch and Mr. Miltenberger (personally) disclose irrelevant and sensitive details about every bank account Torch or Mr. Miltenberger (personally) has ever had that may have received a deposit that contained proceeds from Torch

Device collections. Simply put, there is no rational, relevant, or permissible basis for TNT to demand that Torch and Mr. Miltenberger divulge a list of every bank account, account title, and bank that Torch and Mr. Miltenberger might have in the State of Missouri or elsewhere that may have received proceeds from Torch Device collections. Furthermore, this Interrogatory is not reasonably limited in geography or scope to alleged competition between TNT and Torch, the overlapping/Agreed Locations, or TNT's claim for disgorgement as limited by the Court's Disgorgement Order. The Interrogatory is not reasonably calculated to lead to the discovery of relevant, useful, and admissible information regardless. Torch further objects to this Interrogatory on grounds that the phrase "deposited money collected from" is vague and ambiguous to an extent that Torch is forced to guess at what TNT is requesting.

Subject to and without waiving Torch's objections, Torch incorporates by reference its Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which will be produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's Answers and Objections and provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location to a degree that makes it possible for TNT to calculate total dollar amount that went into Torch Devices at the overlapping/Agreed Locations and Torch's gross profits at all overlapping/Agreed Locations.

**FIRST SUPPLEMENTAL ANSWER:**

Torch incorporates its prior objections and response here by reference. Further, as a practical matter and consistent with the relevancy objections above, this Interrogatory requests information that would not be helpful or relevant to the disgorgement issue. Disgorgement is limited to only a select few Agreed Locations while any responsive bank account would be used to deposit funds collected from numerous locations that are not Agreed Locations and thus totally

14

irrelevant for purposes of the only issue remaining in the case. Additionally, it would be very difficult, if not impossible, at this point to accurately trace specific deposits to specific locations to distinguish deposits made solely from collections at Agreed Locations as opposed to collections from locations outside the scope of the Agreed Locations. Torch has produced Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location) as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document, which provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location to a degree that makes it possible for TNT to calculate the total dollar amount Torch received from every collection of every Torch device at every at-issue overlapping/Agreed Location during the relevant period, including every net dollar amount of profit Torch made from each collection (i.e., the maximum available amount for eventual deposit into a Torch bank account traceable not just to each of the Agreed Locations, but to each individual Torch device that was ever placed at any Agreed Location during the relevant period).

8.      For any type or category of business expense or other cost **You** claim **Torch** is entitled to as a deduction from any potential disgorgement award, please identify that type or category by name and provide a general description of the business expenses or other costs contained within that type or category.

**ANSWER:**

Torch objects to this Interrogatory on grounds that it is a premature contention interrogatory. Further, Torch objects that this Interrogatory seeks premature disclosure of potential expert opinions, which are not due under the current Scheduling Order until May 18, 2026. Torch and its expert have not yet determined what deductions Torch may claim from any potential disgorgement of profits.

15

Subject to and without waiving Torch's objections, Torch reserves the right to supplement its response to this contention interrogatory at the appropriate time and in compliance with the Court's Scheduling Order.

**FIRST SUPPLEMENTAL ANSWER:**

Torch seeks a deduction or adjustment to gross profits at locations that were identified in the List of Agreed Locations, which Torch understands to be the relevant scope of any possible disgorgement award, for two categories of costs or expenses: (1) money Torch paid to players who played Torch devices; and (2) money Torch paid to the location owners for allowing Torch to place Torch devices at their locations (i.e., 50 percent of the adjusted gross profits after deductions for money paid to players of Torch devices). All relevant information needed to calculate these deductions is included in Torch's Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which was previously produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's original Answers and Objections and provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location. Further, TNT was free to seek financial discovery related to the locations including in the List of Agreed Locations during the previous discovery period, which TNT did both during pre-trial discovery and at trial.

9.      For each type or category identified in response to Interrogatory No. 8, please state, with respect to each **Overlapping Location**, (i) the total amount of any deductions claimed for that **Overlapping Location** within that type or category for each month within the **relevant period**; (ii) the date, description, and amount of each particular business expense or cost for the **Overlapping Location** within that type or category, (iii) the basis for the claimed deduction, and (iv) how the claimed deduction **relates** to that **Overlapping Location.**

16

**ANSWER:**

This Interrogatory is based upon TNT's Interrogatory 8. Accordingly, Torch incorporates its objections and response to TNT's Interrogatory 8 here by reference. Torch similarly objects to this Interrogatory on grounds that it is a premature contention interrogatory. Further, Torch objects that this Interrogatory seeks premature disclosure of potential expert opinions, which are not due under the current Scheduling Order until May 18, 2026. Torch and its expert have not yet determined what deductions Torch may claim from any potential disgorgement of profits, which makes giving the further detail TNT has demanded impossible at this time.

Subject to and without waiving Torch's objections, Torch reserves the right to supplement its response to this contention interrogatory at the appropriate time and in compliance with the Court's Scheduling Order.

**FIRST SUPPLEMENTAL ANSWER:**

Torch objects to TNT's definition of "**Overlapping Locations**" to the extent TNT attempts to expand the scope of discovery or disgorgement to locations that are not listed in Exhibit A to the parties' Joint Stipulation (Doc. No. 55-1). TNT's definition of "**Overlapping Locations**" is overly broad, unduly burdensome, is not proportional to TNT's need (i.e., is prohibited pursuant to Fed. R. Civ. P. 26(b)(1) regarding proportionality and the balancing test set forth in Rule 403), and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence based on the issues that remain to be decided in this case. As explained in Torch's objection to TNT's Interrogatory 1, any disgorgement award must be limited to the locations that were identified in the List of Agreed Locations, were subject to prior discovery, and were at issue at trial. The Moose Lodge in Owensville, Marquet's Landing in Washington, the Gym Minor Arcade in Houston were never identified or at issue as overlapping/Agreed Locations

17

prior to the close of discovery in early 2024. None of these locations were at issue or relevant at trial, making them irrelevant now for purposes of disgorgement. If TNT wanted to expand the scope of the overlapping/Agreed Locations at issue at trial and now with respect to disgorgement, TNT should have done so prior to the close of the initial discovery period in 2024. TNT's attempt to expand the overlapping/Agreed Locations at this point serves no purpose, is contrary to the Court's Disgorgement Order, is overly broad, is unduly burdensome, is inconsistent with the claims and facts at issue during trial (i.e., irrelevant and not reasonably calculated), and it should be rejected.

Subject to and without waiving Torch's objections, Torch states that all relevant information needed to calculate the deductions identified in the response above is included in Torch's Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which was previously produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's original Answers and Objections and provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location. Further, TNT was free to seek financial discovery related to the locations including in the List of Agreed Locations during the previous discovery period, which TNT did both during pre-trial discovery and at trial.

10.     What if any wages, salaries, or other payments did **Torch** pay to any employees, contractors, and third parties during the **relevant period**, including but not limited its payments to the Miltenbergers, auditors, technicians, and any other **Torch Workers**? For any such cost claimed as deductions from any potential disgorgement award, please indicate the basis for the claimed deduction and how it **relates** to **Torch's** advertising of, distribution of, or collection of money from **Torch Devices** at each **Overlapping Location** or at any other **Amusement**

18

**Location**.

**ANSWER:**

Torch objects to the scope and breadth of the definition of "**Torch**," because this definition (and its inclusion throughout the interrogatories) purports to impose an obligation on behalf of Torch to gather facts and information from persons that are not parties and are not agents or employees of Torch.

Torch further objects to this interrogatory to the extent that it demands Torch to provide information regarding "any wages, salaries, or other payments . . . to any employees, contractors, and third parties during the relevant period" regardless of whether Torch (or its expert) ultimately decides to claim "any such cost [] as deductions from any potential disgorgement award" because absent such claimed deduction the requested information is overly broad, unduly burdensome, disproportionate to TNT's needs given the remaining claims and issues, unfairly prejudicial to Torch, irrelevant, and not reasonably calculated to lead to relevant and admissible evidence. To the extent this Interrogatory seeks information regarding deductions that Torch claims should be applied to any disgorgement award, Torch objects to this Interrogatory on grounds that it is a premature contention interrogatory. Further, Torch objects that this Interrogatory seeks premature disclosure of potential expert opinions, which are not due under the current Scheduling Order until May 18, 2026. Torch and its expert have not yet determined what deductions Torch may claim from any potential disgorgement of profits, which makes giving the further detail TNT has demanded impossible at this time.

Subject to and without waiving Torch's objections, Torch reserves the right to supplement its response to this contention interrogatory at the appropriate time and in compliance with the Court's Scheduling Order.

19

**FIRST SUPPLEMENTAL ANSWER:**

Torch incorporates its prior objections here by reference. Subject to and without waiving its objections, and consistent with Torch's response to Interrogatory Number 8, above, Torch states that it is not currently seeking deductions to a disgorgement award for any wages, salaries, or payments to any employees or contractors during the relevant period, which renders this request moot, irrelevant, disproportional to the needs of the case, and seeking information beyond the allowable scope of discovery under Rule 26. Further, any payments Torch paid to "third-parties" during the relevant period that are relevant to the two categories of deductions/costs at issues (i.e., payments to players and 50/50 split with location owners at the Agreed Locations) and referenced in responses to Interrogatories 8 & 9, above, are reflected in in Torch's Interrogatory Exhibit A (device-level detailed financial information for each overlapping/Agreed Location), which was previously produced as a CONFIDENTIAL – ATTORNEYS' EYES ONLY document contemporaneous with Torch's original Answers and Objections and provides location-by-location, device-level financial details at every at-issue overlapping/Agreed Location. Further, TNT was free to seek financial discovery related to the locations including in the List of Agreed Locations during the previous discovery period, which TNT did both during pre-trial discovery and at trial.

Dated: June 15, 2026                           Respectfully submitted,

                                               **GRAVES GARRETT GREIM LLC**

                                               By:  _/s/ J. Aaron Craig_
                                                     Todd P. Graves #41319 (MO)
                                                     J. Aaron Craig #62041 (MO)
                                                     Chandler E. Carr #68836 (MO)
                                                     1100 Main Street, Suite 2700
                                                     Kansas City, MO 64105
                                                     Phone: (816) 256-3181
                                                     Fax: (816) 256-5958

20

tgraves@gravesgarrett.com
acraig@gravesgarrett.com
ccarr@gravesgarrett.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 15, 2026, Defendants' Answers and Objections to Plaintiff's First Post-Trial Interrogatories were served via electronic mail on opposing counsel.

*/s/ J. Aaron Craig*
Attorney for Defendants